UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; and BLACKWATER LODGE AND TRAINING CENTER, INC. a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a Georgia Corporation; EVANSTON INSURANCE COMPANY, an Illinois Corporation; FIDELITY AND CASUALTY COMPANY OF NEW YORK, a South Carolina Corporation; and LIBERTY INSURANCE UNDERWRITERS, a Massachusetts Corporation,<br><br>Defendants. | Civil Action No. 05 6020<br><br>Electronically Filed<br><br>Assigned to Judge Petrese B. Tucker<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** |

Defendants Evanston Insurance Company ("Evanston"), The Fidelity and Casualty Company of New York ("Fidelity") and Liberty International Underwriters ("Liberty") (hereinafter, "Moving Defendants") submit this memorandum in support of their motion to transfer this case to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a) (the "Motion")[1]. In support of the Motion, Moving Defendants also rely on the Affidavit of Representative of Liberty International Underwriters and the Declarations of Thomas Lucia and Frances M. Mares, which are filed with the Motion.

---

[1] Defendant Westchester Surplus Line Insurance Company ("Westchester") consents to the Motion and to the transfer of the case to the Eastern District of North Carolina.

I.  **INTRODUCTION**

North Carolina is the appropriate forum for this litigation. Pennsylvania is not. Pennsylvania has absolutely no connection with this litigation; in contrast North Carolina's connections to the case are overwhelming. First, Plaintiffs' principal places of business are in Moyock, North Carolina.[2] Second, the wrongful death action giving rise to the insurance coverage disputes in this case is pending in North Carolina.[3] Third, each of the Moving Defendants' policies list their respective "Insured" or "Named Insured" Plaintiff(s) as North Carolina addressees and Westchester's policy appears to reflect the same information. *See Affidavit of Representative of Liberty International Underwriters,* ¶ 3; *Declarations of Thomas Lucia and Frances M. Mares,* ¶ 3. Fourth, the witnesses with knowledge about the issues in this case and many of the documents relating to the claims and defenses in this case are likely located in North Carolina. *Nordan Comp.*, ¶¶ 12-67. Finally, Moving Defendants are aware of no relationship between Pennsylvania and the issues in dispute in this action, none of the events related to the issuance of the Moving Defendants' policies took place in Pennsylvania, and there are no witnesses or documents relating to the issuance of the Moving Defendants' policies located in Pennsylvania. *Affidavit of Representative of Liberty International Underwriters,* ¶ 5; *Declaration of Thomas Lucia* ¶ 5; *Declaration of Frances M. Mares,* ¶ 6; *see also Blackwater Complaint and Nordan Complaint.* Upon information and belief, the same facts are also true as to Westchester.

---

[2] *See* "Complaint for Breach of Contract; Declaratory Judgment; and Other Relief", ¶¶ 17-18, filed by Plaintiffs in this action hereinafter referred to as the "Blackwater Complaint."

[3] The plaintiff in the underlying lawsuit, *Nordan v. Blackwater Security Consulting LLC, et al.*, 05-CVS-173 (hereinafter, the "Nordan Lawsuit") filed his suit on January 5, 2005 in Wake County Superior Court, North Carolina. A copy of the Complaint filed in the Nordan Lawsuit, hereinafter, the "Nordan Complaint," was attached to the Blackwater Complaint as Exhibit A.

A North Carolina venue best serves the interests of justice and the convenience of the parties. Moving Defendants request that this Court reject Plaintiffs' inappropriate choice of forum and transfer this action to the Eastern District of North Carolina.

## II.    FACTS

This is an action for declaratory judgment and breach of contract against Evanston, Liberty, Fidelity and Westchester (collectively the "Insurers") under liability insurance policies ("the Policies") issued to Blackwater Security Consulting, LLC ("Blackwater Security") and Blackwater Lodge and Training Center, Inc. ("Blackwater Lodge") (collectively "Blackwater" or the "Blackwater Plaintiffs"). *Blackwater Complaint*, ¶ 1. The Blackwater Plaintiffs allege that the Insurers are obligated to defend and indemnify them in the underlying Nordan Lawsuit.

Richard P. Nordan, as ancillary administrator for the estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (collectively, the "Decedents") filed the Nordan Lawsuit in Wake County Superior Court, North Carolina. The Nordan Lawsuit seeks damages arising from the murders of the Decedents on March 31, 2004 by Iraqi insurgents while the Decedents were working in support of Blackwater's contract with a business providing catering services to the United States military. *Blackwater Complaint*, ¶ 2. The Blackwater Plaintiffs, who are defendants in the Nordan Lawsuit, removed the case to the United States District Court for the Eastern District of North Carolina, and the court remanded the case to state court. *Id.*[4]

The Blackwater Plaintiffs' alleged misconduct is relevant to the insurance coverage disputes in this case. Witnesses with knowledge about this conduct and documents relating to this conduct are located in North Carolina. *Nordan Complaint*, ¶¶ 13-40. For example, Nordan alleges that at the time Decedents signed-on with Blackwater, Blackwater misrepresented the

---

[4] The action is stayed pending an appeal to the Fourth Circuit. *Blackwater Complaint*, ¶ 1.

3

security measures it would undertake to protect Decedents while in Iraq. *Nordan Complaint*, ¶¶ 13, 15, 84, 85. Further, Nordan alleges that Blackwater's director, Mike Rush, intentionally omitted safety requirements in contracts for Blackwater's security services. *Nordan Complaint*, ¶¶ 25-27. This allegedly compromised the safety of the Decedents and ultimately led to their deaths. *Id.* Nordan also bases some claims on misconduct by Blackwater that allegedly began at its North Carolina facilities. *Nordan Complaint*, ¶ 40.

Blackwater Security and Blackwater Lodge are Delaware corporations with their principal places of business in Moyock, North Carolina. *Blackwater Complaint*, ¶¶ 17-18. The Blackwater Plaintiffs operate their business from Moyock, and the Blackwater website indicates that they own over 6000 acres of land and employ over 175 people in eastern North Carolina. *See* Blackwater Website *available at* http://www.blackwaterusa.com.

Moving Defendants' policies each list the address of their "insured" or "named insured" as Moyock, North Carolina, and Westchester's policy appears to reflect the same information. *Affidavit of Representative of Liberty International Underwriters*, ¶ 3; *Declarations of Thomas Lucia and Frances M. Mares*, ¶ 3. Further, Moving Defendants are aware of no relationship between Pennsylvania and the issues in dispute in this action, none of the events related to the issuance of Moving Defendants' policies took place in Pennsylvania, and there are no witnesses or documents relating to the issuance of Moving Defendants' policies located in Pennsylvania. *Affidavit of Representative of Liberty International Underwriters*, ¶ 5; *Declarations of Thomas Lucia*, ¶ 5; *Declaration of Frances M. Mares*, ¶ 6; *see also Blackwater Complaint and Nordan Complaint*. Upon information and belief, the same facts are also true as to Westchester.

Finally, none of the Insurers is incorporated in or have a principal place of business in Pennsylvania. *Affidavit of Representative of Liberty International Underwriters*, ¶ 2;

*Declarations of Thomas Lucia and Frances M. Mares*, ¶ 2; *Westchester Answer*, ¶ 19. The Blackwater Plaintiffs allege in paragraph 19 of their Complaint that Westchester's principal place of business is in Pennsylvania. *Blackwater Complaint*, ¶ 19. This allegation is wrong; Westchester's principal place of business is in Roswell, Georgia. *Westchester Answer*, ¶ 19.

## III.   ARGUMENT

Under Section 1404(a), a District Court may transfer a civil action, provided that (1) the proposed transfer is to a "district or division where [the action] might have been brought," and (2) the transfer serves "the convenience of [the] parties and witnesses [and] the interest of justice." 28 U.S.C. § 1404(a). *Plum Tree v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973); *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.* 2005 U.S. Dist. LEXIS 4199, *4; *Czubryt v. CONRAIL*, 2002 U.S. Dist. LEXIS 4692, *2 (E.D. Pa. Feb. 20, 2002). This case satisfies both conditions.

The Blackwater Plaintiffs could have filed this action in the Eastern District of North Carolina based on diversity jurisdiction. 28 U.S.C. § 1332. The complaint here shows that the amount in controversy exceeds the $75,000 jurisdictional minimum. *Blackwater Complaint*, ¶ 15. Blackwater Security and Blackwater Lodge are Delaware corporations with their principal places of business in Moyock, North Carolina, which is in the Eastern District of North Carolina. *Blackwater Complaint*, ¶¶ 17-18.

Venue would be proper in the Eastern District of North Carolina because the Blackwater Plaintiffs reside there and each of the Insurers are subject to jurisdiction in that judicial district. *Blackwater Complaint*, ¶¶ 17-18; *Affidavit of Representative of Liberty International Underwriters*, ¶ 4; *Declarations of Thomas Lucia*, ¶ 4; *Declaration of Frances M. Mares*, ¶ 5.

5

By the terms of Section 1404(a), the remaining issue is the convenience of the parties and witnesses and the interest of justice. *See Horace Mann v. Nationwide,* 2005 U.S. Dist. LEXIS 4199 at *4; *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir. 1995). Those "private interest" factors in this analysis include: (1) the plaintiff's forum preference; (2) the defendants' forum preference; (3) the location where the events occurred and claims arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to source of proof. *Id.* at *4-5. The "public interest" factors in the analysis include: (1) the relative congestion and burden of the courts in the two fora; (2) the relative ability of the two fora to resolve the case more expeditiously and inexpensively; (3) the interest of the community at-large, including the interest of the communities in having controversies resolved where they arise; and (4) the familiarity of the court with the particular state law in diversity cases. *Id.* At *5 Here, all of these factors weigh in favor of transferring this action to the Eastern District of North Carolina.

    **A.**    **The Private Interest Factors Favor A Transfer Of Venue To The Eastern District Of North Carolina**

        **1.**    **The Court Should Not Defer To The Blackwater Plaintiffs' Choice Of Forum Because Neither The Blackwater Plaintiffs Nor This Case Has Any Connection To Pennsylvania**

While the Court should give some consideration to a plaintiff's choice of forum, this choice receives less deference when the plaintiff does not reside in the forum and no operative facts occurred in the forum. *Id.* at *7; *Fellner v. Philadelphia Toboggan Coasters, Inc.,* 2005 U.S. Dist. LEXIS 23839 (E.D. Pa. 2005); *Czubryt v. CONRAIL,* 2002 U.S. Dist. LEXIS 4692 at *4; *Tranor v. Brown,* 913 F. Supp. 388 (E.D. Pa. 1996). The Blackwater Plaintiffs are not incorporated in Pennsylvania and do not have principal places of business in Pennsylvania. *Blackwater Complaint,* ¶¶ 17-18. In fact, Blackwater's website does not indicate that Plaintiffs

6

have any presence in Pennsylvania. *See* Blackwater Website *available at* http://www.blackwaterusa.com. Further, none of the events giving rise to the *Nordan Lawsuit* took place in Pennsylvania. They took place for the most part in either North Carolina or Iraq. *Nordan Complaint*, ¶¶ 12-67. Finally, Moving Defendants are aware of no relationship between Pennsylvania and the issues in dispute in this action, none of the events related to the issuance of Moving Defendants' policies took place in Pennsylvania, and there are no witnesses or documents relating to the issuance of the Moving Defendants' policies located in Pennsylvania. *Affidavit of Representative of Liberty International Underwriters*, ¶ 5; *Declarations of Thomas Lucia*, ¶5; *Declaration of Frances M. Mares*, ¶ 6; *see also Blackwater Complaint and Nordan Complaint*. Upon information and belief, Westchester is also aware of no relationship between Pennsylvania and the issues in dispute in this action, none of the events related to the issuance of Westchester's policy took place in Pennsylvania, and there are no witnesses or documents relating to the issuance of Westchester's policy located in Pennsylvania.

Thus, the Blackwater Plaintiffs' choice of the Eastern District of Pennsylvania is inappropriate and is entitled to little or no deference.

  **2. Moving Defendants All Prefer to Litigate In The Eastern District of North Carolina**

Moving Defendants prefer to litigate in the most convenient forum, and certainly in a forum with some connection to this dispute. Here, that forum is the Eastern District of North Carolina

  **3. The Location Where The Relevant Events Occurred Is North Carolina**

    **a. Evidence Regarding Whether The Policies Provide Coverage**

The Blackwater Plaintiffs seek a ruling in this case that each of the Insurers are obligated to defend and indemnify them in connection with the claims in the Nordan Lawsuit. Each of the

7

Insurers issued a different type of liability insurance policy. Some of the Insurers have relied on identical or similar exclusions to challenge the Blackwater Plaintiffs' claims. Some policy limitations are unique to a particular Insurer.

While some or perhaps even all of these issues will likely be resolved by motion for judgment on the pleadings or summary judgment,[5] if discovery is necessary to resolve any of these issues, such discovery will likely focus on witnesses and documents that are in North Carolina – where the Blackwater Plaintiffs are headquartered, where they maintain their documents, and where many likely witnesses live and work.

Each of the Insurers' Policies excludes damages arising from intentional misconduct. For example, the Fidelity Policy bars coverage for payments required because of Blackwater's "serious and willful misconduct," Fidelity Policy, Coverage Form, Part I, ¶ F, and for "bodily injury intentionally caused or aggravated by" Blackwater, id., Part II, ¶ C. *See* Fidelity Policy attached to *Declaration of Frances M. Mares*. To the extent this "intentionality" issue is not resolved by early dispositive motion, it will require an examination of the underlying facts giving rise to the Blackwater Plaintiffs' alleged liability.

The Nordan Complaint alleges that the Blackwater Plaintiffs, "intentionally, deliberately, and with reckless disregard for [Decedents'] health and safety" sent the Decedents into a very high risk area without the safety measures that were promised to them. *Nordan Complaint*, ¶ 69. The Nordan Complaint also alleges that the Blackwater Plaintiffs' wrongful acts were "condoned, approved and ratified" by the company's officers and directors "and were the result of [the Blackwater Plaintiffs'] fraud, malicious and willful and wanton conduct, in the conscious disregard for the health and safety of others. "*Nordan Complaint*, ¶ 77.

---

[5] As examples, see Evanston's Fifth Defense and First Claim for Relief in its Answer and Counterclaim against Blackwater or Liberty's defense based on its War/Terrorism Exclusion, General Endorsement No. 2 contained in the Liberty International Policy.

Based on these allegations in the Nordan Complaint, witnesses with knowledge about this conduct and documents relating to this conduct are most certainly located in North Carolina. For example, the Blackwater Plaintiffs' headquarters are in Moyock, North Carolina, and Nordan alleges that at the time Decedents signed-on with Blackwater, Blackwater misrepresented the security measures it would undertake to protect them while in Iraq. *Nordan Complaint*, ¶¶ 13, 15, 84, 85. Further, Nordan alleges that Blackwater's director, Mike Rush, intentionally omitted safety requirements in contracts for Blackwater's security services. *Nordan Complaint*, ¶¶ 25-27. This compromised the safety of the Decedents and ultimately led to their deaths. *Id.* Nordan also bases his claims on misconduct by Blackwater that began at its North Carolina facilities. *Nordan Complaint*, ¶ 40. To the extent it is necessary to conduct discovery on these issues, the relevant evidence is in North Carolina.

### b. Evidence Regarding Policy Issuance

To the extent that the trial of the case involves evidence regarding policy issuance, that evidence is not in Pennsylvania. None of the Insurers issued their policies in Pennsylvania, and none of the facts relating to policy issuance are in Pennsylvania.

Moving Defendants' policies each list the address of their "insured" or "named insured" as Moyock, North Carolina, and Westchester's policy appears to reflect the same information. *Affidavit of Representative of Liberty International Underwriters,* ¶ 3; *Declarations of Thomas Lucia and Frances M. Mares,* ¶ 3. Further, evidence regarding policy issuance is either in the hands of the Blackwater Plaintiffs in North Carolina, with the Blackwater Plaintiffs' broker(s), or with the insurers in their offices in states other than Pennsylvania. *Affidavit of Representative of Liberty International Underwriters,* ¶ 5; *Declarations of Thomas Lucia,* ¶ 5; *Declaration of Frances M. Mares,* ¶ 6; *see also Blackwater Complaint and Nordan Complaint.*

### 4. North Carolina Is More Convenient Forum For The Parties

As already noted, North Carolina is a more convenient forum because the majority of documents and witnesses with knowledge of relevant facts are in North Carolina. The Blackwater Plaintiffs, whose principal places of business are Moyock, North Carolina, can make no argument that Pennsylvania is a more convenient forum to litigate this case than North Carolina.

### 5. North Carolina Is More Convenient Forum For The Witnesses

For the reasons set out above, North Carolina is more convenient than Pennsylvania because the witnesses with knowledge about the facts of the case reside in North Carolina. None of those witnesses resides in Pennsylvania.

### 6. North Carolina Has Easier Access To Sources Of Proof

For the reasons set out above, most documents and witnesses are likely located in Moyock, North Carolina. While there may be additional relevant documents and witnesses, Moving Defendants are unaware of any located in Pennsylvania and believe that Westchester is similarly unaware.

## B. The Public Interest Factors Favor A Transfer Of Venue To The Eastern District Of North Carolina

### 1. North Carolina Is The Less Expensive Forum To Resolve This Dispute And North Carolina Court Will Be Able To Resolve This Dispute More Expeditiously Than Pennsylvania Courts.

Motion practice and the trial of this case may require the testimony of witnesses who reside in North Carolina and the examination of documents that are located there. The inconvenience and expense of transporting witnesses and documentary evidence from their home state to Pennsylvania favors transfer to North Carolina.

Moreover, the judges in the Eastern District of North Carolina can manage this litigation expeditiously. Statistics from the Federal Judiciary's website indicate that plaintiffs filed 16,427 civil cases in the Eastern District of Pennsylvania in the twelve-month period ending on September 30, 2005. *See* Table C of the 2005 Annual Report of the Director under the "Judicial Business of the Court" link at the Federal Judiciary Website available at http://www.uscourts.gov. Only 1,440 plaintiffs filed suit in the Eastern District of North Carolina during the same period. *Id.* In addition, civil cases pending in the EDPA numbered 10,692 on September 30, 2005 as compared with 1,471 in the EDNC. *Id.* Moreover, the trend with respect to cases filed indicates a 18.8 percent increase in civil cases pending and a 7.6 percent increase in civil cases filed in the EDPA from March 31, 2004 to March 31, 2005. The EDNC experienced only a 6.7 percent increase in cases pending and a 3.9 percent *decrease* in cases filed in the same period. *Id.* Such statistics clearly indicate a greater volume of cases in the Eastern District of Pennsylvania.

      **2.    North Carolina Has A Greater Interest In This Action Than Pennsylvania**

The Blackwater Plaintiffs reside in North Carolina, and the defendants' policies each list the address of their "insured" or "named insured" as Moyock, North Carolina. *Affidavit of Representative of Liberty International Underwriters,* ¶ 3; *Declarations of Thomas Lucia and Frances M. Mares,* ¶ 3. In a diversity case, a district court sitting in Pennsylvania applies the conflicts of law rule that an insurance policy is interpreted by the laws of the state where it is contracted and it is contracted where it is delivered. *See, e.g., Federal Kemper Ins. Co. v. Ward,* 679 F. Supp. 489 (E.D. Pa. 1988), aff'd, 860 F.2d 1074 (3d Cir. 1988).[6] Absent contrary

---

[6] If the Court transfers this case to North Carolina, the North Carolina federal court will apply the same choice-of-law rule, because the choice-of-law rule follows the case to the new venue. *Ferens v. John Deere Co.,* 494 U.S. 516, 523, 110 S. Ct. 1274, 1280, 108 L. Ed. 2d 443 (1990) (superseded by statute on other grounds).

11

evidence, the court presumes that the delivery took place at an insured's residence. *Federal Kemper Ins. Co. v. Ward*, 679 F. Supp. 489 (E.D. Pa. 1988), *aff'd*, 860 F.2d 1074 (3d Cir. 1988); *Universal Underwriters Group v. Tusay*, 2004 U.S. Dist. LEXIS 7328 (E.D. Pa. April 27, 2004). Here, that is North Carolina. Although this Court is certainly equipped to interpret issues of North Carolina law, a North Carolina federal court is more familiar with North Carolina law, to the extent that North Carolina law applies. On the other hand, there appears to be no basis to apply Pennsylvania law.

North Carolina's interest in this matter is also implicated because of the involvement of one of its corporations. The Blackwater Plaintiffs own substantial acreage and are headquartered in North Carolina. They also employ many North Carolina residents. But plainly and simply, North Carolina has a strong interest in resolving this dispute because North Carolina is where this controversy arose.

## IV.   CONCLUSION

All of the Section 1404(a) factors weigh heavily in favor of transferring this case to the Eastern District of North Carolina. Accordingly, Defendants respectfully request that the Court transfer this action to the United States District Court for the Eastern District of North Carolina.

This the 19th day of April, 2006.

Respectfully submitted,

| | |
|---|---|
| LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO | ROSS, DIXON & BELL, LLP |
| /s/ Francis P. Burns III | /s/ Paul C. Vitrano |
| Francis P. Burns III (I.D. No. 27537) | William H. Briggs, Jr. |
| 190 North Independence Mall West, Suite 500 | Paul C. Vitrano (Bar No. 76759) |
| 6th & Race Streets | Erik M. Pritchard |
| Philadelphia, PA 19106 | 2001 K Street, NW |
| 215-627-0303 (ext. 7907) | Washington, DC 20006-1040 |
| 215-351-1900 (fax) | (202) 662-2000 (telephone) |
| fburns@lavin-law.com | (202) 662-2190 (facsimile) |
| | Counsel for The Fidelity and Casualty Company of New York |
| -and- | |
| HELMS MULLISS & WICKER, PLLC | POST & SCHELL, P.C. |
| L. D. Simmons II | /s/ John C. Sullivan |
| N.C. State Bar No. 12554 | JOHN C. SULLIVAN, ESQUIRE |
| Brian A. Kahn | Attorney ID # 32262 |
| N.C. State Bar No. 29291 | Signature Validation Code: JCS7648 |
| 201 North Tryon Street | STACEY Z. JUMPER, ESQUIRE |
| Charlotte, North Carolina 28202. | Attorney ID # 88537 |
| Telephone: (704) 343-2000 | Signature Validation Code: SZJ5395 |
| Facsimile: (704) 444.8773 | Four Penn Center |
| brian.kahn@hmw.com | 1600 John F. Kennedy Boulevard |
| ld.simmons@hmw.com | Philadelphia, PA 19103-2808 |
| Attorneys for Evanston Insurance Company | (215) 587-1000 |
| | Attorneys for Defendant, Liberty International Underwriters improperly named as Liberty Insurance Underwriters |