## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> WESTCHESTER SURPLUS LINES INSURANCE COMPANY, *et al.*, <br><br> *Defendants*. | **Civil Action No. 05-6020 (PBT)** <br><br><br> PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) |

Plaintiffs Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. (collectively "Blackwater") respectfully submit this memorandum of law in opposition to the motion to transfer venue pursuant to 28 U.S.C. § 1404(a) of Defendants Evanston Insurance Company ("Evanston"), Fidelity & Casualty Company of New York ("Fidelity"), and Liberty International Underwriters, Inc. ("Liberty") (collectively "Moving Defendants").[1] Not only have Moving Defendants failed to met their burden of establishing that a transfer of this action to the United States District Court for the Eastern District of North Carolina is warranted, the venue where they seek to transfer this action is more inconvenient for them as well Blackwater.

## I.    BACKGROUND

On November 16, 2005, Blackwater brought this action against Westchester, Fidelity, Evanston, and Liberty seeking insurance coverage for a suit against Blackwater captioned *Nordan v. Blackwater Security Consulting LLC, et al.* (the "*Nordan* Suit"), originally filed in the

---

[1] Defendant Westchester Surplus Lines Insurance Company ("Westchester") has consented to, but did not join in, the Moving Defendants' motion.

Dockets.Justia.com

Wake County, North Carolina Superior Court.[2]  In the *Nordan* Suit, Richard P. Nordan, as

Ancillary Administrator for the separate estates of Stephen S. Helvenston, Mike R. Teague,

Jerko Gerald Zovko, and Wesley J. K. Batalona (collectively "decedents"), seeks damages for

wrongful death and contract claims arising from the murders of decedents on or about March 31,

2004 by Iraqi insurgents in the city of Fallujah, Iraq, while decedents were working in support of

Blackwater's contract serving the United States military effort in that country.

Blackwater alleges that Westchester, Fidelity, and Evanston breached the insurance

policies they issued to Blackwater by not providing coverage to Blackwater for the *Nordan* Suit,

and that in doing so those insurers breached their convenants of good faith and fair dealing and

that such actions were willful, wanton, and malicious and, therefore, in violation of 42 Pa. Stat.

Ann. § 8371.  (Blackwater Complaint at ¶¶ 39-66).  The complaint also seeks a declaratory

judgment that all of the defendants are obligated, pursuant to the terms of their policies, to

provide coverage to Blackwater for the *Nordan* Suit.  (*Id.* at ¶¶ 67-70).  All of the defendants

answered Blackwater's complaint, and Evanston asserted counter-claims against Blackwater for

declaratory relief.

On April 19, 2006, Fidelity, Evanston, and Liberty filed the instant motion seeking to

transfer the venue of this action to the United States District Court for the Eastern District of

North Carolina.  Westchester did not join in the motion, but did "consent" to it and filed a

"response" that supported some of the factual allegations the Moving Defendants made that

concerned Westchester.  The Moving Defendants contend that a transfer of this action to the

Eastern District of North Carolina is warranted because "North Carolina's connections to this

case are overwhelming."  (Moving Defendants' Memorandum ("Moving Defs. Mem.") at 2).  As

---

[2] Blackwater subsequently removed the *Nordan* Suit to the United States District Court for the Eastern District of
North Carolina and is presently appealing that court's decision remanding the action.

demonstrated below, however, this assertion is incorrect, and Moving Defendants' motion must be denied.

## II.    ARGUMENT

### A.    Moving Defendants Have Not, And Cannot, Establish That The Convenience Of The Parties Of The Parties And The Interests Of Justice Favor Transferring This Action To The Eastern District Of North Carolina

In ruling on a defendant's motion to transfer venue pursuant to § 1404(a) "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted). Accordingly, the burden rests solely on the moving party to demonstrate that the proposed transfer will be more convenient for the parties and witnesses, and in the interest of justice. *Jumara*, 55 F.3d at 879; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Unless the balance of convenience of the parties and interests of justice weigh strongly in favor of the defendant, the plaintiff's choice of forum prevails. *Shutte*, 431 F.2d at 25.

To assist a court with this determination, the Third Circuit has set forth a test analyzing a non-exclusive list of various "private" and "public" interests. The private interests are: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) the location where the events occurred and claims arose; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses — but only to the extent that the witnesses may actually unavailable for trial in one of the fora"; and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879 (citing 15 Wright, Miller & Cooper *Federal Practice and Procedure* §§ 3848, 3849, 3851, 3853 (2d ed. 1986); 1A Pt.2 Moore & Ringle, *Federal Practice*, ¶ 0.345[5] (2d ed. 1995)). The public interest factors include: (1) "practical

considerations that could make the trial easy, expeditious, or inexpensive"; (2) "the relative

ability of the two fora to resolve the case more expeditiously and inexpensively"; (3) "the

interest of the community at-large, including the interest of the communities in having

controversies resolved where they arise"; and (4) the familiarity of the court with the particular

state law in diversity cases.  *Id.* at 880 (citing 15 Wright, Miller & Cooper § 3854; 1A Pt. 2

Moore & Ringle ¶ 0.345[5]).

   In order to establish the above factors and dislodge an action from the plaintiff's chosen

forum, a party seeking to transfer venue must proffer evidence that supports transfer.  *Plum Tree*

*Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1970).  Such acceptable evidence includes:

> a list of the names and addresses of witnesses whom the moving
> party plans to call and affidavits showing the materiality of the
> matter to which these witnesses will testify, statements by the
> moving parties of the business difficulties or personal hardships
> that might result from their having to defend against the suit in the
> district court where it was originally brought, affidavits concerning
> the relative ease of access to sources of documentary evidence, and
> other materials where appropriate.

*Id.* at 757 n.2.  Bare assertions of fact, conclusions, or general allegations in a party's brief are

insufficient to support a motion to transfer.  *Plum Tree*, 488 F.2d at 756-57; 15 Wright, Miller &

Cooper §§ 3851, 3853; *see also Koken v. Lexington Ins. Co.*, No. Civ.A. 04-2539, 2004 WL

2473432 *3 (E.D. Pa. Nov. 2, 2004).  Nor can a defendant meet its burden by arguing that the

plaintiff's chosen forum is inconvenient for the plaintiff; instead, the defendant must demonstrate

that the original forum is inconvenient for the defendant.  *See Koken,* 2004 WL 2473432 at *3;

15 Wright, Miller & Cooper § 3849.  Not only have the Moving Defendants failed to meet their

burden, none of the above "interests" favor transferring the venue of this action.

**B.    Moving Defendants Have Failed To Show That Any Of The Private Interests Favor Transfer**

      **1.    *The Parties' Choices of Forum***

Moving Defendants incorrectly assert that because Blackwater is not a resident of Pennsylvania and no operative facts occurred here, Blackwater's choice of this forum should be given "little or no deference." (Moving Defs. Mem. at 7). Although in such circumstances, a plaintiff's forum choice is given less deference than if the plaintiff were a resident of the forum or the operative facts occurred there, *Horace Mann Ins. Co. v. Nationwide Mutual Ins. Co.*, No. Civ. A. 04-5978, 2005 WL 639728 *1 (E.D. Pa. March 17, 2005), this does not mean that no deference should be given to a plaintiff's choice or that the defendant's and plaintiff's forum preferences should be given equal weight. Instead, because as a general matter motions to transfer venue are not to be liberally granted, a plaintiff's choice of venue, regardless of whether it is a resident of a forum or operative facts occurred there, should be disturbed only if the defendant establishes through record evidence that the balance of convenience of the parties strongly favors transfer. *See Wilson v. State Farm Mutual Automobile Ins. Co.*, No. Civ.A.04-1562, 2004 WL 1551743 *3 (E.D. Pa. July 8, 2004) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988); *Jumara* 55 F.3d at 879). Moving Defendants fail to make this necessary showing.

In fact, however, Blackwater contends that there are operative facts relevant to this dispute that occurred in this district. Defendant Westchester is a subsidiary of ACE Westchester Specialty Group, a corporation located in Philadelphia. (Exh. 1, ACE Group Corporate Profile at 7 (Oct. 2005); Exh. 2, A.M. Best 2005 Report for ACE Westchester Specialty Group). Westchester's policy directs that any suits be served not on Westchester, but on ACE USA

Companies in Philadelphia. (Exh. 3, Westchester Policy No. GLW 778197, Endorsement MANA 0089 05 02). A.M. Best, the industry handbook for insurance companies, list Philadelphia street and mailing addresses for Westchester. (Exh. 4, A.M. Best 2005 Report for Westchester Surplus Lines Insurance Company) (listing Westchester's street address as 1601 Chestnut Street, Philadelphia, Pennsylvania, United States 19103 and its mailing addresses as P.O. Box 41484, Philadelphia, Pennsylvania 19101-1484). In addition, the signature page of the policy issued by Westchester to Blackwater is signed by representatives of three insurers: Westchester, Illinois Union Insurance Company and the INA Surplus Insurance Company ("INA"). (Exh. 3, Endorsement LD-5S23g). On that signature page, INA is listed as being located in Philadelphia, Pennsylvania. (*Id.*). Thus, there is sufficient evidence to conclude that not only did operative facts related to Blackwater's dispute with Westchester take place in Philadelphia, but because the signature page of the Westchester policy includes representatives from INA, a company located in Philadelphia, it is also reasonable to conclude that there are witnesses with knowledge in Philadelphia as to the issuance of that policy to Blackwater.

Moreover, as discussed in greater detail in the following sections, the Moving Defendants have chosen a forum that is inconvenient for all parties involved. The Eastern District of North Carolina's local rules provide that this action, if transferred, would be venued in that district's Northern Division because Blackwater is located in Currituck County, North Carolina. *See* E.D.N.C. L. Civ. R. 40.1. That division has one resident Judge, the Honorable Terrence W. Boyle, no resident clerk's office, and its courthouse is located in Elizabeth City, North Carolina. (Exh. 5, http://www.nced.uscourts.gov/DivOff/ec.html). Elizabeth City is on the coast of North Carolina, over 166 miles east of Raleigh, North Carolina. (Exh. 6, Mapquest Map). Interstate 95 is approximately 96 miles away, the nearest other interstate highway exchange is 35 miles away,

and there are no major highways or roads that lead to Elizabeth City.  (*See* Exh. 7, Mapquest

Map; Exh. 8, Elizabeth City Official Website).  The closest Amtrak stop is in Newport News,

Virginia, 50 miles from Elizabeth City.  (Exh. 8).  The nearest major airport is in Norfolk,

Virginia which is also over 50 miles away (*id.*), and Raleigh's airport is over 180 miles away

(Exh. 9, Maquest Map).  To the extent that Moving Defendants contend that the location of the

underlying *Nordan* Suit in the Wake County, North Carolina Superior Court makes the Eastern

District of North Carolina more convenient, that courthouse is also over 166 miles from the

district courthouse in Elizabeth City.  (Exh. 10, Mapquest Map).

### 2.    *Location of the Events*

This is a case about whether Moving Defendants and Westchester are obligated to

provide insurance coverage to Blackwater for a suit arising out of the deaths of the *Nordan*

decedents.  Thus, while the factual circumstances surrounding the deaths of the *Nordan*

decedents are important to the resolution of this action, equally important are the actions and

inactions of the Moving Defendants with regard to Blackwater's insurance coverage claims.

Those actions undoubtedly took place not in North Carolina, but at the Moving Defendants'

various headquarters or claims handling centers presumably located in New York City (Liberty),

Chicago (Fidelity), and Deerfield, Illinois (Evanston).  (Blackwater Complaint at ¶¶ 20-22).

Thus, for the purposes of this suit, the relevant actions of the Moving Defendants took place

somewhere other than North Carolina.

Moreover, contrary to the Moving Defendants' assertions, the majority of the allegations

of the *Nordan* Suit are focused on alleged actions that occurred in the Middle East, where the

*Nordan* decedents died, not in North Carolina.  For example, the *Nordan* Suit alleges that the

performance of the contracts which form the basis of that action "were to be performed in Iraq,

and the surrounding regions and countries." (*Nordan* Complaint at ¶ 11).[3]  The *Nordan* Complaint further alleges that Blackwater failed to live up to its contracts with the decedents to perform security operations in Iraq because Blackwater did not provide them with "certain protections, tools, and information to allow [decedents] to do their jobs" in Iraq.  (*Id.* at ¶ 13).  These alleged failures, all of which occurred in Iraq, included failing to (1) provide the decedents with the proper weapons and to allow them to test fire the weapons they were given; (2) give the requisite notice before the decedents were sent on a mission; (3) conduct a "Risk Assessment" prior to the mission; (4) give the decedents the opportunity to review the mission routes; (5) allow defendants to review intelligence prior to the mission; (6) give the decedents 21 days to acclimate to the region; (7) provide armored vehicles; and (8) provide the required number of team members for the security mission.  (*Id.* at ¶¶ 13, 15, 34, 37-39, 51-53, 55, 57).  Specifically, with regard to decedent Helvenston, the *Nordan* Complaint alleges that Blackwater sent him on the mission in Iraq despite the fact that he had taken ill after arriving in the area and was not physically able to perform.  (*Id.* at ¶¶ 43-48).  It is these alleged failures that the *Nordan* Suit alleges caused the death of the decedents and for which the *Nordan* Suit seeks to rescind the agreements that the decedents entered into with Blackwater.  (*Id.* at ¶¶ 68-96).  Only one substantive allegation in the complaint even directly mentions North Carolina, and that allegation relates solely to the alleged bad relationship between decedent Helvenston and *Nordan* Suit defendant Jason McQuown.  (*Id.* at ¶ 40).  Clearly, the operative facts as alleged in the *Nordan* Complaint took place in Iraq and the Middle East, and did not, as Moving Defendants would have this Court believe, take place in North Carolina.

---

[3] A true and correct copy of the *Nordan* Complaint is attached as Exhibit A to Blackwater's Complaint.

### 3.    *Convenience of the Parties*

Whether venue is more convenient for the parties is not, as Moving Defendants contend, related to whether it would be more convenient for the parties to litigate this dispute in one forum or another because of the location of documents or witnesses.  (Moving Defs. Mem. at 10).  Instead, the Third Circuit has defined this factor as relating to "the convenience of the parties *as indicated by their relative physical and financial condition*."  *Jumara*, 55 F.3d at 879 (emphasis added).  Fidelity is a member of the CNA Group, an insurance consortium with revenues of $9.8 billion in 2005.  (Exh. 11, A.M. Best 2005 Report on Fidelity and Casualty Company of New York; Exh. 12, CNA 2005 Annual Report at 2).  Liberty, part of the Liberty Mutual Group, had revenues of $3.9 billion in 2005.  (Exh. 13, Liberty Mutual Group 2005 Annual Report at 22).  Evanston is part of the Markel Corporation, whose 2005 operating revenues topped $2.2 billion.  (Exh. 14, A.M. Best 2005 Report on Evanston Insurance Company; Exh. 15, Markel Corporation 2005 Annual Report at 4).  As noted above, Westchester is part of the ACE Westchester Specialty Group, which is part of ACE Limited whose 2005 revenues exceeded $13 billion.  (Exh. 4; Exh. 16, ACE Limited 2005 Annual Report at 1). Clearly, Moving Defendants and Westchester cannot reasonably argue that they do not have the financial wherewithal to litigate this action in Philadelphia.

Even if, however, this factor did relate to the convenience of the parties as to discovery, which it does not, Moving Defendants concede that it may not be necessary to conduct discovery of witnesses and documents related to the *Nordan* Suit or to travel to North Carolina to resolve this action:  "*[I]f* discovery is necessary to resolve any of these issues, such discovery *will likely* focus on witnesses and documents that are in North Carolina."  (Moving Defs. Mem. at 8) (emphasis added).  Clearly, a transfer of venue cannot be based on guesses as to the location of documents or witnesses that the moving party is not even sure will be needed.

### 4.    *Convenience of the Witnesses*

Moving Defendants' conjecture that witnesses with knowledge of the underlying matter "will likely" be and "most certainly" are located in North Carolina (Moving Defs. Mem. at 9), is not supported by anything more than baseless contentions, is belied by the facts at issue in the *Nordan* Suit and, accordingly, does not support the transfer of this action.  As noted above, this factor is to be considered only to the extent that the moving party's witnesses may not be available for trial in a particular forum.  *Jumara*, 55 F.3d at 880; *Koken*, 2004 WL 2473432 at *3 (whether a "plaintiff's witnesses may experience inconvenience is a matter of consideration for the plaintiff, rather than for the defendant.").  An attorney's suggestion that it is probable or likely that witnesses are located in a particular forum is not entitled to any weight in the transfer analysis.  *Hawkins v. Nat'l Basketball Ass'n*, 295 F. Supp. 103, 106 (W.D. Pa. 1969).  Instead, "[t]o show the inconvenience to witnesses the moving party needs to provide the type of documents set forth in *Plum Tree*."  *Gonzalez v. Elec. Control Sys., Inc.*, Civ. A. No. 93-3107, 1993 WL 372217 *4 (E.D. Pa. Sept. 17, 1993).  This is because "[i]t is necessary to set out by way of affidavit the substance of the evidence of witnesses in order that its materiality can be considered."  *Hawkins*, 295 F. Supp. at 106.  Thus, "if a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be that application for transfer will be denied."  15 Wright, Miller & Cooper § 3851.

To support their contention that this district will be inconvenient for potential witnesses in this matter, Moving Defendants make no more than a blanket, equivocal assertion that because Blackwater is located in North Carolina, it is "likely" that all of the witnesses with relevant knowledge as to facts underlying the *Nordan* Suit are located there.  (Moving Defs. Mem. at 8, 9).  This contention fails for a number of reasons.  First, the Moving Defendants have not

10

submitted, as required by *Plum Tree*, a "list of the names and addresses of witnesses whom the moving party plans to call and affidavits showing the materiality of the matter to which these witnesses will testify." 488 F.2d at 757 n.2. Nor have they identified any of their own witnesses who would be inconvenienced or "offer[ed] any statements . . . of the business difficulties or personal hardships that might result from their having to defend against the suit in the district court where it was originally brought." *Id; see also* 15 Wright, Miller & Cooper § 3849. In fact, the only support Moving Defendants cite to is an equivocal assertion by their counsel that relevant witnesses "will likely" be in North Carolina, which is insufficient to support a motion to transfer venue. *Hawkins*, 295 F. Supp. at 106.

Furthermore, the record evidence to date in the *Nordan* Suit to date clearly establishes that none of the witnesses with relevant knowledge as to that suit are located in North Carolina. The two individual defendants, Jason McQuown and Thomas Powell, live in Virginia and Florida respectively. (*Nordan* Complaint at ¶¶ 8, 9). John Potter, an alleged Blackwater employee who the *Nordan* plaintiffs consider to be a "critical witness" to the events they allege, lives in Alaska. (*Nordan* Compl. at ¶ 21; Exh. 17, Motion for Shortening Time for Notice of Deposition at 1; Exh. 18, Deposition Notice for John Potter). Consequently, not only is Moving Defendants' assertion insufficient as a matter of law, it is belied by the facts of the *Nordan* Suit.

### 5.    *Location of Documents*

Similarly, Moving Defendants offer no "affidavits concerning the relative ease of access to sources of documentary evidence, and other materials where appropriate," *Plum Tree*, 488 F.2d at 757 n.2, as required to support their contention that relevant documentary evidence is located in North Carolina. As is the case with witnesses, general allegations that documents are located in a particular place are insufficient to support transfer pursuant § 1404(a). 15 Wright,

Miller & Cooper § 3853.  Moreover, given the advent of photocopying and the ease with which documents can be electronically transferred, the location of documents deserves little weight when considering a motion to transfer venue.  *Gonzalez,* 1993 WL 372217 at *4.

### C.    The Public Interest Factors Do Not Favor Transfer

#### 1.    *Practical Considerations That Could Make The Trial Easy, Expeditious, Or Inexpensive*

As between Elizabeth City, North Carolina, where the Moving Defendants seek to transfer this action, and Philadelphia, where the action is currently venued, it cannot be disputed that trying this case in Philadelphia will be easier, more expeditious, and inexpensive.  Elizabeth City is not close to any major airport, train line, highway, or other public transportation.  Moreover, as demonstrated above, the evidence clearly contradicts Moving Defendants' unsupported contention that relevant witnesses are located in North Carolina.  Similarly, Moving Defendants are hardpressed to argue that any of their witnesses, presumably located in New York City (Liberty) and the Chicago area (Fidelity and Evanston), would find it easier and more cost effective to travel to Elizabeth City for trial rather than Philadelphia, which has a major international airport, is on Amtrak's Northeast Corridor line, is on Interstate 95, and has ample hotel accommodations.

#### 2.    *The Relative Congestion And Burden Of The Courts In The Two Fora*

Moving Defendants next argue that transfer of this action is appropriate because there are more cases pending in the Eastern District of Pennsylvania than in the Eastern District of North Carolina.  (Moving Defs. Mem. at 10).  This factor, however, is concerned not with the respective size of the caseloads of the courts at issue, but with whether a "trial may be speedier in another court because of its less crowded docket."  15 Wright, Miller & Cooper § 3854.

According to the Federal Court Management Statistics, there was no material difference between the time from filing to trial in either court for 2005. (Exh. 19, Federal Court Management Statistics). In fact, according to those statistics, cases in the Eastern District of Pennsylvania proceeded to trial faster than those in the Eastern District of North Carolina. (*Id.*) (stating that it took an average of 20.8 months from the date of filing for a civil action to get to trial in the Eastern District of Pennsylvania and 23 months in the Eastern District of North Carolina). Thus, this factor weighs in favor of retaining the case in Philadelphia.

### 3. *The Interest Of The Community In Having Controversies Resolved Where They Arise*

The controversy between Blackwater and its insurers did not arise in North Carolina. The underlying facts causing Blackwater to seek coverage from its insurers took place in Iraq and the Middle East. The Moving Defendants' decisions regarding their insuring obligations to Blackwater undoubtedly took place somewhere other than North Carolina, as they are not located there and have not alleged to the contrary.

Thus, this action is wholly unlike this Court's decision in *Horace Mann Ins. Co.*, *supra*, granting a defendant's motion to transfer venue to the District of Connecticut. In that case there was no dispute that all of the underlying facts took place in Connecticut and all of the witnesses were located there. *Horace Mann Ins. Co.,* 2005 WL 639728 at *3. On the other hand, this case presents no such circumstances. As demonstrated above, the alleged facts underlying the *Nordan* Suit took place in Iraq or the Middle East, not North Carolina, and the three known witnesses who allegedly have knowledge relevant to that dispute live in Alaska, Florida, and Virginia respectively. Further, no Moving Defendant has alleged that it took any action in North Carolina with respect to Blackwater's claim for coverage. Save for the fact that Blackwater is

located in North Carolina, there is little to connect the dispute between Blackwater and the defendants with that state.

### 4.     *Familiarity With Applicable State Law*

Finally, Moving Defendants acknowledge, as they must, that this Court routinely applies the laws of various other jurisdictions in diversity matters.  (Moving Defs. Mem. at 12).  While Blackwater disputes that North Carolina law will apply to this matter, Moving Defendants also concede that North Carolina law may not apply:  "[a]lthough this Court is certainly equipped to interpret issues of North Carolina law, a North Carolina federal court is more familiar with North Carolina law, *to the extent that North Carolina law applies*."  (*Id.*) (emphasis added).  Arguments equivocal as that cannot serve as the basis for transferring this action to the Eastern District of North Carolina.

III.     <u>CONCLUSION</u>

Moving Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) must be denied. Moving Defendants have offered no evidence to support their motion, their assertions as to the location of witnesses and documents are refuted by evidence at issue in the *Nordan* Suit, and the forum to which they seek to transfer this action will create inconvenience for all of the parties and witnesses involved. Further, the events underlying this action did not take place in North Carolina and Moving Defendants acknowledge that North Carolina law may not apply to this dispute. Accordingly, Blackwater respectfully requests that this Court deny Moving Defendants' motion to transfer this action to the Eastern District of North Carolina.


                                        Respectfully submitted,


                                        s/ Harvey Bartle, IV
Dated: May 12, 2006                     Dennis J. Valenza
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        1701 Market Street
                                        Philadelphia, Pennsylvania 19103
                                        215.963.5000
                                        215.963.5001 (facsimile)

                                        Paul A. Zevnik
                                        Howard T. Weir
                                        Harvey Bartle, IV
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        1111 Pennsylvania Avenue, NW
                                        Washington, D.C. 20004
                                        202.739.3000
                                        202.739.3001 (facsimile)