EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; and BLACKWATER LODGE AND TRAINING CENTER, INC. a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a Georgia Corporation; EVANSTON INSURANCE COMPANY, an Illinois Corporation; FIDELITY AND CASUALTY COMPANY OF NEW YORK, a South Carolina Corporation; and LIBERTY INSURANCE UNDERWRITERS, a Massachusetts Corporation,<br><br>Defendants. | Civil Action No. 05 6020<br><br>Electronically Filed<br><br>Assigned to Judge Petrese B. Tucker<br><br>**DEFENDANTS' MEMORANDUM IN REPLY TO PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO TRANSFER VENUE** |

Defendants Evanston Insurance Company ("Evanston"), The Fidelity and Casualty Company of New York ("Fidelity") and Liberty International Underwriters ("Liberty") (the "Moving Defendants") submit this Memorandum in Reply to Plaintiffs' Opposition to their Motion to Transfer Venue. Moving Defendants seek to transfer this case, not to a court remote to Plaintiffs, but to the Eastern District of North Carolina – the District where the Plaintiffs (collectively "Blackwater") both reside and operate their businesses. If the case proceeds in the courthouse of the Northern Division, the hearings and the trial in the case will take place twenty-three miles from Blackwater's offices. (Exhibit 1, Mapquest Map.) Clearly, this North Carolina venue cannot be inconvenient to Blackwater. Equally important, Blackwater has provided no reason for this case to proceed in Pennsylvania other than its unexplained preference for this forum. North Carolina is the proper forum for the litigation, and Moving Defendants ask that

C786212

this Court transfer the case to the United States District Court for the Eastern District of North Carolina.

I.      **The Eastern District of North Carolina is Blackwater's Home**

Blackwater resides in and operates its business in Moyock, North Carolina, which is twenty-three miles from the Elizabeth City courthouse. (Exhibit 1, Mapquest Map.) This Court should reject Blackwater's argument that litigating in eastern North Carolina is somehow inconvenient. It may be inconvenient for the Washington, D.C. and Philadelphia lawyers whom Blackwater has chosen for this case, but it cannot be inconvenient to Blackwater itself.

When a plaintiff's choice of forum is neither the plaintiff's residence nor the place where the operative events occurred, the court should override the plaintiff's choice unless plaintiff can show a valid reason to support its choice. (17-111 Moore's Federal Practice – Civil § 111.3[c][iii]); *see also Tranor v. Brown*, 913 F. Supp. 388, 391 (E.D. Pa. 1996) ("Here, since plaintiffs, non-district residents, have no connection with this district, their choice of forum is not entitled to great weight."); *Burnstein v. Applied Extrusion Technologies, Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992) ("The forum chosen by the Plaintiff must reflect rational and legitimate concerns.")

Courts presume that the most convenient district for a party is the district of or near its residence. *Morales v. Navieras de Puerto Rico*, 713 F. Supp. 711, 713 (S.D.N.Y. 1989) ("Because plaintiff is a resident of Puerto Rico, he does not, nor can he, seriously argue that New York is a more convenient forum [for him] than Puerto Rico."). Moreover, when a defendant seeks transfer into the district in which the plaintiff resides, the court should disregard the plaintiff's claim that the plaintiff's "home district" is inconvenient. *See, e.g., Burnstein v.*

2

C786212

*Applied Extrusion Technologies, Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992) (no presumption that district was convenient for plaintiff when plaintiff brings suit in district other than its residence).

Although it is unclear from Blackwater's Memorandum, it appears that the people who are inconvenienced by travel to North Carolina are not Blackwater's employees but its lawyers. The court should not consider the convenience of counsel in determining the appropriate venue for a case. *See Solomon v. Continental American Life Insurance Co.*, 472 F.2d 1043, 1047 (3rd Cir. 1973); *Tranor v. Brown*, 913 F. Supp. 388, 391 n.8 (E.D. Pa. 1996); *Burnstein v. Applied Extrusion Technologies, Inc.*, 829 F. Supp. 106, 112 (D. Del. 1992); *Celbusky v. Delaware & Hudson Railway Company*, 590 F. Supp. 934, 936 (E.D. Pa. 1984); *Fitzgerald v. Central Gulf Steamship Corp.*, 292 F. Supp 847, 850 (E.D. Pa. 1968) (granting defendant's motion to transfer venue to plaintiff's residence where "every consideration bearing upon the convenience of the plaintiff, as distinguished from his counsel" required transfer).

To the extent that Blackwater claims that a transfer is less convenient for Moving Defendants, "common sense precludes denying a motion to transfer on the basis of inconvenience to parties who have joined the motion." *See Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 807 (D. Del. 1988).

Elizabeth City is no less convenient than Philadelphia for the witnesses identified by Blackwater in its Opposition. Blackwater refers to just three people who may have knowledge relevant to the issues in this case, and these witnesses reside in Virginia, Florida and Alaska. The Parties likely will depose these men where they live and not in Philadelphia or North Carolina, and it is unlikely that either this Court or the North Carolina court will have subpoena power over these witnesses such that the court could require them to appear at trial. If these witnesses choose to appear at trial, there are direct flights from major cities in Virginia and

Florida to both Norfolk (the major airport nearest Elizabeth City) and Philadelphia, and the gentleman from Alaska will have a long trip regardless of his destination on the east coast. Although Blackwater states that "there are no major highways or roads that lead to Elizabeth City" (Plaintiffs' Opposition at pp. 6-7; see also p. 12), the Norfolk airport is less than a one-hour drive from Elizabeth City on fine, paved, lightly-traveled roads. Moreover, a commute from the Philadelphia airport to downtown Philadelphia during rush hour could take equally as long, because there are no rush hours in Elizabeth City. There also are fine hotels and restaurants in Elizabeth City, just as there are in Philadelphia.

Finally, if this Court transfers the case to the Northern Division of the Eastern District of North Carolina, this case may proceed in Raleigh, North Carolina. The court could assign the case to any judge in the Eastern District of North Carolina. (*See* Exhibit 2, May 19, 2006 PACER Report which shows an assignment of a Northern Division case to each Judge in the Eastern District of North Carolina as of May 19, 2006.) Judge Terrence W. Boyle, the resident judge for the Northern Division, regularly holds court in Raleigh for Northern Division cases, and the other judges in the Eastern District of North Carolina hold court frequently or even exclusively in Raleigh. Therefore, Blackwater's parade of horribles about Elizabeth City not only misrepresents the facts, but it is premised upon only speculation about where this case will be tried. Moreover, regardless of whether the case is managed from Raleigh or Elizabeth City the convenience of all parties and witnesses can, and no doubt will be well-served.

## II. **Blackwater Misstates Defendant Westchester's Connections to Pennsylvania**

In an effort to justify its choice of a forum completely unrelated to this case, Blackwater makes several incorrect statements about Westchester Surplus Lines Insurance Company's connections to Pennsylvania. First, Blackwater states that "Westchester is a subsidiary of ACE

4

C786212

Westchester Group, a corporation located in Philadelphia." (Plaintiffs' Opposition at p. 5.) ACE Westchester Group is not a corporation, and Westchester is not owned by ACE Westchester Group. (Defendant Westchester Surplus Lines Insurance Company's Reply to Plaintiff's Memorandum in Opposition to Certain Defendants' Motion to Transfer ("Westchester's Reply") at pp. 3-5.) Further, the headquarters of an entity other than Westchester, regardless of its relationship to Westchester, has no bearing on this Court's analysis of the Motion. As Westchester stated in its Answer, in its Response to the Motion to Transfer and in its Reply, Westchester is incorporated in Georgia and has its principal place of business in Roswell, Georgia. (Westchester's Answer at ¶ 19; Westchester's Response at ¶ 2; Westchester's Reply at pp. 4-6.) Also, Westchester has stated that the street and mailing address in Philadelphia listed by the A.M. Best 2005 Report which is relied upon by Plaintiffs is incorrect. (Westchester's Reply at pp. 5.)

Second, Blackwater states that "the signature page of the policy issued by Westchester is signed by representatives of three insurers ... [one of which] is listed as being located in Philadelphia, Pennsylvania." (Plaintiffs' Opposition at pp. 5-6.) Blackwater fails to tell the Court, however, that at the top of this page appears the following language in all caps:

> THE ONLY SIGNATURES APPLICABLE TO THIS POLICY
> ARE THOSE REPRESENTING THE COMPANY NAMED ON
> THE FIRST PAGE OF THE DECLARATIONS.

(Ex. 3 to Plaintiffs' Opposition, Endorsement LD-5S23g.) The declarations page of the policy names only Westchester as the company insuring Blackwater, and Westchester is identified as an Atlanta, Georgia company. (*Id.*) Therefore, Blackwater's statements about this signature page are misleading and irrelevant. (*Id.*)

5

Third, Blackwater cites a policy endorsement which allows it to serve suits against Westchester by delivering them to the offices of ACE USA in Philadelphia. (Plaintiffs' Opposition at pp. 5-6.) This endorsement is irrelevant. Westchester is neither incorporated in nor has a principal place of business in Pennsylvania. (Westchester's Answer at ¶ 19; Westchester's Response at ¶ 2; Westchester's Reply at pp. 4-6.) More important, Westchester has stated that there is no relationship between Pennsylvania and this dispute and that there are no witnesses or documents related to the issuance of its policy in Pennsylvania. (Westchester's Response at ¶ 8; Westchester's Reply at pp. 6-7.) Moving Defendants similarly have stated that they are aware of no witnesses or relevant documents in Pennsylvania. (Motion to Transfer at ¶ 8.) Therefore, the Court should reject Blackwater's claim that there is a relationship between Pennsylvania and the issues in this case. (Plaintiffs' Opposition at p. 6.) Blackwater has provided no reason for this case to proceed here other than their unexplained preference for Pennsylvania. Based on all of the Section 1404(a) factors and the overwhelming connections of this case to North Carolina, the Court should transfer this case.

### III. Moving Defendants Have Met Their Burden to Prove that the Court Should Transfer the Case to North Carolina

Blackwater argues that Moving Defendants have not met their evidentiary burden to transfer the case. Blackwater is wrong. Moving Defendants have come forward with ample evidence establishing the connections of this case to North Carolina and the evidence to be found there. First, Blackwater resides in North Carolina and its principal place of business is in that state. (Blackwater's Complaint for Breach of Contract; Declaratory Judgment; and Other Relief ("Blackwater Complaint"), ¶¶ 17-18.) Blackwater has not denied that relevant documents and witnesses are located there. (Plaintiffs' Opposition, *passim*.) Second, the underlying Nordan Lawsuit is proceeding in North Carolina, and documents filed in and relating to that suit are in

North Carolina. (*Nordan v. Blackwater Security Consulting LLC, et al.*, 05-CVS-173 (hereinafter, the "Nordan Lawsuit") was filed on January 5, 2005 in Wake County Superior Court, North Carolina. A copy of the Complaint filed in the Nordan Lawsuit, hereinafter, the "Nordan Complaint," was attached to the Blackwater Complaint as Exhibit A.)[1]

Moving Defendants concede that additional work is necessary to identify all knowledgeable witnesses and relevant documents that undoubtedly are located in North Carolina. Moving Defendants do not have all of this information because the parties in the underlying tort litigation have not moved forward with discovery nor have the Parties in this case. More important, Moving Defendants have satisfied the other "private" and "public interest" factors supporting a transfer. Nonetheless, if this Court determines that Moving Defendants must come forward with additional evidence regarding the witnesses and documents located in North Carolina, Moving Defendants respectfully request the opportunity to conduct limited discovery on this issue prior to a ruling.

The other factors supporting a transfer to North Carolina are overwhelming. First, a primary factor is the location of the events giving rise to the dispute. *See Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 2005 U.S. Dist. LEXIS 4199, *4 (E.D. Pa. 2005); *Tranor v. Brown*, 913 F. Supp. 388, 391 (E.D. Pa. 1996); *Morales v. Navieras de Puerto Rico*, 713 F. Supp. 711, 712 (S.D.N.Y. 1989). Moving Defendants have shown, and Blackwater concedes, that events at

---

[1] Blackwater cites *Plum Tree, Inc. v. Stockment*, 488 F.2d 754 (3d. Cir. 1973), for the proposition that Moving Defendants must meet a high evidentiary threshold in order to justify transfer. (Plaintiffs' Opposition at p. 4, 10-11). Blackwater mischaracterizes the holding in *Plum Tree*. In *Plum Tree*, the Third Circuit addressed a transfer order made without any evidence "upon which [the district court] could base a finding that a transfer order was justified." *Plum Tree*, 488 F.2d at 756. The Court noted that the defendant filed its motion to transfer without *any* support, including failing to file a brief in support, any affidavits, any depositions, or any other document showing that a transfer would be appropriate. *Id.* at 755. Accordingly, the appellate court reversed the transfer order and noted various *examples* of evidence potentially relevant to a motion to transfer. *Id.* at 757 n.2. Blackwater's repeated assertion that Moving Defendants must provide, for example, a "list of the names and addresses of witnesses" is incorrect. Moving Defendants have provided more than adequate evidence demonstrating that a North Carolina court, and not a Pennsylvania court should hear this case.

7

issue in the underlying Nordan Suit took place in North Carolina. (Plaintiffs' Opposition at p. 6.) These events clearly are relevant to this insurance coverage dispute. Blackwater's arguments that other relevant events took place in Iraq does not diminish the clear connection to North Carolina, and the focus on events in Iraq certainly does not support the argument that the litigation should proceed in Pennsylvania, where *no events* giving rise to this dispute took place. Moreover, it must be that some of the high-level decision-making by Blackwater took place at Blackwater's principal offices, which are in North Carolina.

Second, the interests of justice and judicial economy clearly favor North Carolina, because the underlying Nordan Lawsuit is proceeding in North Carolina. *See Horace Mann v. Nationwide,* 2005 U.S. Dist. LEXIS 4199 at *4 (E.D. Pa. 2005); *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir. 1995). Courts strongly favor the litigation of related claims in the same tribunal because it facilitates efficient, economical and expeditious pre-trial proceedings and avoids duplicative litigation and inconsistent results. *National Super Spuds, Inc. v. New York Mercantile Exchange,* 425 F. Supp. 665 (S.D.N.Y. 1977). Moreover, a North Carolina court is in a better position to prevent duplication of the discovery in the Nordan Lawsuit regardless of whether the tort litigation remains in federal court or the court remands it to North Carolina state court. *Burnstein v. Applied Extrusion Technologies, Inc.,* 829 F. Supp. 106, 113 (D. Del. 1992); *Kirschner Bros. Oil, Inc. v. Pannill,* 697 F. Supp. 804, 808 (D. Del. 1988).

Third, the Court should consider the state law that will apply to the issues in the case and the familiarity of the court with that law. *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.,* 2005 U.S. Dist. LEXIS 4199, *4. Despite Blackwater's arguments, North Carolina law will apply absent contrary evidence revealed through discovery. (Defendants' Memorandum in Support of their Motion to Transfer, pp. 11-12.)

In addition, Moving Defendants prefer a North Carolina venue and North Carolina has an interest in this matter because of the involvement of two of its corporations.

## IV. Conclusion

Taken to its logical extension, Blackwater's view is that it could have filed this lawsuit in any jurisdiction that meets their standard for accessibility. Clearly, this is incorrect. This is a coverage action being brought by a North Carolina corporation headquartered in North Carolina for liability policies which Blackwater received in North Carolina. The underlying North Carolina tort litigation against Blackwater seeks damages for wrongful conduct, some of which took place in North Carolina and will be supported by North Carolina witnesses and documents. Moving Defendants have made clear that the Eastern District of Pennsylvania has absolutely no connection to this action and that Blackwater's statements regarding Westchester's connections to Pennsylvania are incorrect. For these reasons, the Court should grant the motion and transfer the case to the Eastern District of North Carolina.

WHEREFORE, the Moving Defendants respectfully request that this Court enter an order transferring this action to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a). In the alternative, Moving Defendants request leave of court to conduct limited discovery on the location of documents and witnesses related to this case.

This the _____ day of _____, 2006.

| | |
|---|---|
| Respectfully submitted, | ROSS, DIXON & BELL, LLP |
| LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO | /s/ Paul C. Vitrano<br>William H. Briggs, Jr.<br>Paul C. Vitrano (Bar No. 76759)<br>Erik M. Pritchard |
| /s/ Francis P. Burns III<br>Francis P. Burns III (I.D. No. 27537)<br>190 North Independence Mall West, Suite 500<br>6th & Race Streets<br>Philadelphia, PA 19106<br>215-627-0303 (ext. 7907)<br>215-351-1900 (fax)<br>fburns@lavin-law.com | 2001 K Street, NW<br>Washington, DC 20006-1040<br>(202)662-2000 (telephone)<br>(202) 662-2190 (facsimile)<br>*Attorneys for The Fidelity and Casualty Company of New York* |
| -and- | POST & SCHELL, P.C. |
| HELMS MULLISS & WICKER, PLLC<br>L. D. Simmons II<br>N.C. State Bar No. 12554<br>Brian A. Kahn<br>N.C. State Bar No. 29291<br>201 North Tryon Street<br>Charlotte, North Carolina 28202.<br>Telephone: (704) 343-2000<br>Facsimile: (704) 444.8773<br>brian.kahn@hmw.com<br>ld.simmons@hmw.com<br>*Attorneys for Evanston Insurance Company* | /s/ John C. Sullivan<br>John C. Sullivan<br>Attorney ID # 32262<br>Signature Validation Code: JCS7648<br>Stacey Z. Jumper<br>Attorney ID # 88537<br>Signature Validation Code: SZJ5395<br>Four Penn Center<br>1600 John F. Kennedy Boulevard<br>Philadelphia, PA 19103-2808<br>(215) 587-1000<br>*Attorneys for Liberty International Underwriters improperly named as Liberty Insurance Underwriters* |

10

C786212