IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WESTCHESTER SURPLUS LINES INSURANCE CO., et al., <br><br> Defendants. | CIVIL ACTION <br><br><br> NO. 05-6020 (PBT) <br><br><br><br> JURY TRIAL DEMANDED |

**ORDER**

AND NOW, this _____ day of _____, 2007, upon consideration of Plaintiffs' Motion for Partial Summary Judgment On The Duty To Defend Against Continental Insurance Company ("CNA"), and any response thereto, it is hereby ORDERED that said Motion is GRANTED, and CNA has a duty to defend the Plaintiffs in connection with the defense of the action captioned *Nordan v. Blackwater Security Consulting LLC, et al.*, 05 CVS 000173.

_____
THE HONORABLE PETRESE B. TUCKER

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE CO., et al.,<br><br>        Defendants. | CIVIL ACTION<br><br><br><br>NO. 05-6020 (PBT)<br><br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE DUTY TO DEFEND AGAINST CONTINENTAL INSURANCE COMPANY**

Plaintiffs Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. (collectively, "Blackwater"), by and through their attorneys, respectfully move for partial summary judgment on the duty to defend pursuant to Federal Rule of Civil Procedure 56 in connection with the insurance policy, International Voluntary Workers Compensation and Employers Liability Policy No. DBA 22 390 1731, that Continental Insurance Company ("CNA") issued to Blackwater, and seek a declaration that there is a duty to defend the underlying action captioned *Nordan v. Blackwater Security Consulting LLC, et al.*, 05 CVS 000173. In support of this motion, Blackwater relies upon and incorporates the attached Memorandum of Law and Declaration of Andrew G. Howell in support thereof.

WHEREFORE, Plaintiffs Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. respectfully request that this Court enter the accompanying proposed Order pursuant to Fed. R. Civ. P. 56.

                                              Respectfully submitted,

                                              Dennis J. Valenza
                                              Carol C. Carty
                                              Morgan, Lewis & Bockius LLP
                                              1701 Market Street
                                              Philadelphia, PA 19103-2921
                                              P: 215.963.5000

                                              Paul A. Zevnik
                                              Howard T. Weir III
                                              Morgan, Lewis & Bockius LLP
                                              1111 Pennsylvania Avenue, NW
                                              Washington, DC 20004
                                              P: 202.739.3000

Dated: July 11, 2007                        Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WESTCHESTER SURPLUS LINES INSURANCE CO., et al., <br><br> Defendants. | CIVIL ACTION <br><br><br><br> NO. 05-6020 (PBT) <br><br><br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND
AGAINST CONTINENTAL INSURANCE COMPANY**

Dennis J. Valenza
Carol C. Carty
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
P: 215.963.5000
F: 215.963.5001

Paul A. Zevnik
Howard T. Weir III
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
P: 202.739.3000
F: 202.739.3001

Dated: July 11, 2007            Attorneys for Plaintiffs

Plaintiffs Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. (collectively "Blackwater") respectfully submit this memorandum of law in support of their motion for partial summary judgment against Continental Insurance Company, formerly known as Fidelity & Casualty Company of New York ("CNA") for a declaration that CNA is obligated, pursuant to the insurance policy it issued that provides coverage to Blackwater, to reimburse Blackwater for the costs it has paid and incurred and will pay and incur in the defense of the underlying action captioned *Nordan v. Blackwater Security Consulting LLC, et al.*, 05 CVS 000173, originally filed in the Superior Court of North Carolina, Wake County, and related litigation (the "*Nordan* Complaint"). The determination of CNA's obligation to defend Blackwater from the allegations of the *Nordan* Complaint requires only a comparison of the allegations of that complaint to the provisions of CNA's insurance policy to determine whether a "possibility" of coverage exists. If such a possibility exists, then CNA is obligated to defend Blackwater. A comparison of these two documents plainly shows that the allegations in the complaint trigger CNA's duty to defend under the provisions of its policy. And, there is no exclusion to CNA's insurance policy that bars coverage. Accordingly, Blackwater respectfully requests that this Court grant its motion.

I.   **STATEMENT OF FACTS**

    A.   **The Insured.**

Blackwater provides contract security and professional military assistance to the United States for its military operations presently being conducted in Iraq and elsewhere. *Declaration of Andrew G. Howell* ("Howell Decl.") ¶ 2.

1

### B. CNA's Policy Provides Employers' Liability Insurance Coverage To Blackwater For Bodily Injury.

CNA issued International Voluntary Workers Compensation and Employers Liability Policy No. DBA 22 390 1731 to Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. for the policy period March 18, 2004 to June 18, 2004 (the "CNA Policy"). (Howell Decl. ¶ 4, Exh. A, Endorsement 2). The CNA Policy has two separate coverage parts. The first part provides coverage for "Workers Compensation Insurance" such as the Defense Base Act, 42 U.S.C. §§ 1651-54. (Howell Decl., Exh. A, WP 0010 0201 at 1-5, 9). The second coverage part provides "Employers' Liability Insurance." (Howell Decl., Exh. A, WP 0010 0201 at 5-8).

> The "Workers Compensation Insurance" part of the CNA Policy provides:
>
> [CNA] will voluntarily pay, on [Blackwater's] behalf, an amount equal to, but not in excess of, the benefits you would be required to pay if you and the "employees" described in the Declarations were subject to the Workers' Compensation Law designated in the Declarations.

(Howell Decl., Exh. A, WP 0010 201 at 2). The Declarations to the CNA Policy provide that the "Workers Compensation Law" applicable to all "employees" is the Defense Base Act. (Howell Decl., Exh. A, WP DEC 0010 02 99).

The Employers' Liability Insurance part of the CNA Policy provides:

### A. HOW THIS INSURANCE APPLIES

This Employers' Liability insurance applies to bodily injury by accident or bodily injury by disease, as set forth below. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured "employee's" employment by you.

2. The employment must be necessary or incidental to your work in a "state," territory, or country listed in the Declarations.

3. Bodily injury by accident must occur during the policy period.

\* \* \*

**B. WE WILL PAY**

[CNA] will pay all sums you legally must pay as damages because of bodily injury to your "employees," provided the bodily injury is covered by the Employers' Liability Insurance, and subject to the applicable limits of limits shown in the Declarations. The damages [CNA] will pay, where recovery is permitted by law, include damages:

2.  For care and loss of services;

\* \* \*

4.  Because of bodily injury to your "employee" that arises out of and in the course of employment, claimed against you in your capacity other than as an employer.

\* \* \*

**D. WE WILL DEFEND**

[CNA has] *the right and duty to defend, at [CNA's] expense,* any "claim" or "suit" against [the insured] for damages payable [under the Employers' Liability Insurance coverage part]. [CNA has] the right to investigate and settle these "claims" and "suits." [CNA has] no duty to defend a "claim" or "suit" that is not covered by this insurance. [CNA has] no duty to defend or continue defending after [it has] paid [its] applicable limit of liability under this insurance.

(Howell Decl., Exh. A, WP 0010 0201 at 5-6, Part Two ¶¶ A, B, D) (emphasis added).

For purposes of both coverage parts of the CNA Policy an "employee" means

> anyone employed by the Named Insured including any volunteer worker. At [the Named Insured's] option, "employee" may include individuals who are independent contractors with whom you have a written contract in which you agree to provide them benefits of voluntary workers' compensation.

(Howell Decl., Exh. A, WP 0010 0201 at 10) (emphasis added). A "[s]uit includes, but is not limited to a civil proceeding in a court of law in which damages to which this insurance applies is alleged" and also includes arbitration and alternative dispute resolution. (Howell Decl., Exh. A, WP 0010 0201 at 11). CNA's limits of liability under the Employers' Liability coverage part of the CNA Policy are $1 million per accident with an aggregate limit of $1 million. (Howell

3

Decl., Exh. A, WP DEC 0010 02 99). CNA's defense obligation under this coverage part is supplemental and, thus, does not erode the CNA Policy's limits of liability. (Howell Decl., Exh. A., WP 0010 0201 at 6, Part Two ¶ D).

### C. The *Nordan* Complaint Alleges Facts That Trigger CNA's Coverage Obligations Under The Policy.

On January 5, 2005, Richard P. Nordan, as Ancillary Administrator for the separate estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (collectively "decedents"), filed a complaint captioned *Nordan v. Blackwater Security Consulting LLC, et al.*, Case No. 05 CVS 000173, in the Superior Court of North Carolina, Wake County (the "*Nordan* Complaint") against Blackwater, and two of Blackwater's employees, Jason McQuown and Thomas Powell. (Howell Decl., Exh. B). The *Nordan* Complaint seeks damages for wrongful death arising from the murders of decedents on or about March 31, 2004 by Iraqi insurgents in the city of Fallujah, while decedents were temporarily working in support of Blackwater's contract serving the United States military effort in Iraq. (*Id.* at ¶¶ 12, 30-31). The *Nordan* Complaint also seeks to rescind the agreements entered into between decedents and Blackwater. (*Id.* at ¶¶ 80-96). The *Nordan* Complaint further alleges that the decedents "were hired by Blackwater as independent contractors, and were at no relevant time employees of Blackwater." (*Id.* at ¶ 31).

Specifically, Richard Nordan alleges that "[a]s a proximate result of [Blackwater's, McQuown's and Powell's] intentional conduct, willful and wanton conduct, and/or negligence, as alleged herein, [decedents] were killed March 31, 2004." (*Id.* at ¶ 71). In addition, the *Nordan* Complaint alleges that the decedents were "providers of love, support, comfort, guidance, advice and companionship" to their respective survivors, including spouses, children, and other family members. (*Id.* at ¶¶ 72-75). And, the *Nordan* Complaint seeks damages

4

because, "[a]s a proximate result of [Blackwater's alleged wrongful conduct] and the deaths of [decedents], [the decedents' survivors], and each of them, sustained the loss of society, companionship, comfort, guidance, kindly offerings, advice, services, protection, care and assistance, as well as the net income of decedents, and each of them." (*Id.* at ¶ 76).

Among other alleged wrongful conduct, the *Nordan* Complaint alleges that Blackwater, Mr. McQuown and Mr. Powell, failed to provide decedents with "certain protections, tools, and information to allow [decedents] to do their jobs" in Iraq, and that those failures resulted in the murder of decedents. (*Id.* at ¶ 13). These alleged failures include: (1) not providing the decedents with the proper weapons and not allowing them to test fire the weapons they were given; (2) not giving the requisite notice before the decedents were sent on a mission; (3) not conducting a "Risk Assessment" prior to the mission; (4) not giving the decedents the opportunity to review the mission routes; (5) not allowing decedents to review intelligence prior to the mission; (6) not giving the decedents 21 days to acclimate to the region; (7) not providing armored vehicles; and (8) not providing the required number of team members for the security mission. (*Id.* at ¶¶ 13, 15, 34, 37-39, 51-53, 55, 57). With regard to decedent Helvenston, the *Nordan* Complaint alleges that he was sent on the mission in Iraq despite the fact that he had taken ill after arriving in the area and was not physically able to perform that task. (*Id.* at ¶¶ 43-48). It is these alleged failures for which the *Nordan* Complaint seeks to hold Blackwater, McQuown, and Powell liable for the wrongful death of decedents and seeks to rescind the agreements that the decedents entered into with Blackwater. (*Id.* at ¶¶ 68-96).

Blackwater initially removed the *Nordan* Complaint to the United States District Court for the Eastern District of North Carolina and moved to dismiss. *Nordan v. Blackwater Security Consulting LLC*, 382 F. Supp. 2d 801 (E.D.N.C. 2005). The district court remanded the action

and denied as moot Blackwater's motion to dismiss. *See id.* The United States Court of Appeals for the Fourth Circuit denied Blackwater's appeal of that decision and the United States Supreme Court denied Blackwater's petition for certiorari. *In re Blackwater Security Consulting LLC*, 460 F.3d 576 (4th Cir. 2006), *cert. denied*, 75 U.S.L.W. 3457 (U.S. Feb. 26, 2007) (No. 06-857).

After the Fourth Circuit's denial of Blackwater's appeal, Blackwater filed a demand for arbitration of Richard Nordan's claims with the American Arbitration Association pursuant to the agreements entered into by Blackwater and the decedents. (Howell Decl. ¶ 6, Exh. C). Blackwater thereafter filed a petition to compel arbitration, which was granted by the United States District Court for the Eastern District of North Carolina on April 20, 2007. *Blackwater Security Consulting LLC v. Nordan*, No. 06-cv-00049-F (E.D.N.C.) ("Petition for Order Directing Arbitration Pursuant to the Federal Arbitration Act" filed Dec. 20, 2006); *Blackwater Security Consulting LLC v. Nordan*, No. 06-cv-00049-F (E.D.N.C.) (Order Granting Blackwater's Petition to Compel Arbitration filed Apr. 20, 2007).[1] In response to that order, Richard Nordan filed a second lawsuit in the Superior Court, Wake County, North Carolina seeking declaratory relief, which Blackwater removed and the district court dismissed on June 11, 2007. *Nordan v. Blackwater Lodge & Training Center, Inc.*, No. 07-cv-00175 (E.D.N.C.) ("Notice of Removal" filed on May 14, 2007); *Nordan v. Blackwater Lodge & Training Center, Inc.*, No. 07-cv-00175 (E.D.N.C.) (Order Dismissing Action filed June 11, 2007).[2] Richard Nordan also filed a motion for reconsideration of the district court's order compelling arbitration, which the district court denied on May 11, 2007. *Blackwater Security Consulting LLC v.*

---

[1] For the convenience of the Court, true and correct copies of these documents are attached as Exhibits 1 and 2 to the Certification of Dennis J. Valenza ("Valenza Cert.") filed in support of Blackwater's motion for partial summary judgment against Evanston Insurance Company, filed contemporaneously herewith.

[2] True and correct copies of these documents are attached to the Valenza Cert. as Exhibits 3 and 4.

*Nordan*, No. 06-cv-00049-F (E.D.N.C.) (Order Denying Motion for Reconsideration filed May 11, 2007).[3] Richard Nordan filed an appeal of that decision, which is presently before the Fourth Circuit. *Blackwater Security Consulting LLC v. Nordan*, No. 06-cv-00049-F (E.D.N.C.) (Notice of Appeal).[4] At present, the arbitration is moving apace, with the parties having completed their initial submissions, and the arbitration panel in the process of completing its preliminary hearing. Blackwater expects that the arbitration panel will schedule a final hearing shortly.

### D. CNA Has Agreed To Provide Insurance Coverage To Blackwater Under The Workers' Compensation Coverage Part Of The CNA Policy.

In addition to filing the *Nordan* Complaint, representatives for the decedents also applied for benefits under the Defense Base Act. (Howell Decl. ¶ 6). And, all four decedents' survivors are receiving compensation under the Defense Base Act through the coverage provided by the "Workers Compensation Insurance" coverage part of the CNA Policy. (Howell Decl. ¶ 7, Exhs. D-G). CNA has provided such coverage without reserving its rights to deny coverage under that coverage part of the CNA Policy.

### E. CNA's Wrongful Refusal To Defend Blackwater For The *Nordan* Complaint Under The Employers Liability Coverage Part Of The CNA Policy.

On January 6, 2005, Blackwater notified its insurance brokers of the *Nordan* Complaint and instructed them to tender the *Nordan* Complaint for coverage to Blackwater's insurers, including CNA. (Howell Decl. ¶ 8, Exh. H, Jan. 6, 2005 Letter from S. Capace). On February 25, 2005, CNA sent a letter to Blackwater acknowledging receipt of Blackwater's tender of the *Nordan* Complaint. (Howell Decl. ¶ 9, Exh. I, Feb. 25, 2005 Letter from CNA to S. Capace). In that letter, CNA reserved its rights to later deny coverage and informed Blackwater that it may

---

[3] A true and correct copy of this document is attached to the Valenza Cert. as Exhibit 5.

[4] A true and correct copy of this document is attached to the Valenza Cert. as Exhibit 6.

provide Blackwater with a defense for the *Nordan* lawsuit under the Employers' Liability coverage part of the CNA Policy. Specifically, CNA stated that it was reserving its rights because it had "serious concerns" that the Employers' Liability coverage part does not provide coverage for the *Nordan* Complaint. (Howell Decl., Exh. I at 3). According to CNA, this is because the decedents may not fall within the definition of "employees" under the CNA Policy. (Howell Decl., Exh. I at 2-3). To date, however, the defense provided by CNA has been limited to reimbursing Blackwater for the fees it paid and incurred for its local counsel in North Carolina. (Howell Decl. ¶ 10).

In a letter dated April 4, 2005, counsel for CNA further clarified CNA's February 25, 2005 reservation of rights letter. (Howell Decl. ¶ 11, Exh. J, Letter from W. Briggs to K. Flicker). In the April 4 letter, CNA's counsel wrote:

> On behalf of [CNA], this will clarify the following:
>
> 1. Nothing in the February 25 reservation of rights letter addresses or is intended to address the Defense Base Act ("DBA") coverage found in Part One — Workers Compensation Insurance of the [CNA] Policy. *To the contrary, based upon the information that [CNA] presently has, [CNA] agrees with Blackwater that the [CNA] Policy provides DBA coverage to Blackwater* and that the DBA coverage provided by the [CNA] Policy should be the exclusive remedy for the claims plaintiffs' have made in the *Nordan* litigation.
>
> 2. *[CNA] has not reserved its rights under the DBA coverage provided by the [CNA] Policy.*
>
> 3. The February 25 reservation of rights letter only addresses coverage issues related to Part Two — Employers Liability Insurance under the [CNA] Policy.
>
> 4. To the extent that the February 25 reservation of rights letter relies upon the allegations of the *Nordan* complaint, [CNA] has made no independent investigation of those allegations and, therefore, nothing in the February 25 reservation of rights letter should be interpreted as making any findings relating to the validity of the allegations of the *Nordan* complaint.

(Howell Decl., Exh. J at 1-2) (emphasis added).

8

In addition to fees for local counsel in North Carolina, Blackwater has incurred significant costs defending the *Nordan* allegations, including costs related to, *inter alia*, (1) removing the *Nordan* Complaint to the United States District Court for the Eastern District of North Carolina; (2) appealing to the United States Court of Appeals for the Fourth Circuit the district court's decision to remand the *Nordan* Complaint to the North Carolina Superior Court and denial of Blackwater's motion to dismiss; (3) filing a petition for certiorari with the United States Supreme Court of the Fourth Circuit's denial of Blackwater's appeal of the district court's decision; (4) petitioning to compel arbitration; (5) defending against Richard Nordan's second complaint in the North Carolina Superior Court; and (6) conducting the arbitration. (Howell Decl. ¶ 12). As the litigation and arbitration with Richard Nordan is ongoing, Blackwater continues to incur significant costs for those proceedings, and CNA has (1) only reimbursed a portion of the defense costs Blackwater has paid and incurred defending the *Nordan* Complaint and related litigation, and (2) CNA has reserved its rights to later deny that coverage under the Employers' Liability coverage part of the CNA Policy. Thus, there is a justiciable controversy between CNA and Blackwater over CNA's obligation to reimburse Blackwater for its defense from Richard Nordan's claims.

## II. ARGUMENT

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If the movant meets this burden, then the opponent must counter with specific facts which demonstrate that there exists a genuine issue for trial. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). If the evidence submitted by the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may

9

be granted." *Couden v. Duffy*, 446 F.3d 483, 503 (3d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal citations omitted)).

Here, CNA cannot have it both ways. It cannot, as it has, agree that the decedents fall within its delimitation of "employees" with regard to the Workers' Compensation Insurance part of the CNA Policy and provide coverage without reserving its rights under that portion of the policy, and then reserve its rights to deny coverage under the Employers Liability part of that same policy because the decedents are not "employees" for the purposes of that portion of the policy. The definition of "employee" under both coverage parts of the CNA Policy is the same. As a result, because CNA has agreed without reserving its rights that the decedents qualify as "employees," as that term is defined under the CNA Policy, there is no genuine issue of any material fact that Blackwater is entitled to a declaration that CNA has an obligation under the Employers' Liability portion of the CNA Policy to reimburse Blackwater for the costs it has incurred, and will incur, defending Richard Nordan's claims.

### A. CNA Is Obligated To Reimburse Blackwater's Defense Costs For The *Nordan* Complaint Under The Employers' Liability Coverage Part.

An insurer's duty to defend is much broader than its duty to indemnify. *General Accident Ins. Co. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1993); *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986).[5] It is well-established that an insurer's duty to defend is to be decided as a matter of law by comparing the factual allegations of the complaint to the

---

[5] CNA may assert that North Carolina or Illinois law applies to the interpretation of the CNA Policy. There is, however, no conflict between North Carolina and Illinois law, and the law of Pennsylvania on the determination of an insurer's duty to defend. Accordingly, because there is no conflict, this Court should apply Pennsylvania law. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994) ("Where there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a 'false conflict' and the court need not decide the choice of law issue.")

terms of the policy. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006); *Outboard Marine Corp.*, 607 N.E.2d at 1222 ("In order to determine whether the insurer's duty to defend has arisen, the court must compare the allegations of the underlying complaint to the policy language."); *Waste Mgmt. of Carolinas, Inc.*, 340 S.E.2d at 377 (If the pleadings "state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable."). As a result, no discovery is necessary to determine whether the allegations of a complaint trigger an insurer's duty to defend its insured in the first instance. *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 606 (Pa. Super. 1997).

In determining whether an insurer has a duty to defend its insured, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured. *Unionamerica Ins. Co., Ltd. v. J.B. Johnson*, 806 A.2d 431, 433-34 (Pa. Super. 2002). Additionally, "where a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer." *Erie Ins. Exchange v. Muff*, 851 A.2d 919, 927 (Pa. Super. 2004). As aptly put by the Pennsylvania Superior Court:

> *The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint.* It is not the actual details of the injury, but the *nature of the claim* which determines whether the insurer is required to defend. The duty to defend is limited to only those claims covered by the policy. *The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy.*
>
> Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true. It does not matter if in reality the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.

11

*Id.* at 926 (quoting *D'Auria v. Zurich Insurance Co.*, 507 A.2d 857, 859 (Pa. Super. 1986)) (emphasis in original). Thus, if the allegations of the complaint allege an injury which raises the *potential for coverage* under the policy, then an insurer must defend its insured. *Erie Ins. Exch. v. Fidler*, 808 A.2d 587, 590 (Pa. Super. 2002); *see also American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 75 (3d Cir. 1985). And, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim. *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987). In light of the broad interpretation given to an insurer's duty to defend, "[a]n insurer who refuses to defend its insured from the outset does so at its own peril, because the duty to defend remains with an insurer until it is clear the [underlying] claim has been narrowed to one beyond the terms of the policy." *Board of Public Educ. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 709 A.2d 910, 913 (Pa. Super. 1998) (internal citations omitted). Thus, CNA must reimburse Blackwater for its defense of the entirety of *Nordan* Complaint, even if some of the allegations in the complaint fall within the terms of its Employers' Liability coverage part and others do not.

The allegations of the *Nordan* Complaint clearly raise the potential for coverage under the terms of the Employers' Liability coverage part of the CNA Policy, thus triggering CNA's obligation to defend Blackwater. That coverage part requires CNA "to defend [Blackwater], at [CNA's] expense, any . . . 'suit' against [Blackwater] for damages payable under [the Employers' Liability coverage part]" for bodily injury arising in the course of an "employee's" employment by Blackwater, which includes damages for "care and loss of services." The *Nordan* Complaint alleges that the negligent actions and/or inactions of Blackwater, and Mr. McQuown and Mr. Powell on Blackwater's behalf, resulted in the deaths of decedents who were

12

working for Blackwater at the time of their deaths. And, Richard Nordan assert claims for "care and loss of services." In addition, CNA has admitted that, for purposes of its policy, the decedents qualify as "employees" of Blackwater, and that definition includes "independent contractors." Therefore, CNA's defense obligation under the Employers' Liability coverage part is triggered.

### B. The CNA Policy Contains No Exclusion That Bars Coverage.

Blackwater expects that CNA will claim that it has no obligation to provide a defense to Blackwater from the allegations of the *Nordan* Complaint and related litigation under the Employers' Liability coverage part of the CNA Policy because the decedents are not "employees" as that term is defined in the CNA Policy. (Howell Decl., Exh. I at 2-3). Because, as discussed above, CNA has already admitted that the decedents do qualify as "employees," as defined under the CNA Policy, for purposes of the Workers Compensation Insurance coverage part of the CNA Policy, and the definition of "employees" applies with equal force to the Employers Liability coverage part, this claim has no merit. Again, CNA cannot have it both ways.

### III. CONCLUSION

The *Nordan* Complaint raises the potential for coverage under the Employers' Liability coverage part of the CNA Policy and, thus, CNA has an obligation under its policy to reimburse the defense costs that Blackwater has paid and incurred defending that litigation. And, CNA has admitted that the decedents fit within the CNA Policy's definition of "employees." Thus, the CNA Policy contains no exclusion prohibiting such coverage. Accordingly, there is the potential for coverage and CNA's defense obligation has been triggered. Blackwater's motion for a declaration that CNA has a duty to defend Blackwater in the *Nordan* litigation should be granted.

Respectfully submitted,

_____
Dennis J. Valenza
Carol C. Carty
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
P: 215.963.5000
F: 215.963.5001

Paul A. Zevnik
Howard T. Weir III
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
P: 202.739.3000
F: 202.739.3001

Dated: July 11, 2007                Attorneys for Plaintiffs

14

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon all counsel of record on July 11, 2007, by electronic filing and/or by mailing, first-class, postage prepaid, a true and correct copy thereof to the following:

Francis J. Deasey, Esq.
Deasey, Mahoney & Bender, Ltd.
1800 John F. Kennedy Blvd.
Suite 1300
Philadelphia, PA 19103-2978

Francis P. Burns, III, Esq.
Lavin O'Neil Ricci Cedrone & Disipio
190 North Independence Mall West
6th & Race Streets, Suite 500
Philadelphia, PA 19106

John C. Sullivan, Esq.
Post & Schell PC
1600 John F. Kennedy Blvd
Four Penn Center
Philadelphia, PA 19103-2808

Ronald P. Schiller, Esq.
DLA Piper Rudnick Gray Cary LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA 19103

L.D. Simmons, II, Esq.
Helms Mulliss & Wicker PLLC
201 North Tryon Street
Charlotte, NC 28202

Thomas T. Locke, Esq.
Seyfarth Shaw LLP
815 Connecticut Ave NW
Washington, DC 20006-4004

_____
Carol C. Carty