IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WESTCHESTER SURPLUS LINES INSURANCE CO., et al., <br><br> Defendants. | CIVIL ACTION <br><br><br><br> NO. 05-6020 (PBT) <br><br><br><br> JURY TRIAL DEMANDED |

## ORDER

AND NOW, this _____ day of _____, 2007, upon consideration of Plaintiffs' Motion for Partial Summary Judgment On The Duty To Defend Against Westchester Surplus Lines Insurance Company ("ACE"), and any response thereto, it is hereby ORDERED that said Motion is GRANTED, and ACE has a duty to defend Plaintiffs in connection with the defense of the action captioned *Nordan v. Blackwater Security Consulting LLC, et al.*, 05 CVS 000173.

THE HONORABLE PETRESE B. TUCKER

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, et al., | CIVIL ACTION |
| Plaintiffs, | |
| v. | NO. 05-6020 (PBT) |
| WESTCHESTER SURPLUS LINES INSURANCE CO., et al., | |
| Defendants. | JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE DUTY TO DEFEND AGAINST
WESTCHESTER SURPLUS LINES INSURANCE COMPANY**

Plaintiffs Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. (collectively, "Blackwater"), by and through their attorneys, respectfully move for partial summary judgment on the duty to defend pursuant to Federal Rule of Civil Procedure 56 in connection with the insurance policy, Commercial General Liability Policy No. GLW 778197, that Westchester Surplus Lines Insurance Company ("ACE") issued to Blackwater Lodge and Training Center, Inc., and seek a declaration that there is a duty to defend the underlying action captioned *Nordan v. Blackwater Security Consulting LLC, et al.*, 05 CVS 000173. In support of this motion, Blackwater relies upon and incorporates the attached Memorandum of Law and Declaration of Andrew G. Howell in support thereof.

WHEREFORE, Plaintiffs Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. respectfully request that this Court enter the accompanying proposed Order pursuant to Fed. R. Civ. P. 56.

                                    Respectfully submitted,

                                    Dennis J. Valenza
                                    Carol C. Carty
                                    Morgan, Lewis & Bockius LLP
                                    1701 Market Street
                                    Philadelphia, PA 19103-2921
                                    P: 215.963.5000

                                    Paul A. Zevnik
                                    Howard T. Weir III
                                    Morgan, Lewis & Bockius LLP
                                    1111 Pennsylvania Avenue, NW
                                    Washington, DC 20004
                                    P: 202.739.3000

Dated: July 11, 2007                      Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, et al.,<br><br>          Plaintiffs,<br><br>          v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE CO., et al.,<br><br>          Defendants. | CIVIL ACTION<br><br>NO. 05-6020 (PBT)<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
## MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND
## AGAINST WESTCHESTER SURPLUS LINES INSURANCE COMPANY

                                              Dennis J. Valenza
                                              Carol C. Carty
                                              Morgan, Lewis & Bockius LLP
                                              1701 Market Street
                                              Philadelphia, PA 19103-2921
                                              P: 215.963.5000
                                              F: 215.963.5001

                                              Paul A. Zevnik
                                              Howard T. Weir III
                                              Morgan, Lewis & Bockius LLP
                                              1111 Pennsylvania Avenue, NW
                                              Washington, DC 20004
                                              P: 202.739.3000
                                              F: 202.739.3001

Dated: July 11, 2007                         Attorneys for Plaintiffs

Plaintiffs Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. (collectively "Blackwater") respectfully submit this memorandum of law in support of their motion for partial summary judgment against Westchester Surplus Lines Insurance Company ("ACE") for an Order that ACE is obligated, pursuant to the insurance policy it issued that provides coverage to Blackwater, to reimburse Blackwater for the costs it has paid and incurred, and will pay and incur in the defense of the underlying action captioned *Nordan v. Blackwater Security Consulting LLC, et al.*, 05 CVS 000173, originally filed in the Superior Court of North Carolina, Wake County, and related litigation (the "*Nordan* Complaint"). The determination of ACE's obligation to defend Blackwater from the allegations of the *Nordan* Complaint requires only a comparison of the allegations of that complaint to the provisions of ACE's insurance policy to determine whether a "possibility" of coverage exists. If such a possibility exists, then ACE is obligated to defend Blackwater. A comparison of these two documents plainly shows that the allegations in the *Nordan* Complaint trigger ACE's duty to defend under the provisions of its policy. And, there is no exclusion in ACE's insurance policy that bars coverage. Accordingly, Blackwater respectfully requests that this Court grant its motion.

## I.   STATEMENT OF FACTS

### A.   The Insureds.

Blackwater provides contract security and professional military assistance to the United States for its military operations presently being conducted in Iraq and elsewhere. *Declaration of Andrew G. Howell* ("Howell Dec."), ¶ 2. Jason McQuown and Thomas Powell were, at the time relevant to this action, responsible for managing certain of Blackwater's operations in Iraq. (Id., ¶ 3).

## B.     The ACE Policy Provides Coverage To Blackwater For Bodily Injury.

ACE issued Commercial General Liability Policy No. GLW 778197 (the "ACE Policy") to Blackwater Lodge and Training Center, Inc. for the policy period January 23, 2004 to January 23, 2005. (Howell Decl. ¶ 4, Exh. A). Blackwater Security Consulting LLC is also an insured under the ACE Policy. (Howell Decl., Exh. A, Common Policy Declarations, "Extended Named Insured"). And, because Blackwater Security Consulting LLC is a limited liability company, the ACE Policy provides that its managers, such as Mr. McQuown and Mr. Powell, are also insureds under the ACE Policy. (Howell Decl., Exh. A, CG 00 01 10 01 at 9, § II, ¶ 1.c).

The ACE Policy obligates ACE to

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. [ACE] *will have the right and duty to defend* the insured against any "suit"[1] seeking those damages[2].

(Howell Decl., Exh. A, CG 00 57 09 99, Amendment to Insuring Agreement ,¶ 1.a) (emphasis added). The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Howell Decl., Exh. A, CG 00 01 10 01 at 13, § V, ¶ 3). To be covered under the ACE Policy, the bodily injury must be caused by an "occurrence" within the "coverage territory" during the policy period. (Howell Decl., Exh. A, CG 00 57 09 99, Amendment to Insuring Agreement,¶¶ 1.a, 1.b). "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Howell Decl., Exh. A, CG 00 01 10 01 at 14, ¶ 13). "Coverage territory" includes

---

[1]   "Suit" means "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged" and includes arbitration proceedings. (Howell Decl., Exh. A, CG 00 01 10 01 at 15, ¶ 18).

[2]   "Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services, or death resulting at any time from 'bodily injury.'" (Howell Decl., Exh. A, CG 00 57 09 99, Amendment to Insuring Agreement ,¶ 1.e.).

2

the United States of America and "all other parts of the world" if the injury or damage arises from the activities of a person whose home is in the United States but who is "away for a short time on [the Insured's] business." (Howell Decl., Exh. A, CG 00 01 10 01 at 13, ¶ 4). The ACE Policy has a "per occurrence" limit of $1 million and an aggregate limit of $2 million. (Howell Decl., Exh. A, CPP 4506 1090, Declarations). ACE's obligation to defend its insured from suits seeking damages for "bodily injury" is supplemental to, and does not erode, the per occurrence and aggregate limits of the ACE Policy. (Howell Decl., Exh. A, CG 00 57 09 99, Amendment to Insuring Agreement, ¶ 1.a).

### C. The *Nordan* Complaint Alleges Facts That Trigger ACE's Coverage Obligations Under The ACE Policy.

On January 5, 2005, Richard P. Nordan, as Ancillary Administrator for the separate estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (collectively "decedents"), filed a complaint captioned *Nordan v. Blackwater Security Consulting LLC, et al.*, Case No. 05 CVS 000173, in the Superior Court of North Carolina, Wake County (the "*Nordan* Complaint") against Blackwater, and Mr. McQuown, and Mr. Powell. (Howell Decl., Exh. B). The *Nordan* Complaint seeks damages for wrongful death arising from the murders of decedents on or about March 31, 2004 by Iraqi insurgents in the city of Fallujah, while decedents, who were American citizens, were temporarily working in support of Blackwater's contract serving the United States military effort in Iraq. (*Id.* at ¶¶ 12, 30-31). The *Nordan* Complaint also seeks to rescind the agreements entered into between decedents and Blackwater. (*Id.* at ¶¶ 80-96). The *Nordan* Complaint further alleges that the decedents "were hired by Blackwater as independent contractors, and were at no relevant time employees of Blackwater." (*Id.* at ¶ 31).

Specifically, Richard Nordan alleges that "[a]s a proximate result of [Blackwater's, McQuown's and Powell's] intentional conduct, willful and wanton conduct, and/or negligence, as alleged herein, [decedents] were killed March 31, 2004." (*Id.* at ¶ 71). In addition, the *Nordan* Complaint alleges that the decedents were "providers of love, support, comfort, guidance, advice and companionship" to their respective survivors, including spouses, children, and other family members. (*Id.* at ¶¶ 72-75). And, the *Nordan* Complaint claims that "[a]s a proximate result of [Blackwater's alleged wrongful conduct] and the deaths of [decedents], [the decedents' survivors], and each of them, sustained the loss of society, companionship, comfort, guidance, kindly offerings, advice, services, protection, care and assistance, as well as the net income of decedents, and each of them." (*Id.* at ¶ 76).

Among other alleged wrongful conduct, the *Nordan* Complaint alleges that Blackwater, and Mr. McQuown and Mr. Powell, who, at the time, were managers of certain of Blackwater's operations in Iraq, failed to provide decedents with "certain protections, tools, and information to allow [decedents] to do their jobs" in Iraq, and that those failures resulted in the murder of decedents. (*Id.* at ¶¶ 13, 50). These alleged failures include: (1) not providing the decedents with the proper weapons and not allowing them to test fire the weapons they were given; (2) not giving the requisite notice before the decedents were sent on a mission; (3) not conducting a "Risk Assessment" prior to the mission; (4) not giving the decedents the opportunity to review the mission routes; (5) not allowing decedents to review intelligence prior to the mission; (6) not giving the decedents 21 days to acclimate to the region; (7) not providing armored vehicles; and (8) not providing the required number of team members for the security mission. (*Id.* at ¶¶ 13, 15, 34, 37-39, 51-53, 55, 57). With regard to decedent Helvenston, the *Nordan* Complaint alleges that he was sent on the mission in Iraq despite the fact that he had taken ill after arriving

4

in the area and was not physically able to perform that task. (*Id.* at ¶¶ 43-48). It is these alleged failures for which the *Nordan* Complaint seeks damages and to hold Blackwater, McQuown, and Powell liable for the wrongful death of decedents and seeks to rescind the agreements that the decedents entered into with Blackwater. (*Id.* at ¶¶ 68-96).

Blackwater initially removed the *Nordan* Complaint to the United States District Court for the Eastern District of North Carolina and moved to dismiss. *Nordan v. Blackwater Security Consulting LLC*, 382 F. Supp. 2d 801 (E.D.N.C. 2005). The district court remanded the action and denied as moot Blackwater's motion to dismiss. *See id.* The United States Court of Appeals for the Fourth Circuit denied Blackwater's appeal of that decision and the United States Supreme Court denied Blackwater's petition for certiorari. *In re Blackwater Security Consulting LLC*, 460 F.3d 576 (4th Cir. 2006), *cert. denied*, 75 U.S.L.W. 3457 (U.S. Feb. 26, 2007) (No. 06-857).

After the Fourth Circuit's denial of Blackwater's appeal, Blackwater filed a demand for arbitration of Richard Nordan's claims with the American Arbitration Association pursuant to the agreements entered into by Blackwater and the decedents. (Howell Decl. ¶ 6, Exh. C). Blackwater thereafter filed a petition to compel arbitration, which was granted by the United States District Court for the Eastern District of North Carolina on April 20, 2007. *Blackwater Security Consulting LLC v. Nordan*, No. 06-cv-00049-F (E.D.N.C.) ("Petition for Order Directing Arbitration Pursuant to the Federal Arbitration Act" filed Dec. 20, 2006); *Blackwater Security Consulting LLC v. Nordan*, No. 06-cv-00049-F (E.D.N.C.) (Order Granting Blackwater's Petition to Compel Arbitration filed Apr. 20, 2007).[3] In response to that order, Richard Nordan filed a second lawsuit in the Superior Court, Wake County, North Carolina

---

[3] For the convenience of the Court, true and correct copies of these documents are attached as Exhibits 1 and 2 to the Certification of Dennis J. Valenza ("Valenza Cert.") filed in support of Blackwater's motion for partial summary judgment against Evanston Insurance Company, filed contemporaneously herewith.

5

seeking declaratory relief, which Blackwater removed and the district court dismissed on June 11, 2007. *Nordan v. Blackwater Lodge & Training Center, Inc.*, No. 07-cv-00175 (E.D.N.C.) ("Notice of Removal" filed on May 14, 2007); *Nordan v. Blackwater Lodge & Training Center, Inc.*, No. 07-cv-00175 (E.D.N.C.) (Order Dismissing Action filed June 11, 2007).[4] Richard Nordan also filed a motion for reconsideration of the district court's order compelling arbitration, which the district court denied on May 11, 2007. *Blackwater Security Consulting LLC v. Nordan*, No. 06-cv-00049-F (E.D.N.C.) (Order Denying Motion for Reconsideration filed May 11, 2007).[5] Richard Nordan filed an appeal of that decision, which is presently before the Fourth Circuit. *Blackwater Security Consulting LLC v. Nordan*, No. 06-cv-00049-F (E.D.N.C.) (Notice of Appeal).[6] At present, the arbitration is moving apace, with the parties having completed their initial submissions, and the arbitration panel in the process of completing its preliminary hearing. Blackwater expects that the arbitration panel will schedule a final hearing shortly.

### D.    ACE's Refusal To Defend Blackwater For The *Nordan* Complaint.

On January 6, 2005, Blackwater notified its insurance brokers of the *Nordan* Complaint and instructed them to tender the *Nordan* Complaint for coverage to Blackwater's insurers, including ACE. (Howell Decl. ¶ 7, Exh. D, Jan. 6, 2005 Letter from S. Capace). On January 10, 2005, ACE sent a letter to Blackwater acknowledging receipt of Blackwater's tender of the *Nordan* Complaint. (Howell Decl. ¶ 8, Exh. E, Jan. 10, 2005 Letter from K. Phillips). Because ACE had failed to timely respond to Blackwater's request that it provide a defense for its insureds for the *Nordan* Complaint, Blackwater retained defense counsel for itself and for Mr. McQuown and Mr. Powell. (Howell Decl. ¶ 9).

---

[4]   True and correct copies of these documents are attached to the Valenza Cert. as Exhibits 3 and 4.
[5]   A true and correct copy of this document is attached to the Valenza Cert. as Exhibit 5.
[6]   A true and correct copy of this document is attached to the Valenza Cert. as Exhibit 6.

On May 18, 2005, counsel for ACE sent a letter to Blackwater in which ACE agreed, pursuant to a reservation of rights to deny coverage at a later date, to "undertake reimbursement for defense costs, that is reasonable defense costs, pursuant to the [ACE Policy]" that Blackwater paid and incurred defending the *Nordan* Complaint. (Howell Decl. ¶ 10, Exh. F, May 18, 2005 Letter from P. Coats, ACE counsel). Since agreeing to reimburse Blackwater's defense costs, however, ACE has failed to reimburse Blackwater for any of the costs that Blackwater has paid and incurred (Howell Decl., ¶ 11), thus necessitating the instant motion.

The costs that Blackwater has paid and incurred defending the *Nordan* allegations and related litigation, including costs related to, *inter alia*, (1) removing the *Nordan* Complaint to the United States District Court for the Eastern District of North Carolina; (2) appealing to the United States Court of Appeals for the Fourth Circuit the district court's decision to remand the *Nordan* Complaint to the North Carolina Superior Court and denial of Blackwater's motion to dismiss; (3) filing a petition for certiorari with the United States Supreme Court of the Fourth Circuit's denial of Blackwater's appeal of the district court's decision; (4) petitioning to compel arbitration; (5) defending against Richard Nordan's second complaint in the North Carolina Superior Court; and (6) conducting the arbitration. (Howell Decl. ¶ 12). As the litigation and arbitration with Richard Nordan is ongoing, Blackwater continues to incur and pay significant costs for those proceedings, and, thus, there is a justiciable controversy between ACE and Blackwater over ACE's obligation to reimburse Blackwater for its defense from Richard Nordan's claims.

## II. ARGUMENT

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If the movant meets this burden, then the opponent must counter with specific facts which demonstrate that there exists a genuine issue for trial. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). If the evidence submitted by the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Couden v. Duffy*, 446 F.3d 483, 503 (3d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal citations omitted)).

To trigger ACE's obligation to provide a defense for Blackwater, Mr. McQuown, and Mr. Powell from the allegations of the *Nordan* Complaint, those allegations only need to raise the "possibility" of or "potential" for coverage under the ACE Policy. Here, there is no genuine issue of any material fact that those allegations raise such a possibility or potential. And, no exclusion of the ACE Policy bars such coverage. Thus, Blackwater is entitled to a declaration that ACE has an obligation under the ACE Policy to reimburse Blackwater for the costs it has paid and incurred, and will pay and incur, defending Richard Nordan's claims.

### A. ACE Is Obligated To Reimburse Blackwater's Defense Costs For The *Nordan* Complaint.

The ACE Policy requires ACE "to defend [Blackwater, and Mr. McQuown and Mr. Powell] against any 'suit'" seeking damages for "bodily injury", which includes "damages claimed by any person or organization for care, loss of services, or death." The *Nordan* Complaint alleges that the negligent actions and/or inactions of Blackwater, and Mr. McQuown and Mr. Powell on Blackwater's behalf, resulted in the deaths of decedents. As such, ACE's defense obligation is triggered.

An insurer's duty to defend is much broader than its duty to indemnify. *General Accident Ins. Co. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997); *Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997); *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986).[7] It is well-established that an insurer's duty to defend is to be decided as a matter of law by comparing the factual allegations of the complaint to the terms of the policy. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006); *see also Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) ("To determine whether an insurer owes its insured a duty to defend a particular lawsuit, Georgia law directs us to compare the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the insurance contract."); *Waste Mgmt. of Carolinas, Inc.*, 340 S.E.2d at 377 (If the pleadings "state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable."). As a result, no discovery is necessary to determine whether the allegations of a complaint trigger an insurer's duty to defend its insured in the first instance. *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 606 (Pa. Super. 1997).

In determining whether an insurer has a duty to defend its insured, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the

---

[7] ACE may assert that North Carolina or Georgia law applies to the interpretation of the ACE Policy. There is, however, no conflict between North Carolina and Georgia law, and the law of Pennsylvania on the determination of an insurer's duty to defend. Accordingly, because there is no conflict, this Court should apply Pennsylvania law. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994) ("Where there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a 'false conflict' and the court need not decide the choice of law issue.")

insured. *Unionamerica Ins. Co., Ltd. v. J.B. Johnson*, 806 A.2d 431, 433-34 (Pa. Super. 2002).

As aptly put by the Pennsylvania Superior Court:

> *The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint.* It is not the actual details of the injury, but the *nature of the claim* which determines whether the insurer is required to defend. The duty to defend is limited to only those claims covered by the policy. *The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy.*
>
> Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true. It does not matter if in reality the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.

*Erie Ins. Exch. v. Muff*, 851 A.2d 919, 926 (Pa. Super. 2004) (quoting *D'Auria v. Zurich Insurance Co.*, 507 A.2d 857, 859 (Pa. Super. 1986)) (emphasis in original). Thus, if the allegations of the complaint allege an injury which raises the *potential for coverage* under the policy, then an insurer must defend its insured. *Erie Ins. Exch. v. Fidler*, 808 A.2d 587, 590 (Pa. Super. 2002); *see also American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 75 (3d Cir. 1985). And, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim. *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987). In light of the broad interpretation given to an insurer's duty to defend, "[a]n insurer who refuses to defend its insured from the outset does so at its own peril, because the duty to defend remains with an insurer until it is clear the [underlying] claim has been narrowed to one beyond the terms of the policy." *Board of Public Educ. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 709 A.2d 910, 913 (Pa. Super. 1998) (internal citations omitted). Thus, ACE must reimburse Blackwater for its defense of the entirety of *Nordan* Complaint, even if some of the allegations in the complaint fall within the terms of coverage and others do not.

Here, there can be no question that the allegations of the *Nordan* Complaint raise the potential for coverage under the ACE Policy, thus triggering ACE's obligation to reimburse the costs Blackwater has incurred defending those allegations, including those costs Blackwater has paid and incurred providing a defense for Mr. McQuown and Mr. Powell. The *Nordan* Complaint is clearly a "suit" that seeks "damages" for "bodily injury" as those terms are defined in the ACE Policy. Further, it cannot be disputed that the March 31, 2004 murder of the decedents — the "occurrence" — took place within the ACE Policy's January 23, 2004 to January 24, 2005 coverage period. Moreover, because the decedents were all Americans temporarily in Iraq working for Blackwater, the "occurrence" took place within the Policy's "coverage territory." Therefore, ACE's obligation to reimburse Blackwater for its defense of the *Nordan* Complaint is triggered.

### B.  The ACE Policy Contains No Exclusion That Bars Coverage.

Blackwater expects that ACE will argue that it has no obligation to defend Blackwater because the allegations of the complaint fall within the ACE Policy exclusions. (Howell Decl., Exh. F at 4). Specifically, ACE has claimed, *inter alia*, that the ACE Policy excludes coverage for (1) "employees," which ACE contends the decedents may have been; (2) "bodily injury" that results from "war;" and (3) "professional services" which ACE contends the decedents may have been engaged in at the time of their deaths. (*Id.*) An insurer, such as ACE, that disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion. *Unionamerica Ins. Co.*, 806 A.2d at 434 (citation omitted). And, such exclusions are to be strictly construed against the insurer.[8] *Id.* If any of the terms of an insurance policy are

---

[8] This is also the rule in Georgia and North Carolina, the other states whose laws ACE may contend apply to the interpretation of the ACE Policy. *North Metro Directories Publ'g, LLC v. Cotton States Mut. Ins. Co.*, (Cont'd)

11

ambiguous, those provisions are likewise to be interpreted in against the insurer and in favor of coverage. *Muff*, 851 A.2d at 927 ("[W]here a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer."). As demonstrated below, none of ACE's exclusions bar coverage from the allegations of the *Nordan* Complaint.

The *Nordan* Complaint specifically alleges that the decedents "were hired by Blackwater as independent contractors, and were at no relevant time employees of Blackwater." (Howell Decl., Exh. B at ¶ 31). Thus, the ACE Policy's exclusion for "bodily injury" to "employees" (Howell Decl., Exh. A, CG 00 01 10 01 at 2, ¶ 2.e) is not applicable.

Further, the definition of "employee" under the ACE Policy reads, in its entirety: "'Employee' includes 'leased worker.' 'Employee does not include a 'temporary worker.'" (Howell Decl., Exh. A, CG 00 01 10 01 at 13, ¶ 5). It does not mention contractors. Thus, at a minimum, the definition of "employee" under the ACE Policy is ambiguous, and must be construed in favor of providing coverage. *Muff*, 851 A.2d at 927 ("[W]here a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer.").[9]

The ACE Policy's "war" exclusion is similarly inapplicable. That provision excludes coverage for

---

[9] 631 S.E.2d 726, 729-30 (Ga. App. 2006); *Lambe Realty Inv., Inc. v. Allstate Ins. Co.*, 527 S.E.2d 328, 334-35 (N.C. App. 2000).

ACE may claim that because the decedents qualify as "employees" under the insurance policy issued by CNA to Blackwater, under which Blackwater is also seeking coverage, that coverage is not available under the ACE Policy. As discussed more fully in Blackwater's motion for partial summary judgment against CNA, filed contemporaneously herewith, the CNA Policy defines "employees" to include "independent contractors." *See* Declaration of Andrew G. Howell in Support of Plaintiffs' Motion for Partial Summary Judgment Against Continental Insurance Company, Exh. A, WP 0010 0201 at 10. The definitions of an "employee" under the two policies are, thus, markedly different, and any claim to the contrary by ACE is untenable.

> "bodily injury" . . . due to war, whether or not declared, or any act of condition of war. War includes civil insurrection, rebellion or revolution. *This exclusion applies only to liability assumed under contract or agreement.*

(Howell Decl., Exh. A, CG 00 01 10 01 at 4, ¶ 2.i.) (emphasis added). Because this exclusion applies solely to "liability assumed under contract or agreement," and Richard Nordan has not alleged that Blackwater has assumed liability for the decedents' deaths under contract, nor did Blackwater, this exclusion is also inapplicable.

Lastly, the ACE Policy's exclusion for "bodily injury" resulting from the rendering or failure to render any "Professional Service" does not apply here. Under the ACE Policy "Professional Service" is defined as "Any training or instruction or consulting services pertaining to firearms, security or driving." (Howell Decl., Exh. A, CG 21 16 07 98, "Exclusion — Designated Professional Services"). Among other things, the *Nordan* Complaint alleges that Blackwater, Mr. McQuown, and Mr. Powell negligently failed to provide the proper firearms, vehicles, and requisite maps and intelligence to the decedents prior to their mission, which caused their deaths. Those alleged negligent actions, or inactions, cannot be considered "training" or "consulting," and, thus, fall outside the ACE Policy's definition of "Professional Services."

## III.   CONCLUSION

The allegations of the *Nordan* Complaint raise the potential for coverage under the ACE Policy, thus triggering ACE's defense obligations, and no exclusions bar coverage. Although **ACE has already agreed**, subject to a reservation of its rights to later deny coverage, to reimburse Blackwater for the costs and fees it has paid and incurred defending the *Nordan* Complaint, ACE has not done so. Accordingly, Blackwater's motion for an Order that ACE has a duty to defend Blackwater in connection with the *Nordan* litigation should be granted.

Respectfully submitted,

*[signature]*

Dennis J. Valenza
Carol C. Carty
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
P: 215.963.5000
F: 215.963.5001

Paul A. Zevnik
Howard T. Weir III
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
P: 202.739.3000
F: 202.739.3001

Dated: July 11, 2007                    Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon all counsel of record on July 11, 2007, by electronic filing and/or by mailing, first-class, postage prepaid, a true and correct copy thereof to the following:

Francis J. Deasey, Esq.
Deasey, Mahoney & Bender, Ltd.
1800 John F. Kennedy Blvd.
Suite 1300
Philadelphia, PA 19103-2978

John C. Sullivan, Esq.
Post & Schell PC
1600 John F. Kennedy Blvd
Four Penn Center
Philadelphia, PA 19103-2808

L.D. Simmons, II, Esq.
Helms Mulliss & Wicker PLLC
201 North Tryon Street
Charlotte, NC 28202

Francis P. Burns, III, Esq.
Lavin O'Neil Ricci Cedrone & Disipio
190 North Independence Mall West
6th & Race Streets, Suite 500
Philadelphia, PA 19106

Ronald P. Schiller, Esq.
DLA Piper Rudnick Gray Cary LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA 19103

Thomas T. Locke, Esq.
Seyfarth Shaw LLP
815 Connecticut Ave NW
Washington, DC 20006-4004

_____
Carol C. Carty