A

Dockets.Justia.com

 **EVANSTON INSURANCE COMPANY**

MARKEL®

| | |
|---|---|
| Policy No | EO-819173 |
| Prev. No. | EO-814817 |
| Prod No. | 32542 |

## DECLARATIONS - SERVICE AND TECHNICAL PROFESSIONAL LIABILITY INSURANCE

Claims Made Policy: This policy is limited to liability for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER DURING THE POLICY PERIOD. Please review the policy carefully

1.    **NAMED INSURED:**  BLACKWATER LODGE & TRAINING CENTER, INC (SEE ENDORSEMENT # 5)

      The Named Insured is a Corporation

2.    **PREDECESSOR FIRM:**  Not applicable

3.    **BUSINESS ADDRESS OF THE INSURED:**
               850 PUDDIN RIDGE ROAD
               MOYOCK, NC 27958

4.    **POLICY PERIOD:**   From March 17, 2004 to March 17, 2005
                       12:01 A.M. Standard Time at address of Insured stated above

5.    **RETROACTIVE DATE:**  March 17, 2003

6    **PROFESSIONAL SERVICES:**
    **(SEE ENDORSEMENT #6)**

7.    **LIMITS OF LIABILITY:**

    Each Claim:

                                          $ 1,000,000

    Policy Aggregate:

                                          $ 1,000,000

8.    **DEDUCTIBLE:**
    Applicable to each Claim, including Claim Expenses       $    10,000

9.    **MINIMUM ONE-YEAR PREMIUM:**        $   69,660.00

    5% NC Surplus Lines Tax                       3,483.00

*The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guarantee fund.*

**NO FLAT CANCELLATION**

**FILE COPY**

POLICY NO. EO-819173

10.     **ENDORSEMENT(S) ATTACHED AT POLICY INCEPTION:**

1. EIC 4066-01     Amendment of Exclusion (c) and Addition of Exclusion
2. EIC 4115-01     25% Minimum Earned Premium Endorsement
3. ZZ-42002-01     Service of Suit
4. ZZ-42001-02     Certified Acts of Terrorism Endorsement
5. Manuscript      Amendatory Endorsement
6. Manuscript      Amendatory Endorsement



ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc.
Ten Parkway North, Suite 100
Deerfield, Illinois 60015
Phone: (847) 572-6000, Fax: (847) 572-6338

*Michael A. Rosenberg*
Authorized Representative

Policy Form: MG 843 - 2/22/99
Dec: MG 843 07/95
Date Printed: April 30 2004



# EVANSTON INSURANCE COMPANY

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.: EO-819173 |
| BLACKWATER LODGE & TRAINING CENTER, INC. | Endorsement No.: 1 |
| | Effective Date: March 17, 2004 |

### AMENDMENT OF EXCLUSION (c) AND ADDITION OF EXCLUSION
### (use with MG 843)

In consideration of the premium paid, it is hereby understood and agreed that that the policy is amended as follows:

1.    Section DEFINITIONS is amended by the addition of the following:

**Mold** means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

**Mold Event** means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of mold.

2.    Section THE EXCLUSIONS (c) is deleted and replaced with the following:

(c)    based upon or arising out of the bodily injury, sickness, disease, or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom; provided, however, this exclusion shall not apply to the extent such **Claim** is based upon or arises out of any act, error or omission in **Professional Services** rendered or that should have been rendered by the Insured;

3.    Section THE EXCLUSIONS is amended by the addition of the following exclusion:

based upon, arising out of, or in any way involving **Mold** or **Mold Event**.

All other provisions of the policy shall apply and remain unchanged.

EIC 4066-01 2/04

_Michael A. Rosenberg_
Authorized Representative



# EVANSTON INSURANCE COMPANY

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.:  EO-819173 |
| BLACKWATER LODGE & TRAINING CENTER, INC. | Endorsement No.:  2 |
| | Effective Date:  March 17, 2004 |

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.



All other provisions of the policy shall apply and remain unchanged.

Michael A. Rosenberg
Authorized Representative

EIC 4115-01 2/03



# EVANSTON INSURANCE COMPANY

**MARKEL®**

## Endorsement

| | |
|---|---|
| Named Insured:<br>BLACKWATER LODGE & TRAINING CENTER, INC. | Policy No.: EO-819173<br>Endorsement No.: 3<br>Effective Date: March 17, 2004 |

### SERVICE OF SUIT

In consideration of the premium paid, it is hereby understood and agreed that Section Service of Suit is deleted and replaced with the following:

**Service of Suit:** Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rozenberg*

Authorized Representative

ZZ-42002-01

 **EVANSTON INSURANCE COMPANY**

MARKEL®

## Endorsement

| | |
|---|---|
| Named Insured:<br>BLACKWATER LODGE & TRAINING CENTER, INC. | Policy No.:  EO-819173<br>Endorsement No.:  4<br>Effective Date:  March 17, 2004 |

### CERTIFIED ACTS OF TERRORISM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that, with respect to any claim otherwise covered hereunder, this policy shall not exclude any claim based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act of 2002 (Pub.L. 107-297) or any amendments thereto or any regulations promulgated thereunder. The federal Terrorism Risk Insurance of Act of 2002 sets forth the following criteria for a Certified Act of Terrorism:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rosenberg*
Authorized Representative

ZZ-42001-02



# EVANSTON INSURANCE COMPANY

**MARKEL®**

## Endorsement

Named Insured:
BLACKWATER LODGE & TRAINING CENTER, INC.

Policy No.: EO-819173
Endorsement No.: 5
Effective Date: March 17, 2004

### AMENDATORY ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that Item 1. of the Declarations is completed to read as follows:

1.   **NAMED INSURED:**

BLACKWATER LODGE & TRAINING CENTER, INC.
BLACKWATER SECURITY CONSULTANTS
BLACKWATER TARGET SYSTEMS, LLC
E & J HOLDINGS, LLC

FILE COPY

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rosenberg*
Authorized Representative



# EVANSTON INSURANCE COMPANY

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.: EO-819173 |
| BLACKWATER LODGE & TRAINING CENTER, INC. | Endorsement No.: 6 |
| | Effective Date: March 17, 2004 |

### AMENDATORY ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that Item 6. of the Declaration completed to read as follows:

6.  **PROFESSIONAL SERVICES:**

-Law enforcement & military personnel training
-Private Security personnel training, including defensive & evasive drivers training
-Design & construction of target/shooting ranges (in line w/target systems they manufacture)
-K-9 Training
-Worldwide security assessments for clients
-Worldwide contract security operations

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rozenberg*
Authorized Representative

# Service and Technical Professional Liability Insurance Policy

## CONDITIONS PRECEDENT

In consideration of the payment of the premium, in reliance upon the statements in the application attached hereto and made a part hereof, and subject to all the terms of this insurance, the Company agrees with the Named Insured as follows:

## THE INSURED

Insured means:

    (a)  the Named Insured, who is defined herein as the individual, partnership, or corporation designated in Item 1. of the Declarations;

    (b)  any present or former owner, officer, partner or employee of the Named Insured or Predecessor Firm as designated in Item 2. of the Declarations solely while acting in their professional capacity on behalf of said firm.

## DEFINITIONS

**Claim** means a written demand received by the Insured for compensation for **Damages**, including the service of suit or institution of arbitration proceedings against the Insured.

**Claim Expenses** means:

    (a)  fees charged by any lawyers designated by the Company;

    (b)  all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if incurred by the Company; and

    (c)  fees charged by any lawyer designated by the Insured with the written consent of the Company.

However, **Claim Expenses** does not include salary charges of regular employees or of the officials of the Company or any supervisory counsel retained by the Company.

**Damages** means the monetary portion of any judgment, award or settlement and does not include:

    (a)  punitive or exemplary damages, any damages which are a multiple of compensatory damages, or fines or penalties;

    (b)  the restitution of consideration or expenses paid to the Insured for services or goods;

    (c)  judgments or awards arising from acts deemed uninsurable by law.

**Personal Injury** means:

    (a)  libel, slander or other forms of defamation; or

    (b)  invasion or infringement of the right of privacy; or

    (c)  malicious prosecution, abuse of process, false arrest or false imprisonment.

**Policy Period** means the period from the inception date of this policy to the policy expiration date as set forth in the Declarations or its earlier termination date, if any.

**Professional Services** means the services described in Item 6. of the Declarations.

## THE COVERAGE

**1.   Professional Liability and Personal Injury:**  To pay on behalf of the Insured the amount of **Damages** and **Claim Expenses** in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay resulting from CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE OPTIONAL EXTENSION PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISIONS OF CLAIMS 1., because of any:

(a) act, error or omission in **Professional Services** rendered or that should have been rendered, or

(b) **Personal Injury** committed, by the Insured or by any person for whom the Insured is legally responsible and for whose acts, errors, omissions or **Personal Injuries** the Insured is legally responsible, and arising out of the conduct of the **Professional Services** specified in Item 6. of the Declarations;

PROVIDED ALWAYS THAT:

(a) such act, error, omission or **Personal Injury** happens subsequent to the Retroactive Date specified in the Declarations; and

(b) prior to the effective date of this policy the Insured had no knowledge that such act, error, omission or **Personal Injury** occurred or had been committed.

2. **Defense, Investigation and Settlement of Claims:** The Company shall investigate, defend and settle any **Claim** to which coverage under this policy applies pursuant to the following provisions:

(a) **Claim Expenses** incurred in investigating and defending such **Claim** shall be included within the Each Claim limit of liability set forth in the Declarations and shall not be in addition thereto. Such **Claim Expenses** shall reduce the available Limit of Liability. THE COMPANY SHALL NOT BE OBLIGATED TO PAY ANY DAMAGES OR TO DEFEND OR TO CONTINUE TO DEFEND ANY CLAIM OR TO PAY CLAIM EXPENSES AFTER THE LIMIT OF THE COMPANY'S LIABILITY HAS BEEN TENDERED TO THE INSURED OR INTO THE COURT OR EXHAUSTED BY PAYMENT(S) OF DAMAGES AND/OR CLAIM EXPENSES.

(b) Selection of defense counsel shall be made by the Company, provided, however, that if the law of the state of the Named Insured (as designated on the Declarations Page) allows the Insured to control the selection of counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate counsel who shall act solely in the interest of the Insured, and the Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(1) providing on a regular basis, not less frequently than every six months, written reports on claimed damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the **Claim;**

(2) providing any other reasonable information requested and fully itemized billings on a periodic basis;

(3) cooperating with the Company and the Insured in resolving any discrepancies;

The fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in **Claim Expenses.** Such **Claim Expenses** shall be included with the policy Limit of Liability and not in addition thereto. Such **Claim Expenses** shall reduce the available Limit of Liability.

(c) The Insured shall cooperate with the Company in the defense, investigation and settlement of any **Claim.** The Insured will assist the Company in effecting any rights of indemnity, contribution or apportionment available to the Insured or the Company. Upon the Company's request, the Insured shall: (i) submit to examination and interview by a representative of the Company, under oath, if required; (ii) attend hearings, depositions and trials; (iii) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (iv) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any **Claim** all without charge to the Company.

(d) The Insured shall not, with respect to any **Claim** covered under this policy, except at the Insured's personal cost, make any payment, admit liability, settle **Claims,** assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without prior written Company approval. Any costs and expenses incurred by the Insured prior to the Insured giving written notice of the **Claim** to the

MG 843 – 2/22/99                          Page 2

Company shall be borne by the Insured and will not constitute satisfaction of the deductible either in whole or in part

**3.    Discovery Clause:**  If prior to the effective date of cancellation or non-renewal of this policy, the Insured first becomes aware of a specific act, error or omission in the performance of **Professional Services** or of a **Personal Injury** which is reasonably expected to result in a **Claim** which falls within the scope of coverage of any part of this policy, then the Insured may provide written notice to the Company containing the information listed below   If such written notice is received by the Company prior to the effective date of cancellation or non-renewal of the policy, then any **Claim** subsequently made against the Insured arising out of such conduct or injury or damage shall be deemed for the purpose of this insurance to have been made on the date of which such written notice is received by the Company.  The Insured shall cooperate fully with the Company, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in the policy as applicable to a **Claim**.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

(a)  the specific act, error or omission in **Professional Services** and the injury or damages which has or may result therefrom, or the **Personal Injury;**

(b)  the date(s) of such conduct or injury or damage;

(c)  the identity(ies) of the Insured(s) who may be the subject of such **Claim;**

(d)  the identity(ies) of any potential claimant(s);

(e)  the anticipated location(s) of any such **Claim;** and

(f)  the circumstances by which the Insured first became aware of such potential **Claim**.

**4.    Optional Extension Period:** If the Company cancels this policy pursuant to OTHER CONDITIONS 5., or refuses to renew, for reasons other than the Named Insured's non-payment of premium and/or deductible amount or non-compliance with the terms and conditions of this policy, then the Named Insured upon payment of an additional premium calculated at 150% of the full annual premium for this policy shall extend the claims reporting period, subject otherwise to the terms and conditions of the policy, to apply to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE TWELVE (12) MONTH PERIOD following immediately upon the effective date of such cancellation or non-renewal, but only by reason of any Personal Injury or act, error or omission in **Professional Services** rendered before such applicable termination or expiration date, after the Retroactive Date, if any, and otherwise covered by this insurance.

The foregoing twelve month period shall be referred to as the OPTIONAL EXTENSION PERIOD. If, however, this policy is immediately succeeded by similar CLAIMS MADE insurance coverage, the succeeding insurance shall be deemed to be a renewal hereof, and in consequence, the Named Insured shall have no right to purchase an Optional Extension Period.

The quotation of a different premium and/or deductible and/or limit of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

As a condition precedent to the Named Insured's right to purchase the Optional Extension Period, the full annual premium of this policy and any deductibles that are due must have been paid.

The Named Insured's right to purchase the Optional Extension Period must be exercised by notice in writing not later than thirty days after the cancellation or termination date of this policy AND MUST INCLUDE PAYMENT OF PREMIUM FOR THE OPTIONAL EXTENSION PERIOD.

At the commencement of any Optional Extension Period, the entire premium therefor shall be deemed fully earned, and non-refundable.

The fact that this policy is extended by virtue of the Optional Extension Period shall not in any way increase the limits of liability set forth in the Declarations.

**THE EXCLUSIONS**

**This Policy Does Not Apply to any Claim made against the Insured:**

MG 843 – 2/22/99                                    Page 3

(a) based upon or arising out of any dishonest, deliberately fraudulent, malicious, willful or knowingly wrongful act or omission committed by or at the direction of the Insured;

(b) by or in the right of any Insured or parent companies or predecessors of the Named Insured or any of their respective subsidiaries, affiliated agencies, or associated entities, or any contractor or subcontractor thereof;

(c) based upon or arising out of the bodily injury, sickness, disease, or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom;

(d) based upon or arising out of the liability of others assumed by the Insured under any contract or agreement, unless such liability would have attached to the Insured even in the absence of such agreement by reason of acts, errors, or omissions of the Insured in the performance of **Professional Services**;

(e) based upon or arising out of the bankruptcy or insolvency of the Insured or any insurance company;

(f) based upon or arising out of the liability of any person or entity, or any Company of such person or entity, under any workers' compensation, unemployment compensation, employers' liability, disability, or other similar law;

(g) based upon or arising out of any express warranties, guarantees, or cost estimates;

(h) based upon or arising out of any bodily injury or property damage arising out of discharge, dispersal, release, or escape of smoke or vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, lead, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water;

(i) based upon or arising out of any commingling of or inability or failure to pay or collect monies;

(j) based upon or arising out of the failure to effect or maintain, or to advise of the need to effect or maintain, adequate insurance, suretyship or bond, or to collect or pay income tax, sales tax or property tax to others;

(k) for the cost of recall, recovery, shipment, correction or reprinting caused by a defect or injurious condition in recorded or printed advertisements or the costs of any services in connection therewith;

(l) based upon or arising out of infringement of copyright, patent, trademark, service mark or trade name, or unfair competition based upon infringement of copyright, patent, trademark, service mark or trade name;

(m) based upon or arising out of mistake in advertised price or incorrect description of any article or commodity; alleged false, misleading or deceptive advertising or misrepresentation in advertising or products or services advertised by the Insured or others;

(n) based upon or arising out of the Insured gaining any profit or advantage to which the Insured is not legally entitled;

(o) based upon or arising out of the printing of lottery tickets, games of chance or other contest material;

(p) based upon or arising out of the performance of professional services with respect to the management of assets under a discretionary or nondiscretionary contract, whether written or oral;

(q) based upon or arising out of the syndication of property, or based upon or arising out of activities as a mortgage banker, mortgage broker, independent third party escrow agent, construction advisor, property developer or real estate agent or broker;

(r) based upon or arising out of the testing of welds, weld certification or the testing of structural steel;

(s) based upon or arising out of discrimination by the Insured on the basis of race, color, creed, national origin, age, sex or marital status;

(t)  based upon or arising out of any failure to return monies deposited or advanced by or on behalf of prospective travelers, irrespective of the cause of such failure;

(u)  based upon or arising out of damages or civil penalties for failure to notify prospective passengers of the safety standards with which any vessel complies or does not comply.

(v)  based upon or arising out of any acts or services performed by any Insured which is not licensed or certified to perform such acts or services if such licensing or certification is required by law.

## TERRITORY

The insurance afforded applies worldwide.

## LIMITS OF LIABILITY

**1.  Limits of Liability - Each Claim:** The Company shall be liable to pay 100% of **Damages** and **Claim Expenses** in excess of the amount of the applicable deductible as stated in Item 8 of the Declarations, up to the applicable limit of liability as stated in Item 7. of the Declarations for each **Claim** first made during the **Policy Period** or the Optional Extension Period, if purchased, and reported to the Company during the **Policy Period** or Optional Extension Period, if purchased, or within sixty (60) days after the expiration of the **Policy Period** or the Optional Extension Period, if purchased.

**2.  Limit of Liability - Aggregate:** The total liability of the Company for the combined total of **Damages** and **Claim Expenses** shall not exceed the amount stated in Item 7. of the Declarations as "aggregate" as a result of all CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD or the Optional Extension Period, if purchased, and reported to the Company during the **Policy Period** or Optional Extension Period, if purchased, or within sixty (60) days after the expiration of the **Policy Period** or Optional Extension Period, if purchased.

**3.  Deductible:** The deductible amounts stated in Item 8. of the Declarations shall be paid by the Named Insured and shall be applicable to each **Claim** and shall apply to **Damages** and **Claim Expenses,** whether or not a loss payment is made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured, within thirty (30) days. The total deductible payments requested from the Named Insured in respect to each **Claim** shall not exceed the deductible amounts stated in Item 8. of the Declarations.

The determination of the Company as to the reasonableness of the **Claim Expenses** shall be conclusive on the Named Insured.

**4.  Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured or the making of **Claims** by more than one person or organization shall not operate to increase the Company's limit of liability. Two or more **Claims** arising out of a single act, error or omission or **Personal Injury** or a series of related acts, errors or omissions or **Personal Injuries** or out of the same **Accident** or related **Accidents** shall be treated as a single **Claim.** All such **Claims** whenever made, shall be considered first made on the date on which the earliest such **Claim** was first made, and all such **Claims** shall be subject to the same limit of liability.

**5.  Payment of Claim Expenses:** Subject to the Named Insured's obligation to pay the deductible as set forth in LIMITS OF LIABILITY 3., which includes an obligation to pay **Damages** and **Claim Expenses** within the amount of the applicable deductible, the Company shall pay **Claim Expenses** subject to the applicable limits of liability.

## CLAIMS

**1.  Notice of Claim:** If a **Claim** is made against the Insured, then the Insured shall immediately forward to the Company every written demand, notice, summons or other process received by the Insured or by their representatives. In any event, within sixty (60) days after the expiration of the **Policy Period** or the Optional Extension Period, if purchased, such **Claim** must be reported to the Company or to SHAND MORAHAN & COMPANY, INC., Ten Parkway North, Deerfield, Illinois 60015, on behalf of the Company.

**2.  Assistance and Cooperation of the Insured:** The Insured shall give full assistance and cooperation to the Company as respects all **Claims** made against the Insured at the Insured's expense.

MG 843 - 2/22/99                                Page 5

The Insured shall not, except at its own cost, make any payment, admit any liability, settle any **Claims**, assume any obligation or incur any expense without the written consent of the Company.

**3.   Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.   The Insured shall do nothing after the **Claim** to prejudice such rights.

The Company shall not exercise any such rights against any persons, firms or corporations included in the definition of "Insured." Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any **Claim** brought about or contributed to by the intentional, dishonest, fraudulent, criminal or malicious act or omission of such Insured.

Any amount so recovered shall be apportioned as follows:

Any recovery shall first be used for the repayment of **Damages** and **Claim Expenses** incurred toward subrogation, second, to any **Damages** and **Claim Expense** payment by the Insured in excess of any deductible(s); third, to any **Damages** and **Claim Expense** payments by any excess carrier on behalf of the Insured; fourth, to any **Damages** and **Claim Expense** payments by any primary carrier on behalf of the Insured; and, last, to the repayment of the Insured's deductible.

**4.   False or Fraudulent Claims:** If any Insured shall commit fraud in proffering any **Claim** as regards amount or otherwise, this insurance shall become void as to such Insured from the date such fraudulent **Claim** is proffered.

## OTHER CONDITIONS

**1.   Application:** By acceptance of this policy, the Insureds agree that the particulars and statements contained in the application, a copy of which is attached hereto, and any material submitted therewith, which shall be on file with the Company and be deemed attached hereto, as if physically attached hereto, are true and are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy.

**2.   Other Insurance:** This insurance shall be in excess of the amount of applicable deductible of this policy and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the limits of liability provided in this policy.

**3.   Changes:** Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of the policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**4.   Assignment:** Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

**5.   Cancellations:** This policy may be cancelled by the Named Insured by surrender thereof to the Company or to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 or by mailing to the aforementioned written notice stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the Company shall retain the customary short rate proportion of the premium.

This policy may be cancelled by the Company or by Shand Morahan & Company, Inc , by mailing to the Named Insured written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or deductible when due, the policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the Named Insured, the Company, or Shand Morahan & Company, Inc. shall be equivalent to mailing. If cancelled by the Company or Shand Morahan & Company, Inc., earned premium

shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

6. **Audit:** The Company may examine and audit the Insured's books and records at any time during the **Policy Period** and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy.

7. **Authorization:** By acceptance of this policy, the first person or entity named in Item 1. of the Declarations agrees to act as the Named Insured with respect to the giving and receiving of all notice as provided herein: the exercising of the Optional Extension Period, the cancellation of this policy, the payment of premiums and deductibles, and the receiving of any return premiums that may become due; and the Insureds agree that such person or entity shall act on their behalf.

8. **Service of Suit:** Except with respect to any policy issued in Illinois, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the insurer, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United Sates to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon PETERSON & ROSS, 200 East Randolph Street, Chicago, Illinois 60601, and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other official specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney, upon whom may be served any lawful profess in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named person in whom the said official is authorized to mail such process or a true copy thereof.

9. **Integration of Document:** All the provisions of this policy are intended to be read together as one integrated document. No applicable provision nor any part thereof is intended to be separable from the balance of the applicable policy provisions. The meaning of each applicable provision of this policy is created by what is written in such provision and by what is written in the balance of the applicable policy provisions, and the Company issues this policy to the Insured in contemplation of the foregoing method of giving meaning to the policy.

If any applicable provision of this policy is held to be void by a court of competent jurisdiction, then the balance of the applicable provisions of this policy shall still be interpreted in accordance with the preceding paragraph.

10. **Use of Singular and Plural:** In this policy, the use of a defined term in the singular shall be deemed a proper use even though such term may be referring to more than one of what it defines. The necessary grammatical changes required to make defined terms of this policy apply in the plural sense when such terms are used singularly shall in all instances be assumed as though in each case fully expressed.

MG 843 - 2/22/99                    Page 7

**DEFINITIONS - REFERENCE**

Certain words are specifically defined for the policy and the definitions are to be found in the sections set forth below:

**Claim, Claim Expenses, Damages, Personal Injury,<br>Policy Period, Professional Services,<br>- See The Coverage**

**IN WITNESS WHEREOF,** the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_____
　　　　　　Secretary

_____
　　　　　　President

## NUCLEAR ENERGY LIABILITY
## EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1.  **This policy does not apply:**

    A.  Under any Liability Coverage, to bodily injury or property damage

        (1)  with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2)  resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C.  Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

        (1)  the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

        (2)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        (3)  the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2.  **As used in this endorsement:**

    **hazardous properties** include radioactive, toxic or explosive properties;

    **nuclear material** means source material, special nuclear material or by-product material;

    **source material, special nuclear material,** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    **spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    **waste** means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

    **nuclear facility** means

    (a)  any nuclear reactor,

MG 843 - 2/22/99                              Page 9

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**property damage** includes all forms of radioactive contamination of property.

03/17/04   10:46   ☎816 398 7824        HUBInternational ++↑ TRAVIS-PEDERSEN    ☒003/004

03/16/2004  15:02    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        HUB INTL - HOLLAND              PAGE  02/03

PROFESSIONAL RENEWAL    3/17/64

SMAND MOSAMAN
& COMPANY, INC.

- DEERFIELD INSURANCE COMPANY
- EVANSTON INSURANCE COMPANY
- ESSEX INSURANCE COMPANY
- MARKEL AMERICAN INSURANCE COMPANY
- MARKEL INSURANCE COMPANY

COPY

APPLICATION FOR SPECIFIED PROFESSIONS PROFESSIONAL LIABILITY INSURANCE

APPLICANT'S INSTRUCTIONS:
1. Answer all questions. If the answer requires detail, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.

1. APPLICANT INFORMATION

a. Full name of Applicant: Blackwater Lodge & Training Center Inc., Blackwater Security Corp.
b. Principal business premise address: 850 Puddin Ridge
   Moyock        NC        27958
c. Addresses of Branch Offices:
d. Number of Employees: Full time ___ Part time ___ Seasonal ___ Total ___
e. [x] Corporation  [ ] Partnership  [ ] Individual  [ ] Other
f. Please list and describe affiliations with other firms: Blackwater Target Systems, LLC
   RLT Holding, LLC; EP Investments, LLC; etc.

g. (i) In the past five years has your name changed?         Yes [ ]  No [x]
   (ii) Has any other business been purchased?               Yes [ ]  No [ ]
   (iii) Has any merger taken place?                          Yes [ ]  No [ ]

2. PROFESSIONAL ACTIVITIES AND SPECIALTY

a. 1. Training Center for Military Police - for tactical system (BTC)
   2. Security Vulnerability Assessments Worldwide Protective Services (BSC)
   3. Individual Security Training for worldwide employees (BSC)

b. Fees and Receipts        Past 3 Years:   BTC        BSC
                            2002
                            2003
                            2004

d. Continuing education for all instructors.

** Worldwide $87,000,000 - Pass through  $12,000,000 DBA
                                          8,000,000 Equipment
                                        $20,000,000 Passthrough

03/17/04   10:48   ☎616 396 7824        HUBInternational →→→ TRAVIS-PEDERSEN   ☑004/004

03/16/2004  15:02    616-391-7824        HUB INTL · HOLLAND              PAGE  03/03

## 3. CLAIMS HISTORY

Please attach details for any "Yes" answers.

a. List any professional liability claims actually made against you in the past five years, including status of claim, amounts demanded or paid, date of claim, and action taken to prevent the same type of claim in the future.
If None, please check  ☒ None.

b. Please list any known incidents which might give rise to a professional liability claim.
If None, please check  ☒ None.

c. Has any insurer cancelled or refused to renew any similar insurance during the past five years? [ ] Yes [ ] No

d. Previous coverage?

| Policy Period | Insurer | Indicate whether Claims made or Occurrence policy | Limits of Liability | Deductible | Retro Date |
|---|---|---|---|---|---|
| 3/1/03 → 04 | Evanston | Made | 1,000,000 | 10,000 | 3/17/03 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

## 4. ADDITIONAL INFORMATION

a. Please attach a list of:
(i) Partners, key employees, etc., and their professional qualifications;
(ii) Professional societies and organizations to which they or you belong(s); and
(iii) Your five largest jobs in the past three years.

b. Please attach copies of:
(i) Advertisements, brochures, newspaper reports; www.blackwaterusa.com
(ii) Sample contract for services between you and your client; and  varies
(iii) Latest financial data (annual report or balance sheet and income statement).  —See attached

*NOTICE TO APPLICANT! The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a *CLAIMS MADE* basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD unless the extended reporting period option is exercised in accordance with the terms of the policy.

WARRANTY: I/We warrant to the insurer, that I understand and accept the risks stated above and that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the insurer evidence its acceptance of this application by issuance of a policy. I/We authorize the release of claim information from any prior insurer to Shand Morahan & Company, Inc., Underwriting Manager for the Company.

X  Breckenridge  Styles                    General Counsel / Asst. Secretary
Name of Officer                            Title Officer, partner, etc.)

X  _____                 3/12/04
Signature of Applicant                     Date

SIGNING this application does not bind the Applicant or the insurer or the Underwriting Manager to complete the insurance, but one copy of this application will be attached to the policy, if issued.

SM 187-06 1/02                    Page 2 of 2