1

1

Dockets.Justia.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION (ELIZABETH CITY)**

BLACKWATER SECURITY CONSULTING,
LLC, a Delaware Limited Liability Company;
and BLACKWATER LODGE AND TRAINING
CENTER, INC., a Delaware Corporation

       Petitioners,

       vs.

RICHARD P. NORDAN, as Ancillary
Administrator for the Separate Estates of
STEPHEN S. HELVENSTON, MIKE R.
TEAGUE, JERKO GERALD ZOVKO, and
WESLEY J. K. BATALONA,

       Respondent.

**Civil Action No. _____**

**PETITION FOR ORDER DIRECTING ARBITRATION
PURSUANT TO THE FEDERAL ARBITRATION ACT**

Petitioners Blackwater Security Consulting, L.L.C., and Blackwater Lodge and Training

Center, Inc. (hereinafter "Petitioners") hereby petition this Court for an Order pursuant to

Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, directing Richard P. Nordan (hereinafter

"Respondent"), as ancillary administrator for the separate estates of Stephen S. Helvenston, Mike

R. Teague, Jerko Gerald Zovko, and Wesley J. K. Batalona (hereinafter "Decedents") to proceed

in this judicial district with arbitration in accordance with the terms of the Independent

Contractor Service Agreements (hereinafter, "Service Agreements") entered into between each

Decedent and Blackwater Security Consulting, L.L.C. (hereinafter, "Blackwater Security").

**PARTIES**

1.    Petitioner Blackwater Security is a limited liability company organized and existing

under the laws of the State of Delaware, with its principal place of business in Moyock,

Currituck County, North Carolina.

1

2.  Petitioner Blackwater Lodge and Training Center, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Moyock, Currituck County, North Carolina.

3.  Respondent Richard P. Nordan is, upon information and belief, a resident of Wake County, North Carolina.  He is named in this action in his official capacity as ancillary administrator of the separate estates of the Decedents:

    a.  Decedent Stephen S. Helvenston was, at the time of his death, a resident of the State of California;

    b.  Decedent Mike R. Teague was, at the time of his death, a resident of the State of Tennessee;

    c.  Jerko Gerald Zovko was, at the time of his death, a resident of the State of Hawaii; and

    d.  Wesley J. K. Batalona was, at the time of his death, a resident of the State of Ohio.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this proceeding under Section 4 of the Federal Arbitration Act (9 U.S.C. §4) and under 28 U.S.C. §1332 because this is a civil matter between citizens of different states wherein the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.  This Court has personal jurisdiction over Respondent pursuant to N.C.G.S. § 1-75.4.  Respondent is a resident of North Carolina and was appointed as ancillary administrator of Decedents' separate estates in North Carolina.  In violation of a written arbitration agreement, Respondent has instituted an action against Petitioners in the Superior Court of North Carolina.

Additionally, Decedents entered into Service Agreements with Blackwater Security, a resident of this State, and Decedents agreed that the Service Agreements would be governed by North Carolina law and that any disputes would be resolved by binding arbitration in Currituck or Camden County, North Carolina.

6.    Venue is appropriate in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391 because:  (a) the Service Agreements entered into between each Decedent and Blackwater Security require that disputes about the respective rights and obligations of the Decedents and Blackwater Security under the Service Agreements be resolved by binding arbitration in "Currituck or Camden County" (within this judicial district), and (b) Respondent has breached the Service Agreements within this judicial district.

7.    Assignment of this case to the Northern Division is appropriate pursuant to Local Rule 40.1 because Blackwater Security and Blackwater Lodge and Training Center, Inc. maintain their principal offices in Currituck and Camden Counties.  Additionally, the Service Agreements provide for arbitration in Currituck or Camden County, within the Northern Division of this judicial district.

## BACKGROUND

In support of this Petition, Petitioners respectfully show the Court as follows:

8.    As part of their work for Blackwater Security, each of Decedents executed an Independent Contractor Service Agreement ("Service Agreement").  True and accurate copies of each of the four Service Agreements, which are identical in all material respects, are attached hereto as Exhibits A-D.

9.    In the Service Agreements, Decedents expressly agreed to binding arbitration. Specifically, Section 20.1 of the Service Agreements requires that "any dispute regarding

interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association."

10.    Nordan, as ancillary administrator of the estates of Decedents, is bound by Section 20.1 of the Service Agreements.

11.    Decedents' written agreements to arbitrate are valid and enforceable and require Respondent to submit to binding arbitration all of Respondent's obligations and Petitioners' rights under the Service Agreements.

12.    Blackwater Security and Respondent have a dispute about Blackwater Security's rights under the Service Agreements, and about the Decedents' obligations under the Service Agreements.  Respondent filed a lawsuit on January 5, 2005, as ancillary administrator of the separate estates of the Decedents in the Superior Court of North Carolina in Wake County, alleging claims for wrongful death and seeking rescission of the Service Agreements (hereinafter, the "Lawsuit").  A true and accurate copy of the Complaint in the Lawsuit is attached hereto as Exhibit E.  The Lawsuit allegedly arises out of a March 31, 2004, incident in Fallujah, Iraq, in which Iraqi insurgents murdered the Decedents.  At the time of their ambush and brutal murders, Decedents were working for Blackwater Security in support of the U.S. Armed Forces in Iraq escorting a kitchen supply convoy to U.S. Army Camp Ridgeway.  (Ex. E ¶¶ 12, 59).

13.    By seeking rescission of the Service Agreements in the Lawsuit, Respondent denies that Decedents have any obligations, and that Blackwater Security has any rights, under the Service Agreements.  Blackwater Security maintains that it and its affiliates and employees, including Blackwater Lodge and Training Center, Inc., which is also a Defendant in the Lawsuit,

have legally valid and enforceable rights under the Service Agreements, including without limitation their right to be released from any and all claims by the Respondent as administrator of Decedents' estates, as well as the right not to have claims for wrongful death made, to keep Decedents' work confidential and out of the public domain, and to have Decedents assume all of the risks of their work in Iraq.

14.     Rescission of the Service Agreements, including rescission of the arbitration contracts in the Service Agreements, on grounds of fraud or otherwise, is for the arbitrators to decide.  As recently stated by the United States Supreme Court, "First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.  Third, this arbitration law applies in state as well as federal courts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. ____, 126 S. Ct. 1204, 1209 (2006); *accord Peoples Security Life Ins. v. Monumental Life Ins.*, 867 F.2d 809, 813-14 (4th Cir. 1989).

15.     The arbitration provision in the Service Agreements is enforceable by all Defendants in the Lawsuit because the claims brought against Defendants are based on the same operative facts, allege that the Defendants acted in concert, and are inherently inseparable from each other.  The Lawsuit in its entirety, including all claims therein, is a dispute covered by Respondent's valid and enforceable duty to arbitrate.

16.     Consistent with the terms of the Service Agreements, Blackwater Security has filed a Demand for Arbitration with the American Arbitration Association, a copy of which is attached as Exhibit F.

17.    Petitioners have not served any discovery requests in the Lawsuit. Petitioners have resisted Respondent's attempts to conduct discovery on the grounds not only that such discovery is contrary to the agreement to arbitrate, but also that such discovery in a North Carolina trial court unconstitutionally intrudes on the exclusive authority of the federal government to conduct military operations abroad. *See Tarble's Case*, 80 U.S. (13 Wall.) 397, 408 (1872) (U.S. military operates "without question from any State authority").

18.    Petitioners removed the Lawsuit to this District, the Lawsuit was remanded, and the Fourth Circuit decided it lacked appellate jurisdiction to review the remand.  On October 13, 2005, Petitioners filed an Amended Motion to Dismiss in the Lawsuit, in Wake County, including as grounds for dismissal the fact that Respondent's claim for rescission is subject to arbitration.   Both the Fourth Circuit and the Superior Court in Wake County entered orders staying consideration of Petitioners' Amended Motion to Dismiss, and all other proceedings, pending resolution of the remand issue, and said Motion has not been decided.  Accordingly, Respondent has been on notice for more than a year that his dispute with Petitioners is arbitrable.

19.    To date, Respondent has not initiated arbitration proceedings against Petitioners, and he continues to press his alleged claims in the state court lawsuit filed by Respondent in Wake County.  Respondent has resisted arbitration, and has repudiated the arbitration contracts by seeking rescission of the Service Agreements.

20.    Petitioners are entitled under Section 4 of the Federal Arbitration Act to an Order directing Respondent to proceed in Currituck or Camden County with binding arbitration of the Respondent's alleged claims.

## PETITION

21.    Petitioners incorporate by reference the allegations in paragraphs 1 through 20 of this Petition as though set forth fully herein.

22.    Section 4 of the Federal Arbitration Act (9 U.S.C. § 4) provides in pertinent part that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement....The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.   The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

23.    The Court would have jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, save for the arbitration provisions in the Service Agreements.

24.    Each of the Decedents entered into a Service Agreement, which contained a written agreement to arbitrate, and Respondent's claims as ancillary administrator of the Decedents' estates are subject to arbitration.

25.    Respondent continues to press his claims in the Lawsuit filed in Wake County and has not initiated any proceedings to arbitrate.  For example, subsequent to being served with Petitioner's Demand for Arbitration, Respondent served in the Lawsuit a Motion for Issuance of Commission for Taking of Out of State Deposition, requesting permission to depose a witness in Alaska before January 19, 2007.  This Motion was granted by the Superior Court of North Carolina (See Exhibit G), and the Superior Court of Alaska has ordered expedited consideration

of Respondent's motion to issue a subpoena for taking this deposition, indicating that it will consider Respondent's motion for a subpoena in the next week (See Exhibit H). Additionally, on December 18, 2006, Respondent served on Petitioners a Notice to Take Deposition, indicating their intent to conduct the deposition on January 10, 2007, and making forty-two (42) document requests in connection with this proposed deposition (See Exhibit I). Respondent's failure to comply with the arbitration provisions of Decedents' enforceable Service Agreements evidences his "failure, neglect or refusal" (9 U.S.C. § 4, *supra.*) to comply with the arbitration agreements.

26.    Petitioners are aggrieved by Respondent's failure, neglect or refusal to arbitrate in accordance with the terms of the Decedents' Service Agreements.

27.    There is no dispute concerning "the making of the agreement for arbitration" (*Id.*), and the state court lawsuit filed in Wake County asserts no allegations calling into question the arbitration provisions in the Service Agreements.

28.    For the foregoing reasons, Petitioners are entitled to an Order under Section 4 of the Federal Arbitration Act directing that Respondent proceed in this judicial district with arbitration in the manner provided for in Decedents' Service Agreements with Blackwater Security, and directing that such arbitration be held in Currituck or Camden County.

This the 20th day of December, 2006.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By:    /s/ Kirk G. Warner
           Kirk G. Warner
           North Carolina State Bar No. 16238
           Mark A. Ash
           North Carolina State Bar No. 13967
           Post Office Box 2611
           Raleigh, North Carolina 27602
           Telephone:    (919) 821-1220
           E-Mails:    kwarner@smithlaw.com
                    mash@smithlaw.com
           *Counsel for Petitioners Blackwater Security
           Consulting, LLC, & Blackwater Lodge and
           Training Center, Inc.*

EXHIBITS

Exhibit A -    Independent Contractor Service Agreement by and between Stephen S. Helvenston and Blackwater Security Consulting, LLC

Exhibit B -    Independent Contractor Service Agreement by and between Mike R. Teague and Blackwater Security Consulting, LLC

Exhibit C -    Independent Contractor Service Agreement by and between Jerko Gerald Zovko and Blackwater Security Consulting, LLC

Exhibit D -    Independent Contractor Service Agreement by and between Wesley J. K. Batalona and Blackwater Security Consulting, LLC

Exhibit E -    Complaint, <u>Richard P. Nordan v. Blackwater Security Consulting LLC, Blackwater Lodge and Training Center, Inc., Justin L. McQuown, and Thomas Powell</u>, No. 05CV00173 (Superior Court Division, Wake County, North Carolina)

Exhibit F -    AAA 'Demand for Arbitration' Cover Sheet Only; Memorandum in Support is "Confidential" under AAA rules, and available to the Court upon request

Exhibit G -    Order for Commission to Take Deposition, No. 05CV00173 (Superior Court Division, Wake County, North Carolina)

Exhibit H -    Order (Superior Court of Alaska, Third Judicial District) dated December 18, 2006

Exhibit I -    Notice to Take Deposition, No. 05CV00173 (Superior Court Division, Wake County, North Carolina)

2

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:06-CV-49-F

BLACKWATER SECURITY                    )
CONSULTING, LLC and BLACKWATER         )
LODGE AND TRAINING CENTER, INC.,       )
          Petitioners,                 )
                                       )
     v.                                )          O R D E R
                                       )
RICHARD P. NORDAN, as Ancillary        )
Administrator for the Separate Estates of )
STEPHEN S. HELVESTON, MIKE R.          )
TEAGUE, JERKO GERALD ZOVKO, and        )
WESLEY J. K. BATALONA,                 )
          Respondent.                  )

        This matter is before the court on a petition for order directing arbitration [DE-1] filed

by Petitioners Blackwater Security Consulting, LLC and Blackwater Lodge Training Center,

Inc. [collectively, "Blackwater"] and a motion to dismiss the petition [DE-6] filed by Richard

P. Nordan, as Ancillary Administrator for the separate estates of Stephen S. Helveston, Mike

R. Teague, Jerko Gerald Zovko and Wesley J. K. Batalona [collectively, "Decedents"].  These

matters are now ripe for disposition.

## I. BACKGROUND

        This matter arises out of four Independent Contractor Service Agreements ["Service

Agreements"] entered into by Blackwater and each of the Decedents.  Section 20.1 of the

Service Agreement provides:

> Contractor and BSC hereby agree that any dispute regarding interpretation or
> enforcement of any of the parties' rights or obligations under this Agreement
> shall be resolved by binding arbitration according to the rules of the American
> Arbitration Association and shall be conducted in Currituck or Camden
> County in North Carolina.

Petition [DE-1] Exs. A, B, C and D at § 20.1.  On March 31, 2004, Decedents were brutally

murdered in Fallujah, Iraq while working for Blackwater in support of the United States Armed Forces.

On January 5, 2005, Nordan filed an action in the Superior Court of North Carolina in Wake County alleging state law claims of fraud and wrongful death against Blackwater and Blackwater employees Justin L. McQuown and Thomas Powell. *See* Petition [DE-1] Ex. E. In the complaint, Nordan alleges that Decedents entered into the Service Agreements in reliance upon the representations of Blackwater and its employees that Decedents would be afforded certain protections, tools and information while working as security contractors in the Middle East. Although Decedents were working in hostile territory, Nordan alleges that Blackwater failed to provide the protective measures as promised. Nordan seeks relief, including compensatory damages for the wrongful death of Decedents, recision of the Service Agreements and punitive damages.

On January 24, 2005, Blackwater removed the action to the Eastern District of North Carolina on the basis of federal question jurisdiction. The action was remanded on August 11, 2005, by Chief United States District Court Judge Louise Flanagan and on August 24, 2006, the Fourth Circuit Court of Appeals concluded that it lacked appellate jurisdiction to review the remand. Pending review of the remand issue, the proceedings in Superior Court were stayed, including consideration of a motion to dismiss filed by Blackwater.

On November 27, 2006, the Superior Court lifted the stay imposed during appellate review of the remand order. Since the stay was lifted, the Superior Court has not ruled on Blackwater's motion to dismiss, but has allowed a motion by Nordan to proceed in discovery with the deposition of a witness in Alaska.

On December 14, 2006, Blackwater initiated an arbitration in Currituck County, North Carolina against Nordan. *See* Petition [DE-1] at Ex. F. Six days later, Blackwater filed a

petition in this court seeking an order pursuant to Section 4 of the Federal Arbitration Act ["FAA"], 9 U.S.C. § 4, directing Nordan to proceed with arbitration in accordance with the terms of the Service Agreements. Nordan subsequently filed a motion to dismiss the petition, arguing that the court must abstain from consideration of the matter on the basis of *Colorado River Water Conservation District v. United States*, 420 U.S. 800 (1976). In the alternative, Nordan maintains that Blackwater's petition must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(6) and 13(a) because Blackwater's claim is a compulsory counterclaim to the pending state action.

On April 13, 2007, Superior Court Judge Donald Stephens granted a motion for a temporary restraining order enjoining the parties from further participating in the arbitration proceedings.

Blackwater's petition and Nordan's motion to dismiss are now ripe for disposition.

## II. MOTION TO DISMISS

### A. Standard

An action will be dismissed for failing to state a claim if it appears that the plaintiff can prove no set of facts that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When reviewing a motion to dismiss, the court assumes the facts alleged in the complaint are true, *see McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996), and construes the allegations in the light most favorable to the pleader. *See Scheur v. Rhodes*, 416 U.S. 232, 236 (1974).

In his motion to dismiss, Nordan maintains that Blackwater's petition must be dismissed on the following grounds: (1) the court must abstain from consideration of the petition on the basis of *Colorado River* abstention; and (2) Blackwater's petition must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(6) and 13(a) because

the claim is a compulsory counterclaim to the pending state action.

**B. *Colorado River* Abstention**

The court is not persuaded by Nordan's argument that the court should abstain from exercising jurisdiction in this action under the doctrine articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Colorado River* abstention is appropriate "in exceptional circumstances where a federal case duplicates contemporaneous state proceedings and wise judicial administration . . . clearly favors abstention." *Vulcan Chem. Tech., Inc., v. Barker*, 297 F.3d 332, 340-41 (4th Cir. 2002) (internal quotations omitted). Prior to considering whether *Colorado River* abstention is appropriate, there is a threshold requirement of parallel proceedings in state and federal court. Once the requirement is met, the following six factors are used in analyzing whether abstention is appropriate:

> (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Id.* at 341. Here, the court concludes that even if the federal and state court actions can be considered parallel, application of these six factors does not counsel in favor of abstention.

The first factor is not relevant because this dispute does not involve property. The second factor does not weigh in favor of abstention because both the federal court and the state court are located in North Carolina. Nordan argues that the federal forum is inconvenient because this court is likely to require arbitration in New York. This argument is unpersuasive, as the Service Agreements provide that arbitration must take place in North Carolina.

With respect to the third factor, Nordan maintains that an order compelling arbitration would result in piecemeal litigation. The court finds that this factor does not counsel in favor of abstention. Even if an order compelling arbitration would create piecemeal litigation, "[t]hat misfortune . . . is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)(emphasis in original). Here, it is not the interplay of the parallel federal and state actions that could result in piecemeal litigation, but the arbitration provision in the Service Agreements. As such, any risk of piecemeal litigation does not weigh in favor of abstention. *See Eastern Associated Coal Corp. v. Skaggs*, 272 F. Supp. 2d 595, 600 (S.D.W.Va. 2003).

The fourth factor requires consideration of the order in which the courts obtained jurisdiction and the progress achieved in each action. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21.

Nordan instituted the state court action on January 5, 2005, almost two years before the instant petition was filed in federal court on December 20, 2006. As described above, the state court action was stayed until November 27, 2006. Since removal of the stay, the state court has allowed limited discovery and entered a temporary restraining order preventing further steps toward arbitration. The state court has not ruled on Blackwater's motion to dismiss, which includes as grounds for dismissal the fact that Nordan's claim for recision is subject to arbitration. Analyzing these circumstances from a practical perspective, the state court action was initiated first, but has not progressed on the issue of arbitration. Consequently, it does not appear that the fourth factor weights in favor of abstention.

Moreover, abstention by this court could delay arbitration of this matter and subvert "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22 (holding that abstention by a district court "frustrated the statutory policy of rapid and unobstructed enforcement of arbitration agreements").

The fifth factor concerns whether state or federal law provides the rule of decision on the merits. The instant action is governed by both North Carolina law and the FAA. Although "the presence of state-law issues may weigh in favor of . . . surrender [of jurisdiction]," the Supreme Court has provided that "the presence of federal-law issues must always be a major consideration weighing *against* surrender." *Id.* at 26 (emphasis added). Consequently, because the FAA is applicable, this factor does not weigh in favor of abstention.

Finally, the court must consider the adequacy of the state proceeding in protecting the parties' rights. Here, there is room for doubt concerning the state court's ability to compel arbitration, as the state court has allowed limited discovery before ruling on the arbitration issue. This factor, therefore, weighs against abstention.

Having carefully considered the parties' motions and the applicable law, the court concludes that *Colorado River* is not appropriate in this action and Nordan's motion to dismiss on this basis is DENIED.

## C. Compulsory Counterclaim

Nordan also seeks dismissal of Blackwater's petition pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(6) and 13(a) on the grounds that the FAA petition constitutes a compulsory counterclaim in the pending state action. Nordan has not cited, nor can the court find, any legal precedent in support of this argument. Consequently, Nordan's motion to

dismiss the petition on this basis is DENIED.

### III. PETITION

The court now turns to Blackwater's petition seeking relief pursuant to § 4 of the FAA, which provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. The FAA itself does not create an independent basis for federal jurisdiction. *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 26 n. 32. Accordingly, in examining an FAA petition, the court must first consider the issue of subject matter jurisdiction.

The court concludes that it would have jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this is a civil matter between citizens of different states wherein the amount in controversy exceeds $75,000. Specifically, Blackwater Security Consuling, LLC and Blackwater Lodge Training Center, Inc. are both organized under the laws of the State of Delaware, with principal places of business in North Carolina. Nordan is a resident of North Carolina and the Decedents were, at the time of death, residents of California, Hawaii, Tennessee and Ohio. There is complete diversity of citizenship, as Nordan's personal citizenship as administrator is disregarded. *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent"). The parties do not dispute that the amount in controversy exceeds $75,000, therefore the court has subject matter jurisdiction over this action.

Having concluded that jurisdiction is proper, the court must next determine whether

to stay the instant proceedings and direct the parties to proceed to arbitration in accordance

with the Service Agreements.[1]  A petitioner can compel arbitration by establishing:

> (1) the existence of a dispute between the parties, (2) a written agreement that
> includes an arbitration provision which purports to cover the dispute, (3) the
> relationship of the transaction, which is evidenced by the agreement, to
> interstate or foreign commerce, and (4) the failure, neglect or refusal of the
> defendant to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Whiteside v. Teltech*

*Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

The court finds that Blackwater has satisfied each of these four factors.  The first factor

has been met, as there is undoubtedly a dispute between the parties.  Second, as described

above, there are written Service Agreements purporting to cover the dispute that include an

arbitration provision providing that "any dispute regarding interpretation or enforcement of

any of the parties' rights or obligations under this Agreement shall be resolved by binding

arbitration."  A written arbitration provision "shall be valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract."  9

U.S.C. § 2.

The court is not persuaded by Nordan's argument that this action is not subject to

arbitration because "this federal proceeding concerns an attempt to enforce a contractual

provision of a contract which itself is the subject of a fraud in the inducement cause of action

in state court that could render the entire contract rescinded."  Mem. in Support of Mot. to

Dimiss [DE-7] at p. 6.  The fact that Nordan has filed a claim fraud in the inducement claim in

state court is no bar to arbitration proceedings.

In both state and federal court, "an arbitration provision is severable from the

---

[1]The court declines to hold a jury trial or hearing before issuing the instant order, as
there are no disputed issues of material fact concerning the merits of arbitrability.

issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). Here, Nordan does not allege fraudulent inducement of the arbitration clause itself, but alleges fraud in the inducement of the Service Agreements generally. In this circumstance, the issue of fraud in inducement must be considered by the arbitrator, not a state or federal court. See *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 813-14 (4th Cir. 1989)(examining Supreme Court precedent and noting that a claim of "fraud in the inducement of the contract generally" is an issue "for the arbitrator").

Finally, the court also finds that there is no dispute as to the third and fourth factors required to compel arbitration. As to the third factor, the transaction between Blackwater and Decedents related to interstate or foreign commerce. As the fourth factor, it is plain that Nordan has refused to arbitrate the dispute by seeking recision of the Service Agreements in state court.

The court therefore finds that Blackwater has established the requisite factors in favor of compelling arbitration in this case and concludes that "a valid agreement to arbitrate exists between the parties and covers the matter in dispute." *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999). In this circumstance, "the FAA commands the federal courts to stay any ongoing judicial proceedings . . . and to compel arbitration." *Id.*; see 9 U.S.C. § 3 (providing that a court must stay any suit "referable to arbitration under an agreement in writing for such arbitration."). "This stay-of-litigation provision is mandatory. A district court therefore has no choice but to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500. Accordingly, the court finds that this matter must be stayed and the parties directed to proceed with

9

arbitration in accordance with the Service Agreements.[2]

### IV. CONCLUSION

Based upon the foregoing , it is therefore ORDERED that:    .

1. Blackwater's petition for order directing arbitration [DE-1] is ALLOWED and the parties are ORDERED to proceed with arbitration in the manner provided for in the Service Agreements.

2. This action is STAYED pending completion of the required arbitration.

3. Nordan's motion to dismiss [DE-6] is DENIED.

SO ORDERED.

This the 20 day of April, 2007.

James C. Fox
Senior United States District Judge

---

[2]The court declines to allow Blackwater's request to enter a stay of the underlying state court action as this court "believes that the parties and the [state court] will likely conform their conduct to the expectations of law." *United Service Protection Corp. v. Lowe*, 354 F. Supp. 2d 651, 659 (S.D.W.Va. 2005) (internal citations omitted).