IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:05-CV-48-FL(1)

FILED
JAN 2 4 2005
L. CLERK
DISTRICT COURT, EDNC
BY_____ DEP. CLK

RICHARD P. NORDAN, as Ancillary )
Administrator for the separate Estates of )
STEPHEN S. HELVENSTON, MIKE R. )
TEAGUE, JERKO GERALD ZOVKO and )
WESLEY J. K. BATALONA, )
                                        )
            Plaintiff, )
                                        )     NOTICE OF REMOVAL
    v.                                  )
                                        )
BLACKWATER SECURITY )
CONSULTING, LLC, a Delaware Limited )
Liability Company; BLACKWATER )
LODGE AND TRAINING CENTER, INC., )
a Delaware Corporation, JUSTIN L. )
McQUOWN, an individual; and THOMAS )
POWELL, an individual, )
                                        )
            Defendants. )

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants Blackwater Security Consulting, LLC, Blackwater Lodge and Training Center, Inc., Justin L. McQuown, and Thomas Powell ("Defendants") file this Notice of Removal to remove civil action 05-CVS-000173 from the Superior Court of North Carolina to the United States District Court for the Eastern District of North Carolina.

1.   On January 5, 2005, Plaintiff filed a Complaint in the Superior Court of Wake County, North Carolina in the civil action *Richard P. Nordan, et al. v. Blackwater Security Consulting, LLC, et al.*, case 05-CVS-000173. A true and correct copy of all process, pleadings, and orders of said civil action are attached hereto as Exhibit A.

2. The Complaint purports to present two claims: Wrongful Death and Fraudulent Misrepresentation in Contract. Plaintiff seeks to hold Defendants liable for the murders of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (hereinafter "Decedents") by Iraqi insurgents in Iraq, while the Decedents were providing security services in support of the United States Armed Forces in Iraq.

3. Plaintiff's pleadings do not state that a federal question exists or inform the Court of certain facts. However, applicable law under the facts of this case mandates that this Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331. Removal is therefore proper. 28 U.S.C. §§ 1331 and 1441.

4. The summons and complaint were served first upon Defendant Blackwater Lodge and Training Center, Inc. on January 11, 2005. Because this Notice of Removal is filed within thirty (30) days after service of the summons and complaint upon the first-served defendant, it is timely under 28 U.S.C. § 1446(b).

## FACTUAL BACKGROUND

5. Kellogg Brown & Root, Inc. ("KBR") provides services to the United States Armed Forces and other U.S. agencies in Iraq and Kuwait pursuant to contract. ESS Support Services Worldwide, Eurest Support Services (Cyprus) International Ltd. ("ESS"), KBR's subcontractor, provides catering, design, and build support services to the United States Armed Forces and other United States contracting agencies in Iraq and Kuwait. ESS subcontracted some of these services to Regency Hotel & Hospital Company ("Regency").

6. On March 12, 2004, Regency entered into an Agreement for Security Services, in support of its contract with ESS, with Blackwater ("Primary Agreement").

7. Under the Primary Agreement, Blackwater supported the United States Armed Forces and other United States contracting agencies by providing "certain security services in support" of Regency's and ESS' contracts with the United States.

8. Blackwater is a subcontractor to the United States Armed Forces.

9. Among other relevant provisions, Article 6.1.2 of the Primary Agreement requires Blackwater "to maintain Defense Base Act ('DBA') insurance on all of its employees working in the provision of Security Services."

10. Blackwater maintained DBA insurance on behalf of the Decedents, among others.

11. Blackwater provided Security Services in support of the United States Armed Forces pursuant to the Primary Agreement.

12. Decedents agreed to provide certain of those Security Service obligations in Iraq.

13. The agreements governing the relationship between Blackwater and each Decedent were identical in all pertinent respects.

14. Iraqi insurgents in Fallujah, Iraq murdered Decedents on March 31, 2004 while Decedents were providing Security Services in support of the Unites States Armed Forces, pursuant to the Primary Agreement.

15. The Security Services provided by Decedents at the time they were murdered were identical in all pertinent respects.

16. Decedent Helvenston's widow, Ms. Patricia Irby, filed a Claim for Death Benefits under the DBA with the Department of Labor ("DOL") on April 23, 2004. Benefits in excess of $1,000 per week have been paid and continue to be paid.

17.     Decedent Batalona's widow, June Batalona, filed a Claim for Death Benefits with DOL prior to May 10, 2004. Benefits in excess of $1,000 per week have been and continue to be paid.

18.     Decedent Teague's widow, Rhonda Teague, has not yet filed a Claim for Death Benefits. Nonetheless, Death Benefits in excess of $1,000 per week have been paid and continue to be paid, in light of the statutory obligation to make such payments in the absence of a valid basis to controvert or deny DBA coverage.

19.     Decedent Zovko had no statutory beneficiaries. On October 18, 2004, the District Director, Office of Workers' Compensation Programs, Division of Longshore and Harbor Workers' Compensation, determined in its Compensation Order, Award of Compensation that Mr. Zovko "while performing service as an employee for the employer, sustained injuries resulting in his death and that such death comes within the purview of the above Act." Pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), a statutory payment of $5,000 was made to the Special Fund.

20.     The other Decedents performed the same services under the same relationship with Blackwater as Decedent Zovko had. Consequently, a similar determination of coverage under the LHWCA and DBA in those cases is expected from the DOL, although the award of Compensation will differ because the other Decedents have statutory beneficiaries.

**COMPLETE PREEMPTION**

21.     The DBA extends the LHWCA to provide an exclusive and comprehensive scheme of compensation for "the injury or death of any employee engaged" in certain listed forms of employment.[1] 42 U.S.C. §§ 1651(a) and 1651(c); 33 U.S.C. § 905(a).

---

[1] Except as modified within the DBA, the provision of the LHWCA, as amended, 33 U.S.C. § 901 *et seq.*, "shall apply." 42 U.S.C. § 1651(a)

22. Section 1651(a)(4) specifically notes that DBA shall apply with respect to the injury or death of any employee who works "under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States)" and for those who work under "any subcontract, or subordinate contract with respect to such contract."

23. The Primary Agreement falls within the DBA because it is a subordinate contract with respect to a contract entered into with the United States to provide services outside the continental United States. 42 U.S.C. § 1651(a).

24. Decedents all worked in support of Blackwater's obligation to provide Security Services, pursuant to the Primary Agreement.

25. The DBA and LHWCA provide the exclusive means by which "an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor)" may be held liable for injuries or death arising out of employment covered under the DBA. 42 U.S.C. §§ 1651(a) and 1651(c); 33 U.S.C. § 905(a).

26. This liability is exclusive, and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor. *Id.*

27. This exclusivity of remedy further extends to injuries or death alleged to be attributable to "the negligence or wrong of any other person or persons in the same employ." 33 U.S.C. 933(i).

28. DOL already entered a Compensation Order with respect to Decedent Zovko.

29. A compensation award under the DBA is exclusively committed to the jurisdiction of the DOL or a federal Administrative Law Judge. 33 U.S.C. § 919.

30.     Appeal of any such award is committed exclusively to the federal Benefits Review Board, 33 U.S.C. § 921(b), and reviewable only in a United States Court of Appeals. *Id.* § 921(c).

31.     Federal district courts have exclusive jurisdiction to hear proceedings to either: (a) compel enforcement of a Compensation Order, *id.* § 921(d); or (b) enjoin a compensation order made pursuant to the DBA. 42 U.S.C. § 1653(b) (such proceedings "*shall* be instituted in the United States district court").

32.     Congress established the DBA to "provide uniformity and certainty in availability of compensation for injured employees" in select employment contexts outside the United States. *Davila-Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 468 (1st Cir. 2000).

33.     The question whether the LHWCA or DBA applies and provides an exclusive remedy is "exclusively a federal question which Congress never intended for state courts to resolve." *See In re CSX Transportation Inc.*, 151 F.3d 164, 167 (4th Cir. 1998).

34.     Plaintiff's claims seek to hold Defendants liable under state common law for deaths arising out of employment covered under the DBA and are completely preempted by the DBA. *See Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 232–233 (4th Cir. 1993) (preemption transforms a state-law complaint into a complaint stating a federal claim for purposes of the well-pleaded complaint rule).

35.     Consequently, removal is proper pursuant to 28 U.S.C. §§ 1331, 1441, 1367, and 1446.

### PLAINTIFF'S CLAIMS IMPLICATE IMPORTANT FEDERAL INTERESTS

36.     Even aside from the preemptive effect of the DBA, Plaintiff's claims directly implicate unique federal interests in the utilization of and reliance on contractors and

subcontractors, residents of all states, who support the United States Armed Forces and other United States agencies in a foreign war zone.

37. The efforts of the United States Armed Forces in Iraq depend on, and are supported by, an unprecedented level of work contracted to private companies by the Federal Government -- and its contractors' subcontractors.

38. Furthermore, the interests of the United States flow directly from the sovereign to the subordinate contractors who carry out the government's interests in the critical and hazardous environment of a war zone. An independent contractor performing its obligation under a government contract or subcontract implicates the same interests in getting the Government's work done as if done directly by the Government.

39. If state law were applied to the claims in this case, uniquely federal interests would be frustrated. Indeed, it would result in a direct and significant conflict with the objectives of federal policy and applicable federal legislation.

40. DBA completely preempts state law. Even if it did not, it reveals that Congress intended to avoid the possibility of state law inconsistencies in assessing claims for injury or death incurred in the course of work on behalf of the United States "performed outside the continental United States." 42 U.S.C. § 1651(a)(4); *see also* 42 U.S.C. § 1651(c); 33 U.S.C. § 905(a).

41. Moreover, if, despite DBA coverage, contractors and subcontractors could nonetheless be required to defend themselves in state courts under state tort law, and potentially be held liable for state tort claims for harms covered by the DBA, the Federal Government will be directly and adversely affected.

42. Blackwater, as well as other contractors supplying similar services in war zones, would be forced to either discontinue providing such services or prohibitively increase the cost of such contracts to the Government.

43. Such interests are so important that the federal common law supplants state law, irrespective of Congress' intent to preempt the field, and provides an independent basis for federal jurisdiction.

44. Consequently, removal is proper due to the aforementioned substantial and unique federal interests pursuant to 28 U.S.C. §§ 1331, 1441, 1367, and 1446.

### THE REMAINING REMOVAL PREREQUISITES HAVE BEEN SATISFIED

45. As required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Superior Court of Wake County, North Carolina and served upon Plaintiff's counsel.

46. All properly joined and served Defendants join in this removal.[2]

47. Defendants have not sought similar relief.

48. The prerequisites for removal under 28 U.S.C. § 1441 have been met.

49. The allegations of this Notice are true and correct and within the jurisdiction of the United States District Court for the Eastern District of North Carolina, and this case is removable to the United States District Court for the Eastern District of North Carolina.

50. If any question arises as to the propriety of the removal of this action, the Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is proper for removal.

---

[2] See Exhibit B. Defendant Thomas Powell has not been served. By filing this notice of removal, no defendant waives service or submits to the personal jurisdiction of this Court.

WHEREFORE, the Defendants, desiring to remove this case to the United States District Court for the Eastern District of North Carolina, Western Division, being the district and division of said Court for the County in which said action is pending, pray that the filing of this Notice of Removal shall effect the removal of said suit to this Court.

This the 24th day of January, 2005.

                                    WILEY REIN & FIELDING LLP

By: _____
     Fred. F. Fielding
     D.C. Bar No. 099296
     Margaret A. Ryan
     CO Bar No. 034687
     1776 K Street NW
     Washington, DC 20006
     (202) 719-7000 (O)
     (202) 719-7049 (F)

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP

By: _____
     Kirk G. Warner
     N.C. State Bar No. 16238
     Mark A. Ash
     N.C. State Bar No. 13967
     P.O. Box 2611
     Raleigh, North Carolina 27602
     (919) 821-1220 (O)
     (919) 821-6800 (F)

*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing in the above-entitled action upon all other parties to this cause by U.S. Mail, addressed to the following parties:

> David F. Kirby
> William B. Bystrynski
> Kirby & Holt, LLP
> Post Office Box 31665
> Raleigh, North Carolina 27622
>
> Daniel J. Callahan
> Brian J. McCormack
> Marc P. Miles
> Callahan & Blaine, APLC
> 3 Hutton Centre Drive, Suite 900
> Santa Ana, California 92707
> *Attorneys for Plaintiff*

This the 24th day of January, 2005.

Kirk G. Warner

WRFMAIN 12290498.1