

2005 WL 3783349 (C.A.4)                                                              Page 1

**(Cite as: 2005 WL 3783349)**

United States Court of Appeals,Fourth Circuit.
BLACKWATER SECURITY CONSULTING, LLC, et al., Defendants - Appellants,
v.
NORDAN, Plaintiff- Appellee.
No. 05-1949.
October 31, 2005.

Nos. 05-2033 and 05-2034
On Notice of Appeal of A Judgment of the United States District Court for the
Eastern District of North Carolina

Brief for Appellants

Greenberg Traurig, LLP, C. Allen Foster, Michael P. Socarras, Joe R. Reeder, 800 Connecticut Avenue, NW, Washington, D.C. 20006, (202) 331 - 3100, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Kirk G. Warner, Mark A. Ash, P.O. Box 2611, Raleigh, North Carolina 27602, (919) 821-1220, Attorneys for Black water Security, Consulting, LLC, & Blackwater Lodge and Training Center, Inc.Powell & Goldstein, LLP, William C. Crenshaw, Ralph J. Caccia, Don R. Berthiaume, 901 New York Avenue, NW, Washington, DC 20001 4413, (202) 624-0066, Cranfill, Sumner & Hartzog, LLP, Patricia L. Holland, Rachel Esposito, 225 Hillsborough Street, Raleigh, North Carolina 27808, Tel: (919) 828-5100, Attorneys for Justin L. McQuown.

**\*i** *TABLE OF CONTENTS*

JURISDICTIONAL STATEMENT ... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ... 2

STATEMENT OF THE CASE ... 2

STATEMENT OF FACTS ... 6

SUMMARY OF ARGUMENT ... 9

ARGUMENT ... 11

  I THE REMAND ORDER SHOULD BE REVERSED BECAUSE ITS CONCLUSION THAT FEDERAL QUESTION JURISDICTION WAS LACKING RESTED ON THE ERRONEOUS ANTECEDENT THAT REMOVAL RIGHTS DERIVE SOLELY FROM 28 U.S.C. § 1441 ... 11

  II. THE DISTRICT COURT ERRED BY EXCEEDING ITS AUTHORITY WHEN IT REMANDED AN LHWCA COVERAGE ISSUE IN DISREGARD OF THIS COURT'S HOLDING IN *SHIVES* ... 15

  III. THE DISTRICT COURT ERRONEOUSLY DENIED APPELLANTS THEIR RIGHTS TO IMMUNITY BY REFUSING TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) ... 19

   A. The DBA Applies to Decedents' Deaths ... 19


   B. Where As Here The DBA Applies, Appellants Are Immune From Liability Lawsuits In Any Court ... 24

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*ii  IV. THE JUDICIARY MAY NOT IMPOSE STANDARDS ON THE MANNER IN WHICH THE PRESIDENT OVERSEES AND COMMANDS THE PRIVATE COMPONENT OF THE TOTAL FORCE IN FOREIGN MILITARY OPERATIONS ... 27

CONCLUSIONS ... 30

*iii* TABLE OF AUTHORITIES

CASES

Akin v Big Three Industries, Inc., 851 F.Supp. 819 (E.D Tex. 1994) ... 13

Askir v. Brown & Root Sers. Corp., No. 95 Civ. 11008(JGK), 1997 WL 598587, (S.D.N.Y. Sept. 23, 1997) ... 29

Baker v. Carr, 369 U.S. 186 (1962) ... 28. 29

Bentzlin v Hughes Aircraft Co., 833 F.Supp. 1486 (C.D.Calif. 1993) ... 28

Borneman v. United States, 213 F.3d 819 (4th Cir 2000) ... 1, 11, 16

Boyle v. United Technologies Corp, 487 U S. 500 (1988) ... 29

Brady, v. Roosevelt S.S. Co., 317 U.S 575 (1943) ... 26

Brown v. American-Hawaiian S.S. Co, 211 F.2d 16(3d Cir. 1954) ... 25

Carr v. United States, 422 F.2d 1007 (4th Cir. 1970) ... 26

Colon v. United State Dept. of the Navy, 223 F.Supp.2d 368 (D.P.E. 2002) ... 25

Compare Fisher v. Halliburton, No. H-05-1731, Mem. and Order (S.D.Tex. July 1, 2005) (2005 WL 1562411) ... 20, 23

Crowell v. Benson, 285 U.S. 22 (1932) ... 21

Davila-Perez v Lockheed Martin Corp., 202 F.3d 464 (1st Cir. 2000) ... 25

*iv* El-Shifa Pharmaceutical Industries Co v. United States, 378 F.3d 1346 (Fed.Cir. 2004) ... 27

Etheridge v. Norfolk & Western Ry Co, 9 F.3d 1087 (4th Cir 1993). ... 17

Feres v. United States, 340 U.S. 135 (1950) ... 7, 29

Flying Tiger Lines, Inc. v. Landy, 70 F 2d 46 (9th Cir. 1966) ... 21, 22

Ghotra v. Bandila Shipping, Inc., 113 F 3d 1050 (9th Cir. 1997). cert. demed, 522 U.S. 1107(1998) 20.21

Gilligan v Morgan, 413 US 1(1973) ... 28

Greene v Citigroup, Inc., 215 F.3d 1336, 2000 WL 647190 (10th Cir) ... 13

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4)  Page 3
**(Cite as: 2005 WL 3783349)**

*Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365 (1990) ... 17

*Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329 (11 Cir. 2003) ... 29

*In re CSX Transp., Inc.,* 151 F.3d 164 (4th Cir. 1998) ... 1

*Jamison v. Wiley,* 14 F.3d 222 (4th Cir. 1994) ... 1

*Kollias v. D&G Marine Maintenance,* 29 F.3d 67 (2d Cir. 1994), *cert. denied,* 513 U.S. 1146 (1995) ... 21

*Lee v. Boeing Co.,* 123 F.3d 801 (4th Cir. 1997) ... 18, 19, 25

*Magnin v. Teledyne Continental Motors,* 91 F.3d 1424 (11th Cir. 1996) ... 13

*Mangold v Analytic Servs., Inc.,* 77 F 3d 1442 (4th Cir. 1996) ... 19

*v *Marra Bros. v Cardillo,* 154 F.2d 357 (3d Cir. 1946) ... 23

*Mesa v California,* 489 US 121 (1989) ... 12

*Mitchell v. Forsyth,* 472 U.S. 511 (1985) ... 1

*Morton v Mancari,* 417 U.S. 535 (1974) ... 17

*Nauert v Ace Properties and Cas. Ins Co,* Slip Copy. 2005 WL 2085544 (D.Colo. Aug. 27, 2005) ... 25

*Northeast Marine Terminal Co., Inc v Caputo,* 432 U.S 249 (1977) ... 20

*Pack v AC and S, Inc,* 838 F Supp. 1099 (D.Md. 1993) ... 13

*Peterson v Blue Cross/Blue Shield of Texas,* 508 F.2d 55 (5th Cir 1975) ... 12

*Poss v. Lieberman,* 299 F.2d 358 (2d Cir.), *cert. denied.* 370 U S. 944 (1962) ... 13

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706(1996) ... 1

*Republic Aviation Corp. v. Lowe,* 69 F.Supp. 472 (S.D.N.Y. 1946), *aff'd,* 164 F 2d 18 (2d Cir 1947) ... 22

*Richmond Screw Anchor Co. v. United States,* 275 U.S. 331 (1928) ... 26

*Robin v. Sun Oil Co.,* 548 F.2d 554 (5th Cir. 1977) ... 25

*Ross v. DynaCorp.,* 362 F.Supp.2d 344 (D.D.C. 2005) ... 25

*Smither & Co. v. Coles,* 242 F.2d 220 (D.C. Cir. 1957) ... 25

*vi *Shives v. CSX Transportation,* 151 F.3d 164 (4th Cir. 1998) ... Passim

*Sparks v. Wyeth Laboratories, Inc.,* 431 F.Supp. 411 (W.D.Okla. 1977) ... 26

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4)                                                                                         Page 4
**(Cite as: 2005 WL 3783349)**

*Stale ex rel. Falkner v. National Bank of Commerce,* 290 F.2d 229 (5th Cir. 1961) ... 13

*State Ivory,* 906 F 2d 999 (4th Cir. 1990) ... 13

*Watson v Philip Morris Cos., Inc.,* 420 F.3d 852 (8th Cir. 2005) ... 13

*Willingham v. Morgan,* 395 U.S. 402 (1969) ... 12, 13, 15

*Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387 (5th Cir. 1998) ... 13

STATUTES

Defense Base Act. 42 U.S.C. § 1651, *et seq* ... 14, 19

Longshore and Harbor Workers' Compensation Act. 33 U.S.C. § 901, *et seq* ... 1

28 U.S.C. § 1291 ... 1

28 U.S.C. § 1331 ... 12

28 U.S.C. § 1441 ... Passim

28 U.S.C. § 1442 ... Passim

28 U.S.C. § 1446 ... 12

28 U S.C. § 1447 ... 1, 4, 6, 17, 29

42 U.S.C. § 247b(k) ... 26

42 U S.C. § 1653 ... 15

**\*vii** 46 U S.C. § 745 ... 26

48 U.S.C. § 1498(a) ... 26

INSTRUCTION

DoD Instruction 3020.37 (Nov 6. 1990) (revised Jan. 26, 1996) ... 6, 27

RULES

Fed.R.App.P. 8 ... 6

Fed.R.Civ.P 9(b) ... 3, 5, 6

Fed.R.Civ.P 12(b)(6) ... 3, 4, 5, 6, 16

**\*1** *JURISDICTIONAL STATEMENT*

The District Court had removal jurisdiction under 28 U.S.C. § 1442(a)(1). This

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4)                                                                      Page 5
**(Cite as: 2005 WL 3783349)**

Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court entered a final Order, Appellants' Appendix at 35 (" App." ), that ended proceedings below by remanding the case to state court, Quackenbush v Allstate Ins. Co., 517 U.S. 706, 715 (1996), and that conclusively denied Appellants' right to immunity, and to federal adjudication of their immunity claim, by denying their motions to dismiss. Mitchell v. Forsyth, 472 U.S. 511, 525 (1985); Jamison v Wiley, 14 F.3d 222, 234 (4th Cir. 1994). Section 1447(d), Title 28, United States Code, does not bar appellate jurisdiction because coverage questions under the Defense Base Act (" DBA" ), 42 U.S.C. § 1651 et seq., and the Longshore and Harbor Workers' Compensation Act (" LHWCA" ), 33 U.S.C. § 901 et seq., are reviewable as conceptual antecedents to a remand order Borneman v United States, 213 F.3d 819 (4th Cir. 2000); In re CSX Transp, Inc., 151 F.3d 164, 167 (4th Cir. 1998) (" *Shives*" ). The Judgment was entered on August II, 2005. App at 35 Notices of appeal were timely filed on August 30 and September 9, 2005 App. at 8 and 11.[FN1]

>   FN1. Appellate jurisdiction issues have been briefed in No. 05-2033 in Appellants Blackwater Security Consulting, LLC's and Blackwater Lodge and Training Center, Inc.'s Response to Appellee's Motion to Dismiss for Lack of Appellate Jurisdiction, and in No. 05-2034 in Appellant Justin L. McQuown's Response to Appellee's Motion to Dismiss for Lack of Appellate Jurisdiction

*STATEMENT OF ISSUES PRESENTED FOR REVIEW*

1. Whether the District Court erred by exceeding its authority when it remanded to a state court the issue of whether Appellants are immune from liability under the DBA for the deaths of persons engaged in official duties. under federal contracts, to protect the supply lines of the U.S Armed Forces in Iraq.

2. Whether the District Court erred by refusing to dismiss a wrongful death and fraud action arising from battlefield casualties sustained by DBA insureds providing an armed escort, under federal contracts, for wartime supply trucks bound for U.S. Army Camp Ridgeway in Iraq, designated by the Secretary of Defense as official duties in support of the Coalition Provisional Authority.

*STATEMENT OF THE CASE*

On January 5, 2005, Plaintiff-Appellee Richard P. Nordan (" Nordan" ), as ancillary administrator for the separate estates of Stephen S. Helvenston, Mike R Teague, Jerko Gerald Zovko and Wesley J.K. Batalona (the " Decedents" ), filed a Complaint in the North Carolina General Court of Justice, Superior Court Division, in Wake County, against Defendants-Appellants Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. (collectively, " Blackwater" ). and Defendant-Appellant Justin L. McQuown (" McQuown" ) and Thomas Powell (the " Complaint" ).[FN2] According to the Complaint, enemy insurgents ambushed and killed the Decedents, burned their bodies and hung two from a bridge over the Tigris River, while the Decedents were escorting a supply convoy through the city of Fallujah to U.S. Army Camp Ridgeway. Compl. „„ 17, 61 App at 53-54 It alleges causes of action for wrongful death and fraud, seeks damages in an unspecified amount, and demands a jury trial. Compl. „„ 68, 94 and Prayer 10. App. at 68. 76. 78.

>   FN2. Thomas Powell was voluntarily dismissed on April 12, 2005. The Complaint alleges that the Decedents " were at no relevant time employees" of Blackwater, Compl. „31, App. at 57 which is critical to this case. The DBA provides exclusive federal benefits under the LHWCA " in respect to the injury or death of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

any *employee* engaged in any employment" described in 42 U.S.C. § 1651(a)(1)-(6) (emphasis added). Thus the Complaint, while studiously avoiding a citation to federal law, as it must, pleads that the DBA is not applicable on the ground that Decedents were not employees.

On January 24, 2005, all Defendants filed a Notice of Removal asserting immunity from suit in any court on the grounds that the United States Department of Labor has determined that the Decedents were employees of Blackwater. Notice of Removal ¶¶ 16-20, App. at 3940, and that the DBA and LHWCA are exclusive of any other liability. Notice of Removal ¶ 25, App. at 41. On January 31, 2005, Blackwater filed a Motion to Dismiss in the District Court pursuant to Rules 12(b)(6) and 9(b), Fed.R.Civ.P., on the grounds, *inter alia,* that the DBA excludes any other liability, and that Nordan's fraud allegations lacked the required specificity McQuown also moved to dismiss pursuant to Rule 12(b)(6) on the grounds that the DBA and the LHWCA " provide the exclusive remedy available to Plaintiff for the claims alleged in the Complaint." Defendant Justin L. McQuown's Motion to Dismiss ¶ 1, App. at 135.

While having specifically raised a DBA coverage question, Nordan opposed dismissal, and moved to remand, arguing lack of federal question jurisdiction. Plaintiffs Memorandum of Law in Support of Motion for Remand at 16, App. at 165 (" as alleged in the Complaint, the Decedents were *not* ' employees' the [DBA] simply does not apply" ). Blackwater opposed remand, explaining. *inter alia,* that " [t]he DBA explicitly provides the *exclusive liability*" here, Blackwater Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Remand at 7 (" Blackwater Remand Opp." ), App. at 286 (emphasis in original), and that DOL should answer DBA coverage questions " in the first instance[ ]" *Id* at 13 n.15, App. at 292. McQuown also opposed Remand

On August 11, 2005, the District Court, without a hearing, entered an Order that (1) granted Plaintiffs Motion to Remand citing 28 U.S.C. § 1447(c), and (2) " [w]here the court lacks subject matter jurisdiction over this action, the court DENIES AS MOOT defendants' motions to dismiss brought under Federal Rules of Civil Procedure 12(b)(6) and 9(b)." Order at 21. The District Court " REMANDED to the Superior Court of Wake County, North Carolina." *Id.*

The District Court held that " [t]he right to remove a case from state to federal court derives *solely* from 28 U.S.C. § 1441[.]" *Id.* at 7 (emphasis added). It reasoned that. because § 1441(a) requires original jurisdiction in the district court, absent an allegation of diversity jurisdiction, " the propriety of removal depends on whether the suit raises a federal question [.]" *Id.* at 7. It held that complete preemption and a unique federal interest do not justify removal. *Id.* at 8

The District Court acknowledged that in *Shives* this Court held that " regardless of whether the district court lacked jurisdiction upon removal, remand to the state court was not proper" because any " ' interpretation of the LHWCA is a matter for the federal executive and federal appeals courts.' " Order at 19 (quoting *Shives,* 151 F.3d at 167). It decided, however, not to follow *Shives*

" At first blush, where this court, like the court in *Shives,* is facing a ' federal question of LHWCA coverage,' *Shives,* 151 F.3d at 167, it appears that the appropriate course of action is to dismiss the action outright for lack of subject matter jurisdiction rather than remand to the state court. Such a disposition, however, is premature. Notably, in *Shives,* the Fourth Circuit directed dismissal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

only *after* that court, sitting as a federal court of appeals, had determined the coverage issue under the LHWCA. See 151 F.3d at 167-171. Although the Fourth Circuit in *Shives* was in a position to resolve the question of coverage, ' a matter for the federal executive and federal appeals courts,' *id.* at 167, this court is not."

Order at 20. Thus, it remanded and denied the motions to dismiss as moot[FN3]

> FN3. On August 11, 2005, the District Court filed and entered a Judgment in a Civil Case in which it " ORDERED, ADJUDGED and DECREED that the court GRANTS plaintiffs motion to remand, pursuant to 28 U.S.C. § 1447(c)" and " [w]here the court lacks subject matter jurisdiction over this action, the court DENIES AS MOOT defendants' motions to dismiss brought under Federal Rules of Civil Procedure 12(b)(6) and 9(b)." It further ordered that " [t]his case is REMANDED to the Superior Court of Wake County, North Carolina."

Blackwater and McQuown filed petitions for writs of mandamus in No. 05-1949 and No. 05-1992, and filed timely notices of appeal in No. 05-2033 and No. 05-2034, respectively. On October 4, 2005, the North Carolina Superior Court denied Blackwater's motion to stay proceedings while federal appeals are pending Blackwater moved in this Court to stay state court proceedings pursuant to Fed.R.App.P. 8, and this motion is pending. Nordan moved to dismiss these appeals for lack of appellate jurisdiction, which Appellants have opposed

## STATEMENT OF FACTS

Federal contractors, with tens of thousands of employees, accompany U.S. Armed Forces overseas as a critical component of the war effort. They provide a range of security, logistics, engineering, construction, intelligence and other vital support for the war effort as a significant part of the Total Force mix.[FN4] According **\*7** to one published estimate, the more than 20,000 people deployed by contractors as part of the Total Force in Iraq have sustained more casualties " than any single U.S Army division and more than the rest of the coalition combined." [FN5] The question whether contractors may be sued, in any court, for war casualties while the military services may not, see *Feres v United States,* 340 U.S 135 (1950), could determine whether the President, as Commander-in-Chief, will be able to deploy the Total Force decades into the future.

> FN4. DoD Instruction 3020.37 (Nov. 6, 1990) (revised Jan. 26, 1996), provides as follows: " It is DoD policy that: /4.1 The DoD Components shall rely on the most effective mix of the Total Force, cost and other factors considered, including Active, Reserve, civilian, host-nation and contract resources necessary to fulfill assigned peacetime and wartime missions." App. at 569.

> FN5. P.W. Singer, " Outsourcing War," 84 *Foreign Affairs* 119, 122, 127 (Mar./Apr. 2005), App. at 449, 454.

Blackwater Security Consulting, LLC is a federal contractor supporting the United States Armed Forces in Iraq.[FN6] According to the Complaint, on March 31. 2004, four men working for Blackwater were providing an armed security escort for catering trucks headed to U.S. Army Camp Ridgeway in Iraq. Com pl „ „ 57-59, App. at 18-19. At approximately 10:00 a.m. local time, while their convoy was driving through the city of Fallujah, the four armed men in the security escort (the " Decedents" ) " were ambushed by hostile Iraqi insurgents." Compl. „ 61, App at 66-67. They were killed by enemy gunfire, their bodies were burned, and two were hung from a Tigris

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

River bridge. Compl. „61, App. at 66-67.

> FN6. Compl. „„ 18-19, 57, App. at 54, 65-66; Notice of Removal „„ 5-6. 7-11. 14 App. at 38-39.

According to the Complaint, the Decedents were killed by enemy insurgents because they were deployed to Iraq too soon, Compl. „„ 35, 48, App. at 59, 63, and *8 not soon enough. Compl. „ 36, App. at 59. It alleges " they were provided with Mach 4 semiautomatic weapons" instead of " ' SAW Mach 46' weapons [ ]" Compl „ 38, App. at 60. It further alleges that they " never had an opportunity to test. fire or sight their weapons[,]" Compl. „ 38, App. at 60, and that " [t]he two vehicles that this four-man team drove were not armored vehicles." Compl. „ 53, App. at 64. In addition, it asserts that " U.S. State Department ... policies for personnel security details. require a six-man detail working in the threat level of Iraq" which " were completely disregarded [.]" Compl. „ 52, App at 64. It also alleges that McQuown, *inter alia,* failed to provide adequate training and intelligence data to Decedents. Compl. „ 28, App. at 56. Thus the Complaint seek to regulate the training, armament, and deployment orders of private security personnel assigned to classic military duties in a war zone.

On October 18, 2004, the United States Department of Labor (" DOL" ) issued a Compensation Order, Award of Compensation, finding that Decedent Jerko Zovko, " while performing service as an employee for the employer, sustained injuries resulting in his death and that such death comes within the purview of the [DBA]." Notice of Removal „ 19, App. at 40. The widows of Decedents Helvenston and Batalona filed Claims for Death Benefits under the DBA in April and May 2003, and are receiving DBA benefits of $1,000 per week, tax free. Notice of Removal „„ 16-17, App. at 39-40. The widow of Decedent *9 Teague did not apply for DBA benefits, but is nonetheless being paid $1,000 per week, tax free, under the DBA. Notice of Removal „ 18, App. at 40.

*SUMMARY OF ARGUMENT*

The use of battlefield contractors to protect the U.S. Armed Forces' supply lines may be relatively new military doctrine, but acknowledging the President's constitutional authority as Commander-in-Chief to deploy such a combination of forces, without state regulation of the battlefield, only requires that the Court afford existing federal statutes their plain and ordinary meaning under established precedents. Under 28 U.S.C. § 1442(a)(1), contractors acting under a federal officer, and sued for their actions under color of such office, have an absolute right to remove such lawsuits to the district courts regardless of the existence of diversity or federal question jurisdiction. Here, the District Court's remand order should be reversed because it is based on the erroneous conceptual antecedent that the right to remove a case derives solely from 28 U.S.C. § 1441, and that the North Carolina Superior Court may decide whether the DBA or LHWCA applies.

By remanding a case raising DBA coverage issues, moreover, the District Court disregarded this Court's decision in *Shives,* which holds that a district court remand of LHWCA coverage issues is reviewable and must be vacated with instructions to dismiss. Although the District Court acknowledged that *Shives* directly applies, it did not follow *Shives.* The District Court concluded. in error, that it lacks power to comply with *Shives,* on the mistaken ground that the district courts have no role in the interpretation of the DBA. In fact, this Court held that the district courts. not the Court of Appeals, must initially review DBA coverage

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4)                                                          Page 9
**(Cite as: 2005 WL 3783349)**

determinations on appeal from the Benefits Review Board.

Because the DBA applies here, and makes Appellants immune from suit in state or federal court, the District Court also erred by denying as moot Appellants' motions to dismiss the Complaint. The DBA adopts the LHWCA's definition of employee, which provides that "employee" means "any person engaged in" the types of employment covered by the statute. 33 U.S.C. § 902(3). The Decedents were persons engaged in employment covered by the DBA because they were engaged in public work connected with war activities, 42 U.S.C. § 1651(a)(4) and (b)(1): were providing security for food trucks ordered to a military base in Iraq, id. at § 1651(a)(1); and were "providing welfare or similar services for the benefit of the Armed Forces pursuant to appropriate authorization by the Secretary of Defense" "outside the continental United States[.]" Id. at § 1651(a)(6). Since the DBA applies, it destroys all tort liability potentially arising from Decedents' deaths, making Appellants immune from suit. Id. at § 1651(c), 33 U.S.C. § 905

Even if the DBA were not applicable, the constitutional separation of powers would preclude judicial intrusion into the manner in which the contractor component of the American military deployment in Iraq is trained, armed, and deployed. Decedents were performing a classic military function-providing an armed escort for a supply convoy under orders to reach an Army base-with an authorization from the Office of the Secretary of Defense that classified their missions as "official duties" in support of the Coalition Provisional Authority Federal courts, and *a fortiori* state courts, may not impose liability for casualties sustained in the battlefield in the performance of these duties. A North Carolina trial court may not adjudicate national political questions that the Supreme Court has deemed non-justiciable by federal courts.

Were this Court not to vacate the Order below, the practical effect would be to allow Plaintiff to regulate the conduct of the Iraq war through the state courts. thereby abrogating the jurisdiction of federal courts to safeguard unique federal interests. By applying the DBA as Congress intended, the Court would preserve the correct federal and state balance, as well as comity between federal powers.

ARGUMENT

I. THE REMAND ORDER SHOULD BE REVERSED BECAUSE ITS CONCLUSION THAT FEDERAL QUESTION JURISDICTION WAS LACKING RESTED ON THE ERRONEOUS ANTECEDENT THAT REMOVAL RIGHTS DERIVE SOLELY FROM 28 U.S.C. § 1441.

This Court reviews the conceptual antecedents of remand orders *de novo*, and reverses remand orders if their antecedents are legally erroneous. *Borneman*, 213 F.3d at 829; *Shives*, 151 F.3d at 171. This case involves a classic instance of a remand that should be reversed, not because of an error on whether there is federal *12 question jurisdiction, but because of an erroneous antecedent that incorrectly made an issue out of the existence of a federal question

The District Court reasoned that "[t]he right to remove a case from state to federal court derives *solely* from 28 U.S.C. § 1441" (emphasis added); that § 1441 is premised on the district court having original jurisdiction; and that absent an allegation of diversity "the propriety of removal depends on whether the suit raises a federal question[.]" Order at 7. The District Court's conceptual antecedent to remand was therefore its conclusion that "[t]he right to remove a case from state to federal court derives solely from 28 U.S C § 1441." The remand

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4)                                                                                      Page 10
**(Cite as: 2005 WL 3783349)**

order should be reversed because 28 U.S.C. § 1442(a)(1) afforded Appellants an absolute right of removal, regardless of the existence of a federal question under 28 U.S.C § 1331[FN7]

> FN7. The Notice of Removal „ 1 cited 28 U.S.C. §§ 1441 and 1446 as authority for removal. It should have cited *id.* at § 1442(a)(1), which is " an incident of federal supremacy ... one of [whose] purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties." Willingham v. Morgan, 395 U.S. 402, 405 (1969). Regardless, in this Court, the Notice of Removal should be deemed amended to cite the appropriate provision. *Id.* at 407, n 3; 28 U.S.C. § 1653.

Under § 1442(a)(1), contractors that are persons (1) acting under any federal officer, *see* Peterson v. Blue Cross/Blue Shield of Teas, 508 F.2d 55, 58 (5th Cir 1975) (corporations are " persons" under § 1442(a)(1)); (2) who have a colorable claim to a federal defense, Mesa v. California, 489 U.S. 121, 129 (1989)); and (3) who are sued for actions taken under color of office or at the direction of federal **\*13** officers, may remove such suits from state to federal court. Greene v Citigroup. Inc., 215 F.3d 1336, 2000 WL 647190, at \*2 (10th Cir. 2000); Winters v Dtamond Shamrock Chem. Co., 149 F.3d 387, 397-398 (5th Cir. 1998) (manufacturer of Agent Orange); Akin v. Big Three Ind., Inc., 851 F.Supp. 819 (E.D. Tex. 1994) (military jet engine repair company); Pack v. AC and S, Inc., 838 F.Supp. 1099 (D.Md 1993) (manufacturer of turbine generators). Section 1442(a)(1) confers subject matter jurisdiction to the federal district court for purposes of removal, regardless of whether the suit could originally have been brought there Willingham, 395 U.S. at 406; Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1427 (11th Cir. 1996); State ex rel. Falkner v National Bank of Commerce, 290 F.2d 229, 231 (5th Cir. 1961); *accord* Watson v Philip Morris Cos, Inc. 420 F.3d 852, 855-56 (8th Cir. 2005). This right of removal is therefore absolute

In this case, the Complaint, the Notice of Removal,[FN8] and the record as a whole[FN9] set forth all the facts necessary for removal jurisdiction. *First.* Appellants **\*14** were persons acting under a federal officer. On March 4, 2004, the Secretary of Defense authorized Decedents Teague and Helvenston to travel

> FN8. The facts alleged in the Notice of Removal should be taken as true and considered in addition to the facts alleged in the Complaint. Poss v. Lieberman, 299 F.2d 358, 359 (2d Cir.), *cert. denied,* 370 U.S. 944 (1962) (facts stated in removal petition are proper basis for decision on a remand motion).

> FN9. State v. Ivory, 906 F.2d 999, 1001 n.2 (4th Cir. 1990) (reviewing not only removal petition but also " the record taken as a whole" ); *see* Willingham, 395 U S at 407 n.3 (later filed affidavits cure any jurisdictional defect in § 1442 removal). Appellants have submitted " the record taken as a whole" as their Appendix to this Brief because, under this Court's standard in *State v Ivory,* all components of the record including memoranda of law are independently relevant.

" *in the performance of official duties,* either within or outside the continental limits of the United States and return to Washington, D.C. from March 4, 2004 to September 30, 2004, at no cost to the government. The purpose of this travel is *to provide services to the Coalition Provisional Authority* (CPA)."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

App. at 441-42 (emphasis added). Moreover. it is uncontested here that Decedents were subordinate contractors providing security to ESS, a food catering services contractor to the U.S. Armed Forces, and that the ESS contract is alleged to have required Blackwater to comply with State Department policies. Compl. „„ 18,21-22, 52; Notice of Removal „„ 7-8, 10. In addition, the Decedents were in a war zone protecting the supply lines of the U.S. Army, and, hence, under the military chain of command leading to the President.

*Second,* Appellants had a colorable federal defense, which is the subject of this appeal. The fact that DOL affirmatively determined that Decedent Zovko is an employee for DBA purposes and, as to the other Decedents, is actually paying DBA benefits, Notice of Removal „„ 16-20, App. at 39-40, demonstrates the existence of a more than colorable federal defense under the DBA's exclusivity provision. *See* 42 U.S.C. § 1651(c); *see also* 33 U.S.C. § 905.

*Third,* Nordan sued Blackwater and McQuown as a result of actions they allegedly took when providing security for a convoy bound for U.S. Army Camp **\*15** Ridgeway, Compl. „„ 15, 51-57, including Blackwater's alleged violation of State Department requirements incorporated in the ESS contract. Compl „ 52 The official nature of the Decedents' actions is reinforced and underscored by the letters to them from the Office of the Secretary of Defense, authorizing them to travel " in the performance of official duties. to provide services to the Coalition Provisional Authority (CPA)." App. at 441-42.

Because both the Complaint and the Notice of Removal set forth all the facts necessary for an independent basis for jurisdiction under 28 U.S.C. § 1442(a)(1), regardless of diversity or federal question, and because the defect to be cured consisted of a omitted citation to § 1442, the Court should allow Appellants, under 28 U.S.C. § 1653, to cure any jurisdictional defect arising from the omission of a reference to § 1442. *See Willingham,* 395 U.S. at 407 n.3.

Because " [t]he right to remove a case from state to federal court" does not. contrary to the District Court's antecedent, " derive[] solely from § 1441 [,]" Order at 7, but also from § 1442, the remand order should be reversed.

   II. THE DISTRICT COURT ERRED BY EXCEEDING ITS AUTHORITY WHEN IT REMANDED AN LHWCA
           COVERAGE ISSUE IN DISREGARD OF THIS COURT'S HOLDING IN *SHIVES.*

A central issue in this case is whether the LHWCA, as applied through the DBA, covers Decedents' deaths. The Complaint „ 31 pleads that the Decedents were independent contractors and not employees, and Nordan opposed Appellants' **\*16** motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) by urging the District Court to adjudicate the coverage issue. Plaintiffs Memorandum of Law in Opposition to Blackwater's Motion to Dismiss at 14-21, App. at 196-203 The District Court agreed that " this court, like the court in *Shives,* is facing a ' federal question of LHWCA coverage[.]' " Order at 20 (quoting *Shives,* 151 F.3d at 167). As a result. the District Court exceeded its authority.[FN10] The Order, having failed to grant the dismissal required by *Shives* and remanded the LHWCA coverage issue to a state court, should be reversed.

>    FN10. *Borneman,* 213 F.3d at 826 (28 U.S.C. § 1447(d) " prohibits review of
>    district courts' determinations of whether jurisdictional statutes have been
>    satisfied, not review of determinations where district courts exceed their

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4)                                                                       Page 12
**(Cite as: 2005 WL 3783349)**

jurisdictional authority" ).

*Shives* applies directly to this case In *Shives,* a port worker initiated a negligence action in state court as permitted by the Federal Employers' Liability Act. 45 U.S.C. § 51 *et seq.,* and also filed a protective claim for benefits under the LHWCA. 151 F.3d at 166. The employer removed and moved to dismiss, arguing that the negligence action was preempted by LHWCA coverage. The worker contended he was not covered by the LHWCA, and that his benefits claim was only precautionary, because his employment was not maritime in nature. The lower court, as in this case, remanded the case and refused to dismiss.

The Court first determined that the LHWCA was applicable, and then decided that " LHWCA coverage is exclusive and preempts Shives from pursuing ***17** an FELA claim for negligence in state court." *Id.* at 171 (citing Etheridge v Norfolk & Western Ry. Co., 9 F.3d 1087. 1091 (4th Cir. 1993)). Because the LHWCA creates an exclusive administrative procedure for all covered claims, the Court noted that it faced a " procedural conundrum" very much like the one here.
" Thus, we are faced with an LHWCA case over which neither the state court nor the district court had jurisdiction because such a claim [under the LHWCA] could only be filed in the first instance with the Secretary of Labor"

151 F.3d at 171.

The Court held that these situations should be resolved by vacating the remand order. notwithstanding the language in 28 U S.C. § 1447(d) concerning appeals of remands for lack of subject matter jurisdiction, because the alternative would have remanded an LHWCA coverage issue to a state court lacking any role in the administration of the LHWCA's exclusive administrative procedures. *Shives,* 151 F.3d at 171. Although the *Shives* Court provided no further rationale. additional support for the *Shives* holding is found in the fact that the Court had to reconcile Congress' intent in the LHWCA, with its intent in 28 U.S.C. § 1447(d). and in such situations
" [i]t is an elementary tenet of statutory construction that ' [w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one[.]' "

*Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 375 (1990) (quoting *Morton v. Mancari,* 417 U.S. 535, 550-51 (1974)).

**\*18** In this case, the District Court admitted that " [a]t first blush, where this court, like the court in [*Shives,* 151 F.3d 164 (4th Cir. 1998)], is facing a ' federal question of LHWCA coverage,' *Shives* [sic] 151 F.3d at 167, it appears that the appropriate course of action is to dismiss the action outright for lack of subject matter jurisdiction rather than to remand to the state court." Order at 20. It went on, however. to hold (erroneously) that dismissing the Complaint was " premature" because the question of LHWCA coverage is " ' a matter for the federal executive and federal appeals courts' " and the district courts have no subject matter jurisdiction on DBA coverage issues. *Id.* (quoting *Shives,* 151 F.3d at 167): *see* Order at 12 (concluding, again erroneously, that in a DBA case final orders of the Benefits Review Board are appealed to the Court of Appeals).

The District Court's reasoning is fundamentally flawed and its conclusion wrong.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The only meaningful distinction between the DBA and the LHWCA in the situation at hand is that-precisely contrary to the District Court's statement of the law of the Circuit-" judicial review of DBA claims differs from judicial review of LHWCA claims" because " [a]fter the administrative determination and initial appeal to the Board, jurisdiction for judicial review in DBA cases lies *in the appropriate district court, not in the court of appeals.*" Lee v. Boeing Co, 123 F.3d 801, 805 (4th Cir. 1997) (emphasis added).

**\*19** Thus, the District Court's decision does not comport with this Court's instructions in *Shives* that LHWCA coverage issues may not be remanded to the state courts. that such remands will be vacated, and that suits claiming liability for deaths or injuries covered by the LHWCA must be dismissed for lack of subject matter jurisdiction in both the federal courts and the state courts.

### III. THE DISTRICT COURT ERRONEOUSLY DENIED APPELLANTS THEIR RIGHTS TO IMMUNITY BY REFUSING TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6).

Even if the remand order were not reviewable or reversible, the Order contains a separate ruling denying Appellants' Rule 12(b)(6) motions to dismiss. *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1446 (4th Cir. 1996) (where remand is ordered and immunity is denied in the same order, the denial of immunity is reviewable as a separate decision). The District Court's refusal to dismiss the Complaint is a denial of immunity from suit, and therefore must be reversed

#### A. The DBA Applies To Decedents' Deaths.

The LHWCA's presumption of coverage, 33 U.S.C. § 920, " shall apply" under the DBA because nothing in the DBA modifies it 42 U.S.C. § 1651(a); *Lee.* 123 F.3d at 804. Thus, under the DBA " it shall be presumed, in the absence of substantial evidence to the contrary-(a) That the claim comes within the provisions of this chapter." 33 U.S.C. § 920(a). By its plain meaning, the LHWCA presumes coverage automatically, namely, without requiring any *prima* **\*20** *facie* showing of coverage. *Id.* Even without the LHWCA's presumption of coverage--but all the more so with it-- the facts alleged in the Complaint and found in the record entitle Appellants to the conclusion that the DBA applies here.

Under the LHWCA, coverage depends on the " status" and " situs" of the injured or the decedent. *Northeast Marine Terminal Co., Inc v Caputo,* 432 U.S 249, 264-65 (1977). Because the DBA borrows the same coverage structure. Nordan bears the burden to overcome the DBA's presumption of coverage through substantial evidence that the Deceased were not employees (status), and that their employment (situs) was not covered by the DBA

The DBA adopts the LHWCA definition of " employee," because the DBA does not define " employee" and therefore does not modify the LHWCA definition *Compare* 43 U.S.C. § 1651(a) *with* 33 U.S.C. §§ 902(3) and 903(a). The LHWCA provides that " [t]he term ' employee' means *any person engaged in*" the types of employment covered in the statute. *Id.* at § 902(3) (emphasis added). Accordingly, by the literal terms of the LHWCA as applied in the DBA, " any person engaged in" the types of employment covered in the DBA, 42 U S.C. § 1651 (a)(1)-(6), is an " employee" under the DBA. *Ghotra v. Bandila Shipping, Inc.,* 113 F.3d 1050, 1060 (9th Cir. 1997), *cert. denied,* 522 U.S. 1107 (1998) (holding that self-employed marine surveyor falls within the scope of the LHWCA **\*21** and, therefore. that " state wrongful death remedies were preempted" ).[FN11] As a result, an " employee"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4)                                                                  Page 14
**(Cite as: 2005 WL 3783349)**

under the LHWCA may be self-employed and frequently is *Id.* at 1059.

> FN11. *Ghotra* correctly distinguishes Crowell v. Benson, 285 U.S. 22, 65 (1932) (district court did not err in permitting trial *de novo* of DOL's determination of employment), because *Crowell* dealt with whether a master-servant relationship was needed to establish no-fault liability, while *Ghotra* concerned whether survivors' LHWCA claims under 33 U.S.C. § 905(b) preempted state remedies.

Reading the DBA's definition of " employee" more narrowly than the LHWCA's would not be sensible, because Congress surely understood that substituting federal liability for private liability imposed by the states is even more necessary under the DBA than under the LHWCA While the " central purpose underlying the LHWCA ... [is] to create a ' uniform compensation system' [,]" *id* (quoting Kollias v D&G Marine Maintenance, 29 F.3d 67, 74 (2d Cir 1994). *cert denied,* 513 U.S. 1146 (1995)), that same purpose is even more compelling under the DBA. The DBA deals with private support for the military in the international domain, where every impulse in the Constitution is to unite the fifty states as one.

Decedents' employment falls squarely within the scope of the DBA In Flying Tiger Lines, Inc. v. Landy, 370 F.2d 46 (9th Cir. 1966), the Ninth Circuit considered whether the pilot of an airplane operated under a U.S. Air Force contract, which disappeared " while transporting military personnel from Travis Air Force Base in California to Viet Nam via Manila[,]" was engaged in the type of **\*22** employment to which the DBA applied. The court correctly held that such employment was " public work" under the DBA, 42 U.S.C. § 1651 (a)(4), because the DBA's definition of " public work" includes " any project, whether or not fixed .. involving removal..., including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities[.]" *Id.* at § 1651(b)(1); *see* Flying Tiger, 370 F.2d at 49.

Likewise, the DBA covers employment " at any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government[,]" 42 U.S.C. § 1651(a)(1), and " shall include any injury or death occurring to any such employee during transportation to or from his place of employment, where the employer or the United States provides the transportation or the cost thereof." *Id.* at § 1651(a). Decedents' employment was " at" a military base that the United States, as of March 31, 2004, had acquired from the enemy government of Iraq by military force, overthrow and occupation, inasmuch as Decedents' mission was to provide war zone escort for trucks to U.S. Army Camp Ridgeway in Iraq. It has long been held that a death while in transit to a military base is employment at a military base under the DBA. *See* Republic Aviation Corp. v. Lowe, 69 F.Supp. 472 (S.D.N.Y. 1946), *aff'd,* 164 F.2d 18 (2d Cir. 1947). *cert. denied,* 333 U.S. 845 (1948) (pilot killed while being sent to far eastern air **\*23** base was engaged in employment at a military base within the meaning of 42 U.S.C. § 1651(a)(1)).

Decedents were also engaged in employment " outside the continental United States by an American employer providing welfare or similar services for the benefit of the Armed Forces pursuant to an appropriate authorization by the Secretary of Defense[.]" *Id.* at § 1651(a)(6). The term " welfare or similar services" includes securing food supplies to feed troops under contract with the U.S. Armed Forces. The Office of the Secretary of Defense invited the Decedents to travel " in the performance of official duties" ... " to provide services to the Coalition Provisional Authority (CPA)." App. at 441-42. This, obviously, constitutes "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4)                                                    Page 15
**(Cite as: 2005 WL 3783349)**

appropriate authorization by the Secretary of Defense." See 42 U S.C § 1651(a)(6).

The Complaint here lacks any *mens rea* allegation that Blackwater or McQuown intended to kill the Decedents. *Compare Fisher v. Halliburton.* No. H-05-1731, Mem. and Order (S.D.Tex. July 1, 2005)(2005 WL 1562411). Even if there were such an allegation, however, Congress intended that the LHWCA would provide coverage in the sometimes violent surroundings of the waterfront, and therefore has been held to apply in spite of compelling evidence of foul play. See *Marra Bros. v. Cardillo,* 154 F.2d 357 (3d Cir. 1946) (discovery of the body of a hatch foreman in forepeak of boat under heavy wire hawser, after news that his **\*24** stevedoring gang was being laid off, was compensable and in the course of employment under LHWCA).[FN12]

> FN12. Conclusory allegations of intent to kill or injure should not be deemed sufficient to defeat Congress' intent in the DBA to exclude other liability. See 42 U.S.C. § 1651(c); *see also* 33 U.S.C. § 905. Since intentionally assigning employees to dangerous missions is often necessary for contractors that support U.S. military operations, permitting conclusory allegations of intent to kill or injure employees, without any other foundation than the known dangers of battle, might not be sanctionable under Fed.R.Civ.P. II and yet could be used to expose contractors to liability risks that Congress foreclosed in the DBA.

Thus, the DBA is presumed to apply and, far from there being any substantial evidence to the contrary, the allegations in the Complaint and the facts proffered by Nordan amply show that the DBA applies here.

  B. Where As Here The DBA Applies, Appellants Are Immune From Liability Lawsuits In
                                    Any Court.

In order for responsible federal contractors to accompany the U S Armed Forces on the battlefield, it is essential that their immunity from liability for casualties be federally protected and uniformly upheld by federal courts. Nothing could be more destructive of the all-volunteer, Total Force concept underlying U.S. military manpower doctrine than to expose the private components to the tort liability systems of fifty states, transported overseas to foreign battlefields It is the intent of the DBA to avoid that result by borrowing the LHWCA's abrogation of tort liability, and bolstering it with the DBA's own exclusivity provision. 42 U.S.C. § 1651(c). The result is to create battlefield immunity necessary for **\*25** contractors to contribute to the mix of Total Forces in accordance with U S. military doctrine.

Federal courts have long held that the LHWCA " destroys any underlying tort liability of the employer" and substitutes a claim against the United States. *Robin v. Sun Oil Co.,* 548 F.2d 554, 556 (5th Cir. 1977); *see Brown v. American-Hawaiian S.S. Co.,* 211 F.2d 16, 18 (3d Cir. 1954); *see also Smither & Co. v Coles,* 242 F.2d 220, 222-23 (D.C. Cir. 1957) (statutes like LHWCA bar common-law rights of action). By extending the LHWCA overseas, *see Lee,* 123 F.3d at 804 (LHWCA applies " except to the extent that the DBA modifies a provision of the LHWCA" ). the DBA makes employers immune from all suits seeking to impose liability for deaths or injuries covered by the DBA See *Davila-Perez v Lockheed Martin Corp.,* 202 F.3d 464 (1st Cir. 2000). This result obtains because the DBA " necessarily displaces all derivative common-law causes of action based on injury or death of a covered employee caused by employer negligence, including wrongful death and survivorship actions." *Ross v. DynCorp.,* 362 F.Supp.2d 344, 352-53 (D.D.C. 2005) (judgment for employer on tort claims because DBA applies); *see Nauert v. Ace Properties and Cas.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Ins. Co,* Slip Copy, 2005 WL 2085544 (D.Colo. Aug. 27, 2005) (dismissing state law claims because DBA applies); *Colon v. United States Dept. of the Navy,* 223 F.Supp.2d 368, 370 (D.P.R. 2002) (summary judgment on tort claims because DBA applies).

**\*26** The DBA's substitution of claims against the United States for private party liability is a well-established statutory device that Congress has repeatedly favored. and that Federal Courts have routinely enforced. *See United States v Smith,* 499 U S. 160 (1991) (Federal Tort Claims Act eliminates federal employee liability and substitutes claims against the United States); *Brady v. Roosevelt S S. Co.,* 3 17 U.S. 575 (1943) (46 U.S.C. § 745 immunizes operators of U.S. vessels); *Richmond Screw Anchor Co. v. United States,* 275 U.S. 331 (1928) (28 U.S.C. § 1498(a) abrogates federal contractor's liability to patent owners and substitutes Court of Claims action) *Carr v. United States,* 422 F.2d 1007, 1010 (4th Cir. 1970) (" Drivers Act abrogates a federal employee's common law right of action" and substitutes claim against United States" ), *Sparks v. Wyeth Labs, Inc* 431 F.Supp. 411 (W.D.Okla. 1977) (42 U.S.C. §§ 247b(k) eliminates liability of swine flu vaccine makers and substitutes action against the United States). Thus, where, as here, an employer pays DBA insurance for its employees, Congress makes the employer immune from liability.

In this case, Appellants exercised their right of removal for purposes of claiming federally protected immunity. As Appellants stated in their Notice of Removal 25, App. at 41,
" [t]he DBA and the LHWCA provide *the exclusive means* by which ' an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor)' may be held liable for injuries or **\*27** death arising out of employment covered under the DBA. 42 U S C §§ 1651(a) and 1651(c); 33 U.S.C. § 905(a)."

It was reversible error for the District Court to take away the right of immunity by refusing to dismiss the Complaint.

   IV. THE JUDICIARY MAY NOT IMPOSE STANDARDS ON THE MANNER IN WHICH THE PRESIDENT
    OVERSEES AND COMMANDS THE PRIVATE COMPONENT OF THE TOTAL FORCE IN FOREIGN MILITARY
                                      OPERATIONS.

The President of the United States is Commander-in-Chief of the Armed Forces pursuant to Article II, Section 2, of the Constitution. The Total Force under the President's command consists not only of DoD Components, but also of the National Guard and Reserves, as well as federal contractors that accompany and are integral to the Total Force in overseas military operations.[FN13] How the President oversees and commands these military operations, including his decisions through the chain of command concerning the training, deployment, armament, missions. composition, planning, analysis, management and supervision of private military contractors and their missions, falls outside the role of federal--and perforce state--Courts. As the Federal Circuit held in *El-Shifa Pharmaceutical Industries Co. v. United States,* 378 F.3d 1346, 1365 (Fed.Cir. 2004), " federal courts have no role in setting even minimal standards" to plan and execute military missions **\*28** overseas causing destruction of lives or property. Therefore, even if Congress had never enacted the DBA, this action would still require dismissal.

   FN13. DoD Instruction No. 3020.37, *supra* n.4.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4) Page 17
(Cite as: 2005 WL 3783349)

The political question doctrine, see *Baker v. Carr,* 369 U.S. 186 (1962). is one of the sets of principles that safeguard from judicial inquiry decisions made by civilian political leaders through the military chain of command, including, in this case, decisions to hire contractors to protect military supply lines from enemy attack. As the Supreme Court held in *Gilligan v. Morgan:*
" The complex subtle, and professional decisions as to the composition, training, equipping and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches."

413 U.S. I 10 (1973)(Ohio National Guard's training, weaponry and orders are non-justiciable where deficiencies allegedly led to civilian deaths) (emphasis in original). These principles shield contractors from tort liability for military deaths. *Bentzlin v. Hughes Aircraft Co.,* 833 F.Supp. 1486, 1497-98 (C D.Calif. 1993); App. at 441-442. The relevant fact is not whether a contractor's defective work caused military deaths; rather, it is that " soldiers injured at the hands of the military raise political questions."  *Bentzlin,* 833 F.Supp. at 1498.

Here Decedents were performing a classic military function-providing an armed escort for a supply convoy under orders to reach an Army base-with an authorization from the Office of the Secretary of Defense that classified their mission as " official duties[.]"  App. at 441-42. The Secretary of Defense *29 designated the Decedents to perform official military duties under fire in a theater of war, and any inquiry into whether he should have done so, how he should have done it. and how his orders or expectations were followed or not, are non-justiciable political questions under *Baker v. Carr* and its progeny.[FN14]

> FN14. At the time of Decedents' deaths, Coalition Provisional Authority (" CPA" ) Order 17 permitted defined third party claims to be submitted and dealt with by the United States, but only to the extent such claims did not " arise in connection with military operations."  Any inquiry by a federal or state court into whether the Plaintiffs were killed during military operations in Iraq would fall under CPA Order 17 and is barred by the political question doctrine and the state secrets doctrine. See *Sterling v. Tenet,* 416 F.3d 338 (4th Cir. 2005)

The Secretary of Defense designated the Decedents to perform military duties on the battlefield. As a matter of separation of powers, all of the potentially relevant statutes, including the DBA, the LHWCA, and 28 U.S.C. §§ 1441, 1442, 1447(c) and (d), should be interpreted, as in *Feres,* so as to hold Blackwater and McQuown immune from liability for battlefield casualties resulting from such designation. Any other result would amount to judicial intrusion into the President's ability to deploy a Total Force that includes contractors.[FN15]

> FN15. The principles underlying *Boyle v. United Tech Corp.,* 487 U.S. 500, 504 (1988), see *Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329, 1334 (11th Cir 2003) (applying *Boyle* to service contract); *Askir v. Brown & Root Sers Corp.,* No 95 Civ. 11008(JGK), 1997 WL 598587, at *6 (S.D.N.Y. Sept. 23, 1997) (*Boyle* defense applies to " performance contracts" ), likewise make Appellants immune from suit and require that this action be dismissed. The unique federal interest in uniform rules of national application, with respect to the use of contractors to support military operations, plainly displaces state judicial and legislative jurisdiction in this case. See

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3783349 (C.A.4)                                                                            Page 18
**(Cite as: 2005 WL 3783349)**

*Caudill v. Blue Cross and Blue Shield of North Carolina,* 999 F.2d 74, 79 (4th Cir. 1993).

*30 CONCLUSION

For the foregoing reasons, the Court should reverse the Order and vacate the Judgment of the District Court, and remand this case to the District Court with instructions to dismiss the case with prejudice.

Oral argument is respectfully requested.

BLACKWATER SECURITY CONSULTING, LLC, et al., Defendants - Appellants, v. NORDAN, Plaintiff- Appellee.
2005 WL 3783349 (C.A.4)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.