Supreme Court, U.S.
FILED

No. 06-857 DEC 20 2006

OFFICE OF THE CLERK

# In the Supreme Court of the United States

BLACKWATER SECURITY CONSULTING, LLC, *et al.*,
*Petitioners*,
*v.*

RICHARD P. NORDAN,
*Respondent.*

**On Petition for a Writ of Certiorari to the United States Court of Appeals for the Fourth Circuit**

## PETITION FOR A WRIT OF CERTIORARI

MICHAEL P. SOCARRAS
M. MILLER BAKER
MICHAEL S. NADEL
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, DC 20005
(202) 756-8000

KENNETH W. STARR
*Counsel of Record*
RICK RICHMOND
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017
(213) 680-8400

JOSEPH E. SCHMITZ
THE PRINCE GROUP
1650 Tysons Boulevard, Suite 800
McLean, VA 22102
(703) 663-6997

*Attorneys for Petitioners Blackwater Security Consulting LLC, and Blackwater Lodge and Training Center, Inc.*

*Additional Counsel Listed on Inside Front Cover*

December 20, 2006

WILSON-EPES PRINTING CO., INC. – (202) 789-0096 – WASHINGTON, D.C. 20001

Dockets.Justia.com

KIRK G. WARNER
SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN
P.O. Box 2611
Raleigh, NC 27602
(919) 821-1220

SUSAN E. ENGEL
JENNIFER S. ATKINS
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
(202) 879-5000

*Attorneys for Petitioners Blackwater Security Consulting LLC, and Blackwater Lodge and Training Center, Inc.*

# QUESTIONS PRESENTED

In a far-reaching decision of enormous practical importance to the nation's unfolding military effort in Iraq and Afghanistan, the Fourth Circuit has exposed U.S. civilian contractors carrying on their Defense Department-mandated operations in hostile territory to the destabilizing reach of fifty state tort systems in this country. In remanding this closely-watched case to the state courts of North Carolina, the court of appeals deepened a circuit conflict going to the fundamental power of federal courts to adjudicate — through dismissal — actions that by their nature are exclusively federal. By so doing, the Fourth Circuit has relegated civilian contractors serving in profoundly dangerous circumstances to the vagaries of a Balkanized regime of conflicting legal systems among the several States. Indeed, the state court has already commenced proceedings in this action, permitting respondents to proceed with discovery relating to U.S. military operations and planning. The Court should grant certiorari on the questions presented below, or, alternatively, call for the views of the Solicitor General on these questions, which have far-reaching implications for the nation.

The questions presented are two:

1. Whether a federal district court that lacks subject-matter jurisdiction over a removed action must dismiss rather than remand the action when the state court also lacks jurisdiction.

2. Whether a court of appeals has jurisdiction to review a district court's remand order notwithstanding 28 U.S.C. § 1447(d) when the remand order would circumvent federal statutory and federal constitutional designs to preclude state court jurisdiction.

## PARTIES TO THE PROCEEDING

The parties to this proceeding are Petitioners Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.; and Respondent Richard P. Nordan.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Supreme Court Rule 29.6, Petitioners state that Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc., are wholly-owned subsidiaries of The Prince Group. No publicly-held company owns 10% or more of the stock of any of the foregoing entities.

**BLANK PAGE**

## TABLE OF CONTENTS

**Page**

PARTIES TO THE PROCEEDING .................................... ii

CORPORATE DISCLOSURE STATEMENT .................. iii

TABLE OF CONTENTS ......................................................v

TABLE OF AUTHORITIES ............................................ vii

OPINIONS BELOW ............................................................1

JURISDICTION ..................................................................1

STATUTES INVOLVED ......................................................1

STATEMENT OF THE CASE ..............................................3

REASONS FOR GRANTING THE PETITION ...................9

I. The Court Should Resolve An Important And Recurring Question Of Federal Practice Over Which The Federal Courts Are In Disarray. ....................9

II. The Court Of Appeals Has Jurisdiction To Review A Remand Order Notwithstanding 28 U.S.C. § 1447(d) When The Remand Order Would Circumvent Federal Statutory And Federal Constitutional Designs To Preclude State Court Jurisdiction. ..............................................................19

CONCLUSION ..................................................................27

**BLANK PAGE**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliota v. Graham*,
984 F.2d 1350 (3d Cir. 1993)....24

*Arizona v. Manypenny*,
451 U.S. 232 (1981)....10, 15

*Asarco, Inc. v. Glenara, Ltd.*,
912 F.2d 784 (5th Cir. 1990)....13

*Barbara v. NYSE*,
99 F.3d 49 (2d Cir. 1996)....13

*Bell v. City of Kellogg*,
922 F.2d 1418 (9th Cir. 1991)....13

*Borneman v. United States*,
213 F.3d 819 (4th Cir. 2000)....14, 17

*Bromwell v. Mich. Mut. Ins. Co.*,
115 F.3d 208 (3d Cir. 1997)....14

*Calcano-Martinez v. INS*,
533 U.S. 348 (2001)....23

*Cedano-Viera v. Ashcroft*,
324 F.3d 1062 (9th Cir. 2003)....23

*Chelsea Cmty. Hosp. v. Mich. Blue Cross Ass'n*,
630 F.2d 1131 (6th Cir. 1980)....24

*Coyne ex rel. Ohio v. Am. Tobacco Co.*,
183 F.3d 488 (6th Cir. 1999)....14

*Czerkies v. Dep't of Labor*,
73 F.3d 1435 (7th Cir. 1996)..........24

*Dep't of Revenue v. Inv. Fin. Mgmt. Co.*,
831 F.2d 790 (8th Cir. 1987)..........12

*Doe v. Cheney*,
885 F.2d 898 (D.C. Cir. 1989)..........23

*Edwards v. U.S. Dep't of Justice*,
43 F.3d 312 (7th Cir. 1994)..........16

*Ethridge v. Harbor House Rest.*,
861 F.2d 1389 (9th Cir. 1988)..........12

*Fisher v. Halliburton*,
454 F. Supp. 2d 637 (S.D. Tex. 2006)..........15, 25

*Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust for S. California*,
463 U.S. 1 (1983)..........10

*Gen. Inv. Co. v. Lake Shore & Mich. S. Ry. Co.*,
260 U.S. 261 (1922)..........10, 11, 13

*Gilligan v. Morgan*,
413 U.S. 1 (1973)..........19, 23, 25

*Humphries v. Various Fed. USINS Employees*,
164 F.3d 936 (5th Cir. 1999)..........24

*In re Elko County Grand Jury*,
109 F.3d 554 (9th Cir. 1997)..........16

*International Primate Protection League v. Administrators of Tulane Educational Fund*,
500 U.S. 72 (1991)..........14

*Johnson v. Robison*,
415 U.S. 361 (1974)....................22, 23, 24

*Koppers Co. v. Con'l Cas. Co.*,
337 F.2d 499 (8th Cir. 1964)....................10

*Lambert Run Coal Co. v. Baltimore & Ohio R.R.*,
258 U.S. 377 (1922)....................9, 11, 13

*Lane v. Halliburton*,
No. H-06-1971, 2006 WL 2583438
(S.D. Tex. Sept. 7, 2006)....................15

*Lontz v. Tharp*,
413 F.3d 435 (4th Cir. 2005)) ....................6

*Mangold v. Analytic Servs., Inc.*,
77 F.3d 1442 (4th Cir. 1996)....................14

*McBryde v. Comm. to Review Circuit Council Conduct*,
264 F.3d 52 (D.C. Cir. 2001) ....................24

*McMahon v. Presidential Airways, Inc.*,
410 F. Supp. 2d 1189 (M.D. Fla. 2006) ....................15, 17

*Mignogna v. Sair Aviation, Inc.*,
937 F.2d 37 (2d Cir. 1991)....................13

*Nyeholt v. Secretary of Veterans Affairs*,
298 F.3d 1350 (Fed. Cir. 2002)....................24

*Osborn v. Haley*,
422 F.3d 359 (6th Cir. 2005)....................20

*Osborn v. Haley*,
126 S. Ct. 2017 (2006) ....................19, 20

*Paluca v. Sec'y of Labor*,
813 F.2d 524 (1st Cir. 1987) ........................................ 24

*Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*,
74 F.3d 46 (4th Cir. 1996) ........................................ 14

*S. Windsor Convalescent Home v. Mathews*,
541 F.2d 910 (2d Cir. 1976) ........................................ 24

*Schacht v. Wis. Dep't of Corrs.*,
116 F.3d 1151 (7th Cir. 1997) ........................................ 14

*Shives v. CSX Transportation, Inc. (In re CSX Transp.)*,
151 F.3d 164 (4th Cir. 1998) ........................................ 6, 13, 18

*Smith v. Cromer*,
159 F.3d 875 (4th Cir. 1998) ........................................ 16

*Smith v. Halliburton*,
No. H-06-0462, 2006 WL 2521326
(S.D. Tex. Aug. 30, 2006) ........................................ 15, 26

*Smith v. Wis. Dep't of Agric.*,
23 F.3d 1134 (7th Cir. 1994) ........................................ 14

*Smith-Idol v. Halliburton*,
No. H-06-1168, 2006 WL 2927685
(S.D. Tex. Oct. 11, 2006) ........................................ 26

*Tarble's Case*,
80 U.S. 397 (1872) ........................................ 19, 23, 25

*Thermtron Products, Inc. v. Hermansdorfer*,
423 U.S. 336 (1976) ........................................ 7, 17, 24

*Univ. of S. Ala. v. Am. Tobacco Co.*,
168 F.3d 405 (11th Cir. 1999) ........................................ 14

*Waco v. U.S. Fidelity & Guaranty Co.*,
293 U.S. 140 (1934) .......... 7

*Webster v. Doe*,
486 U.S. 592 (1988) .......... 23

*Whitaker v. Kellogg Brown & Root, Inc.*,
444 F. Supp. 2d. 1277 (M.D. Ga. 2006) .......... 26

*Woodson v. Halliburton Corp.*,
No. H-06-2107, 2006 U.S. Dist. LEXIS 70311 (S. D. Tex. Sept. 28, 2006) .......... 26

**Statutes**

10 U.S.C. § 802 .......... 18

10 U.S.C. § 802(a)(10) .......... 1, 8, 18

10 U.S.C. § 919(b) .......... 9

28 U.S.C. § 1254(1) .......... 1

28 U.S.C. § 1331 .......... 5

28 U.S.C. § 1441 .......... 5, 6, 15, 16

28 U.S.C. § 1441(a) .......... 2

28 U.S.C. § 1441(f) .......... 2, 12, 15

28 U.S.C. § 1442 .......... 16

28 U.S.C. § 1442(a)(1) .......... 15, 16

28 U.S.C. § 1447 .......... 9, 15

28 U.S.C. § 1447(c) .......... 2, 14, 16

28 U.S.C. § 1447(d) .............................................. passim

28 U.S.C. § 2679 ......................................................20

33 U.S.C. § 921 ........................................................18

38 U.S.C. § 211(a) ....................................................22

42 U.S.C. § 1651 .......................................................1

42 U.S.C. § 1651(a) ...............................................18, 21

42 U.S.C. § 1651(c) .............................................. passim

42 U.S.C. § 1653(a) ....................................................5

42 U.S.C. § 1653(b) ....................................................5

5 U.S.C. § 8128(b) ....................................................24

8 U.S.C. § 1252(a)(2)(C) ..............................................23

INA § 242(a)(2)(C) ....................................................23

N.C. Gen. Stat. § 28A-18-2..............................................5

U.S. Const. art. I, § 8....................................................9

**Rules**

14B Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE (3d ed. 1998)......................................10, 12

16 MOORE'S FEDERAL PRACTICE § 107.41[1][e][iii][E] (3d ed. 2006).............................................................14

House Report 1070 (1941)................................................21

National Defense Authorization Act
for Fiscal Year 2007, Pub. L. No. 109-364,
120 Stat. 2083 ....................................................................8

Senate Report No. 92-1175 (1972) ......................................21

**BLANK PAGE**

## OPINIONS BELOW

The opinion of the court of appeals is reported at 460 F.3d 576 and is reprinted in the Appendix at App. 1a-32a. The opinion of the district court is reported at 382 F. Supp. 2d 801 and is reprinted in the Appendix at App. 33a-57a.

## JURISDICTION

The judgment of the court of appeals was entered on August 24, 2006. A timely-filed petition for rehearing and suggestion for rehearing en banc was denied on September 28, 2006. App. 58a-60a. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## STATUTES INVOLVED

The Defense Base Act, 42 U.S.C. § 1651 *et seq.* ("DBA"), is reprinted in its entirety in the Appendix beginning at App. 61a.

42 U.S.C. § 1651(c) provides, in pertinent part:

*Liability as exclusive.* The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

10 U.S.C. § 802(a)(10) provides:

The following persons are subject to this chapter: ... In time of declared war or a contingency operation, persons serving with or accompanying an armed force in the field.

28 U.S.C. § 1441(a) provides, in pertinent part:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(f) provides:

The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

28 U.S.C. § 1442(a)(1) provides, in pertinent part:

A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1447(c) provides, in pertinent part:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(d) provides:

An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

## STATEMENT OF THE CASE

1. Petitioners are United States military contractors carrying out profoundly dangerous missions in various theaters of battle, including in Iraq and Afghanistan. In faithfully discharging their duties under contracts with the U.S. Department of Defense, petitioners' contract personnel daily enter wildly unpredictable, deeply menacing physical environments.[1] Lives are sometimes lost in that danger-filled zone of contractual duty. These contract-mandated functions are, by their very nature, utterly and completely federal. There is no room for introducing the vagaries of state tort law in determining the nature and scope of a contractor's duty to its employees, who heroically volunteer

---

[1] U.S. military doctrine provides that "[t]he Department[ of Defense]'s Total Force — its active and reserve military components, its civil servants, and its contractors — constitutes its warfighting capability and capacity." Since contractors are part of the nation's war-fighting force, "[t]he Department's policy now directs that performance of commercial activities by contractors, including contingency contractors and any proposed contractor logistics support arrangements, shall be included in operational plans and orders."

for these extraordinarily dangerous assignments. Yet, the Fourth Circuit has done exactly that. In this highly controversial decision, the court of appeals has relegated petitioners — and myriad federal contractors serving in Iraq and Afghanistan — to the tort law of the several States when, as here and as so frequently happens in times of war, tragedy strikes. This Court's intervention is urgently needed to vouchsafe the federal integrity of the Total Force structure of the United States military — a carefully fashioned organizational arrangement authorized by Congress and implemented by the Executive Branch as the most expeditious strategy for carrying out the nation's enormously challenging missions. War-risk liability exposure (particularly if its contours must be defined by the tort laws of the fifty States) is inherently unknowable and uninsurable, and thus incompatible with this Total Force policy, which provides for a war-fighting capability that includes commercial contractors. Under the regime left standing by the Fourth Circuit, a state court in Raleigh will determine whether — on the streets of Fallujah — decedents were properly armed and commanded. This simply cannot be.

At a barebones minimum, this Court should not let the Fourth Circuit's destabilizing judgment stand without seeking the guidance of the United States.

2. On March 31, 2004, Iraqi insurgents in Fallujah, Iraq, killed four Americans working for Petitioner Blackwater Security Consulting, LLC. An Iraqi mob beat and set fire to their bodies, and hung some of their remains from a bridge. The four decedents were accompanying a truck convoy bound for U.S. Army Camp Ridgeway. App. 4a.

3. Pursuant to the federal workers' compensation program that Congress created as an exclusive remedy to be administered by the U.S. Department of Labor, *see* 42 U.S.C. § 1651(c) (liability under the Defense Base Act ("DBA")

"shall be exclusive and in place of all other liability"); *id.* §§ 1653(a)-(b) (providing for U.S. Department of Labor administration of DBA benefits and providing for federal judicial review), decedents' DBA beneficiaries applied for — and have been receiving — maximum-rate benefits under the DBA. The U.S. Department of Labor has entered a final compensation order finding that one decedent (Zovko) is covered by, and entitled to benefits under, the DBA, and has entered a preliminary finding that a second decedent (Teague) is likewise entitled to DBA benefits. Respondents' counsel, who represents the DBA beneficiaries in agency proceedings as well, has refused to consent to the formal conclusion of agency proceedings as to the other two decedents.

4. On January 5, 2005, plaintiff Richard P. Nordan, in his capacity as administrator for the four decedents' estates, filed a complaint in North Carolina state court claiming that Petitioners Blackwater Security Consulting, LLC, Blackwater Lodge and Training Center, Inc., and Justin L. McQuown (collectively "Blackwater") had a duty under North Carolina's wrongful death statute, N.C. Gen. Stat. § 28A-18-2, to provide decedents with armored vehicles, intelligence, additional training, planning time, and rear gunners equipped with "SAW Mach 46" heavy automatic weapons. The complaint also seeks rescission, under North Carolina fraud law, of decedents' contracts with Blackwater to support United States military operations overseas. Those contracts contain detailed provisions releasing Blackwater from any and all risk of war liability. App. 36a-39a.

Nordan filed his complaint in the Superior Court for Wake County, North Carolina. App. 33a. Blackwater removed the case, citing 28 U.S.C. § 1441 and 28 U.S.C. § 1331, and asserting that Nordan's state-law claims were completely preempted by the DBA's exclusive remedy. App. 4a. Once in the district court, Blackwater filed a

motion to dismiss on the basis that DBA workers compensation benefits, the exclusive remedy provided by Congress, had been claimed by — and paid for — the four decedents. *Id.* Nordan opposed dismissal and moved to remand. App. 34a.

The district court granted Nordan's motion to remand and denied as moot Blackwater's motion to dismiss. The court held that "the DBA does not completely preempt state law claims" because the statute "provides for the exclusive filing of a claim for wrongful death benefits with the Secretary of Labor, the adjudication of such claims by a deputy commissioner or administrative law judge, the review of claims by the Benefits Review Board, and appellate review by a federal court of appeals," and thus, according to the district court, "United States District Courts are not involved in the claims adjudication process." App. 47a ("'[T]he sine qua non of complete preemption is a pre-existing federal cause of action that can be brought in the district courts.'") (quoting *Lontz v. Tharp*, 413 F.3d 435, 442 (4th Cir. 2005)). Finding a lack of complete preemption, the court held that there was no federal question basis for removal under 28 U.S.C. § 1441. The court acknowledged that under *Shives v. CSX Transportation, Inc. (In re CSX Transp.)*, 151 F.3d 164, 171 (4th Cir. 1998), it would be required to dismiss rather than to remand if the DBA deprived the state court of subject-matter jurisdiction. However, determining that it had no jurisdiction to determine the extent of DBA coverage, the district court declined to reach the issue. App. 56a.

5. Blackwater appealed and petitioned for a writ of mandamus. Nordan moved to dismiss the appeal and the mandamus petition on the grounds that 28 U.S.C. § 1447(d) prohibits review of Section 1447(c) remand orders. Blackwater defended as to the presence of appellate jurisdiction, asserting that the district court based its order of

remand not on its lack of original federal question jurisdiction under Section 1441, but on its finding that it lacked jurisdiction to determine whether the DBA deprives the *state court* of jurisdiction.

The Fourth Circuit dismissed Blackwater's appeal under Section 1447(d) and denied mandamus. App. 32a. The court of appeals acknowledged the exceptions to Section 1447(d) that this Court recognized in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), and *Waco v. U.S. Fidelity & Guaranty Co.*, 293 U.S. 140 (1934), but concluded that none of those exceptions applied. App. 12a-13a. The court of appeals also recognized that the district court erred in finding that the federal district courts have no role in considering the coverage of the DBA.

The district court incorrectly concluded that the federal district courts play no role in the adjudication of DBA claims. The federal district courts, followed by the federal courts of appeals and the United States Supreme Court, review DBA claims after they have been initially adjudicated in the Department of Labor.

App. 6a n.2. Even so, the court of appeals found that the trial court's conclusion that it lacked jurisdiction to decide the state court's jurisdiction was not reviewable because "[t]he correctness of the district court's jurisdictional analysis is irrelevant under § 1447(d)." App. 25a. The appeals court thus failed to distinguish between the trial court's finding that it lacked original jurisdiction to adjudicate the complaint, and the trial court's subsequent finding that it lacked jurisdiction under the DBA to decide whether the state court had jurisdiction.

In declining review, the court of appeals permitted the state court to decide whether a state tribunal may, through the application of state tort law, regulate the manner in which

United States armed forces supply lines are kept open under enemy fire in a foreign theater of war — even though Congress created an exclusive administrative remedy under the DBA in order to preclude state court jurisdiction over such constitutionally (and militarily) sensitive determinations. The Fourth Circuit recognized the "magnitude of the concerns Blackwater articulates" with respect to the constitutional allocation of foreign affairs and war powers to the United States, but it declined "to graft a new exception onto the already significantly burdened text of § 1447(d)." App. 27a.

Blackwater's concerns — that state court proceedings will impermissibly intrude into areas constitutionally reserved to the federal government — have already been realized. On December 15, 2006, after Blackwater had filed its demand for arbitration, and over Blackwater's objection that the state court lacks subject-matter jurisdiction, the state court granted, in chambers, respondent's request to issue a commission for an out-of-state deposition in this case, and thus proceeded to exercise jurisdiction to permit discovery before Blackwater has had any opportunity to brief, and the court has an opportunity to hear argument on, a motion to dismiss for lack of jurisdiction.

The extraordinary significance of the remand order below is magnified further by federal legislation enacted after the Fourth Circuit's mandate issued. On October 17, 2006, the President approved the National Defense Authorization Act for Fiscal Year 2007, Pub. L. No. 109-364, § 552, 120 Stat. 2083, which amends the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 802(a)(10), by clarifying that persons subject to the UCMJ include, "[i]n time of declared war or a contingency operation, persons serving with or accompanying an armed force in the field." That amendment is an exercise of Congress' authority to "make Rules for the Government and Regulation of the land

and naval Forces[,]" U.S. Const. art. I, § 8, cl.14, and to "provide ... for governing such Part of [the Militia] as may be employed in the Service of the United States," *id.* § 8, cl. 16, by consigning cases such as this to military jurisdiction, including court-martials for "culpable negligence" or manslaughter. 10 U.S.C. § 919(b). This reform of UCMJ jurisdiction brings it into harmony with Total Force doctrine — a foreseeable exercise of plenary federal authority within an exclusive federal domain.

By declining to review the trial court's order of remand, and declining to consider whether there were constitutional and statutory bars to remand, the Fourth Circuit's decision confers upon state courts a role in regulating the choice of weapons and other operational decisions made during war; in administering the DBA program; and in imposing tort liability for alleged violations subject to court-martial.

## REASONS FOR GRANTING THE PETITION

### I. THE COURT SHOULD RESOLVE AN IMPORTANT AND RECURRING QUESTION OF FEDERAL PRACTICE OVER WHICH THE FEDERAL COURTS ARE IN DISARRAY.

1. This case presents an important and recurring question of federal practice. The issue has occasioned two statutory amendments to 28 U.S.C. § 1447, a circuit conflict, and confusion with respect to the basis and vitality of this Court's decisions establishing the derivative-jurisdiction doctrine. Under that familiar doctrine, federal court jurisdiction in removed actions is derivative of state court jurisdiction. *Lambert Run Coal Co. v. Baltimore & Ohio R.R.*, 258 U.S. 377, 382 (1922) ("The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires

none."); *Gen. Inv. Co. v. Lake Shore & Mich. S. Ry. Co.*, 260 U.S. 261, 288 (1922) ("A want of jurisdiction in the state court is not cured by the removal, but may be asserted after it is consummated."); *Arizona v. Manypenny*, 451 U.S. 232, 243 n.17 (1981) (same). The result is that where the state court lacked jurisdiction over a case that is removed to federal court, the federal court must dismiss (rather than remand) the case. *See Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 24 n.27 (1983) ("[P]recedent involving other statutes granting exclusive jurisdiction to the federal courts suggests that, if such an action were not within the class of cases over which state and federal courts have concurrent jurisdiction, the proper course for a federal district court to take after removal would be to dismiss the case altogether, without reaching the merits.") (citing *Gen. Inv. Co.*, 260 U.S. at 287-88 (1922), and *Koppers Co. v. Con'l Cas. Co.*, 337 F.2d 499, 501-502 (8th Cir. 1964) (Blackmun, J.)); *see also* 14B Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 3722, at p.481 (3d ed. 1998) (under the derivative-jurisdiction doctrine, "the district court would have to dismiss the removed action since the state court's lack of subject matter jurisdiction prevented remand").

Here, the question whether the derivative-jurisdiction doctrine retains its vitality arises in the specific setting of a remand order permitting a state court to exercise war powers. This is extraordinary. Under the regime mandated by the court of appeals, a state court in Raleigh will be called upon to regulate (through North Carolina tort law) combat operations on a foreign battlefield occupied by the United States armed forces, thereby permitting a state court to decide whether persons killed under enemy fire in such an operation are entitled to DBA benefits administered by the U.S. Department of Labor. Indeed, the state trial court only recently directed that discovery should proceed immediately,

by granting plaintiff's request to conduct an out-of-state deposition.

Surely that cannot be. The vehicle for achieving this highly improbable — and federalism-threatening — result was the district court's declining to apply the derivative-jurisdiction doctrine. Instead, the trial court concluded that it lacked jurisdiction to determine whether Congress had stripped the state courts of jurisdiction under the DBA. The court of appeals likewise refused to apply the derivative-jurisdiction doctrine, even though the panel found that the district court erred in its jurisdictional analysis. The remand order thus permits state courts to adjudicate whether the DBA's "Liability as exclusive" provision (42 U.S.C. § 1651(c)) applies, despite Congress's clearly expressed mandate that the U.S. Department of Labor is to be the exclusive forum for resolving DBA coverage disputes in the first instance (followed by federal-court review), and that state courts have no jurisdiction over such disputes.

2. The derivative-jurisdiction doctrine arose in cases similar to this one, namely, where federal law stripped state courts of jurisdiction. In *Lambert*, for example, this Court held that the district court was required to dismiss the action, because Congress had stripped the state courts of jurisdiction by statutorily committing to *federal* court all suits brought to restrain or set aside orders of the Interstate Commerce Commission. 258 U.S. at 382. Similarly, in *General Investment*, this Court concluded that while the district court would have had jurisdiction over the asserted Sherman and Clayton Act claims had they been originally filed in federal court, it properly dismissed the removed case because the state court from which the case was removed had no jurisdiction over claims committed by Congress exclusively to the federal courts. 260 U.S. at 287-88.

3. Application of the derivative-jurisdiction doctrine by the lower courts produced some paradoxical results. As set forth by this Court, the derivative-jurisdiction doctrine required federal courts to dismiss any case where the state court lacked jurisdiction, even if the district court would have had original jurisdiction over the suit. *See* 14B Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 3721, at p.305 (3d ed. 1998); *Dep't of Revenue v. Inv. Fin. Mgmt. Co.*, 831 F.2d 790, 792 (8th Cir. 1987) (noting that the doctrine was "frequently criticized").

Congress sought to eliminate such inefficiencies in 1986 and 2002 by enacting and amending 28 U.S.C. § 1441(f). Section 1441(f) now provides:

> The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

28 U.S.C. § 1441(f).[2]

---

[2] Some courts have mistakenly stated that § 1441(f) "abolishes the derivative jurisdiction doctrine[.]" *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 n.3 (9th Cir. 1988). By its plain language, Section 1447(f) abolishes the rationale that district court jurisdiction over removed cases is derivative of state-court jurisdiction, but it says nothing about whether dismissal rather than remand is required when the district court finds that both the district court and the state court lack jurisdiction. Nothing in Section 1441(f) purports to invite state courts to exercise jurisdiction in derogation of other more specific federal statutes, or in areas constitutionally reserved to the United States.

The amendments thus provide that a federal court is not deprived of jurisdiction to hear a case merely because the state court from which it was removed lacked jurisdiction. The amendments do not resolve, however, the question whether the derivative-jurisdiction doctrine continues to apply where *both* the federal court and the state court lack jurisdiction over a removed case. Nor do they resolve whether this Court's decisions in *Lambert* and *General Investment* continue to prescribe dismissal rather than remand in such circumstances because a remand would be "futile." The circuit courts are deeply divided on this question.

a. The Fifth and Ninth Circuits have held that, despite Section 1447(c)'s provision that a case shall be remanded where a district court lacks subject-matter jurisdiction, the district court should *dismiss* an improperly removed case where the state court also lacks jurisdiction. The reason: because remand would be futile. *See Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990). As the Ninth Circuit stated, "[w]e do not believe Congress intended to ignore the interest of efficient use of judicial resources." *Bell*, 922 F.2d at 1424-25. The Second Circuit also has "indicated that [it] might be willing to entertain the futility exception." *Barbara v. NYSE*, 99 F.3d 49, 56 n.4 (2d Cir. 1996); *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 41 (2d Cir. 1991) ("On the other hand, remand might be improper if it would be futile, as it would be if the state court could not exercise jurisdiction over [plaintiff's] claim against [defendant].") (citation omitted).[3]

---

[3] Indeed, the Fourth Circuit has held that dismissal rather than remand is required where Congress did not intend to delegate to a state court the application of an exclusive federal remedy. *See Shives*, 151 F.3d 164; *see also Borneman v. United States*, 213 F.3d 819 (4th Cir.

b. The Third, Fourth, Sixth, Seventh, and Eleventh Circuits have reached the opposite conclusion. Those circuits have held that 28 U.S.C. § 1447(c) provides no exception for cases where the state court lacks jurisdiction. *See Bromwell v. Mich. Mut. Ins. Co.*, 115 F.3d 208, 213 (3d Cir. 1997); *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 49 (4th Cir. 1996); *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 496-97 (6th Cir. 1999); *Schacht v. Wis. Dep't of Corrs.*, 116 F.3d 1151, 1153 (7th Cir. 1997); *Smith v. Wis. Dep't of Agric.*, 23 F.3d 1134, 1139 (7th Cir. 1994); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). These decisions, however, do not consider whether the derivative-jurisdiction doctrine has continuing vitality. Nor do they consider whether Section 1447(c) should be construed harmoniously with other statutes that strip state courts of jurisdiction over certain claims.

c. This Court has yet to address head on the discord prevailing among the circuits on the issue. In *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72 (1991), the Court considered whether the futility of a remand to a state court lacking jurisdiction should be the basis for dismissal. But the Court did not resolve the issue because it declined to find that remand would be futile in the particular circumstances of that case. 500 U.S. at 89 ("Similar uncertainties in the case before us preclude a finding that a remand would be futile."); *see also* 16 MOORE'S FEDERAL PRACTICE § 107.41[1][e][iii][E] (3d ed. 2006) (discussing the circuit split and stating that *International Primate* "discussed the futility doctrine but do[es] not reject it"). The circuits embracing a

---

2000); *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442 (4th Cir. 1996). In the decision below, the court of appeals limited its earlier decisions to their facts. App. 30a-32a.

futility exception to 28 U.S.C. § 1447(c), however, rely on dicta in *International Primate* for support.

The cacophony is deep-seated. At long last, the Court should revisit the derivative-jurisdiction doctrine. That jurisprudential consideration is especially important where, as here, the doctrine requires a district court to dismiss rather than remand federal questions whose resolution is constitutionally and statutorily reserved within the federal domain. By doing so, this Court would resolve the question left open in *International Primate*. In particular, this highly sensitive case could well serve as the vehicle for confirming that the derivative-jurisdiction doctrine retains its vitality where both the state and federal courts lack jurisdiction over a removed action.

4. The need for the Court to resolve this discord is heightened by the differential treatment the courts have given to cases removed under 28 U.S.C. § 1441 and those removed under Section 1442. That difference in treatment affected the disposition of this case below. *See* App. 23a n.8.

Section 1442 permits removal of actions brought against the United States, federal officers, and federal contractors like Blackwater. *See Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("[T]his Court has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)."); *see also McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1195-1200 (M.D. Fla. 2006); *Fisher v. Halliburton*, 454 F. Supp. 2d 637, 639 (S.D. Tex. 2006); *Lane v. Halliburton*, No. H-06-1971, 2006 WL 2583438, at *1 (S.D. Tex. Sept. 7, 2006); *Smith v. Halliburton*, No. H-06-0462, 2006 WL 2521326, at *1 (S.D. Tex. Aug. 30, 2006). Because Section 1441(f) applies only to "cases removed *under this section*," 28 U.S.C. § 1441(f)

(emphasis added), courts have held that it does not apply to removals under Section 1442 and that the derivative-jurisdiction doctrine continues to apply to such removals. *See Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998) ("It is clear that a federal court's jurisdiction upon removal under 28 U.S.C. § 1442(a)(1) is derivative of the state court jurisdiction, and where the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though in a like suit originally brought in federal court, the court would have had jurisdiction."); *In re Elko County Grand Jury*, 109 F.3d 554, 555 (9th Cir. 1997) ("[B]ecause this case was removed from state court pursuant to § 1442, our jurisdiction is derivative of the state court's jurisdiction."); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 315 (7th Cir. 1994) ("When a case is removed from a state court pursuant to 28 U.S.C. § 1442, the district court's basis for jurisdiction is only derivative of that of the state court."). Thus, upon concluding that the state tribunal lacked subject-matter jurisdiction in a Section 1442 removal, the trial court should dismiss (rather than remand) when the state court has no jurisdiction. *See, e.g., Cromer*, 159 F.3d at 879, 883; *In re Elko County*, 109 F.3d at 555.

This is precisely the opposite of what the Third, Fourth, Sixth, Seventh, and Eleventh Circuits have held is proper with respect to Section 1441 removals. As discussed, these courts have construed 28 U.S.C. § 1447(c) as mandating remand, rather than dismissal, where a case is removed from state court pursuant to Section 1441 and the state court lacked subject-matter jurisdiction. This should not be. There is no principled justification for the difference in treatment between Section 1441 and Section 1442 removals.

Section 1441(f) cannot provide that justification. Section 1441(f) does not, on its face, carve out an exception to Section 1447(c). To the contrary, that provision merely confirms that district courts have jurisdiction to hear a case

that has been removed from a state court lacking jurisdiction. Section 1441(f) is silent on whether district courts should dismiss, rather than remand, such a case where the federal court *also* lacks jurisdiction. Nothing in the statutory language of Sections 1441 or 1442, or in any decision of this Court, supports this differential treatment as a matter of federal practice.[4]

The instant case illustrates why there is utterly no basis for drawing such an ephemeral distinction. Although it is a federal contractor, Blackwater cited only Section 1441 in its removal notice; it did not cite Section 1442. App. 23a n.8. But this is neither here nor there. There is no doubt whatsoever that removal would have been proper under Section 1442. *See McMahon*, 410 F. Supp. 2d at 1195-1200. But even assuming *arguendo* that Section 1442 did not apply, *merely by citing it*, Blackwater would have ensured that, under the derivative-jurisdiction doctrine, either the district court would have dismissed the case or its failure to do so would have been reviewable under *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976)[5]

---

[4] Indeed, the different treatment of the derivative-jurisdiction doctrine under Section 1441 and Section 1442 results in contradictory requirements if a case is removed under both Section 1441 and Section 1442, and the district court finds that both it and the state court lack jurisdiction. The district court may have a duty to remand such a case on the grounds that there is no futility exception under Section 1447(c), yet have a duty to dismiss on the grounds that the derivative-jurisdiction doctrine applies with full force to Section 1442 removals.

[5] In *Thermtron*, this Court recognized an exception from the bar on appellate review in 28 U.S.C. § 1447(d) in cases where the district court "exceeded [its] statutorily defined power." 423 U.S. at 351; *see also Borneman*, 213 F.3d at 826 ("Accordingly, as *Thermtron* instructs, § 1447(d) prohibits review of district courts' determinations of whether jurisdictional statutes have been

Because Blackwater cited only Section 1441, the court of appeals did not consider whether remand was appropriate under Section 1442 jurisprudence. App. 23a n.8.

5. Absent this Court's review, the result of the Fourth Circuit's decision is that a state court in Wake County, North Carolina will decide whether respondents' claims fall within the scope of the DBA's coverage. As the Fourth Circuit previously has held, this issue is "exclusively a federal question which Congress never intended for state courts to resolve." *Shives*, 151 F.3d at 167 (citing 33 U.S.C. § 921 which the DBA extends overseas through 42 U.S.C. § 1651(a)). So too, the Fourth Circuit's decision will allow a state court to decide whether Blackwater's actions when accompanying U.S. armed forces during military operations, *see* 10 U.S.C. § 802, are exclusively under the command and control of the United States or are subject to the conflicting tort laws of fifty States. Moreover, in light of Congress' recent amendment to the UCMJ, 120 Stat. 2083 (amending 10 U.S.C. § 802(a)(10)), the decision below places before a state court the decision whether to exercise jurisdiction to impose tort liability for court-martial offenses in the field.

This is so, because even though the district court recognized that state courts lack jurisdiction over issues of DBA coverage, App. 47a, the trial court declared itself powerless to uphold the DBA; the court of appeals then deemed that conclusion erroneous but unreviewable. This profoundly destabilizing result should not be allowed to stand. Indeed, the state court lacked subject-matter jurisdiction not only based on Congress's clearly expressed intent in the DBA, which directs the U.S. Department of Labor to resolve questions of DBA coverage during military

satisfied, not review of determinations where district courts exceed their jurisdictional authority.").

operations (followed by federal-court review), but also based on the political-question doctrine and principles of federalism: "The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive branches." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) (emphasis added); *see Tarble's Case*, 80 U.S. 397, 408 (1872) (holding that a state court lacks jurisdiction because U.S. military forces operate "without question from any State authority").

This Court should resolve the split in the circuits over the applicability of the derivative-jurisdiction doctrine and whether it continues to mandate dismissal of a case removed under Section 1441 where both the federal and state court lack jurisdiction. This case presents a particularly compelling vehicle for doing so. It involves the constitutional exclusivity of federal command and control over the field of foreign military operations, as well as the statutory exclusivity of federal liability for contractor war casualties sustained in foreign theaters of battle.

## II. The Court Of Appeals Has Jurisdiction To Review A Remand Order Notwithstanding 28 U.S.C. § 1447(d) When The Remand Order Would Circumvent Federal Statutory And Federal Constitutional Designs To Preclude State Court Jurisdiction.

1. This petition presents a question similar to one pending before this Court in *Osborn v. Haley*, No. 05-593. There, the Court directed the parties to brief the following question: "Whether the court of appeals had jurisdiction to review the district court's remand order, notwithstanding 28 U.S.C. § 1447(d)." *Osborn v. Haley*, 126 S. Ct. 2017 (2006). A question presented in *Osborn* is whether an exception exists to § 1447(d)'s bar on appellate review for cases arising

under the Westfall Act. That statute creates an exclusive federal remedy against the United States and, correspondingly, authorizes removal of cases in which the Attorney General certifies that the employee is acting within the scope of his employment. 28 U.S.C. § 2679.[6] A similar question is presented by the decision below: whether an exception exists to § 1447(d)'s bar on appellate review for cases raising claims within the exclusive province of the federal government. The Fourth's Circuit decision ignores the DBA's "Liability as exclusive" provision (42 U.S.C. § 1651(c)), and it allows respondents to proceed under state-tort law against American military contractors, despite Blackwater's claim that such an action unconstitutionally intrudes on the exclusive authority of the federal government to conduct military operations abroad.

2. Nothing in the text or legislative history of Section 1447(d) suggests that Congress intended to preclude appellate review of a remand order that relegates to a state court the resolution of respondents' constitutionally-suspect tort claims. To the contrary, Congress expressed a clear intent in the DBA that such tort lawsuits not be justiciable in a state court; rather, the "liability of a[] ... contractor ... under this chapter shall be exclusive and ***in place of all other liability*** of such ... contractor ... to his employees. 42

---

[6] In *Osborn*, the district court remanded a state tort claim brought against an employee of an organization that contracted with the United States Forest Service. *See Osborn v. Haley*, 422 F.3d 359, 361 (6th Cir. 2005). The Attorney General had certified that the employee was acting within the scope of his employment, and thus argued that the state tort action should be deemed an action brought against the United States. The district court, however, rejected the Attorney General's certification and granted plaintiff's motion to remand for lack of jurisdiction. *Id.* The Sixth Circuit reversed both the certification ruling and the remand order, holding that the Westfall Act foreclosed remand. *Id.* at 364.

U.S.C. § 1651(c) (emphasis added). Section 1447(d) should not be construed in derogation of Congress' mandate, which displaces state-court jurisdiction over cases such as respondents' and thus ensures that state courts do not adjudicate the constitutional questions, including questions of federalism and separation of powers, that are raised by such lawsuits brought in contravention of the DBA.

The DBA is Congress' response to the question of tort liability arising from dangerous deployments by contractors in support of U.S. military operations (and other federal activities) outside the United States. Congress has legislated a solution consisting of extending the Longshore and Harbor Workers' Compensation Act ("LHWCA") overseas, but has foreclosed an election of remedies available under the LHWCA. The LHWCA is an exclusive remedy but for the concurrent availability of state workers compensation benefits. The LHWCA's exclusivity provision "shall apply" under the DBA, *see* 42 U.S.C. § 1651(a), except that the DBA also bars the LHWCA's alternative state workers compensation remedy. 42 U.S.C. § 1651(c) (DBA benefits shall be exclusive of any other liability "under the workmen's compensation law of any State"). Thus, Congress gives effect to the constitutional commitment of foreign affairs and war powers to the United States by expressly providing in the DBA that the States' concurrent remedy under the LHWCA stops at the water's edge.

The DBA is therefore a very specific statutory expression of Congress' intent to exclude the states from any interference in the relationship between contractors and persons working for them to advance federal interests overseas. *See* House Report 1070, p. 4, 7 (1941); Senate Rep. No. 92-1175, p. 4 (1972). And that statutory intent is immeasurably fortified by the fact that it rests on the constitutional allocation of foreign affairs and war powers to the United States.

3. This Court should grant certiorari and reverse because the Fourth Circuit's refusal to recognize an exception to Section 1447(d) deepens a circuit split on whether a statutory bar to appellate review should be construed to preclude a federal court of appeals from reviewing a constitutional question, such as the political question and separation of powers arguments raised by Blackwater below as requiring dismissal rather than remand of respondents' state tort lawsuit.

a. Nothing in the text or legislative history of Section 1447(d) suggests that Congress intended to preclude appellate review of remand orders that would foreclose federal review of constitutional questions. *Cf. Johnson v. Robison*, 415 U.S. 361, 365-68 (1974) ("[C]ontention that [38 U.S.C.] § 211(a) ['which prohibits judicial review of decisions of the Veterans' Administrator'] bars federal courts from deciding constitutionality of veterans' benefits legislation ... would, of course, raise serious questions concerning the constitutionality of § 211(a), and in such case 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question[s] may be avoided.' Plainly, no explicit provision of § 211(a) bars judicial consideration of appellee's constitutional claims .... Nor does the legislative history ... demonstrate a congressional intention to bar judicial review even of constitutional questions." (footnote and internal citation omitted)).

This lack of any specific congressional intent to preclude appellate review of constitutional questions should trigger the "cardinal principle"-based rule of construction set forth in *Johnson v. Robison* and followed as a rule by eight other courts of appeals, particularly where Congress has legislated that an employer's liability under the DBA "shall be

exclusive and in place of all other liability," 42 U.S.C. § 1651(c).[7]

b. The Fourth Circuit's refusal to recognize a constitutional-questions exception to Section 1447(d) thus creates a conflict with the decisions of eight other courts of appeals. The Ninth Circuit is the only other court of appeals in accord with the Fourth Circuit in "declin[ing] to graft a new exception [for constitutional questions] onto the already significantly burdened text of §1447(d)." App. 27a; *see also Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1067 (9th Cir. 2003) ("The government argues that *Calcano-Martinez v. INS*, 533 U.S. 348 [] (2001), and *Webster v. Doe*, 486 U.S. 592, 603 [] (1988), give us license to resolve ['constitutional claims']. However, we have already held that an appellate court does not have jurisdiction to consider even substantial constitutional claims regarding removal orders covered by INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C).") (citing three prior Ninth Circuit opinions).

Eight other circuits have held that a statutory bar to review does not preclude a federal court from addressing a constitutional claim, absent a clear statement of Congressional intent. Those circuits have followed this Court's admonition in *Johnson v. Robison*, *supra*, that any construction of a statutory bar to judicial review that would preclude review of "constitutional questions" would "raise serious questions concerning the constitutionality of [the statutory bar itself]," 415 U.S. at 366. *See Doe v. Cheney*, 885 F.2d 898, 909 (D.C. Cir. 1989) ("In general, constitutional claims are judicially reviewable unless

[7] Indeed, as a matter of federalism, *see Tarble's Case*, 80 U.S. at 408, and as a matter of the political-question doctrine, *see Gilligan*, 413 U.S. at 10, the district court's remand order raises significant constitutional questions because it imposes on U.S. military contractors a risk of exposure to a patchwork quilt of state tort regulation that impedes foreign deployment of the contractor component of the "Total Force."

Congress clearly expresses its intent to preclude review."); *McBryde v. Comm. to Review Circuit Council Conduct*, 264 F.3d 52, 59 (D.C. Cir. 2001) ("When the Constitution is invoked, a claim of preclusion faces an especially high hurdle."); *Paluca v. Sec'y of Labor*, 813 F.2d 524, 526 (1st Cir. 1987); *S. Windsor Convalescent Home v. Mathews*, 541 F.2d 910, 914 (2d Cir. 1976) ("[T]he effect of precluding federal jurisdiction over constitutional questions … would be at odds with the well established principle that a court will not construe a statute to restrict access to judicial review unless Congress manifests its intent to do so by 'clear and convincing evidence.'"); *Aliota v. Graham*, 984 F.2d 1350, 1357 (3d Cir. 1993) (recognizing the "jurisprudential concerns associated with the inability to review a constitutional decision"); *Humphries v. Various Fed. USINS Employees*, 164 F.3d 936, 945 n.9 (5th Cir. 1999) ("'serious constitutional questions' … would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim."); *Chelsea Cmty. Hosp. v. Mich. Blue Cross Ass'n*, 630 F.2d 1131, 1135 (6th Cir. 1980) ("[I]t is a 'cardinal principle' that we should seek statutory constructions which avoid constitutional doubts, *Johnson v. Robison* …."); *Czerkies v. Dep't of Labor*, 73 F.3d 1435, 1442-43 (7th Cir. 1996) (en banc) (Based on the "presumption against denying all judicial remedies for violations of the Constitution … the district court had jurisdiction to consider … constitutional claim [not] barred by 5 U.S.C. § 8128(b)."); *Nyeholt v. Secretary of Veterans Affairs*, 298 F.3d 1350, 1353-54 (Fed. Cir. 2002) (citing *Johnson*).

c. Any of the eight circuits that have spoken on the issue would have recognized that Blackwater's constitutional claims deserved careful appellate review, notwithstanding Section 1447(d). *Cf. Thermtron Prods.*, 423 U.S. at 351 ("Because the District Judge remanded a properly removed

case on grounds that he had no authority to consider, he exceeded his statutorily defined power; and issuance of the writ of mandamus was not barred by § 1447(d).”). The district court’s remand order delegates to a state court the duty to determine nonjusticiable political questions that are within the exclusive province of the federal government; it thus allows a state tort lawsuit to proceed in violation of the fundamental constitutional delegation of foreign affairs and war powers to the political branches of the federal government. This cannot be — a state court simply cannot regulate the order of battle. The Fourth Circuit nonetheless refused to review the remand order. App. 26a. But nothing in Section 1447(d) purports to strip appellate courts of jurisdiction to review orders that remand cases raising significant constitutional questions; there is certainly no clear statement of Congressional intent to do so. To the contrary, just as in *Osborn*, Congress has made clear its intent that state courts have no role to play in adjudicating claims that arise in the context of military action, including those of respondents.

4. Whether the Fourth Circuit properly declined to review the district court’s remand order is of particular importance now, when respondents and others supporting the United States Government’s efforts overseas are depending upon the “Liability as exclusive” provision of the DBA and at a time when the nation is at war. *See Tarble’s Case*, 80 U.S. at 408; *see also Gilligan*, 413 U.S. at 10 (“The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches.”). In the past five months, five tort lawsuits against battlefield contractors have been dismissed as nonjusticiable by federal district courts based on the political-question doctrine. *See, e.g.*, *Fisher v. Halliburton, Inc.*, 454 F. Supp. 2d 637, 639-

45 (S.D. Tex. 2006); *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d. 1277, 1279-82 (M.D. Ga. 2006); *Smith-Idol v. Halliburton*, No. H-06-1168, 2006 WL 2927685, at *1-2 (S.D. Tex. Oct. 11, 2006); *Woodson v. Halliburton Corp.*, No. H-06-2107, 2006 U.S. Dist. LEXIS 70311, at *1-2 (S.D. Tex. Sept. 28, 2006); *Smith v. Halliburton Co.*, No. H-06-0462, 2006 WL 2521326, at *2–7 (S.D. Tex. Aug. 30, 2006).

In view of the manifest national importance of the constitutional issues at stake, this Court should grant certiorari to resolve the split in the circuits over whether there is a constitutional-questions exception to a statutory bar to judicial review, absent a clear statement of Congressional intent to preclude such review.

## CONCLUSION

For the foregoing reasons, the petition should be granted. In the alternative, this Court should invite the views of the Solicitor General.

Respectfully submitted,


KENNETH W. STARR
*Counsel of Record*
RICK RICHMOND
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017
(213) 680-8400

SUSAN E. ENGEL
JENNIFER S. ATKINS
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
(202) 879-5000

MICHAEL P. SOCARRAS
M. MILLER BAKER
MICHAEL S. NADEL
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, DC 20005
(202) 756-8000

JOSEPH E. SCHMITZ
THE PRINCE GROUP
1650 Tysons Boulevard, Suite 800
McLean, VA 22102
(703) 663-6997

KIRK G. WARNER
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN
P.O. Box 2611
Raleigh, NC 27602
(919) 821-1220

*Attorneys for Petitioners Blackwater Security Consulting LLC, and Blackwater Lodge and Training Center, Inc.*

BLANK PAGE