IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:07-CV-00175

| | |
|---|---|
| RICHARD P. NORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **NOTICE OF REMOVAL** |
| ) | |
| BLACKWATER SECURITY ) | |
| CONSULTING, L.L.C. and ) | |
| BLACKWATER LODGE AND ) | |
| TRAINING CENTER, INC., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

      1.      Pursuant to 28 U.S.C. §§ 1331, 1441, 1442, 1446, as well as the Federal Arbitration Act ("FAA"), including without limitation 9 U.S.C. §§ 4, 202, 203, and 205, and any other applicable provisions of federal law, Defendants Blackwater Security Consulting, LLC ("BSC") and Blackwater Lodge and Training Center, Inc. ("Blackwater USA") (together, "Defendants" or "Blackwater") file this Notice of Removal to remove *Nordan v. Blackwater Security Consulting, LLC*, No. 07-CVS-7061 (N.C. Super. Ct. Wake Co.) ("*Nordan II*"), from the General Court of North Carolina, Superior Court Division, in Wake County, to the United States District Court for the Eastern District of North Carolina.

      2.      *Nordan II* is the second action the Plaintiff Richard P. Nordan ("Nordan") has filed against Blackwater in the Superior Court of Wake County. *Nordan II* seeks to enjoin Blackwater from pursuing an arbitration claim against Nordan. His first action, styled *Nordan v. Blackwater Security Consulting, LLC*, No. 05-CVS-173 (N.C. Super. Ct. Wake Co.) ("*Nordan I*"), became subject to this Court's Order of April 20, 2007, in *Blackwater Security Consulting,*

#962471_1.DOC

*LLC v. Nordan*, No. 06-CV-49-F (E.D.N.C.), which granted Blackwater's application for an order requiring arbitration of *Nordan I* and directed the parties to arbitrate.

3.      Thus, Nordan filed *Nordan II* to enjoin arbitration of Blackwater's breach of contract claims, after this Court ordered arbitration of Nordan's claims against Blackwater asserted in *Nordan I*. Blackwater's claims against Nordan, which he seeks to enjoin in *Nordan II*, relate to the same arbitration contracts this Court has enforced with respect to Nordan's claims against Blackwater. Blackwater has removed *Nordan II*, among other reasons, to seek consistent resolution of this action (*Nordan II*) and No. 06-CV-49-F.

4.      While being mindful of the provision in 28 U.S.C. § 1446 for a short and plain statement of the grounds for removal, Blackwater submits the following detailed paragraphs 5-50 in light of the fact that Blackwater's removal of *Nordan I* resulted in a remand, upheld on appeal and upon a denial of a writ of certiorari, on the grounds among others that Blackwater's removal notice in *Nordan I* omitted a citation to 28 U.S.C. § 1442(a)(1).

## PROCEDURAL BACKGROUND

5.      On December 14, 2006, Blackwater filed with the American Arbitration Association ("AAA") a Demand for Arbitration naming Nordan as the respondent therein and simultaneously served the Demand for Arbitration upon Nordan (the "Arbitration").

6.      The Arbitration seeks, among other things, an award to Blackwater of the right to be free of any claim or liability asserted by Nordan in *Nordan I*, and of the right to be paid damages by Nordan for his having filed, prosecuted, and publicized *Nordan I* in breach of no-suit and non-publicity clauses (among other provisions) of four Independent Contractor Service Agreements (the "Service Agreements").

#962471_1.DOC

7. The parties to the Service Agreements are BSC, on the one hand, and each of Wesley J.K. Batalona, Jerko Zovko, Mike R. Teague, and Stephen S. Helvenston (the "Decedents"), on the other hand.

8. Blackwater USA, a Delaware corporation, is manager of BSC, a Delaware LLC. As an affiliate of BSC, Blackwater USA may and does invoke rights as a non-signatory under the same arbitration contracts upon which BSC relies herein in relation to the same facts.

9. As ancillary administrator of the Decedents' estates, Nordan is bound by the Decedents' obligations under the Service Agreements, and has breached said obligations by, among other things, filing, prosecuting, and publicizing *Nordan I*.

10. The Arbitration is against Nordan as ancillary administrator of the estates of the Decedents. In the course of the Arbitration and related litigation, Nordan has purported to retain one set of counsel to represent him in a 'personal capacity' and another set of counsel to represent him in an 'administrative capacity.' While fee arrangements between these sets of counsel may differ, in that the counsel designated 'personal' may be paid hourly fees by the law firm in which Nordan is a partner, while the counsel designated 'administrative' have publicly admitted having a contingency fee interest in *Nordan I*, those distinctions between different capacities are irrelevant here because Nordan is personally liable as estate administrator.

11. North Carolina law makes an estate administrator personally liable for all liabilities arising in the course of administering an estate, including personal liability for wrongful suits filed as estate administrator, torts whether intentional or unintentional, estate taxes, attorneys fees, and other contractual obligations. Thus Nordan sues and publicizes his suit as estate administrator, and is personally liable therefor.

12. Shortly after commencing the Arbitration, Blackwater commenced No. 06-CV-49-F in this Court to petition for an order under 9 U.S.C. § 4, among other things, enjoining Nordan from litigating or prosecuting *Nordan I*. The Petition in No. 06-CV-49-F attached a copy of the AAA Demand for Arbitration that Blackwater filed in the Arbitration. Exhibit 1 attached hereto.

13. On April 20, 2007, this Court, per the Honorable James C. Fox, United States Senior District Judge, granted the Petition in part by entering an Order that finds that the arbitration clauses in the Service Agreements are valid and binding, explains the requirements of the FAA with respect to mandatory stays of court proceedings where disputes are arbitrable, and stays further proceedings pending conclusion of the Arbitration. The Court denied Blackwater's request to impose a stay upon the state court by federal order, but the Court expressed its confidence in footnote 2 of the April 20, 2007, that the parties and the state court would proceed in accordance with law. Exhibit 2 attached hereto.

14. On May 4, 2007, Nordan filed the complaint in this removed action (*Nordan II*) and moved for a preliminary injunction to stop the Arbitration (the "Complaint"). A true and correct copy of all process, pleadings, and orders of said civil action are attached hereto as Exhibit 3.

15. The Complaint asks the Wake County court for a declaratory judgment that:

  a) [Nordan] has never consented or otherwise agreed to arbitration of any matter with either of the [Petitioners]; and

  b) [Nordan] is not subject to any alleged claims in any arbitration forum which have been or which may be brought against him in his individual capacity by either of the [Petitioners], including but not limited to any claims alleged in Defendants' aforementioned Demand for Arbitration.

16. The Complaint has been served upon Blackwater since the filing of the action on May 4, 2007. Because this Notice of Removal is filed within thirty (30) days after service of the

summons and complaint upon the first-served defendant, it is timely under 28 U.S.C. § 1446(b) to the extent that the latter may apply.

17. The Court clarified on May 11, 2007, that its April 20, 2007, Order relates to *Nordan I*, but it took no position on the Complaint removed hereby. Exhibit 4 attached hereto.

## FACTUAL BACKGROUND

18. Blackwater and affiliates provide security and other services pursuant to contracts in support of the United States Government ("USG"), foreign governments, international organizations, and private companies, among other clients, in war zones in Iraq and Afghanistan, and in other locations outside the United States. Qualified security professionals who wish to deploy with Blackwater to Iraq, Afghanistan, and other high-risk environments enter into binding service contracts with Blackwater.

19. Such service contracts provide, among other things, that said professionals assume all the risks of death and injury, waive and release Blackwater and their affiliates from all liability relating to the services, shall not file or prosecute claims against Blackwater relating to their services, disclaim reliance on any representations outside the service contract, waive jury trial, and promise not to engage in any publicity and to keep confidential the services, including the service contracts themselves.

20. The Service Agreements are four such service contracts entered into by and between BSC and each of the Decedents, respectively. The Service Agreements are to be performed in a Duty Station overseas to include Iraq and other foreign states. The Service Agreements are applicable to any and all services that the Decedents may have been called to perform in the duty station including related travel.

21.  The Service Agreements governing the relationship between Blackwater and each Decedent were materially identical in all pertinent respects.

22.  Decedents, who executed the Service Agreement, were competent and knowledgeable, ex-military, highly trained combat professionals. Each Decedent recited in Recital B of the Service Agreement that he "is experienced in providing the Services utilized in the Business[.]"

23.  Some of the services Blackwater has performed for the USG in Iraq have been in support of military operations undertaken by the United States Armed Forces in Iraq.

24.  Armed insurgents in Fallujah, Iraq, murdered the Decedents on March 31, 2004, while Decedents were providing security services in support of the United States Armed Forces, pursuant to their respective Service Agreements.

25.  In disregard of the Service Agreements, including their covenants not to sue, releases, waivers, and disclaimers, as well as the confidentiality and non-publicity provisions, Nordan sought and accepted to become ancillary administrator of the estates of the Decedents, which were created for the purpose of claiming damages for wrongful death and fraud against Blackwater in *Nordan I* in breach of the Service Agreements.

26.  In the Arbitration, Blackwater claims that Nordan is personally liable for all obligations relating to or incurred in the course of his administration of the estates of the Decedents, including liability to Blackwater for his breaches of the Service Agreements arising from the filing and prosecution of *Nordan I*, his filing and litigation of *Nordan I* in the public domain, and the activities of his attorneys and publicists including their actions to generate publicity relating to *Nordan I*.

27.     The Service Agreements and Nordan's liability to Blackwater are governed by North Carolina law. Laws and regulations promulgated in Iraq, whether by the Coalition Provisional Authority (the "CPA") or other authorities, including CPA Order No. 17, exclude any liability of Blackwater arising from the deaths of the Decedents.

## REMOVAL UNDER THE NEW YORK CONVENTION

28.     Pursuant to 28 U.S.C. §§ 1441 and 1331, as well as 9 U.S.C. §§ 4, 202, 203 and 205, Blackwater has the right to remove, and this Court has subject matter jurisdiction over, the underlying state court action including the Complaint and Nordan's motion to enjoin arbitration.

29.     The Service Agreements are subject to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), as enacted by Congress in Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq*. The Service Agreements envisage performance abroad, and bear other reasonable relation to foreign states, within the scope of the New York Convention as set forth in 9 U.S.C. § 202.

30.     Pursuant to 9 U.S.C. § 202, a commercial agreement between citizens of the United States is subject to the New York Convention, and is thus non-domestic, if it envisages performance in a foreign state, or bears other relation to foreign states. The Service Agreements are non-domestic agreements within the scope of 9 U.S.C. § 202, the Complaint relates to the Service Agreements and Blackwater has the right to remove the Complaint under 9 U.S.C. § 205.

31.     Each Service Agreement envisages performance abroad by, among other things, specifying that "Duty Station" was to be in Iraq and other foreign states. Moreover, the Service Agreements envisage performance in areas abroad where military operations are ongoing, and where the Decedents would be subject to enemy attack. The Service Agreements do not envisage any performance in the United States but, even if they did, it is sufficient for purposes of the New York Convention that they envisage some performance abroad.

32.     Blackwater's relationship with the Decedents, including the Service Agreements, bears reasonable relation to Iraq, Afghanistan, Kuwait, and other foreign states, *inter alia* because the Decedents were providing an armed escort for a convoy of catering trucks bound for U.S. Army Camp Ridgeway in Iraq when they were killed by enemy insurgents in Fallujah, Iraq, on March 31, 2004.  Decedents deployed with Iraq travel orders issued by the Office of the United States Secretary of Defense in support of the CPA, which was then the government of Iraq.  Decedents posthumously received Defense of Freedom medals from the United States Department of Defense for their services in support of the U.S. Army in Iraq.

33.     Blackwater's relationship with the Decedents, including the Service Contracts, is "commercial" within the scope of the New York Convention in that the Decedents provided their professional services to Blackwater as independent contractors in exchange for substantial financial compensation.  Moreover, the services the Decedents provided under the Service Agreements were intended to serve commercial customers, including a commercial catering company.

34.     Each Service Agreement contains an arbitration agreement or 'clause.'  This clause, found in Article 20.1 of each Service Agreement, reads as follows:

> Contractor and BSC hereby agree that any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association and shall be conducted in Currituck or Camden County in North Carolina. The arbitrators may award attorneys fees to the prevailing party in any arbitration proceeding.  All costs and expenses of the arbitration, including actual attorney's fees shall be allocated among the parties according to the arbitrator's discretion. The arbitrator's award may be confirmed and entered as a final judgment in the courts noted above and enforced in accordance with the rules of the American Arbitration Association. Proceeding to arbitration and obtaining an award there under shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil action of a summary nature where the relief sought is predicated on there being no dispute with respect to any

fact or relief of an injunctive nature. Contractor hereby waives any rights to seek removal of any dispute to the state or federal courts.

35. Since the Service Agreements contain arbitration clauses, involve commercial relationships, were to be performed abroad, and bear other reasonable relation to foreign states, they are subject to the New York Convention.

36. The removed action (*Nordan II*) is a proceeding pending in state court. The subject matter of the removed action relates to the arbitration contracts in the Service Agreements because it seeks to prevent arbitration thereunder. Since the Service Agreements fall under the New York Convention, the removed action relates to the New York Convention.

37. Under the New York Convention, 9 U.S.C. § 205, "where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . . falling under the [New York] Convention, the defendant or defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States embracing the place where the action or proceeding is pending."

38. Blackwater hereby exercises its rights of removal under 9 U.S.C. § 205.

39. The Court has subject matter jurisdiction under 9 U.S.C. §§ 202, 203 and 205, and under 28 U.S.C. § 1331, because the New York Convention is applicable here. Blackwater's right of removal under the New York Convention is absolute and timely at any time before trial, and is not subject to any other jurisdictional requirement, the well-pleaded complaint rule, the amount in controversy, or any other factor.

40. Consequently, removal is proper pursuant to the FAA, the New York Convention, and any other applicable federal statutes, including without limitation 9 U.S.C. §§ 202, 203, and 205, and 28 U.S.C. §§ 1331 and 1441.

9

#962471_1.DOC

## REMOVAL UNDER 28 U.S.C. § 1331

41.     Under 28 U.S.C. § 1331, this Court has original jurisdiction of this removed action because the Complaint necessarily raises a federal question. This action is therefore removable under 28 U.S.C. § 1441.

42.     Nordan's Complaint and motion in *Nordan II* expressly seek to deny Blackwater's rights to proceed with the Arbitration. This Court previously ordered, before Nordan commenced this action, that the Arbitration is subject to the FAA. This Court did so in ordering that the parties must proceed with the Arbitration under the FAA to resolve the claims in *Nordan I*. Therefore the Complaint raises a question of federal law concerning the extent to which the FAA requires the parties to proceed with the Arbitration.

43.     Consequently, removal is proper pursuant to the FAA, including without limitation 9 U.S.C. § 4, and 28 U.S.C. §§ 1331 and 1441.

## REMOVAL UNDER 28 U.S.C. § 1442a

44.     Congress enacted 28 U.S.C. § 1442a with the objective of preventing state court interference in national military affairs. Section 1442a should be liberally construed to achieve that objective.

45.     Blackwater and the Decedents were at all relevant times securing the supply lines of the United States Army in Iraq under the Service Agreements.

46.     Recent pronouncements by all three branches of the United States Government have made clear that contractors working on behalf of the U.S. Military should be considered members of the armed forces of the United States for purposes of Section 1442a:

- The Department of Defense, in its 2006 Quadrennial Defense Review ("QDR"), states that "[t]he Department's Total Force – its active and reserve military components, its civil servants, and its contractors – constitutes its warfighting capability and capacity." (emphasis added). The QDR adds that "the Department's

- policy now directs that performance of commercial activities by contractors . . . shall be included in operational plans and orders."

- On September 30, 2006, Congress passed the National Defense Authorization Act for Fiscal Year 2007. The Act included a provision (§ 552) stating that the Uniform Code of Military of Justice applies to contractors not only in declared wars, but in "contingency operations" such as Iraq. The provision is labeled a "clarification," indicating that Congress was merely clarifying what has been true all along – military contractors such as Blackwater are a civilian component of the armed forces of the United States and as such are subject to the Uniform Code of Military Justice in the field. (The Act was signed into law by President Bush on October 17, 2006.)

- Over the course of the last year, numerous courts have dismissed cases against military contractors in Iraq under Rule 12(b)(1) on the grounds that actions taken by such contractors are so closely intertwined with those of the United States military that a lawsuit against the contractor is effectively a lawsuit against the armed forces, and is therefore subject to dismissal on the basis of the political question doctrine. See, e.g., Whitaker v. Kellogg Brown & Root, Inc., 444 F. Supp. 2d 1277 (M.D Ga. 2006).

47.     Consequently, removal is proper pursuant to 28 U.S.C. § 1442a.

## REMOVAL UNDER 28 U.S.C. § 1442(a)(1)

48.     Section 1442(a)(1) allows removal of any action commenced in a State court against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." Section 1442(a)(1) is to be broadly construed and given a liberal interpretation. Section 1442(a)(1) permits contractors acting in support of the United States' military operations in Iraq and Afghanistan to remove state court actions as persons acting under officers of the United States who are entitled to remove under § 1442(a)(1).

49.     Pursuant to the contractual relationships outlined above, Blackwater has acted at all relevant times under the direction of a federal agency or officer. Blackwater instituted the Arbitration under color of federal office within the meaning of 28 U.S.C. § 1442(a)(1), in part to

protect confidences and secrets it is charged with protecting through the Service Agreements as federal contracts.

50. Consequently, removal is proper pursuant to 28 U.S.C. § 1442(a)(1).

### **ANY REMAINING REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

51. As required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Superior Court of Wake County, North Carolina and to Plaintiff's counsel.

52. All properly joined and served defendants join in this removal.

53. Defendants have not sought similar relief.

54. The prerequisites for removal under 28 U.S.C. § 1441 have been met.

55. The allegations of this Notice are true and correct and within the jurisdiction of the United States District Court for the Eastern District of North Carolina, and this case is removable to the United States District Court for the Eastern District of North Carolina.

56. Defendants citation of certain provisions of law, and averment of certain specific facts, is not intended to waive or exclude any other applicable provisions of federal law or any grounds for removal not specifically averred herein.

57. If any question arises as to the propriety of the removal of this action, the Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is proper for removal.

## CONCLUSION

WHEREFORE, the Defendants, desiring to remove this case to the United States District Court for the Eastern District of North Carolina, Western Division, being the district and division of said Court for the County in which said action is pending, pray that the filing of this Notice of Removal shall effect the removal of said suit to this Court.

This the 14th day of May, 2007.

                                  SMITH, ANDERSON, BLOUNT, DORSETT,
                                    MITCHELL & JERNIGAN, LLP

By:   /s/ Kirk G. Warner
       Mark A. Ash
       N.C. State Bar No. 13967
       Kirk G. Warner
       N.C. State Bar No. 16238
       P.O. Box 2611
       Raleigh, North Carolina 27602
       TEL: 919.821.1220
       FAX: 919-821-6800
*Attorneys for Defendants Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*

## **CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this date served the foregoing in the above-entitled action upon all other parties to this cause by hand delivery, addressed to the following parties:

>David S. Coats
>Bailey & Dixon
>P.O. Box 1351
>Raleigh, NC 27602
>*Attorneys for Plaintiff*

This the 14th day of May, 2007.

> /s/ Kirk G. Warner
>Kirk G. Warner

#962471_1.DOC