IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BLACKWATER SECURITY            :
CONSULTING, LLC, *et al.*      :
                               :
            Plaintiffs,        :
                               :
        v.                     :   Civil Action
                               :   No. 2:05-cv-06020-PBT
WESTCHESTER SURPLUS LINES      :
INSURANCE COMPANY, *et al.*,   :
                               :
            Defendants         :

**CONTINENTAL INSURANCE COMPANY'S OPPOSITION
AND, IN THE ALTERNATIVE, RULE 56(F) MOTION, TO
BLACKWATER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

From the moment that claims were asserted against Blackwater Security Consulting, LLC and Blackwater Lodge & Training Center, Inc. (collectively "Blackwater"), Continental Insurance Company ("Continental") honored all of its obligations under its Defense Base Act ("DBA") policy. Continental is defending and paying indemnity for the DBA claims. ***And,*** Continental is paying reasonable and necessary defense costs incurred in *Nordan v. Blackwater*, No. 05-CV-000173 (NC Super. Ct.) (the "*Nordan* Action") – despite allegations in the complaint indicating that there is no coverage. In response to Continental's fulfillment of its obligations, Blackwater argues that Continental is somehow estopped from even litigating whether a defense obligation for the *Nordan* Action exists, notwithstanding the fact that Continental clearly reserved its right to litigate that issue.

Blackwater's premature and superficial summary judgment motion attempts to avoid two key issues. First, whether a defense obligation exists under the Continental DBA policy depends on the employment status of the deceased security personnel (the "Decedents"). The Continental

- 2 -

DBA policy provides coverage only for claims asserted by an "employee." As Blackwater concedes, the *Nordan* Action complaint expressly alleges that the Decedents were independent contractors, not employees. Although there is a possibility that coverage could exist under the Continental DBA policy for claims asserted by independent contractors, that can only be determined by analyzing issues extrinsic to the complaint. Continental is entitled to conduct discovery regarding the employment status of the Decedents.

Second, even if Blackwater's premature motion were granted, it would be a hollow victory because Blackwater's motion fails to address a key dispute regarding the defense obligation. Continental and Westchester Surplus Lines Insurance Company ("ACE"), which issued a general liability policy, already have paid over $1 million to Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, a well-respected North Carolina firm. Smith Anderson has provided a "no stone unturned defense" in the *Nordan* Action. However, ***Blackwater seeks reimbursement of bills charged by thirteen other law firms, employing at least 120 timekeepers (and probably more than 150) who have billed an additional $4 million.*** In violation of the Continental DBA policy, Blackwater retained these firms and incurred expenses without the consent of Continental. In addition, based on information and belief, Blackwater is seeking reimbursement for lobbying that these firms conducted in relation to Congressional investigations, media campaigns to improve Blackwater's tarnished reputation, and advice to obtain additional government contracts. Moreover, to the extent that the firms worked on the *Nordan* Action, their work largely was duplicative of the work performed by Smith Anderson. Blackwater's demand for reimbursement of these unreasonable, unnecessary and uncovered legal bills raises myriad factual issues that can only be addressed through discovery.

Therefore, Continental respectfully requests that the Court deny Blackwater's motion and permit discovery regarding the employment status of the Decedents and whether the $5 million in bills charged to date by fourteen law firms are unreasonable, unnecessary and not covered.

## FACTS

Continental issued Policy No. DBA 22 390 1731 to Blackwater for the period March 18, 2004 to June 18, 2004 (the "Continental DBA Policy").[1] The policy is attached as Exh. A to Blackwater's Motion against Continental. The Continental DBA policy provides worker's compensation coverage required under the Defense Base Act, 42 U.S.C. § 1651, *et seq.* Continental DBA Policy, Part One, A. The DBA was enacted to provide employees working on military and government contracts outside the continental United States with the same workers' compensation benefits as provided under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901, *et seq.* The Continental DBA Policy also provides coverage for a narrow subset of bodily injury claims asserted by employees who somehow are exempted from statutory worker's compensation schemes. Continental DBA Policy, Part Two, A. This coverage part is referred to as employer's liability or "EPL."

ACE issued Commercial General Liability Policy. No. GLW 778197-0/000 to Blackwater (the "ACE Policy"). That policy provides coverage for, *inter alia*, bodily injury claims asserted by claimants who are *not* employees. *See, e.g.,* ACE Policy, Section I(2)(d), (e). Thus, the Continental DBA Policy and the ACE Policy are mutually exclusive. The Continental DBA Policy covers workers' compensation type claims asserted by employees, the ACE Policy covers bodily injury claims asserted by those who are not employees.

---

[1] The policy was issued by Continental Insurance Company's predecessor, Fidelity & Casualty Co. of New York.

On March 31, 2004, the Decedents were murdered in Iraq while providing security for trucks allegedly servicing the U.S. Army. Within one business day of the Decedents' deaths, Continental acknowledged that it "provides Defense Base Act coverage to the Blackwater employees that were killed in Iraq." *See* Exh. 1, Declaration of Frances Mares ("Dec."), Attachment A. Throughout the next nine months, every action that Blackwater took indicated that the Decedents were employees. For example, Blackwater immediately sought DBA benefits for the families of the Decedents, which are available only to employees. *See* Dec. ¶5, Attachment B. And, at Blackwater's request, Continental immediately began paying those benefits. *See id.* ¶3. At no point did Blackwater inform Continental or the Department of Labor that the Decedents were anything other than employees. *Id.* ¶ 7.

On January 5, 2005, the representative of the Decedents' estates filed the *Nordan* Action. The action was filed in order to obtain a recovery greater than is provided under the DBA. In order to avoid the application of the DBA, the complaint alleges that each of the Decedents was an independent contractor and that they were "***at no relevant time employees of Blackwater.***" *See Nordan* Complaint, Exh. B to Blackwater's Mot. ¶ 31 (emphasis added). In support of this allegation, the complaint cites to Independent Contractor Service Agreements that were signed by each Decedent. *See* Exh. 2 (representative agreement for one Decedent). Those agreements provide that each of the Decedent workers:

> is solely responsible for obtaining any and all liability insurance . . . [and] workers compensation [insurance] . . . and therefore understands and agrees that [Blackwater] is not responsible for obtaining any such insurance on Contractor's behalf.
>
> acknowledges that it is solely an independent contractor. Nothing contained in this Agreement shall be deemed to constitute either [Blackwater], the Contractor or Customer as an . . . employee of the other party for any purpose.
>
> understands that he is not entitled to any employee benefits from [Blackwater], including workers' compensation benefits . . . or any other benefits.

- 4 -

*Id.* ¶¶ 11.1; 20.15.

Blackwater subsequently provided notice of the *Nordan* Action to Continental and Continental approved Blackwater's retention of the Smith Anderson law firm. However, based on the allegations of the complaint, Continental expressed "serious concerns" regarding whether the Decedents were "employees" under the terms of the Continental DBA Policy. Continental specifically reserved its right to deny coverage if the Decedents were determined not to be "employees." Subject to its reservation of rights, Continental, along with ACE, have paid in full every invoice that Smith Anderson has submitted, which total nearly $1.1 million. Dec. ¶ 8. Nonetheless, Blackwater filed the present coverage action.

## ARGUMENT

Blackwater summarily argues that, although Continental clearly reserved its right on the issue, Continental is somehow estopped from litigating the employment status of the Decedents. That argument fails. The Continental DBA Policy provides coverage only for claims asserted by "employees." As Blackwater concedes, the *Nordan* Complaint asserts that the Decedents were independent contractors, not employees. A factual issue exists regarding whether the Decedents fall within the Continental DBA Policy's definition of "employee." Continental is entitled to conduct discovery regarding that factual issue.

In addition, Continental is entitled to conduct discovery regarding the unreasonable, unnecessary and uncovered $4 million in bills charged by thirteen additional law firms for which Blackwater seeks reimbursement.

**I.   A FACTUAL ISSUE EXISTS REGARDING WHETHER THE DECEDENTS WERE COVERED "EMPLOYEES."**

An insurer has no obligation to defend "if the facts [alleged in the complaint] are not even arguably covered by the policy." *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d

374, 378 (N.C. 1986); *Crandell v. Am. Home Assurance Co.*, 644 S.E.2d 604, 606 (N.C. Ct. App. 2007).[2] Here, a plain reading of the *Nordan* Complaint indicates that there is no coverage under the Continental DBA Policy. Accordingly, a duty to defend could be established, if at all, solely through the introduction of extrinsic evidence, which raises a factual issue.

### A. The *Nordan* Complaint Alleges That the Decedents Were Independent Contractors, Not Employees.

Blackwater and Continental agree that the Continental DBA Policy provides coverage only for claims asserted by employees and, in limited circumstances, independent contractors. *See* Blackwater Mot. at 3. Specifically, the Continental DBA Policy defines "employee" as follows:

> anyone employed by [Blackwater] including any volunteer worker. At your option, "employee" may include individuals who are independent contractors with whom you have a written contract in which you agree to provide them the benefits of voluntary workers' compensation.

Continental DBA Policy, Part Six(B). Thus, independent contractors can be deemed to be employees, but only if there is a written contract in which Blackwater agrees to provide them the benefits of voluntary workers' compensation.

Blackwater has the burden of establishing that Continental has the obligation to defend – in this case, that the Decedents were "employees." *See, e.g., Wm. C. Vick Constr. v. Pa. Nat'l. Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 580 (E.D.N.C. 1999). In determining whether an insurer

---

[2] North Carolina law likely applies to the coverage issues involving the CNA DBA Policy. Blackwater was located in North Carolina at the time the policy was issued and it remains there. And, the policy arguably includes a North Carolina choice of law provision. *See* CNA DBA Policy, International Common Policy Provisions, subsection W. "When parties have a contractual choice of law provision, Pennsylvania courts will generally comply with the will of the contracting parties and apply the law designated in the contract...." *Nova Ribbon Prods. v. Lincoln Ribbon, Inc.*, No. 89-4340, 1992 WL 211544, at *3 (E.D. Pa. Aug. 24, 1992). If North Carolina law does not apply, then New York law would apply because the policy was underwritten out of CNA's New York office. In any event, Pennsylvania law clearly does not apply.

has a duty to defend, North Carolina, like most states, employs the "comparison test." *See Holz-Her U.S. v. U.S. Fid. & Guar. Co.*, 539 S.E.2d 348, 349 (N.C. Ct. App. 2000); *Prime TV, LLC. v. Travelers Ins. Co.*, 223 F. Supp. 2d 744, 750 (M.D.N.C. 2002). The complaint is read side-by-side with the policy to determine whether the alleged injuries are covered or excluded. *Id.*

The *Nordan* Complaint expressly disavows that the Decedents were employees, asserting that they were independent contractors. *See Nordan* Complaint, Exh. B to Blackwater's Mot. at ¶ 31. The *Nordan* Complaint relies upon the Independent Contractor Service Agreements in which Blackwater specifically declined to provide the Decedents with worker's compensation or any other insurance. *See* Exh. 2 ¶ 20.15. As set forth above, those agreements provide that each Decedent "is solely responsible for obtaining any and all liability insurance . . . workers compensation . . . and therefore understands and agrees that [Blackwater] is not responsible for obtaining any such insurance on Contractor's behalf." Therefore, a comparison of the allegations of the *Nordan* Complaint and the Continental DBA Policy indicates that the Decedents were not "employees" under the terms of the policy because they were independent contractors for whom Blackwater did not "agree to provide the benefits of voluntary workers' compensation." To the contrary, based on the allegations of the complaint, Blackwater expressly disavowed any obligation to provide insurance to the Decedents.[3]

---

[3] As Blackwater noted when it attached the Independent Contractor Service Agreements to its motion to dismiss the *Nordan* Action, a court may consider documents incorporated into a plaintiff's complaint by quotation or reference. *See, e.g., Steinhardt Group Inc. v. Citicorp*, 126 F.3d 144, 145 (3d Cir. 1997). The same holds true for a duty to defend analysis. *See, e.g., Acceptance Ins. Co. v. Hull Corp.*, No. Civ. A. 01-0605, 2003 WL 22597532, at *4 (E.D. Pa. Oct. 31, 2003) (duty to defend can be ascertained based upon allegations in a complaint as well as materials incorporated by reference in the complaint).

### B. The Extrinsic Evidence That Is Necessary To Establish Coverage Raises Issues Of Fact That Can Be Resolved Only Through Discovery.

Although the allegations in the *Nordan* Complaint fell outside the coverage provided by the Continental DBA Policy, because the definition of "employees" could include independent contractors "with whom [Blackwater had] a written contract in which [it] agree[d] to provide them the benefits of voluntary workers' compensation," Continental agreed to provide a defense subject to a reservation of its right to litigate the issue. That reservation of rights expressly invited Blackwater to "provide us with any facts, law, or Policy provisions which you believe that we may have overlooked. We will certainly consider any materials that you provide us." Blackwater Mot. Ex. I. In response, Blackwater submitted two documents that, it argued, showed that Blackwater had provided the Decedents with worker's compensation coverage and, therefore, they were "employees." Exh. 3. The documents are entitled a "Summary of DBA Insurance Benefits," and a Defense Base Act primer from the Department of Labor dated 2003. The documents do not, on their face, establish that the Decedents were "employees." Instead, they raise more questions than they answer. Neither document indicates that the Decedents received them, nor do they include the Decedents' names. The documents do not even include a date relevant to the timeframe that the Decedents were working for Blackwater. In fact, on their face, there is nothing to link them to the Decedents. Further, they do not appear to constitute the "written contract" required by the Continental DBA Policy. However, the Court need not – and cannot – decide any of these issues at this time. For purposes of Blackwater's motion, the important point is that this extrinsic "evidence" that Blackwater contends establishes coverage under the Continental DBA Policy raises factual issues that can be resolved only through discovery.

<tr>

As stated in the attached Rule 56(f) Affidavit of Rebecca Woods, attached as Exh. 4, Continental has not yet had an opportunity to engage in any discovery. Discovery is necessary to determine whether the Decedents were employees or independent contractors who had a written contract in which Blackwater agreed to provide them with voluntary worker's compensation coverage. If through the course of discovery it is determined that the Decedents were in fact independent contractors but they did not have such a written agreement with Blackwater, then there would be no coverage under the Continental DBA Policy. Because no discovery has been permitted on this critical issue of fact, the Court cannot grant summary judgment. *See, e.g., Dunkin' Donuts, Inc. v. Liu,* 2002 WL 442822, *2 (E.D. Pa. 2002) (citing *St. Surin v. Virgin Island Daily News,* 21 F.3d 1309, 1314 (3d Cir.1994)).

C.   **Blackwater's Estoppel Argument Is Baseless.**

The Continental DBA Policy and the ACE Policy are mutually exclusive. The Continental DBA Policy covers workers' compensation-type claims asserted by employees, the ACE Policy covers bodily injury claims asserted by those who are not employees. Recognizing the inconsistency in arguing that the Decedents simultaneously were employees for the purposes of the Continental DBA Policy but not employees for the purposes of the ACE Policy, Blackwater manipulates the facts so that it can try to have it both ways. Blackwater concedes that the *Nordan* Complaint alleges that the Decedents were independent contractors but argues that, although Continental reserved its rights, it is estopped from litigating the employment status of the Decedents. Blackwater's argument is based on the fact that Continental is providing DBA coverage. Apparently, no good deed goes unpunished. Blackwater's argument fails as a matter of law, fact, and fundamental fairness.

As a matter of law, the doctrine of estoppel cannot create coverage where none exists. See *U.S. Fid. & Guar. Co. v. Country Club of Johnston County,* 458 S.E.2d 734, 739 (N.C. Ct.

</tr>

App. 1995) (holding that estoppel is "not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom") (citing *Hunter v. Jefferson Standard Life Ins. Co.*, 86 S.E.2d 78, 80 (N.C. 1955)); *Durham v. Cox*, 310 S.E.2d 371, 275 (N.C. Ct. App. 1984) (explaining that estoppel "cannot operate radically to change the terms of the policy so as to cover additional subject matter") (citing *Hunter*, 86 S.E.2d at 80). Accordingly, even if there were a factual basis to make the argument – and, as discussed below, none exists – Blackwater cannot use estoppel to obtain coverage for independent contractors for whom coverage was not intended.[4]

As a factual matter, Blackwater's estoppel argument also fails. In the DBA proceedings, Blackwater has argued that the Decedents' employment status is irrelevant to the determination of whether DBA benefits are owed. Specifically, Blackwater has argued to the Department of Labor that the DBA applies to workers who engage in the type of military support that the Decedents were engaged in, whether they were employees or independent contractors does not matter for purposes of the DBA. If that is correct, then it would be entirely consistent for Continental to provide DBA benefits under the DBA coverage part of the policy, but reserve its rights under the EPL coverage part.

Equally important, Blackwater's estoppel argument is fundamentally unfair. Blackwater cannot argue in the DBA proceedings that the Decedents' employment status is irrelevant and, at the same time, argue that Continental's provision of DBA coverage is an admission by Continental that the Decedents were covered employees for the purposes of the EPL coverage part. Moreover, Continental should not be punished for providing the DBA coverage at the request of Blackwater. In the face of Continental's clear reservation of rights, it is nonsense for

---

[4] To the extent that Blackwater contends that EPL coverage was intended for claims asserted by the Decedents, that is a factual issue that cannot be resolved without discovery.

Blackwater to argue that it reasonably relied on Continental's provision of DBA coverage as being determinative of the Decedents' employment status. *See generally O & M Indus. v. Smith Eng'g Co.*, 2006 WL 2346390, *4 (N.C. App. 2006) (holding that reasonable reliance is an essential element of an estoppel claim). If that were the case, there would have been no reason for Blackwater to file a coverage action against Continental. The fact is, Blackwater has never had any doubt that, with respect to the *Nordan* Action, Continental questioned the employment status of the Decedents. Even now, Blackwater refuses to take a position on the Decedents' employment status. It is repugnant – and contrary to equitable principles upon which estoppel is grounded – for Blackwater to play hide-and-seek with the employment status of the Decedents and, at the same time, yield as a weapon Continental's voluntary and immediate provision of a defense for Blackwater in the DBA proceedings.

Moreover, Blackwater's argument places Continental in an impossible position. If Continental had stopped DBA benefits to the Decedents' survivors when the *Nordan* Action was filed – as Blackwater now appears to argue that Continental should have done – then Blackwater (and the Department of Labor) would have cried foul and immediately filed suit against Continental for breach of contract. Because Continental continued to make DBA payments (*i.e.*, it did the right thing), Blackwater argues Continental should be punished by prohibiting it to litigate the employment status of the Decedents. Blackwater's argument is absurd.

In sum, at a minimum, this Court cannot declare there to be a duty to defend where the employment status of the Decedents is unresolved. That issued can be resolved only after discovery is conducted.

II. **BLACKWATER'S DEMAND FOR REIMBURSEMENT OF EXCESSIVE "LEGAL" SERVICES IS UNREASONABLE AND NOT COVERED.**

Blackwater's premature and superficial motion intentionally ignores a key dispute regarding the defense obligation – that Blackwater seeks reimbursement for what amounts to $5 million in bills charged by *fourteen law firms employing more than 130 timekeepers*. Any objective examination of Blackwater's conduct must conclude that its retention of all of these law firms was unreasonable, unnecessary, and not covered.

A. **The Fees Sought by Blackwater Are Grossly Excessive.**

Blackwater has refused to provide Continental with all of the invoices for which Blackwater seeks reimbursement or with a detailed explanation of what each of the firms did. Accordingly, Continental has limited information regarding Blackwater's unauthorized retention of these firms. However, what information Continental has indicates that Blackwater's conduct has been grotesque.

Oddly, Blackwater's motion does not indicate the amount of defense fees that Blackwater seeks. Perhaps that is because the fees are facially excessive. Blackwater's initial disclosures indicate that Blackwater's total defense fees exceed $5 million. *See* Exh. 5, Blackwater's Initial Disclosures at 5 (stating that its unreimbursed fees are $3.9 million).

1. **The Number of Firms Retained by Blackwater Is Unreasonable.**

Continental approved Blackwater's retention of Smith Anderson to defend Blackwater in the *Nordan* Action, and that firm's bills have been paid in full. Dec. at ¶ 8. Blackwater's assertion that Continental has provided only a "limited" defense could not be further from the truth. As Smith Anderson's $1.1 million in invoices indicate, numerous of the firm's attorneys have been fully engaged in all aspects of Blackwater's defense. *Id.*

Notwithstanding Smith Anderson's full engagement in Blackwater's defense, ***Blackwater retained 13 other firms.*[5]** ***Those firms have employed, at the least, a whopping 120 timekeepers*** (the actual number probably exceeds more than 150). In comparison, the *Nordan* plaintiffs apparently have retained only three law firms.

Significant inefficiencies occur when multiple firms are retained in succession, requiring teams of lawyers new to the case to familiarize themselves with basic facts. Further, when multiple firms are retained at the same time, unnecessary costs are accumulated for multiple lawyers and multiple firms to review the same materials.

Our research has not disclosed an insurance coverage decision addressing legal bills as grotesque as Blackwater's. However, even in much less egregious situations, courts have not hesitated to reduce recoverable fees where multiple firms or lawyers are performing substantially the same tasks. *See, e.g., Pfeifer v. Sentry Ins.*, 745 F. Supp. 1434 (E.D. Wis. 1990) (reducing amount insurer was required to pay where, *inter alia*, multiple attorneys reviewed the same documents, worked on preparing the same settlement documents, and reviewed the same interrogatory responses); *Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200 (M.D. Pa. 2003) (reducing recoverable attorneys fees where records showed redundancy in the work performed). *See also Bunn v. Bowen*, 637 F. Supp. 464, 470 (E.D.N.C. 1986) (declining to award attorney's fees, stating that party should not "be charged with the costs arising from excessive, unnecessary or duplicative time indulged in by prevailing counsel as a result of their lack of an organized

---

[5] Those firms are: Wiley, Rein & Fielding; Greenberg Traurig; McDermott Will & Emery; Kirkland & Ellis; Crowell & Moring; McKenna Long & Aldridge; Laughlin, Falbo, Levy & Moresi; Flicker & Garelick; Ross & Miner; Powell Goldstein; Cranfill, Sumner & Hartzog; Bryant & Higby; and Ellis & Winters. The last five firms appear to have worked primarily on the defense of individual defendants. As discussed below, there is no coverage under the CNA DBA Policy for the individual defendants.

subdivision of labor or as a result of their inexperience"). "An insurer's obligation to reimburse independent counsel is limited to reasonable attorney's fees and disbursements." *Couch on Insurance*, § 202:34, at 202-87.

The number of firms retained and the fees that they have charged are all the more striking because the litigation is in its infancy. Almost no discovery has been conducted. Instead, for the past two and a half years, Blackwater has engaged in a series of jurisdictional and procedural battles. Although Continental does not necessarily critique the legal battles that Blackwater has picked with plaintiffs, Continental has no doubt that Blackwater could have been thoroughly defended with a small fraction of the lawyers that it retained.

Blackwater refuses to provide Continental a substantial portion of its outstanding invoices, limiting Continental's ability to determine, and prove to this Court, the extent of the duplication. However, the invoices that Continental does possess demonstrate redundancy, with multiple timekeepers from multiple law firms reviewing the same motions. Dec. at ¶ 9. Further, Blackwater has not explained why it retained so many law firms. Until discovery is conducted, Blackwater cannot establish that all of these firms were necessary and reasonable.

### 2. The Hourly Rates Charged by Blackwater's Counsel Are Excessive.

Not only did Blackwater hired an unreasonable and unnecessary number of law firms, it hired some of the most expensive law firms in the country. In contrast, at Smith Anderson, the firm that Blackwater initially retained and Continental approved, the most senior lawyer's rate is a relatively reasonable, but still high, $375 per hour.

Under North Carolina (and Pennsylvania) law, the rule is that the reasonableness of rates is determined based on the prevailing rate for comparable attorneys practicing in the forum of the action – here, Raleigh, North Carolina. "Out of state counsel are not conscripted into representing North Carolina residents, but do so voluntarily. . . . Their services should be

evaluated on the basis of what similarly situated North Carolina lawyers would charge on an hourly basis." *In re Senergy, Inc.*, No. 96-CVS-5900, 1999 WL 33563728, at *17 (N.C. Super. 1999); *see also Vazquez v. Allstate Ins. Co.*, 529 S.E.2d 480, 483 (N.C. Ct. App. 2000) (affirming reasonableness determination where trial court assessed, among other factors, the comparable hourly rates for attorneys in the local area); *Okwara v. Dillard Dept. Stores, Inc.*, 525 S.E.2d 481, 486 (N.C. Ct. App. 2000) (holding that "[t]o determine a reasonable hourly rate, the Court may look at 'the customary fee for similar work in the community'") (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). *See also Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) (holding that, "[I]n most cases, the relevant rate is the prevailing rate in the forum of the litigation.").

Blackwater has highly capable counsel in Smith Anderson. Based on Smith Anderson's invoices, Blackwater has relied heavily on them. If Blackwater seeks reimbursement for the 13 other law firms, discovery is needed to determine whether any of their services were reasonable and necessary.

**B.    Blackwater's Demand For Additional Legal Services Is Not Covered.**

Under the terms of the Continental DBA Policy, Blackwater is obligated to obtain Continental's consent prior to incurring expenses. Part Three (F) of the Continental DBA Policy expressly provides that Blackwater may not "voluntarily make payments, assume obligations or incur expenses, except at [its] own cost." The Continental DBA Policy further provides that Blackwater must "[c]ooperate with [Continental]" in the "investigation, settlement or defense of any 'claim' or 'suit.'" *Id.* at (D). Blackwater has failed to comply with these provisions. Blackwater never requested of (or even discussed) its unilateral decision to retain law firms other than Smith Anderson. In short, Blackwater has breached the unambiguous terms of the Continental DBA Policy and, accordingly, the voluntarily incurred legal fees are not covered.

Moreover, although it is not entirely clear because Blackwater intentionally has omitted from its motion any mention of the scope of the reimbursement it is seeking, Blackwater apparently seeks coverage under the Continental DBA Policy for defense costs incurred on behalf of *Nordan* defendants Justin McQuown and Thomas Powell, who were employees of Blackwater. However, the Continental DBA Policy does not provide coverage for claims asserted against employees. The policy provides "You are an insured if you are an employer named as a Named Insured in the Declarations." Policy, General Section, B. Neither McQuown nor Powell is listed as a Named Insured in the Declarations, as modified by Endorsement No. 2. Accordingly, Continental has no duty to defend or indemnify McQuown and Powell.[6]

Further, based on information and belief, Blackwater is seeking reimbursement for lobbying that its bevy of firms conducted to address Congressional investigations, media campaigns to improve Blackwater's tarnished reputation, and advice to obtain additional government contracts. These services are not necessary to Blackwater's defense in the *Nordan* Action and there is no coverage for them under the Continental DBA Policy.

Blackwater certainly is free to hire 14 different firms and over 150 attorneys and paralegals to represent it in the *Nordan* action. However, Blackwater's right to reimbursement under the Continental DBA Policy – assuming that there is a defense obligation at all – is limited to those costs that are reasonable and necessary to the defense of the *Nordan* Action. Blackwater cannot obtain reimbursement for its unreasonable, unnecessary and uncovered legal bills.

---

[6] CNA immediately informed Blackwater of its position regarding this issue. *See* Exh. I to Blackwater's motion. Blackwater's response, which was written after CNA indicated that it would continue to pay DBA benefits, shows that Blackwater fully understood CNA's coverage position on all issues, including the reservation of rights regarding the employment status of the Decedents. *See* Exh. 6.

Discovery is required to evaluate whether the fees for which Blackwater is seeking reimbursement are reasonably related and necessary to the *Nordan* defense.

## CONCLUSION

For the foregoing reasons, Continental respectfully requests that the Court deny Motion for Partial Summary Judgment against Continental Insurance Company and permit discovery on (1) whether Continental has an obligation to provide any defense to the *Nordan* Action and (2) if so, whether Blackwater's retention of thirteen law firms in addition to Smith Anderson was unreasonable, unnecessary, and not covered.

Respectfully submitted,

/s/ Ronald P. Schiller

Ronald P. Schiller/RPS4415
Nicole J. Rosenblum
Michael R. Carlson/MRC3515
DLA PIPER US LLP
1650 Market Street, Suite 4900
Philadelphia, PA 19103-2762
(215) 656-3330

Thomas T. Locke
Rebecca Woods
SEYFARTH SHAW LLP
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006-4004
(202) 463-2400
(202) 828-5393 (fax)

*Attorneys for Continental Insurance Company (as successor to Fidelity Insurance Company of New York)*

August 10, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of August, 2007, a true and correct copy of the foregoing Opposition And, In The Alternative, Rule 56(f) Motion, to Blackwater's Motion for Partial Summary Judgment was served electronically and mail, first-class postage pre-paid, upon the following:

Dennis J. Valenz, Esq.
Carol C. Carty, Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

Francis J. Deasey, Esq.
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street, Suite 3400
Philadelphia, PA  19103

John C. Sullivan, Esq.
Post & Schell, P.C.
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA  19103

Paul A. Zevnik, Esq.
Howard T. Weir III, Esq.
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004

Francis P. Burns, III, Esq.
Lavin O'Neil Ricci Cedrone & DiSipio
190 North Independence Mall West
6th and Race Streets, Suite 500
Philadelphia, PA  19106

Brian A. Kahn, Esq.
L.D. Simmons, II, Esq.
Helms Mulliss & Wicker PLLC
P.O. Box 31247
Charlotte, NC  28202

_____
Nicole J. Rosenblum