UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; and BLACKWATER LODGE AND TRAINING CENTER, INC. a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a Georgia Corporation; EVANSTON INSURANCE COMPANY, an Illinois Corporation; FIDELITY AND CASUALTY COMPANY OF NEW YORK, a South Carolina Corporation; and LIBERTY INSURANCE UNDERWRITERS, a Massachusetts Corporation,<br><br>Defendants. | Civil Action No. 05 6020<br><br>Electronically Filed<br><br>Assigned to Judge Petrese B. Tucker<br><br>**DEFENDANT EVANSTON INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT** |

## I.  INTRODUCTION

Evanston Insurance Company ("Evanston") submits this memorandum in support of its cross-motion for summary judgment and in response to the motion for summary judgment filed by Plaintiffs Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. (collectively "Blackwater").  In this lawsuit, Blackwater seeks a ruling that Evanston is obligated under professional liability policy no. EO 819173 (the "Policy") to provide a defense to Blackwater in the action captioned *Nordan v. Blackwater Security Consulting, LLC, et al.*, 05 CVS 000173, pending in the Superior Court of North Carolina, Wake County (the "*Nordan* Complaint" or the "*Nordan* Lawsuit").

Evanston asks the court to rule that it has no duty to defend or to indemnify as a matter of law.  Evanston also asks that the court grant summary judgment on Blackwater's claim of bad

faith in Count IV of its complaint. Comparing the facts alleged in the complaint in the *Nordan* Complaint with the terms of the Policy, no possibility of coverage exists. The Policy bars coverage for claims brought by or in the right of Blackwater's contractors or subcontractors. The *Nordan* Complaint is a wrongful death lawsuit filed in the right of four deceased Blackwater contractors. Therefore, no coverage exists under the Evanston Policy. Accordingly, Evanston requests that the court deny Blackwater's motion, grant Evanston's motion and enter summary judgment in Evanston's favor on both the contract and extra-contractual claims in Blackwater's complaint.

## II.   UNDISPUTED FACTS

### A.   Blackwater and its Contractors

Blackwater provides contract security and professional military assistance to the United States for its military operations presently being conducted in Iraq and elsewhere. Declaration of Andrew Howell ("Howell Decl."), ¶ 2. On March 25, 2004, Blackwater (defined in the *Nordan* Complaint to include Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc.) hired Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (collectively "decedents"), as independent contractors. (*Nordan* Complaint at ¶ 31.)[1] The *Nordan* Complaint refers to the decedents alternatively as Security Contractor, Contractor or Blackwater Contractor (*Id.* at ¶¶ 12, 13, 14, 29, 31, 34, 36, 37, 39, 42, 44, 46, 51, 53, 63, 65, 66, 67). On or about March 31, 2004, insurgents in the Iraqi city of Fallujah killed the decedents. (*Id.* at ¶¶ 12, 30-31).

### B.   The *Nordan* Lawsuit

On January 5, 2005, Richard P. Nordan, as Ancillary Administrator (the "Administrator")

---

[1] The *Nordan* Complaint may be found at Exhibit B to the Declaration of Andrew Howell ("Howell Decl."), submitted in support of Blackwater's Motion for Partial Summary Judgment against Evanston Insurance Company.

2

for the separate estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J. K. Batalona, filed the *Nordan* Complaint against Blackwater, Mr. McQuown and Mr. Powell.  (See the *Nordan* Complaint).  The *Nordan* Complaint seeks damages for wrongful death arising from the murders of the decedents.  (*Id.* at ¶¶ 12, 30-31).

The  *Nordan* Complaint alleges that "[a]s a proximate result of [Blackwater's, McQuown's and Powell's] intentional conduct, willful and wanton conduct, and/or negligence, as alleged herein, [decedents] were killed."  (*Id.* at ¶ 71).  The *Nordan* Complaint alleges that "[a]s a proximate result of [Blackwater's alleged wrongful conduct] and the deaths of [decedents], [the decedents' survivors], and each of them, sustained the loss of society, companionship, comfort, guidance, kindly offerings, advice, services, protection, care and assistance, as well as the net income of decedents, and each of them." (*Id.* at ¶ 76)

### C.    The Policy

Evanston issued Professional Liability Policy No. EO 819173 to Blackwater for the policy period March 17, 2003 to March 17, 2005 (the "Evanston Policy" or the "Policy" which is found at Howell Decl., ¶ 4, Exh. A,).  The Evanston Policy provides:

> THE COVERAGE
>
> **1.  Professional Liability and Personal Injury:** To pay on behalf of the Insured the amount of Damages and Claims Expenses in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay resulting from CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE OPTIONAL EXTENSION PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISIONS OF CLAIMS I, because of any
>
> (a)  act, error, or omission in Professional Services rendered or that should have been rendered,
>
> * * *

The following exclusion to the Policy is central to the issue before the Court. The Policy states:

> The Policy does not apply to any claims made against the Insured:
>
> (b) by or in the right of any Insured or parent companies or predecessors of the Named Insured or any of their respective subsidiaries, affiliated agencies, or associated entities or any contractor or subcontractor thereof;

The "Limits of Liability" for the Evanston Policy are $1 million for "Each Claim" and $1 million in the aggregate. (Howell Decl., Exh. A, Declarations). There is also a $10,000 deductible for each Claim. (*Id.*) And, any "Claims Expenses" paid by Evanston erode the Evanston Policy's limits of liability. (Howell Decl., Exh. A, MG 843-2/22/99 at 2).

### III. ARGUMENT

#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) directs the Court to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Evanston agrees with Blackwater that there is no genuine issue of material fact of consequence to the duty to defend. It is Evanston, however, and not Blackwater that is entitled to summary judgment based on the language of the Evanston Policy and the allegations in the *Nordan* Complaint.

#### B. Choice of Law

Where federal jurisdiction is based on diversity of citizenship, the Court should apply the choice-of-law rules of the state in which the district court sits. *St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 n. 3 (3d Cir.1991).

Evanston contends North Carolina law should govern the dispute over the contract. Blackwater points out, correctly, that when no difference exists between the forum state and those of another jurisdiction, a false conflict exists and the court need not decide the choice of law issue. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994). The laws of Pennsylvania and North Carolina are substantially similar with respect to the rules for interpreting insurance policies and for determining the duty to defend. Evanston does not agree, however, that North Carolina and Pennsylvania have harmonious law on other issues in this case. For example, Evanston contends the Pennsylvania bad faith statute has no application to this matter. Accordingly, Evanston reserves its rights to argue for the application of North Carolina law with respect to other issues.

Evanston also disagrees with Blackwater's contention that *Lucker Mfg.* stands for the proposition that, when a false conflict exists, the Court should default to the law of the state in which the forum sits. *See* Blackwater's Memorandum in Support of Their Motion for Partial Summary Judgment on the Duty to Defend at pp 7-8, n. 7. The court in *Lucker Mfg.* determined that, because no choice of law analysis was necessary, it would refer interchangeably to the law of both competing forums. 23 F.3d at 813. Accordingly, Evanston will refer to both Pennsylvania and North Carolina law below.

### C. Rules of Contract Interpretation

"[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto…As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Gaston County Dyeing Mach. Co. v. Northfield Ins. Co.,* 524 S.E.2d 558, 563 (N.C. 2000) (citations omitted); *see also Kvaerner Metals v. Commercial Union Ins. Co.,* 908 A.2d 888, 897 (Pa. 2006). The interpretation of an insurance policy is a

question of law. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.,* 172 S.E.2d 518, 522 (N.C. 1970)*; 401 Fourth Street v. Investors Insurance Co.,* 879 A.2d 166, 170 (Pa. 2005).

The Court must construe the policy as a whole, having reference to the purpose of the entire contract. *Blake v. St. Paul Fire and Marine Ins. Co.,* 248 S.E.2d 388, 390 (N.C. App. 1978) (citations omitted); *401 Fourth Street,* 879 A.2d at 171. The construction of the policy must not be strained, arbitrary, unnatural, or forced, but rather it should be reasonable, logical, and practical, having reference to the risks and purposes of the entire contract. *Blake,* 248 S.E.2d at 390; *Wagner v. Erie Ins. Co.,* 801 A.2d 1226, 1231 (Pa. Super. 2002) *aff'd* 847 A.2d 1274 (Pa. 2004) (admonishing against using strained contrivance in interpretation); *Burns v. Employers' Liability Assur. Corp.,* 209 A.2d 27, 30 (Pa. Super. 1965) (cautioning, "insurance contracts must receive a practical, reasonable and fair interpretation consonant with the apparent object and intent of the parties at the time the contract was made").

If the meaning of the policy is clear and only one reasonable interpretation exists, the court must enforce the contract as written; it may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein. *Gaston County Dyeing,* 524 S.E.2d at 563; *401 Fourth Street,* 879 A.2d at 171 (noting that when the language of the policy is clear and unambiguous, a court is required to give effect to that language). Where a policy defines a term, that definition is to be used. *Monti v. Rockwood Ins. Co.,* 450 A.2d 24, 25 (Pa. Super. 1982); *Gaston County Dyeing,* 524 S.E.2d at 563. Undefined terms should be given their common usage according to their natural and ordinary sense. *Kvaerner Metals*, 908 A.2d at 897; *Kessler v. Shimp,* 640 S.E.2d 822, 825 (N.C. App. 2007) (noting undefined terms should be defined consistent with the context in which it is used in ordinary speech). The various terms of the policy are to be harmoniously construed, and

if possible, every word and every provision is to be given effect. *Gaston County Dyeing,* 524 S.E.2d at 563; *Wzontek v. Zurich Ins. Co.,* 208 A.2d 861, 864 (PA. 1965).

### D.     The Duty to Defend Standard

"An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial." *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986); *Kvaerner Metals*, 908 A.2d at 896. The pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded. *Waste Mgmt.* 340 S.E.2d at 378; *Kvaerner Metals*, 908 A.2d at 896. When the pleadings allege facts indicating that the event in question is not covered, the insurer has no duty to defend. *Id.* at 377; *c.f. Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 107 (Pa. 1999). When the allegations in the underlying pleadings fit squarely within the language of an exclusion, an insurer has no duty to defend. *Waste Mgmt.* 340 S.E.2d at 383; *Madison Const. Co.* 735 A.2d at 107.

### E.     Evanston Has No Duty to Defend or to Indemnify Blackwater

Evanston has no duty to defend or to indemnify Blackwater. The Administrator brought the *Nordan* Action under the North Carolina wrongful death statute "in the right of" the four men who died in Fallujah. The *Nordan* Action explicitly alleges that the men were contractors of Blackwater when they were killed. (*Nordan* Complaint, Para. 31). Exclusion (b) of the Evanston Policy bars coverage for claims brought by or in the right of contractors of Blackwater. Based on exclusion (b), no possibility of coverage exists. Therefore, Evanston is entitled to a declaration of no coverage and entry judgment in its favor as a matter of law under Fed. R. Civ. P. 56(c).

Curiously, Blackwater's motion completely ignores exclusion (b) of the Policy. Evanston has made clear to Blackwater that it declined to defend Blackwater primarily because exclusion

(b) bars coverage. Evanston wrote to Blackwater on February 23, 2005 and declined to provide a defense. In that letter, Evanston outlined in great detail the grounds upon which Evanston was declining to defend, including a discussion of exclusion (b). (Howell Decl., Exh. E). Evanston has also asserted a counterclaim in this action which includes a separate claim for relief based on exclusion (b). *See* Answer and Counterclaims of Defendant Evanston Insurance Company, at 22 (Doc. Entry 17). Because Blackwater's pending motions against other defendants step up to exclusions invoked by those insurers, it is reasonable to infer that Blackwater ignored exclusion (b) because it is a perfect fit to the allegations of the *Nordan* Complaint.

Exclusion (b) (the "Contractor Exclusion") provides, "The Policy does not apply to any claims made against the Insured:"

> (b) by or in the right of any Insured or parent companies or predecessors of the Named Insured or any of their respective subsidiaries, affiliated agencies, or associated entities or any contractor or subcontractor thereof;

By its operation, the Contractor Exclusion bars coverage for the entire claim if the claim is made by or in the right of any Insured (a term defined in the Policy to include employees), or contractors or subcontractors of any insured. There is no dispute that the decedents are alleged to have been working as contractors of Blackwater at the time of their deaths. (Howell Decl., Exh. B at ¶¶ 12 and 31). The underlying claims by the decedents' personal representative clearly are claims made "in the right of" the decedents.

In order to determine whether the Administrator brought the claims in the *Nordan* Lawsuit "in the right" of the decedents, the court must look to North Carolina law. No action for wrongful death exists at common law in North Carolina; a wrongful death claim is a statutory creation. *King v. Cape Fear Memorial Hosp., Inc.,* 385 S.E.2d 812, 814 (N.C. App. 1989) *rev. denied* 389 S.E.2d 114 (N.C. 1990). Under the statute, only the personal representative of the

decedent's estate may bring a wrongful death action. N.C. Gen. Stat. § 28A-18-2(a) (2007) (the "Wrongful Death Statute"); *Burcl v. North Carolina Baptist Hosp., Inc.,* 293 S.E.2d 85, 87 (N.C. 1982). A decedent's survivors have no right to bring an action under the statute. *Id.*

The personal representative may maintain the wrongful death action only if the wrongful act, neglect or default of another would have entitled the decedent, had he lived, to bring an action for damages against the tortfeasor. N.C. Gen. Stat. § 28A-18-2(a) (2007). Accordingly, the rights of the personal representative are entirely derivative of the rights the decedent had possessed. *Prior v. Pruett*, 550 S.E.2d 166, 173 n. 4, (N.C. App. 2001), *disc. rev. denied* 563 S.E.2d 572 (N.C. 2002). The action succeeds or fails based on the tortfeasor's culpability to the decedent and the decedent's own actions. *See Hinton v. City of Raleigh*, 264 S.E.2d 777, 779 (N.C. App. 1980), *disc. rev. denied* 270 S.E.2d 107 (N.C. 1980) (upholding summary judgment against personal representative when decedent found to have been contributorily negligent in his own demise). The Statute permits the personal representative to recover damages that the decedent could have recovered had he lived, including pain and suffering, punitive damages, and the present value of the decedent's net income (limited to the loss reasonably expected by the beneficiaries). N.C. Gen. Stat. § 28A-18-2(b)(1), (4)(a) and (5).

Although the decedent's survivors may benefit from the wrongful death action (N.C. Gen. Stat. § 28A-18-2(b)), this does not change the fact that the action is brought to vindicate the rights of the decedent. The rights of the beneficiaries are entirely derivative of the decedent, and the beneficiaries have no independent right to recover damages from the tortfeasor for the wrongful death of the decedent. For example, the North Carolina courts have held specifically that a spouse may not bring an action for loss of consortium independent of a wrongful death action. *See Keys v. Duke University*, 435 S.E.2d 820, 822 (N.C. App. 1993). Recovery of

damages for loss of consortium is entirely derivative of the injured spouse's claim for wrongful conduct. *Id.; see also Nicholson v. Hugh Chatham Memorial Hospital, Inc.,* 266 S.E.2d 818, 823 (N.C. 1980); *Stokes v. Southeast Hotel Properties, Ltd.,* 877 F. Supp. 986, 1000 (W.D.N.C. 1994). A parent's recovery for damages due to a child's injury is also derivative. *See, e.g., Holt ex rel. Holt v. Atlantic Cas. Ins. Co.,* 539 S.E.2d 345, 347 (N.C. App. 2000). Therefore, whatever damages might be awarded to the beneficiaries derive entirely from the estate's claim.

Whether a duty to defend exists is strictly determined by the allegations of the complaint in the underlying action. *Waste Mgmt.* 340 S.E.2d at 378; *Kvaerner Metals*, 908 A.2d at 896. The four men who died in Fallujah are alleged to have been contractors of Blackwater. Mr. Nordan brought suit on their behalf as the personal representative of their estates. The *Nordan* Lawsuit seeks damages the decedent would have been entitled to recover had each survived their wounds. The family members have not and cannot bring an action in their own right under North Carolina law for any derivative loss they suffered as a consequence of the decedent's injuries and death. Although the family members may benefit from a recovery in the underlying action, this does not undercut the fundamental reality that the underlying action is necessarily and exclusively dependent, as a matter of fact, on proof of liability for the decedent's death and, as a matter of law, upon prosecution of a statutory death action "by or in the right of" the decedent/contractor. The Contractor Exclusion unambiguously anticipates claims of the type at issue here, applies to the facts alleged in the *Nordan* Complaint and precludes coverage; therefore, no possibility of coverage exists. Consequently, not only must Blackwater's motion be denied but a declaration of no coverage and dismissal of Blackwater's action in its entirety against Evanston is warranted. *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 225 (3d Cir. 2005)

(observing that if an insurer has no duty to defend, it follows that it has no duty to indemnify); *Kvaerner Metals*, 908 A.2d at 896 n. 7.

### F. Mr. McQuown and Mr. Powell are not Parties or Coverage Claimants

Blackwater contends that Evanston has a duty to pay defense costs allegedly paid by Blackwater to defend Jason McQuown and Thomas Powell, named defendants in the *Nordan* Complaint. Blackwater avers that McQuown and Powell were its employees and therefore insureds under the Policy. Blackwater further claims it has incurred defense costs in connection with the defense of McQuown and Powell, but has not submitted competent evidence to create a summary judgment record on this point.[2]

That omission is easily explained. McQuown and Powell are not parties to this coverage litigation. Counsel has not entered an appearance on behalf of McQuown and Powell. Blackwater lacks standing to seek a determination of Evanston's duty to defend McQuown and Powell, and by extension, Evanston's legal obligation to reimburse Blackwater or anyone else for the defense of McQuown and Powell.[3] The only issue supported by Blackwater's complaint in this Court is the duty to defend Blackwater. Blackwater cannot ask for summary judgment as to extrinsic matters, simply by offering argument in its brief. Moreover, Blackwater cannot legitimately ask this Court to rule on, nor require Evanston to exhaustively brief, a coverage claim for parties not before the court and based on an incomplete summary judgment record. It more than suffices to say that the arguments demonstrating the lack of coverage for Blackwater apply as well to Mr. McQuown and Mr. Powell.

---

[2] Evanston has not had the opportunity to obtain discovery on this issue.
[3] If Blackwater has paid defense costs it has done so as a volunteer and has no right to be reimbursed. *See First Commonwealth Bank v. Heller,* 863 A.2d 1153, 1159 (Pa. Super. 2004) (noting, "A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation, or an assignment of the debt, pays the debt of another is not entitled to subrogation…") *citing Home Owners Loan Corporation v. Crouse*, 30 A.2d 330, 331 (Pa. Super. 1943).

11

### G.  If No Duty to Defend Exists, then Evanston has No Duty to Indemnify

The duty to defend is broader than the duty to indemnify. *Bruce Terminix Co. v. Zurich Ins. Co.,* 504 S.E.2d 574 (N.C. App. 1998); *Kvaerner Metals*, 908 A.2d at 896 n. 7. A duty to defend exists if there is any possibility of recovery under the Policy. It therefore follows that, if the court has found no duty to defend, it has ruled out the possibility of a duty to indemnify. *Sikirica,* 416 F.3d at 225; *Kvaerner Metals*, 908 A.2d at 896 n. 7. Accordingly, Evanston respectfully requests that the court enter summary judgment in its favor that it has no duty to indemnify Blackwater.

### H.  In the Absence of a Duty to Defend or Indemnify, Blackwater's Bad Faith Claim Fails as a Matter of Law

Plaintiffs have sued Evanston under the Pennsylvania bad faith statute, 42 Pa. C.S.A. § 8371 (2007). Evanston does not concede that Pennsylvania law applies and consequently, the Pennsylvania bad faith statute should have no application in this case. In any event, under Pennsylvania law, an insured may not maintain a claim under § 8371 if the insurer had no duty to defend. *Pizzini v. American Int'l Specialty Lines Ins. Co.*, 249 F. Supp.2d 569, 570-571 (E.D.Pa. 2003) (J. Brody) (observing a bad faith claim is contingent on the success of the underlying breach of contract claim). In the absence of a duty to defend, there can be no duty to indemnify, and in the absence of a duty to defend or indemnify, there can be no bad faith under §8371. *Id.* Accordingly, Evanston respectfully requests the Court to dismiss Blackwater's bad faith claim against Evanston.

### IV.  CONCLUSION AND PRAYER

Evanston respectfully requests that the Court rule that it has no duty to defend Blackwater in the *Nordan* Complaint, and that accordingly, Evanston has no duty to indemnify Blackwater in the *Nordan* Complaint. Based on the absence of a duty to defend or indemnify, Blackwater also

respectfully requests the Court to dismiss Blackwater's bad faith claim under 42 Pa. C.S.A. § 8371.

        Respectfully submitted,

        LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

        By: /s/ Francis P. Burns, III (Valid. code fb418)
        Francis P. Burns III
        State Bar No. 27537

        190 North Independence Mall West, Suite 500
        6th & Race Streets
        Philadelphia, PA 19106
        (215) 627-0303 (ext. 7907)
        (215) 351-1900 (fax)
        fburns@lavin-law.com

        -and-

        HELMS MULLISS & WICKER, PLLC
        L. D. Simmons, II
        N.C. State Bar No. 12554
        201 North Tryon Street
        Charlotte, North Carolina 28202.
        Telephone: (704) 343-2000
        Facsimile: (704) 444-8773
        ld.simmons@hmw.com

Dated August 10, 2007        *Attorneys for Evanston Insurance Company*