# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; and BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation | CIVIL ACTION NO. 05-6020 |

Plaintiffs,

vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, a Georgia
Corporation

and

EVANSTON INSURANCE COMPANY, an
Illinois Corporation

and

FIDELITY AND CASUALTY COMPANY
OF NEW YORK, a South Carolina
Corporation

and

LIBERTY INSURANCE
UNDERWRITERS, a Massachusetts
Corporation

Defendants.

**DEFENDANT WESTCHESTER SURPLUS LINES INSURANCE
COMPANY'S MEMORANDUM OF LAW IN RESPONSE TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE DUTY TO DEFEND AGAINST
WESTCHESTER SURPLUS LINES INSURANCE COMPANY AND
CROSS MOTION FOR ADDITIONAL DISCOVERY PURSUANT TO F.R.Civ.P. 56(f)**

i

Dockets.Justia.com

## TABLE OF CONTENTS

I       Introduction                                                              1

II      Statement of Additional Relevant Facts                                    3

        A       Relevant Policy Language                                          3

        B       Allegations of Nordan Complaint                                   4

        C       Defendant Needs More Information to Determine Coverage            5

        D       Plaintiffs' Unreasonable Position Regarding Reimbursement of
                Defense Fees and Costs                                            7

III     Argument                                                                  9

        A       Plaintiffs' Motion is Premature - WSLIC is Entitled to
                Take Discovery to Prove its Affirmative Defenses                  10

        B       Plaintiffs do not Have Standing to Exert the Rights of
                McQuown & Powell                                                 16

        C       WSLIC Agreed to Reimburse Reasonable Defense Costs
                Thereby Rendering Plaintiffs' Motion Moot                        18

        D       The Motion is Not Ripe with Respect to Untendered Suits          20

        E       Discovery is Needed to Determine the Scope of
                WSLIC's Duty to Defend                                           24

IV      Conclusion                                                               25

## I.    __INTRODUCTION__

Plaintiffs' Motion for Partial Summary Judgment must be denied.  Plaintiffs' Motion is moot as Defendant Westchester Surplus Lines Insurance Company ("WSLIC") has discharged its duty to defend Plaintiffs subject to a Reservation of Rights – a duty WSLIC has never denied.

However a careful reading of Plaintiffs' Motion reveals that it is not simply asking for a declaration that WSLIC has a duty to defend as suggested by Plaintiffs' proposed Order.  Rather, by way of a tactical feint Plaintiffs' Motion also seeks a declaration that none of WSLIC's policy exclusions and/or other grounds for reserving rights apply to the actual facts of the Nordan Complaint.[1]  Plaintiffs' Motion is, therefore, a preemptive strike[2] which seeks to preclude a future determination of WSLIC's duty to indemnify at a premature stage of this litigation.  When an insurer defends a matter subject to a Reservation of Rights, the insurer is entitled to determine if the duty to defend is extinguished based on the "actual facts" in an underlying litigation.  Therefore, WSLIC should be permitted to determine whether its policy defenses apply to the Nordan Complaint's actual facts and, if not, whether the legal expenses for which reimbursement is sought are reasonable under the circumstances.  Accordingly, WSLIC files this reply and cross motion for discovery pursuant to F.R.Civ.P. 56(f) to obtain facts in Plaintiffs' sole possession in order to oppose Plaintiffs' Motion.

Despite its stated purpose, Plaintiffs' Motion seeks a declaration from this Honorable Court that none of WSLIC's policy defenses apply to the facts of the Nordan Complaint.  Further, despite the fact that WSLIC has, in fact, agreed to reimburse Plaintiffs' reasonable defense costs incurred by their principal defense firm (Smith Anderson), Plaintiffs seek a

---

[1] This brief distinguishes between the action entitled __Nordan v. Blackwater Security Consulting, LLC, et al.__, originally filed in the Superior Court, Wake County, North Carolina (hereinafter "__Nordan__ Complaint") and the other related actions described in Exhibit "3" to the Affidavit of Keith Phillips (hereinafter "Phillips Affidavit"), , which, together with the __Nordan__ Complaint, will be referred to as the "__Nordan__ Litigation").

[2] As discussed below, the parties only recently exchanged Initial Disclosures pursuant to F.R.Civ.P. 26 and no discovery has occurred.

declaration from this Honorable Court that Plaintiffs are entitled to reimbursement for the

defense costs incurred by ten different law firms.  Plaintiffs also seek a declaration from this

Honorable Court regarding WSLIC's duty to defend two individuals (Justin McQuown and Tom

Powell) who are not parties to this litigation and, as such, Plaintiffs have no standing to request

such a declaration.[3]  Finally, Plaintiffs also seek a declaration that WSLIC must defend even

suits it failed to tender arising out of the **Nordan** litigation.

WSLIC opposes Plaintiffs' Motion for Summary Judgment and seeks limited discovery

pursuant to F.R.Civ.P. 56(f) to obtain facts in the sole possession of Plaintiffs which will support

WSLIC's policy defenses to coverage.

## II.     STATEMENT OF ADDITIONAL RELEVANT FACTS

### A.     Relevant Policy Language

Westchester Surplus Lines Insurance Company ("WSLIC") issued Policy No. GLW-

778197 ("the policy") to Blackwater Lodge & Training Center, Inc., providing certain coverages

during the period of January 23, 2004 through January 23, 2005. *See* Exhibit "1" to the Phillips

Affidavit. The grant of coverage provides, in part, as follows provides:

a.     We will pay those sums that the insured becomes legally obligated to pay as
damages because of "bodily injury" or "property damage" only if:
(1)     The "bodily injury" or "property damage" is caused by an "occurrence"
that takes place in the "coverage territory".
(2)     The "bodily injury" or "property damage" occurs during the policy period.

The policy defines "occurrence" as an accident, including continuous or repeated exposure to
substantially the same general harmful conditions.

The policy also limits coverage to "bodily injury" caused by an "occurrence" that
takes place in the "coverage territory" defined, in relevant part, as:

---

[3] Curiously, in Andrew G. Howell's Affidavit in support of Plaintiffs' Motion for Summary Judgment as to WSLIC, these individuals are identified as "managers," while, at the same time, in Mr. Howell's Affidavit in support of Plaintiffs' Motion for Summary Judgment as to Evanston Insurance Company, these individuals are identified as "employees."

a.  The United States of America (including its territories and possessions), Puerto Rico and Canada. . .

c.  All other parts of the world if the injury or damages arises out of:

. . .

(2)     The activities of a person whose home is in the territory describe in a. above, but is away for a short time on your business;....

The policy also contains exclusions which may preclude coverage to the Plaintiffs in connection with the **Nordan** litigation.  These exclusions include: the expected or intended injury exclusion,[4] the contractual liability exclusion,[5] the war exclusion,[6] the professional services exclusion,[7]  the worker's compensation and similar laws exclusion as it appears that the **Nordan** decedents are legally employees and their claims under the Defense base Act would come within the disability benefits law or similar law,[8] the employer's liability exclusion,[9] and

---

[4] "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[5] "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply for liability for damages;

(1)     That the insured would have the absence of the contract or agreement; or

(2)     Assumed in a contract or agreement that is an "insured contract", provided that "bodily injury" or "property damage" occurs subsequent to the execution o the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

(a)  Liability to such party for, or for the cost of, that party's defense has been assumed in the same "insured contract" and

(b)  Such attorney fees and litigation expense are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

[6] "bodily injury" or "property damage" due to war, wither or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.  This exclusion applies only to liability assumed under a contract or agreement.

[7] This insurance does not apply to " bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service described as any training instructions or consulting services pertaining to firearms, security or driving.

[8] Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

[9] "Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury. This exclusion does not apply to liability assumed by the insured under an "insured contract".

3

the Use of Auto exclusion.[10]  To the extent that there is any potential coverage for terrorism, the

policy states that coverage for a particular act of terrorism under the policy or coverage part "is

subject to all other terms, conditions, exclusions and coverage limitations under the Policy or

Coverage Part…."  In addition, there is an exclusion for punitive damages for terrorism and there

are limitations under the Terrorism Risk Insurance Act.  *See* Exhibit "1" to Phillips Affidavit.

### B.    Allegations of the Nordan Complaint

WSLIC's duty to defend is dependent on the **Nordan** Complaint allegations.  Those

allegations provide ample support for WSLIC's position that no coverage is afforded under its

policy and therefore no duty to defend is owed.  For example,  **Nordan** alleges that the **Nordan**

decedents were located in "in the high risk, war torn City of Fallujah without armored vehicles,

automatic weapons, and fewer than the minimum number of team members which was no

accident" and were killed by "Iraqi insurgents."   *See* Phillips Affidavit, Exhibit "2" ¶ ¶ 12, 17,

59, 61.  Paragraph 13 of the **Nordan** Complaint describes a complex contract requiring that

Blackwater provide the decedents "with certain protections, tools and information to allow them

to perform their job."  These allegations support application of the war exclusion and the

terrorism provisions cited above.

The **Nordan** Complaint alleges that the **Nordan** decedents were security contractors

working on behalf of Plaintiffs, and in this position provided security services including the

gathering of intelligence for their missions. *See* Exhibit "2" ¶ ¶ 12, 13. The **Nordan** Complaint

repeatedly alleges that Plaintiffs failed to provide the resources necessary to perform the above

---

[10] "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, Use includes operation and "loading or unloading".

The exclusion applies even if the claims against the insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

functions. *See* Exhibit "2" *passim.*   These allegations support the application of the professional

services exclusion.

There can be no doubt that the loss suffered by the **Nordan** decedents occurred in a

vehicle, to wit, a car as stated in the **Nordan** Complaint. *See* Exhibit "2" at ¶ 54. This vehicle

was used in the course of the **Nordan** decedents' professional duties. **Id**. This supports the

application of the Use of Auto Exclusion.  The **Nordan** Complaint further alleges numerous

incidents of "intentional and knowing" acts on the part of Plaintiffs. *See* Exhibit "2" ¶¶ 15, 16,

30, 52, 69, 71, 77-79. Indeed the **Nordan** Complaint only makes one allegation of negligence on

the part of Plaintiffs. *See* Exhibit "2" ¶ 71.

### C.    Defendant Needs More Information to Determine Coverage

WSLIC agreed to reimburse Blackwater Lodge's reasonable defense fees and costs

related to the **Nordan** Complaint subject to a reservation of rights letter issued by its counsel at

the firm of Pinto, Coates, Kyrne & Brown, PLLC. *See* Exhibit "5" to the Phillips Affidavit.

Based upon a reading of the Nordan Complaint, WSLIC stated that it believed there was no

occurrence under the policy, and reserved the right to contest its duty to defend based on certain

provisions and  exclusions, including but not limited to the ones described above.

WSLIC reserved the right to assert additional grounds for denying coverage upon further

investigation of the Nordan Complaint.  *See* Exhibit "5". Since the institution of the present

action, WSLIC has determined that the "Use of Auto" exclusion may also apply, and through its

counsel, issued an amended reservation of right letter to Plaintiffs. *See* Exhibit "6" to the Phillips

Affidavit.  However, WSLIC will need to take the following discovery to oppose the present

motion:

a.   A deposition of Justin McQuown to determine what facts exist that would establish the
applicability of the above-referenced policy defenses;

5

b.  A deposition of Thomas Powell to determine what facts exist that would establish the applicability of the above-referenced policy defenses;

c.  A deposition of John Potter to determine what facts exist that would establish the applicability of the above-referenced policy defenses;

d.  A deposition of Gary Jackson to determine what facts exist that would establish the applicability of the above-referenced policy defenses;

e.  A deposition of Mike Rush to determine what facts exist that would establish the applicability of the above-referenced policy defenses;

f.  A deposition of Brian Berrey to determine what facts exist that would establish the applicability of the above-referenced policy defenses;

g.  A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to determine what facts exist that would establish the acts alleged in the **Nordan** action do not constitute an "occurrence" under the policy;

h.  A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to determine what facts exist that would establish the loss did not occur in the "coverage territory";

i.  A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to determine what facts exist that would establish the applicability of the Contractual Liability Exclusion;

j.  A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to determine what facts exist that would establish the applicability of the Expected or Intended Injury Exclusion

k.  A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to determine what facts exist that would establish the applicability of the War Exclusion;

l.  A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to determine what facts exist that would establish the applicability of the Terrorism limitations and exclusions;

m.  A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to determine what facts exist that would establish the applicability of the Professional Services Exclusion;

n.  A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to

6

determine what facts exist that would establish the applicability of the Employer's Liability Exclusion;

o. A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to determine what facts exist that would establish the applicability of the Worker's Compensation and Similar Laws Exclusion due to the applicability of the Defense Base Act;

a. A deposition of designated deponents of Plaintiffs pursuant to F.R.Civ.P. 30(b)(6) to determine what facts exist that would establish the applicability of the "Use of Auto" exclusion;

b. Access to the entire **Nordan** litigation file held by Plaintiffs' attorneys.

c. To the extent this Honorable Court determines that Plaintiffs have standing to seek a declaration as to whether the WSLIC policy provides coverage to Justin McQuown and Tom Powell, a deposition of Justin McQuown and Tom Powell to determine what facts exist which would establish their entitlement to coverage and, if so, their entitlement to a defense provided by two separate law firms.

Without the above information, WSLIC cannot determine whether coverage exists.

**D.    Plaintiffs' Unreasonable Position Regarding Reimbursement of Defense Fees and Costs**

In response to Plaintiffs' tender of the defense for the **Nordan** Complaint, WSLIC agreed to undertake the defense of Plaintiffs pursuant to a complete Reservation of Rights.  Further, WSLIC agreed to reimburse Plaintiffs for **reasonable defense fees and costs**.  Since agreeing to undertake Plaintiffs' defense, pursuant to a complete Reservation of Rights, WSLIC has determined that Plaintiffs have engaged no less than 10 different law firms in defense of Plaintiffs (and Justin McQuown and Tom Powell) in the **Nordan** litigation.  These firms include:

1.    Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP ("Smith Anderson") - Local North Carolina Counsel for Blackwater Entities
2.    Greenberg Traurig - Counsel for Plaintiffs
3.    Crowell & Moring -  Counsel for Plaintiffs
4.    Flicker & Garelick -  Counsel for Plaintiffs
5.    Ross & Miner - Counsel to John Potter
6.    Powell Goldstein - Counsel to Justin McQuown

7

7.  Cranfill, Sumner & Hartzog, LLP - Counsel to Justin McQuown
8.  Bryant & Higby, Chartered - Counsel for Tom Powell
9.  Ellis & Winters, LLP - Counsel for Tom Powell
10. Wiley, Rein & Fielding.-Former Counsel for Plaintiffs

To date, these firms have billed in excess of $3,500,000.00.  A cursory review of the billing entries reveals unnecessary, duplicative and inappropriate entries which overall are totally unreasonable.  While agreeing to pay 50% of the fees and costs incurred by the Smith Anderson law firm, WSLIC does not agree that the retention of the additional law firms referenced above was necessary, appropriate or reasonable.  In order to facilitate its inquiry into the matter, WSLIC requested additional information from Plaintiffs so that a proper determination of WSLIC's responsibility for reimbursement of certain attorneys' fees and costs could be made.

Although Plaintiffs have supplied some information, they have repeatedly failed to supply WSLIC with all requested information in response to 8 separate written requests for additional information to clarify the necessity for the retention of the additional law firms referred to above to determine whether the invoices are necessary, appropriate or reasonable.  Specifically, Plaintiffs have failed to adequately explain why they require representation by multiple law firms.   In addition, to the extent the Court determines Plantiffs have standing to seek a declaration as to whether the WSLIC policy provides coverage to Justin McQuown and Tom Powell , Plaintiffs have also failed to adequately explain why Messrs. McQuown and Powell require separate counsel, i.e., whether there is a conflict of interest and the nature of the conflict of interest.  Plaintiffs have further failed to explain why WSLIC should pay the fees of "special litigation counsel" who filed an Amicus Brief in the **Nordan** litigation.  Plaintiffs have failed to supply information requested to determine whether any of the policy defenses, including those mentioned above, apply to the **Nordan** Complaint.

Despite Plaintiffs' failure to respond adequately to the request, WSLIC has discharged its

obligation to provide a defense to Plaintiffs (pursuant to a complete Reservation of Rights) by agreeing to reimburse Continental Insurance Company 50% of the legal fees and expenses incurred by the Smith Anderson law firm.  However, in order to determine whether Plaintiffs are entitled to reimbursement for the legal fees and expenses incurred by the additional law firms referenced above, WSLIC needs the following discovery to determine the reasonableness, appropriateness and necessity which will include the following:

    a.  Copies of Plaintiffs' retainer agreements with all counsel with respect to whom Plaintiffs are seeking reimbursement of attorneys fees;

    b.  Complete and unredacted copies of all bills and statements of services provided by all counsel for which Plaintiffs are seeking reimbursement;

    c.  Depositions of designated deponents of all counsel with respect to whom Plaintiffs are seeking reimbursement of attorneys fees pursuant to F.R.Civ.P. 30(b)(6) to determine the reasonableness and necessity of services provided by said firms;

    d.  Copies of the files of all counsel with respect to whom Plaintiffs are seeking reimbursement of attorneys fees.

    e.  Proof of payment of all legal expenses incurred by Plaintiffs.

## III.    <u>ARGUMENT</u>

Plaintiffs' Motion for PartialSummary Judgment on the Duty to Defend is an impermissible attempt to preclude WSLiC from conducting limited discovery in support of its coverage defenses.   This raises the question of how the Plaintiffs can have an order preventing WSLIC from contesting the continuing duty to defend when WSLIC has not been afforded the opportunity to conduct discovery and obtain evidence which supports its affirmative defenses. Plaintiffs' motion must be denied for a number of reasons:

    1.  The Motion is premature to the extent that Plaintiffs' motion seeks to stop WSLIC from asserting its Affirmative Defenses based on policy exclusions, because WSLIC has not had a full opportunity to seek and obtain discovery to prove said Affirmative Defenses;

9

2.   Plaintiffs do not have standing to assert the rights of third parties

3.   The Motion is moot because the relief requested in Plaintiffs' proposed Order has already been provided;

4.   Plaintiffs' claims for fees and costs for suits it has failed to tender are not ripe;

5.   The Motion is premature to the extent that Plaintiffs' Motion seeks a determination that WSLIC has not discharged its duty to defend as Plaintiffs have withheld requested information thereby preventing WSLIC from determining (a) the applicability of its coverage defenses; (b) necessity and reasonableness of attorneys' fees and expenses.

A.   **Plaintiffs' Motion is Premature - WSLIC is Entitled to Take Discovery to Prove its Affirmative Defenses**

The foremost reason why discovery is needed in this matter is that Plaintiffs seek coverage under two separate policies that provide different coverages that are mutually exclusive – WSLIC does not cover professional services with respect to "any training instructions or consulting services pertaining to firearms, security or driving"; whereas the Evanston policy is a professional liability policy affording liability coverage for Plaintiffs "worldwide contract security operations. Only the actual facts will determine which carrier will have the duty (or continued duty) to defend.

When faced with a motion for summary judgment, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact. The substantive law identifies which facts are material." **Benjamin Doe v. Abington Friends Sch.**, 480 F.3d 252, 256 (3d Cir. 2007)(citations omitted).

The Plaintiffs seek to shut down WSLIC's ability to prove its affirmative defenses before the liberal discovery permitted by the rules has even begun. As F.R.Civ.P. 26 initial disclosures have only recently been exchanged, this motion is entirely premature and inappropriate.

10

However, to the extent the Court may see this motion as an opportune time to limit the issues

before it, WSLIC must admit that it simply does not have ample information in its possession to

oppose it because the needed information is in the possession of Plaintiffs.

F.R.Civ.P. 56(f), "When Affidavits are Unavailable", permits the Court to order that

WSLIC is entitled to discovery relevant to opposing the present motion:

> Should it appear from the affidavits of a party opposing the motion that the party
> cannot for reasons stated present by affidavit facts essential to justify the party's
> opposition, the court may refuse the application for judgment or may order a
> continuance to permit affidavits to be obtained or depositions to be taken or
> discovery to be had or may make such other order as is just.

"Rule 56 (f) is to be liberally construed to prevent injustice to a party faced with a summary

judgment motion" **Catanzaro v. Masco Corp.,** 408 F. Supp. 862, 867 (D. Del. 1976), *aff'd per*

*curiam,* 575 F.2d 1085 (3d. Cir. 1978).

Under Fed. R. Civ. P. 56(f), summary judgment is not available "where the nonmoving

party has not had the opportunity to discover information that is essential to his opposition."

**Schiavone Constr. Co. v. Time, Inc.,** 847 F.2d 1069, 1085 (3d Cir. 1988), *citing* **Anderson v.**

**Liberty Lobby**, 106 S. Ct. 2505, 2511 n.5 (1986). As **Benjamin Doe**, *supra* at 256-257 aptly

explained:

> [a] court is obliged to give a party opposing summary judgment an adequate
> opportunity to obtain discovery. This is necessary because, by its very nature, the
> summary judgment process presupposes the existence of an adequate record. In
> this vein, the Supreme Court has explained that any potential problem with . . .
> premature summary judgment motions can be adequately dealt with under Rule
> 56(f). Therefore, if the non-moving party believes that additional discovery is
> necessary, the proper course is to file a motion pursuant to Rule 56(f).

*See also* **Anderson**, 477 U.S. at 257 (explaining the non-moving party's burden at

summary judgment rests on the assumption that the party "had a full opportunity to

conduct discovery"). "District courts usually grant properly filed Rule 56(f) motions as a

11

matter of course." **St. Surin v. Virgin Islands Daily News**, 21 F.3d 1309, 1314 (3d Cir.

1994). This is particularly so when there are discovery requests outstanding or relevant

facts are under the control of the moving party. *See* **Ward v. United States**, 471 F.2d

667, 670 (3d Cir. 1973). If discovery is incomplete in any way material to a pending

summary judgment motion, a district court is justified in not granting the motion. *See*

**Miller v. Beneficial Mgmt. Corp**., 977 F.2d 834, 845-46 (3d Cir. 1992). Whatever its

decision, it is "improper" for a district court to rule on summary judgment without first

ruling on a pending Rule 56(f) motion. **St. Surin**, 21 F.3d at 1315.

　　　　In **Benjamin Doe**, an ADA reasonable accommodation case, the Does' Rule 56(f) motion

identified six areas of inquiry relevant to deciding whether Abington was a religious organization

or controlled by one, to determine whether it qualified for a claimed exemption. As to Abington's

status as a religious organization itself, the Does sought information on any training in the

Quaker religion that faculty and staff received; the religious make-up of the students, faculty, and

staff; and how the Quaker religion is represented in the school's curriculum. As to Abington's

being controlled by a religious organization, the proposed areas included Abington's ownership

and the day-to-day oversight of its "operations, policy, finances, curriculum, and . . . advising."

The Does proposed the deposition of a specific officer, three individual defendants, and

Abington's corporate designee. Additionally, the Does had earlier requested of Abington-- but

had not received-- documents that may have shed light on the issue. The Court did not fault the

Does for failing to file an affidavit of their own, detailing those facts within their knowledge that

might indicate Abington is not a religious organization or controlled by one, because it found

that information was "principally within the control of Abington and which they could only have

known second-hand." **Id**. at 259.

Likewise, in **Mid-South Grizzlies v. National Football League**, 720 F.2d 772, 780 (3d Cir. 1983), the Third Circuit stated:

> Where Rule 56(f) affidavits have been filed, setting forth specific reasons why the moving party's affidavits in support of a motion for summary judgment cannot be responded to, and the facts are in the possession of the moving party, we have held that a continuance of the motion for purposes of discovery should be granted almost as a matter of course. But as Judge Friedman so aptly observed: It is true that Rule 56(f) also authorizes the court in appropriate cases to refuse to enter summary judgment where the party opposing the motion shows a legitimate basis for his inability to present by affidavit the facts essential to justify his opposition, but to take advantage of this provision he must state by affidavit the reasons for his inability to do so and these reasons must be genuine and convincing to the court rather than merely colorable.

(internal citations omitted). WSLIC meets all of the above requirements by way of the Phillips Affidavit stating what information Plaintiffs have withheld. Accordingly, WSLIC has met its burden to show that there is material evidence not in its possession that is relevant to the determination of whether coverage actually exists for the **Nordan** Complaint that is solely in Plaintiffs' possession and material to a determination of whether WSLIC's defenses to coverage apply and the duty to defend should end.

As it is not clear whether WSLIC must also provide an actual legal argument as to why the quoted policy defenses apply in light of its need of the above requested information, WSLIC takes the position, without waiving the right to make additional argument that the following North Carolina precedents[11] will likely support the coverage defenses it has asserted.

---

[11] It is likely that the law of North Carolina applies to this action, as WSLIC's policy was issued to Blackwater Lodge & Training Center, Inc. which has North Carolina offices as shown on the policy, and was likely delivered there. **CAT Internet Services, Inc. v. Providence Washington Ins. Co.**, 333 F.3d 138 (3rd Cir. 2002)(under Pennsylvania choice of law an insurance contract is governed by the law of the state in which the policy is delivered). Pennsylvania has no connection with this action. Georgia's only connection to this action is that it is the state where WSLIC is incorporated. Further discovery may reveal where the policy was delivered and answer the question of which law applies.

There can be no doubt that the loss suffered by the **Nordan** decedents occurred in a vehicle, to wit, a car as stated in the **Nordan** Complaint. *See* Exhibit "2" at ¶ 54.  The Nordan Complaint is replete with allegations that the decedents were killed because Plaintiffs sent them on a security mission in a vehicle ill-equipped for that mission because it was not an armored vehicle.  See Exhibit "2" *passim*.  The only way that WSLIC's "Use of Auto" exclusion would not apply is if for some reason the car would not be considered an "auto" as defined by the policy. WSLIC is entitled to discovery to determine that the car was an "auto". "In determining whether an automobile exception applies, [North Carolina] looks to the actual causes of a given injury and considers whether a cause separate from the use of a vehicle resulted in those particular injuries." **Builders Mut. Ins. Co. v. North Main Constr., Ltd.**, 176 N.C. App. 83, 89 (N.C. Ct. App. 2006). However that is not necessary in this matter as the auto exclusion here is broader including such activities as negligent training, etc.  *See* f.n.9, supra.  If the use of the car was the cause of the accident because it was not adequate protection against a known danger, i.e. attacking insurgents, the auto exclusion may apply. WSLIC is entitled to discovery on this issue.

Whether a particular act falls within a professional services exclusion depends on the particular facts of each case as no uniform rules of interpretation have emerged. **Duke University v. St. Paul Fire & Marine Ins. Co.**, 96 N.C. App. 635, 639 (N.C. Ct. App. 1990), *rev. den.*, 326 N.C. 595 (1990).  A "professional service" is generally defined as one arising out of a vocation or occupation involving specialized knowledge or skills, and the skills are mental as opposed to manual.   The determination of whether a particular act or omission falls within the scope of a professional services exclusion depends upon the nature of the activity rather than the

position of the person responsible for the act or omission. **Id**. A reading of the **Nordan**

Complaint reveals that the **Nordan** decedents were hired guards killed in the line of duty, under

the command of a professional mercenary contractor.  These activities fall squarely within the

scheduled description of "professional services" set forth in the Designated Professional Services

Exclusion of the WSLIC Policy, and WSLIC is entitled to explore in discovery the professional

services being rendered at the time the decedents were killed.

   Much like the policy referenced in Liberty International Underwriters' ("Liberty")

Motion for Summary Judgment, North Carolina law has not construed a war exclusion like the

one in WSLIC's policy. However, Liberty's factual record supporting judicial notice of the fact

that a war was in fact taking place, and the reliance on **Lamar v. John Hancock Mut. Life Ins.**

**Co.**, 107 S.E.2d 65 (N.C. 1959) and **Cohen v. Monumental Life Ins. Co.**, 194 S.E.2d 867 (N.C.

App. 1973) are equally applicable to the interpretation of the present policy and are incorporated

herein. To the extent that there may be any doubt that the war exclusion applies, WSLIC is

entitled to discovery.

   The loss suffered by Plaintiffs was not an occurrence. "[W]here the term "accident" is not

specifically defined in an insurance policy, that term does include injury resulting from an

intentional act, if the injury is not intentional or substantially certain to be the result of the

intentional act." **N.C. Farm Bureau Mut. Ins. Co. v. Stox**, 330 N.C. 697, 709325 (1992). Thus,

although it is possible for injury from an intentional act to be within the definition of an accident,

that is not the situation where the injury is "substantially certain to be the result of the intentional

act." **Id**.  In **Seymour v. Lenoir County**, 152 N.C. App. 464, 467-468 (N.C. Ct. App. 2002),

because plaintiff alleged that defendant Fire Department engaged in intentional acts which were

"substantially certain to cause Plaintiff serious injury or death," the acts did not meet the

definition of an "accident." Based on these precedents, WSLIC is entitled to discovery to see if

there was an occurrence because the **Nordan** Complaint make numerous claims that Plaintiffs

and their agents intentionally and knowingly failed to provide proper equipment with the result

of death or serious injury to be de facto substantially certain in the war zone of Fallujah.

WSLIC is entitled to discovery on whether the "expected or intended injury" exclusion

applies, as "in order to avoid coverage on the basis of the exclusion for expected or intended

injuries in the insurance policy . . . the insurer must prove that the injury itself was expected or

intended by the insured. Merely showing the act was intentional will not suffice." **N.C. Farm**

**Bureau Mut. Ins. Co.,** 330 N.C. at 706.

B.     **Plaintiffs do not Have Standing to Assert the Rights of McQuown & Powell**

In this motion Plaintiffs seek a declaration that WSLIC has a duty to provide a defense to

third parties not involved in this litigation. Plaintiffs do not have standing to seek this relief. A

review of Plaintiff's complaint indicates that Plaintiffs alleged:

> The **Nordan** Suit was also brought against individuals whose defense costs are
> being paid for by plaintiffs herein. This action embraces all defendants named in
> the **Nordan** Suit as "insureds" within the meaning of the Insurance Policies.

As the **Nordan** Complaint was attached to Plaintiffs' complaint, Plaintiffs by implication take

the position Justin McQuown and Tom Powell are insured under the Policy.  Plaintiffs

apparently seek to claim, on behalf of McQuown and Powell,  the alleged rights of these persons

under the Policy. As demonstrated above, Plaintiffs claim that there is some type of conflict

between them and McQuown and Powell requiring appointment of independent counsel for these

individuals.  Yet Plaintiffs represent that they are the best advocate to assert the alleged rights of

these individuals. Controlling law states otherwise.

16

The question of standing concerns whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues **Warth v. Seldin**, 422 U.S. 490, 498 (U.S. 1975). This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. **Id**. The requisite elements of Article III standing are well established: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." **Allen v. Wright**, 468 U.S. 737, 751 (1984); **Hein v. Freedom from Religion Found., Inc.,** 127 S. Ct. 2553 (U.S. 2007). The Third Circuit recently addressed the test for standing in **Taliaferro v. Darby Twp. Zoning Bd.**, 458 F.3d 181, 189 (3d Cir. 2006) at length:

> The three elements necessary to satisfy the irreducible constitutional minimum of standing are: (1) the plaintiff must have suffered an injury in fact- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;
>
> (2) there must be a causal connection between the injury and the conduct complained of; and
>
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. In other words, "the plaintiff must show that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant [and] [t]he injury must be concrete and capable of being redressed by the court should the plaintiff prevail on the merits."

While Plaintiffs may have alleged that they are obligated to pay McQuown and Powell's legal fees, they have never supplied the basis of this duty. **Singleton v. Wulff**, 428 U.S. 106, 113-114 (1976)(citations omitted) cautioned:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. . . . Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe

> legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of stare decisis. . . . These two considerations underlie the Court's general rule: "Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."

**Amato v. Wilentz**, 952 F.2d 742, 749 (3d Cir. 1991), applying the above principles, commented, "Where rightholders are unable to raise their own rights and their relationship with the plaintiff suggests an identity of interests, courts can be more certain that the litigation is necessary and that the issues will be framed clearly and effectively." Nothing in this record that suggests McQuown and Powell could not raise the issues before this court themselves. There is no explanation why they are not parties to this action. In light of Plaintiffs' admission that they are adverse in interest in the underlying **Nordan** litigation, Plaintiffs are in no position to advocate for the alleged rights of these third parties. This is demonstrated by the inconsistent presentations the Plaintiffs have made to the Court regarding their relationship to McQuown and Powell, at times referring to them as "responsible for managing . . . Blackwater's operations" and at other referring to them as employees.[12]

### C.    WSLIC Agreed to Reimburse Reasonable Defense Costs Thereby Rendering Plaintiffs' Motion Moot

The question that Plaintiffs allege is before the Court is "Whether WSLIC has a duty to defend the **Nordan** Complaint?" This is already answered.  WSLIC admitted that it has this obligation, had the obligation, and will continue to have this obligation until such time as a declaratory judgment is entered finding that one or more of its defenses to coverage apply. As Plaintiffs' question is answered, Plaintiffs' motion is moot.

"A question is moot when it no longer presents a 'live' controversy. If a defendant has

---

[12] *See* fn. 3 *supra*

discontinued challenged activities …, the case is moot if there is no reasonable expectation that the wrong will be repeated." **United States v. W. T. Grant Company**, 345 U.S. 629, 632 (1953). The general principle of mootness derives from the case or controversy requirement of Article III of the U.S. Constitution. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate … the parties must continue to have a personal stake in the outcome of the lawsuit." **Lewis v. Continental Bank Corp**. 494 U.S. 472, 477-78 (1990).  In other words, "throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." **Id**. at 477. Mootness has two aspects: "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." **Powell v. McCormack**, 395 U.S. 486, 496 (1969).

"A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." **United States v. Concentrated Phosphate Export Assn., Inc.**, 393 U.S. 199, 203 (1968). The "heavy burden of persuading" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. **Id**. **Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.**, 528 U.S. 167, 190 (2000)  explained:

> [A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur. ***By contrast, in a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the "threatened injury [is] certainly impending.***

(citations and internal quotation marks omitted)(emphasis added). The facts clearly demonstrate that WSLIC has always taken the position that it has a duty to defend subject

19

to a reservation of rights to determine the applicability of policy defenses. WSLIC's compliance with the duty to defend is evident by its agreement to reimburse its equitable share of undisputed attorneys fees[13] and expressed intent to continue to reimburse such costs upon being provided sufficient information that such costs are necessary, appropriate and reasonable, until such time as it is determined that one or more of WSLIC's defenses to coverage apply. *See* Phillips Affidavit at ¶¶ **20-21.** Further, as WSLIC's defense will continue until the duty has ended, there is no danger that any harm will occur to Plaintiffs.

If Plaintiffs are actually seeking a determination that WSLIC has breached the duty to defend, the present motion is not the proper vehicle, nor is it the proper time to make such a decision.[14] To be sure, this Court has issues to sort out in this litigation, if the parties cannot do so themselves: namely whether WSLIC's duty to defend must continue, and for what expenses it will be responsible. It is too early to determine these issues without substantial discovery.

D.    **The Motion is Not Ripe with Respect to Untendered Suits**

WSLIC recently learned that the **Nordan** Plaintiffs filed a second action in North Carolina, which has never been tendered to WSLIC.[15] Likewise, WSLIC also learned that Plaintiffs filed an arbitration suit and a Motion in federal court in North Carolina to

---

[13] When two carriers are found to be primarily responsible for a duty to defend, equity dictates that the defense costs be shared equally among the two insurers. **Ames v. Continental Casualty Co.**, 79 N.C. App. 530, 540 (N.C. Ct. App. 1986). As Continental Insurance Company has already paid for services provided by the Smith Anderson firm, Westchester's contribution of half this amount is appropriate.

[14] The standard to be applied in determining whether or not there has been a breach of contract is one of reasonableness in light of the surrounding circumstances. *See* **Gaito v. Auman**, 313 N.C. 243, 249 (1985)( breach of warranty of habitability). Discovery has not even been taken to explore all of the circumstances in this matter.

[15] See status report regarding the **Nordan** Litigation attached as Exhibit "3" to Phillips Affidavit.

compel arbitration with respect to the **Nordan** Complaint.[16] This suit also was never

tendered to WSLIC. Yet all of the legal bills forwarded to WSLIC by Plaintiffs make no

distinction as to which services are related to which parts of the **Nordan** Litigation. As

Plaintiffs have never tendered the aforementioned suits, this court cannot decide that

WSLIC has a duty to defend them.

      A ripeness inquiry prevents federal courts from "entangling themselves in abstract

disagreements." **Abbott Labs. v. Gardner**, 387 U.S. 136, 148 (1967), *overruled on other*

*grounds by* **Califano v. Sanders**, 430 U.S. 99 (1977). The determination of ripeness turns on

"the fitness of the issues for judicial decision and the hardship to the parties of withholding court

consideration." **Id**. at 149. For declaratory judgment actions, our Court of Appeals has adopted a

ripeness inquiry that requires us to look at "(1) the adversity of the parties' interests, (2) the

conclusiveness of the judgment, and (3) the utility of the judgment." **Pic-a-State PA, Inc. v.**

**Reno**, 76 F.3d 1294, 1298 (3d Cir. 1996). "For there to be an actual controversy the defendant

must be so situated that the parties have adverse legal interests." **Step-Saver Data Sys. v. Wyse**

**Tech.**, 912 F.2d 643, 648 (3d Cir. 1990) (*quoting* 10A Charles A. Wright, et al., Federal Practice

and Procedure § 2757 (2d ed. 1983)). To determine whether a controversy is ripe, a court must

examine (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of

withholding court consideration. **Khodara Env't, Inc. v. Blakely**, 376 F.3d 187, 193 (3d Cir.

2004). The case must stem from a "real and substantial controversy admitting of specific relief

through a decree of a conclusive character, as distinguished from an opinion advising what the

law would be upon a hypothetical state of facts." **Step-Saver**, 912 F.2d at 649 (*quoting* **Aetna**

**Life Ins. Co. v. Haworth**, 300 U.S. 227, 241, 57 S. Ct. 461, 81 L. Ed. 617 (1937)). This phase of

the inquiry looks at whether the factual record is sufficiently developed that the dispute can now

---

[16] Id.

be resolved once and for all. Our Court of Appeals has noted that where the question presented is

a purely or predominantly legal one, the need for a developed factual record is decidedly

reduced. *See* **Pic-a-State**, 76 F.3d at 1300 (citing cases). The utility factor addresses the practical

usefulness of the judgment the plaintiffs seek. The question we ask in determining utility is

"whether the parties' plans of actions [sic] are likely to be affected by a declaratory judgment."

**Step-Saver**, 912 F.2d at 649 n.9.

The Plaintiffs seek a declaration that WSLIC perform a duty that has not yet been

triggered. This is a waste of judicial resources and should not be permitted.

E.    **Discovery is Needed to Determine the Scope of WSLIC's Duty to Defend**

In North Carolina, <u>there is no statutory requirement that an insurance company provide</u>

<u>its insured with a defense,</u> however when it contracts to so, the insurer's duty to defend suits

against its insured is determined by the language in the insurance contract.  **Brown v.**

**Lumbermens Mut. Casualty Co.**, 326 N.C. 387, 391-392 (1990).  "An insurer's duty to defend

is ordinarily measured by the facts as alleged in the pleadings;  . . . When the pleadings state

facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to

defend, whether or not the insured is ultimately liable. Conversely, when the pleadings allege

facts indicating that the event in question is not covered, and the insurer has no knowledge that

the facts are otherwise, then it is not bound to defend." **C. D. Spangler Constr. Co. v.**

**Industrial Crankshaft & Engineering Co.**, 326 N.C. 133, 153-154 (1990).

North Carolina requires that an action to recover under an insurance policy, the burden is

on the plaintiff to allege and prove coverage, and thereafter, the burden of showing an exclusion

from coverage is on the insurer. **Brevard v. State Farm Mut. Auto. Ins. Co.**, 262 N.C. 458, 461

(N.C. 1964).  In North Carolina, an insurance company does not waive its defense that coverage

22

is not provided by a policy when it engages counsel to defend an insured pursuant to a reservation of rights.  *See* **Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.**, 266 N.C. 430, 435 (1966). It is also clear that under North Carolina law, the insurer retains the right to select counsel, and the insured is free to engage independent counsel at its own expense. *Nationwide Mut. Ins. Co. v. Public Serv. Co.*, 112 N.C. App. 345, 351 (N.C. Ct. App. 1993).  It is in that context that we must understand the current dispute between Plaintiffs and WSLIC. Although WSLIC agreed to reimburse defense costs, this does not give Plaintiffs a blank check to hire a battalion of attorneys and spend money unreasonably.

A determination of reasonable fees would require an examination "as to the time and labor expended,[17] the skill required, the customary fee for like work, and the experience or ability of the attorney." **United Laboratories, Inc. v. Kuykendall**, 102 N.C. App. 484, 494 (1991), *aff'd*, 335 N.C. 183 (1993). Other factors include the "novelty and difficulty of the questions involved." **In re Senergy**, 2000 NCBC 7, P13 (NCBC  May 17, 2000). Indeed, North Carolina courts generally refer to N.C. Prof. Cond. Rule 1.5(a), which states:

> A lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee or charge or collect a clearly excessive amount for expenses. The factors to be considered in determining whether a fee is clearly excessive include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;

---

[17] It should be noted that North Carolina has <u>not</u> adopted the lodestar method familiar to this court as outlined in **Lindy Bros. Builders, Inc. v. Am. Radiator**, Etc., 540 F. 2d 102 (3d Cir. 1976). *See* **Williams v. Randolph**, 94 N.C. App. 413, 423 (N.C. Ct. App. 1989).

23

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

"A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence experienced in the area of law involved would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." **West Through Farris v. Tilley**, 120 N.C. App. 145, 153 (N.C. Ct. App. 1995), *citing* N.C. Rules of Professional Conduct, Canon II, Rule 2.6(b) (1995). In **West**, the court reviewed the decision of a trial court finding requested fees reasonable and upheld it based on the trial court's consideration of "the time expended by counsel, exercising **particular caution in omitting duplicitous services**, as well as the fees normally charged in the area for attorneys with similar experience and expertise." **Id**. at 153 (emphasis added). In the case *sub judice*, material issues exist as to whether particular caution was exercised in omitting duplicative services as various law firms provided the same services to Plaintiffs and no adequate explanation has been provided as to why Plaintiffs needed multiple firms in the first place. Further, even within the individual firms, the services provided by the respective attorneys appears duplicative.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, WSLIC respectfully requests the Court to delay any consideration of Plaintiff's Motion for Partial Summary Judgment until after Westchester Surplus Lines Insurance has had an opportunity to obtain discovery and to enter an Order in the form attached. WSLIC respectfully requests oral argument.

Respectfully Submitted,

DATE:                           BY:     /s/ Francis J. Deasey (Valid Code FD1214)
                                         /s/ James W. Daly (Valid Code JD1216)
                                         /s/ Michael F. Schleigh (Valid Code MS9874)
                                        FRANCIS J. DEASEY, ESQUIRE (Atty. ID 25699)
                                        JAMES W. DALY, ESQUIRE (Atty. ID 37660)
                                        MICHAEL F. SCHLEIGH, ESQUIRE (Atty. ID 88407)
                                        Deasey, Mahoney & Valentini, Ltd.
                                        1601 Market St., Suite 3400
                                        Philadelphia, PA 19103
                                        215-587-9400 (PHONE)/215-587-9456 (FAX)