**EXHIBIT 14**

# DEASEY, MAHONEY & BENDER, LTD.

FRANCIS J. DEASEY
HARRY G. MAHONEY
JAMES W. DALY†
GERALD J. VALENTINI‡
JANE A. NORTH†
HENRI MARCEL†
CARLA P. MARESCA†○
ADAM J. PANTANO†
WARD A. RIVERS†
CHRISTOPHER C. NEGRETE
STEPHEN J. PARISI†
PATRICIA E. McENTEER
MICHAEL J. HINKLE†
TROY D. SISUM†
JENNIFER B. HUNTER†
CHRISTOPHER G. MAVROS†
ELYSE G. CRAWFORD
THOMAS C. GALLAGHER†
ANDREW B. ADAIR
KIMBERLY M. FRASCELLA
SHERYL L. BORNW

ATTORNEYS AT LAW - PROCTORS IN ADMIRALTY
SUITE 1300
1800 JOHN F. KENNEDY BOULEVARD
PHILADELPHIA, PA 19103-2978
215-587-9400
FACSIMILE: 215-587-9456

DIRECT EMAIL: FJDEASEY@DMBPHILA.COM
VOICE-MAIL EXTENSION #134

NEW JERSEY OFFICE
80 TANNER STREET
HADDONFIELD, NJ 08033-2419
856-429-6331
FACSIMILE: 856-429-6562

MEDIA OFFICE
P.O. BOX 666
MEDIA, PA 19063

OF COUNSEL:
FRANK C. BENDER
WILLIAM R. DEASEY
1951-1993
JAMES G. BARNES
1988-1997
† ALSO MEMBER NJ BAR
‡ ALSO MEMBER CA BAR
○ ALSO MEMBER NY BAR

March 29, 2007

**VIA FACSIMILE**
Howard T. Weir, Esquire
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

    Re:    **Blackwater Security Consulting, LLC, et al. v. WSLIC, et al.**
            **Our File No. 500.22215**

Dear Howard:

      This will acknowledge receipt of your correspondences to me of March 2 and March 14, 2007 regarding the above-captioned matter and serve as WSLIC's responses to same. In your March 2, 2007 correspondence, you advised that Blackwater is unwilling to provide WSLIC with its retention letters. While I appreciate that you have canvassed the litigation group of lawyers spending upwards of thirty years litigating insurance coverage actions, I believe the retention letters are relevant for several purposes. First, to the extent that WSLIC reimburses Blackwater for any defense costs, it is important for WSLIC to know what agreements Blackwater has made with respect to its counsel concerning such reimbursement. For example, if there has been a division of labor among the law firms, this would be important for WSLIC's consideration of what defense costs are "reasonable" under the circumstances. Second, to the extent any of the firms have agreed to accept only payments reimbursed by one or more insurance carriers, this factor would also be relevant to WSLIC's determination of reasonable defense costs. Quite honestly, if the retention letters were requested in discovery, I can think of absolutely no reason why a court would not compel Blackwater to produce the retention letters regardless of whether a defense is being provided under a Reservation of Rights. I ask that you reconsider producing the retention letters for review by WSLIC. Certainly, they would be produced pursuant to a Confidentiality Agreement in place between the parties.

      Regarding my request for a further explanation as to why Blackwater retained separate counsel for Mr. McQuown and Mr. Powell, you state in your March 2, 2007 correspondence that

PAGE NO.  2  TO  Howard T. Weir, Esquire
March 29, 2007

"Blackwater's counsel fully explained the reasons to you at our conference on December 13, 2006." My recollection of that meeting is that Blackwater's counsel gave two reasons why separate counsel were retained. Namely:

(1) Counsel explained that it was customary in securities litigation to provide separate counsel for individual directors and/or officers of a corporation, as well as the corporation;

(2) Counsel explained that separate counsel was necessary in order to assure the continued cooperation and assistance of Messrs. McQuown and Powell in the Nordan litigation.

If there were other reasons given by counsel for Blackwater, I would appreciate your explanation of the reasons. Also, I would appreciate an explanation as to why it was necessary to retain two law firms for each of these individuals.

Turning to your March 14, 2007 correspondence, I will contact you to obtain further clarification as to the need for the involvement of the Kirkland & Ellis and McKenna, Long and Aldridge law firms in connection with the underlying litigation.

Regarding the redaction of invoices, I respectfully disagree that there is any privilege which permits Blackwater to redact the invoices. As you are aware, there is a Confidentiality Agreement in place. To the extent Blackwater expects WSLIC (or any other carrier) to reimburse Blackwater for the work performed by these law firms, it is axiomatic that the carriers must know what work was performed. Once again, I cannot imagine any court would permit such redactions if the invoices were requested in discovery. WSLIC is not requesting that Blackwater waive its right to assert privilege as to third parties. However, as an insurer from whom Blackwater seeks reimbursement, WSLIC is entitled to know what work was performed by these firms.

With respect to your statements regarding the time which has passed since WSLIC agreed to defend Blackwater under a Reservation of Rights, I think it is important that you know the timeline involved in this case. The invoices were requested last year. Blackwater would not provide the invoices until WSLIC agreed to a Confidentiality Agreement. Once the Confidentiality Agreement was in place, the invoices were provided to WSLIC. Thereafter, I requested additional information from you regarding the invoices and the need for several law firms to represent the Blackwater Defendants in the Nordan litigation. You responded by suggesting a meeting between counsel for the insurers and counsel for Blackwater. The meeting took place in December. Since that time, I have requested additional information, some of which has been provided and some of which has not (thus the need for this correspondence).

| PAGE NO. | 3 | TO | Howard T. Weir, Esquire |
|---|---|---|---|
| | | | March 29, 2007 |

By creating this timeline, I am not suggesting that Blackwater has not acted in good faith in complying with my requests for information. However, at the same time, I can assure you that WSLIC is acting in good faith in determining the "reasonable" defense costs which should be reimbursed. Thus, the suggestion that WSLIC has waited two years to reimburse Blackwater for the defense costs incurred in the <u>Nordan</u> litigation is simply unfounded. WSLIC will continue to act in good faith in responding to the reimbursement request. I urge Blackwater to do the same and provide the information requested herein.

Lastly, with respect to my correspondence to Gary Jackson, please be assured that I did not intend anything inappropriate by corresponding with him directly. Rather, since the initial Reservation of Rights letter was sent to Mr. Jackson, I thought it imperative that I address the revised Reservation of Rights letters to him. Rest assured that in the future I will send all such correspondence directly to you with the understanding that you will forward the same to Mr. Jackson. However, in doing so I will assume that notice to you of WSLIC's coverage position will be deemed notice to Mr. Jackson and, therefore, the Blackwater insureds. If I am mistaken in this assumption, kindly advise.

Very truly yours,

DEASEY, MAHONEY & BENDER, LTD.

By: *[signature]*
FRANCIS J. DEASEY, ESQUIRE

FJD/mr
Enclosure

PS:  Howard,

To the extent I have not already done so, I am enclosing herewith a copy of ACE's guidelines for its counsel.