# EXHIBIT D

Dockets.Justia.com



Tony Glenn
Vice President
55 Water Street, 18th Floor
New York, NY 10041
Tel: (212) 208-4145
Fax: (212) 208-4290

August 31, 2005

Steven Capace
Blackwater Lodge & Training Center
550 Puddin Ridge
Moyock, NC  27958

Re: ***Nordan, et al. v. Blackwater Security Consulting, LLC, et al.***
         **Insured:**          **Blackwater Lodge & Training Center, Inc.**
         **Policy No.:**     **LQ1-B71-200233-014**
         **File No.:**        **CHCAS000069294**
         **Policy Period:**  **January 27, 2004 – January 27, 2005**

Dear Mr. Capace:

This letter provides you with our present coverage position concerning the above-referenced policy (the "Liberty Policy") in connection with the above-referenced claim.  Liberty is reserving its rights to deny coverage for the reasons set forth below.

## FACTS

I.    The Complaint and Notice of Removal

The Complaint has been filed by the Claimants Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley Batalona ("the Decedents") against Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. (collectively "Blackwater" here and in the Complaint).  Blackwater hired the Decedents as purported independent contractors to serve as security agents in Iraq.  While conducting missions on behalf of Blackwater, the Decedents were killed in Falujjah, Iraq on March 31, 2004 and their bodies were mistreated.  Recently, the families of the Decedents brought suit against Blackwater and certain Blackwater officers (Thomas Powell and Justin McQuown) in North Carolina state court for wrongful death and fraud[1] (the "Lawsuit").  The basis for the Lawsuit is essentially the following: although the Decedents were promised and assured that the following would occur, Blackwater and certain Blackwater officers intentionally, deliberately, recklessly, wantonly and/or negligently sent the Decedents into Fallujah without the promised and required: (1) six man team; (2) minimum of

---

[1] The fraud claim seeks a rescission of the Independent Contractor Service Agreement signed by the Decedents. Because this count does not allege bodily injury, the count does not implicate the Liberty Policy.

Blackwater Lodge & Training Center
August 31, 2005
Page 2

two armored vehicles; (3) rear gunner; (4) heavy automatic machine guns; (5) twenty-four hours prior notice of the security mission; (6) risk assessment to determine the threat level of the mission; (7) and opportunity to review travel routes, gather intelligence regarding the mission, perform a pre-trip inspection of route, determine the proper logistics or even review a map of the area, or to test and sight weapons provided by Blackwater. In sum, "Blackwater intentionally and knowingly sent Helvenson, Teague, Zovko and Batalona into harm's way without the needed and promised protections." The Complaint seeks compensatory and punitive damages.

Blackwater filed a notice to remove the action to Federal Court arguing that the DBA provided the exclusive remedy for the Decedents' families and that only Federal courts have jurisdiction over claims brought pursuant to these acts.

According to the facts alleged in the Complaint and in Blackwater's Notice of Removal, Kellogg Brown & Root, Inc. ("KBR") contracted to provide services to the U.S. Military and other U.S. agencies in Kuwait and Iraq. KBR subcontracted the catering, and other support services to ESS Support Services Worldwide, Eurest Support Services (Cyprus) International Ltd. ("ESS"). ESS subcontracted certain of these services to Regency Hotel & Hospital Company ("Regency"). In support of its contract with ESS, Regency contracted with Blackwater to provide security services. Regency's contract with Blackwater required Blackwater to obtain and maintain DBA insurance and Blackwater purportedly did so with respect to the Decedents.

It is alleged that the primary contract between ESS and Blackwater Regency required armored vehicles, two vehicles in a convoy, and a minimum team of six people. The ultimate subcontract between Regency and Blackwater did not contain any provisions as to armored vehicles. When this issue was brought to Blackwater's attention by its project manager, he was fired. The Complaint alleges that the new project manager, McQuown, lacked the necessary training and experience. It is further alleged that the Decedents were aware of the security requirements of their primary contract when they agreed to perform services for Blackwater, and were not aware that some of these provisions were deleted from the sub-contract.

II.    Blackwater's Independent Contractor Service Agreement and Contract with Regency

Liberty has been provided with two different Independent Contractor Agreements ("IC Agreement"). The first one was a blank IC Agreement. While there are a number of provisions in the IC Agreement which are pertinent to Blackwater's defense of the underlying action, but for purposes of our coverage analysis, the pertinent provision is as follows:

> 20.15  **Independent Contractor.** Contractor acknowledges that it is solely an independent contractor; *provided that for purposes of the Defense Base Act, Blackwater shall be the statutory employer of the Contractor.* Nothing contained in this Agreement shall be deemed to constitute either BSC, the Contractor or Customer as an agent, representative, partner, or joint venturer or employee of the

LIU - BSC - 000306

Blackwater Lodge & Training Center
August 31, 2005
Page 3

> other party for any purpose (*except for purposes of the Defense
> Base Act*). … Other than third party insurance benefits being
> provided to each Contractor in exchange for the Services
> hereunder, Contractor understands that *other than DBA Insurance*,
> he is not entitled to any employee benefits from BSC, including
> workers' compensation benefits, life insurance, long term
> disability, health and dental benefits, participation in 401K plan or
> any other benefits.

More recently, Liberty received an IC Agreement that purports to be signed by one of the
Claimants, Stephen S. Helvenston. This IC Agreement states, among other provisions, that the
Contractor (Helvenston), is an "independent contractor" to Blackwater and not an employee, he
is solely responsible for obtaining his own workers compensation insurance and that Blackwater
is not responsible for obtaining any such insurance, the Contractor releases Blackwater as to all
claims, he warrants that he has his own disability insurance, the Contractor will indemnify
Blackwater for his failure to obtain disability or worker's compensation insurance, all disputes as
to the interpretation of the agreement will be settled by arbitration and the Contractor waives a
jury trial, and he acknowledges that he is not entitled to any employee benefits from Blackwater,
such as workers compensation benefits.

The contract between Regency and Blackwater states that Blackwater "is required to maintain
Defense Base Act ("DBA") insurance on all of its employees working in the provision of
Security Services." The cost of this insurance was to be charged to ESS.

Please provide us with all signed agreements between the Decedents and Blackwater, and all
documents indicating whether there is a DBA policy that provides coverage to them. During the
underwriting process, Liberty was assured that DBA coverage would be provided for all
Blackwater contractors, and that this would be the sole remedy for injuries to these contractors.
To the extent that Liberty received false information during the underwriting of the policy that
was material to the risk, Liberty would have the right to rescind the policy, and it must reserve
this right.

## APPLICABLE POLICY PROVISIONS

The Liberty Policy's applicable period ran from January 27, 2004 to January 23, 2005. The loss
occurred during this period; i.e., March 31, 2004. The Liberty Policy provides $15,000,000 in
coverage for each occurrence and $15,000,000 in the aggregate, and a self-insured retention of
$10,000. All of the claims by the Decedents are one occurrence under the Liberty policy.

The Liberty policy is only issued to Blackwater Lodge & Training Center, Inc. It appears that
the wrongful acts alleged in the Complaint were committed, if at all, by Blackwater Security
Consulting, LLC.

LIU - BSC - 000307

Blackwater Lodge & Training Center
August 31, 2005
Page 4

The definition of "Insured" includes the Insured's "members or managers but only as respects the conduct of your business" if the Insured is an LLC, and includes "any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties." As to the latter definition, coverage does not apply to "the ownership, maintenance, use, 'loading' or 'unloading' of any 'autos' … unless such coverage is included under the policies listed in the schedule of underlying insurance and for no broader coverage than is provided under such underlying policies."

The Liberty Policy provides, in pertinent part:

## INSURING AGREEMENTS

### I.    COVERAGE

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "Insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement** section **II. LIMITS OF INSURANCE.**

### II.    LIMITS OF INSURANCE

…

E.    If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

1.    in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

2.    in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

…

LIU - BSC - 000308

Blackwater Lodge & Training Center
August 31, 2005
Page 5

**G.    Retained Limit**

We will be liable only for that portion of damages, subject
to Each Occurrence Limit stated in the Declarations, in
excess of the "retained limit," which is the greater of:

1.    the total amounts stated as the applicable limits of the
underlying policies listed in the Schedule of Underlying
Insurance and the applicable limits of any other insurance
providing coverage to the "Insured" during the Policy
Period; or

2.    the amount stated in the Declarations as Self-Insured
Retention as a result of any one "occurrence" not covered
by the underlying policies listed in the Schedule of
Underlying Insurance nor by any other insurance
providing coverage to the "Insured" during the Policy
Period;

and then up to an amount not exceeding the Each
Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by
actual payment of "Claims" in full by the "Insured," the
Self-Insured Retention will not be reapplied or again
payable by the "Insured" for said Policy Period.

. . .

**IV.    EXCLUSIONS**

This insurance does not apply to:

A.    "Bodily Injury: ... expected or intended from the
standpoint of the "Insured." This exclusion does not apply
to "bodily injury" resulting from the use of reasonable
force to protect persons or property.

B.    Any obligation of the "Insured" under a Worker's
Compensation, Unemployment Compensation or Disability
Benefits Law, or under any similar law, regulation or
ordinance.

Blackwater Lodge & Training Center
August 31, 2005
Page 6

...

D.    Any obligation of the "Insured" under a No Fault,
      Uninsured Motorist or Underinsured Motorist law, or any
      similar law, regulation or ordinance.

...

Q.    The following items 1. through 4., except to the extent that
      such insurance is provided by a policy listed in the
      Schedule of Underlying Insurance, and for no broader
      coverage than is provided by such policy:

      1.    Liability, of any employee with respect to "bodily
      injury" ... to you or to another employee of the same
      employer injured in the course of such employment.

      ...

      4.    "Bodily injury" to:

      a.    an employee of any "Insured" arising out of and in
            the course of:

      i.    employment by any "Insured"; or
      ii.   performing duties related to the conduct of any
            "Insured's" business; or

      b.    the spouse, child, parent, brother or sister of that
            employee as a consequence of Paragraph 4.a.

            ...

This exclusion applies:

a.    whether any "Insured" may be liable as an employer or in
      any other capacity ...

The Liberty Policy contains the following pertinent exclusionary endorsements:

LIU - BSC - 000310

Blackwater Lodge & Training Center
August 31, 2005
Page 7

### Employers Liability – Following Form

The following exclusion is added to Section IV – Exclusions:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract", because of Employers Liability, except to the extent that such insurance is provided by a policy listed in the Schedule of "Underlying Insurance" and for no broader coverage than is provided by such coverage.

This endorsement does not change any other provision of this policy.

...

### War/Terrorism Exclusion

Section IV Exclusion M. is deleted in its entirety and replaced with the following exclusion:

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" caused by, arising from or related in any way, directly or indirectly, to:

A)    "War and Military Action" which includes without limitation the following:

      1)    War, including undeclared or civil war;

      2)    Warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; and

      3)    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

B)    Any actual or threatened act of domestic or international "terrorism" committed by a person or persons acting:

      1)    alone or on behalf of or in connection with any organization; and

Blackwater Lodge & Training Center
August 31, 2005
Page 8

    2)      with the goal of furthering any political, social, or religious objective.

This exclusion also applies to "bodily injury", "property damage", "personal injury" and "advertising injury" liability caused by action taken to prevent or defend against an act of "terrorism".

"Terrorism" means an act or acts:

1)    that are violent in nature or are dangerous to human life:

    a)    that are a violation of the criminal laws of the United States or of any State or that would be a criminal violation if committed within the jurisdiction of the United States or any State; and

    b)    that have the apparent intent of:
        i)    intimidating or coercing any civilian population;
        ii)    influencing the policy of any government by intimidation or coercion; or
        iii)    affecting the conduct of any government by mass destruction, assassination, or kidnapping, or

2)    that result in:

    a)    the denial of access to or services from Web sites, computer networks, or telecommunications equipment; or

    b)    the malfunction or degradation of Web sites, computer networks, telecommunications equipment, ore mechanical equipment, or that otherwise interrupt the functioning of Web sites or such properties; and that have the apparent intent of intimidating or coercing any civilian population or influencing the policy of any government by intimidation or coercion.

LIU - BSC - 000312

Blackwater Lodge & Training Center
August 31, 2005
Page 9

If an act of "terrorism" involves chemical or biological
weapons, this "terrorism" exclusion will apply. If an act of
"terrorism" involves nuclear reaction, nuclear radiation, or
radioactive contamination, this "terrorism" exclusion will apply
to liabilities that result from such nuclear reaction or radiation
or radioactive contamination in place of the Nuclear Hazard
Exclusion.

Two other exclusions were added by endorsement as follows: "Any liability for, caused by,
arising out of, or in connection with the rendering of or failure to render any professional
service" and "Any liability of any 'Insured' covered under this policy to any other 'Insured'
covered under this policy."

The Liberty Policy is excess of Westchester Surplus Lines CGL policy no. GLW778197 (the
"ACE Policy"), Travelers Indemnity Co. auto policy no. P8104644A18ATCT04 and Granite
State Insurance Co. employer's liability policy no. WC1271376 (the "Granite Policy"). We have
a copy of only the ACE Policy issued to Blackwater Lodge & Training Center, Inc. and
Blackwater Security Consulting, LLC. (among other insureds). Please forward a copy of the
other policies to us at your earliest convenience. We will need to review these policies to resolve
coverage issues as to the employers liability and automobile exclusions.

The ACE Policy provides $1,000,000 in commercial general liability coverage for each
occurrence and $2,000,000 in the aggregate for losses occurring between January 23, 2004 and
January 23, 2005. The loss occurred during this period. The ACE Policy contains a $50,000
deductible per each occurrence. The ACE Policy provides Blackwater with the terrorism
coverage applicable under TRIA for a premium of $5,000.

<u>COVERAGE ANALYSIS</u>

I.    <u>The War/Terrorism Exclusion</u>

The terms of the War/Terrorism Exclusion appear to bar coverage under the Liberty Policy.
With respect to the War portion of the exclusion, because the killing of the Decedents constitutes
bodily injury arises from or is related "directly or indirectly" to War and Military Action, which
includes insurrection and rebellion, the exclusion bars coverage under the Liberty Policy. The
presence of the Decedents in Iraq was directly due to war and the military action involving the
US government. With respect to the Terrorism portion of the exclusion, because the killing of
the Decedents constitutes bodily injury arising from or related to an actual act of international
terrorism committed by a person or persons acting alone or on behalf of an organization with the
goal of furthering any political, social or religious objective, the exclusion also bars coverage.

Blackwater Lodge & Training Center
August 31, 2005
Page 10

II.    The Employers Liability Exclusions and Workers Compensation Exclusion

The issue of the employment status of the Decedents is somewhat unclear at this point due to the different IC Agreements with which Liberty has been provided. Nonetheless, it appears that whether the Decedents are "employees" of Blackwater or independent contractors, the DBA provides the exclusive remedy and, as such, the Liberty Policy does not appear to cover the claim.

Moreover, to the extent the Decedents are employees, their claim fits within the "Employers Liability Exclusion" endorsement, and Exclusion Q(4)(a). Nonetheless, these exclusions do not apply to the extent that there is scheduled underlying employer's liability coverage. One of the scheduled underlying policies is an "employers liability policy" issued by Granite State Insurance Company. We will need to see that policy to determine if coverage is provided by that policy and by Liberty for this claim. The ACE policy contains an employers liability exclusion. Moreover, to the extent the Decedents are suing under the DBA or any other similar law, Exclusion B, for claims under a workers compensation law or similar law applies here.

III.    The Professional Services, Expected or Intended, Automobile and Insured vs. Insured Exclusions

The "professional services" exclusion endorsement may apply here. It appears that the services that Blackwater Security Consulting, LLC was allegedly supposed to provide to Regency or ESS were professional in nature, and the Decedents were performing these services at the time of their death. The IC agreement refers to "professional" security personnel.

We also note that the ACE policy declarations page refers to an exclusion endorsement called "Exclusion-Designated Professional Services", but Liberty does not have this. Please provide it at your earliest convenience. Additionally, it appears that there was professional liability coverage of $3 million issued by Shand Morahan, which is not a scheduled underlying insurance policy. We would also like to see a copy of that policy.

The "expected or intended" exclusion applies to claims of intentional acts, if the Insureds intended the acts alleged and the damages were expected or intended, or the damages were substantially certain to occur. Similarly, to the extent that the Complaint seeks punitive damages, Liberty may be barred from paying these based on public policy or because these are not "damages" to which the policy applies.

If the claim involves any claim under the No Fault, Uninsured Motorist or Underinsured Motorist laws, it would not be covered.

Still further, the Liberty policy contains an insured vs. insured exclusion. If the Decedents are employees of the Insured, they would appear to be "insureds" because they were acting within the course of their duties. They are not insureds if the claim involves the loading or unloading of

LIU - BSC - 000314

Blackwater Lodge & Training Center
August 31, 2005
Page 11

an auto, if they have no auto coverage under a scheduled underlying insurance.  We do not have
the scheduled underlying auto policy.

IV.    Conclusion

To the extent that Blackwater Security Consulting is not an insured, no coverage applies to that
entity.  Because the underlying policies have not been exhausted, Liberty has no present duty to
defend any of the Insureds.  Please be advised that Liberty is reserving its rights to deny coverage
based on the reasons set forth above, and it also reserves the right to disclaim on any other
grounds.

Please contact me after you have had a chance to review the information set forth in this letter so
that we can discuss any questions you have.  Please also provide us with the policy information
we are seeking.  I am happy to discuss this letter with you, and will review any additional
information you provide that might change our coverage position.   I look forward to hearing
from you.

Best regards,

Tony Glenn

cc: Howard Weir, Esq.
    Morgan Lewis & Bockius
    1111 Pennsylvania Avenue, NW
    Washington, DC 20004

LIU - BSC - 000315