UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; and BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a Georgia Corporation; EVANSTON INSURANCE COMPANY, an Illinois Corporation; FIDELITY AND CASUALTY COMPANY OF NEW YORK, a South Carolina Corporation; and LIBERTY INSURANCE UNDERWRITERS, a Massachusetts Corporation,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 05-CV-06020 (PBT) |

**LIBERTY INTERNATIONAL UNDERWRITERS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

                    John C. Sullivan, Esquire
                    Pa. I.D. No. 32262
                    Post & Schell, P.C.
                    Four Penn Center
                    1600 John F. Kennedy Boulevard
                    Philadelphia, PA 19103
                    (215) 587-1000
                    *Attorneys for Defendant, Liberty International Underwriters improperly named as Liberty Insurance Underwriters*

I.  **INTRODUCTION**

This reply brief is submitted on behalf of Liberty International Underwriters ("Liberty") in support of its motion for summary judgment. The undisputed evidence is that four contractors of Blackwater Security Consulting, LLC and Blackwater Training Center, Inc. ("Blackwater")—Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.D. Batalona (the "Decedents")—were killed in the Iraq War by Iraqi insurgents outside of war-torn Fallujah while supplying combat support to a convoy heading towards U.S. Army Camp Ridgeway, just prior to the First Battle of Fallujah. *See Nordan I* Complaint, Tellner Decl., Ex. 1, ¶12. The War/Terrorism Exclusion to the Liberty policy states that the policy "does not apply to 'bodily injury' . . . *caused by, arising from or related in any way, directly or indirectly, to* . . . 'War and Military Action' which includes without limitation . . . War, including undeclared or civil war, ... Insurrection, rebellion, [or] revolution . . . ." *See* Tellner Decl., Ex. 18, LIU-BSC-000028 (emphasis added). Therefore, Liberty is entitled to summary judgment.

II. **LEGAL ARGUMENT**

A.  **The War/Terrorism Exclusion Is Unambiguous, And It Clearly Applies.**

Blackwater attempts to interject ambiguity into the clear meaning of "war." "The so-called ambiguity is the creation of lawyers not laymen." *Gagliormella v. Metro. Life Ins. Co.*, 122 F. Supp. 246, 249 (D.C. Mass. 1954). Under applicable law, policy terms are to be given effect in their plainest sense. In addition, Blackwater has ignored the "caused by, arising from or related in any way, directly or indirectly, to" language in the War/Terrorism Exclusion. "Arising out of 'means causally connected with, not proximately caused by.' 'But for' causation, i.e., a cause and result relationship is enough to satisfy this [requirement]." *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996) (citation omitted). *See also Metr. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.*, 793 N.E.2d 1252, 1255 (Mass. App. Ct. 2003)

("'Arising out of' is ordinarily held to mean 'originating from, growing out of, flowing from, incident to or having connection with'. . . ."). *Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989 (2d Cir. 1974), which is relied upon by Blackwater, is inapplicable because it applied "a mechanical test of proximate causation . . . that looks only to the 'causes nearest to the loss.'" *Id.* at 1007. Applying "but for" causation, there is no legitimate dispute that the Decedents' deaths were caused by, arose from or were related to war. Blackwater itself has acknowledged that the *Nordan I* Complaint seeks damages related to war for the Decedents' lack of weapons, test firing, risk assessment, intelligence and armored vehicles for their security mission. (Blackwater Br. at 3). In addition, the Decedents' deaths by Iraqi insurgents also falls under the terms "Insurrection, rebellion, [or] revolution." An "insurgent" is "a person who *revolts* against civil authority or an established government; especially . . . a *rebel* not recognized as a belligerent; [and] one who acts contrary to the policies and decisions of one's own political party." *Merriam-Webster's Ninth New Collegiate Dictionary* 628 (1989) (emphasis added).[1]

### B. Blackwater Cannot Void Clear And Unambiguous Policy Language By Claiming That It Was Contrary To Its Reasonable Expectations.

The War/Terrorism Exclusion, as written, precludes coverage for the claims asserted against Blackwater. In order to avoid the impact of this clear policy language, Blackwater claims that it "reasonably expected" that Liberty would provide coverage for bodily injury arising from the Iraq War, despite the fact that the policy says that it does not afford coverage for bodily injury "caused by, arising from or related in any way, directly or indirectly, to . . . 'War

---

[1] Blackwater's responsive brief asserts that the Iraqi insurgents were "random criminals," "rogue killers," "certain Fallujah citizenry" and "criminal murderers." (Blackwater Br. at 11, 13). These factual assertions are contrary to the record of this case. In the initial *Nordan I* Complaint and Blackwater's Complaint in this action, both plaintiffs referred to the perpetrators multiple times as "Iraqi insurgents." In any event, the language of the exclusion ("*caused by, arising from or related in any way, directly or indirectly, to*") makes the status of the insurgents irrelevant. The Decedents were in Iraq to support the War and died doing so; thus, their deaths are related to the War. But for the Iraq War, the Decedents would not have been killed.

and Military Action.'"  Courts in Pennsylvania do not allow a policyholder to contradict the terms of an unambiguous policy by claiming that it expected broader coverage than the policy actually afforded.[2]  Therefore, Blackwater's argument must be rejected.

The Third Circuit has recognized that a reasonable expectations analysis is "only applied '*in very limited circumstances*' to protect *non-commercial insureds* from policy terms not readily apparent and from insurer deception."  *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (citations omitted) (emphasis added).  This is because when a court is conducting an insurance contract analysis, "[t]he polestar of our inquiry . . . is the language of the insurance policy."  *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).  As a result, "[w]here . . . the language of the contract is clear and unambiguous, a court is *required* to give effect to that language."  *Id.* (emphasis added).  Blackwater has advanced no argument that Liberty's policy terms were not readily apparent and does not assert and offers no evidence that there was deception by Liberty.

Blackwater is a corporation that used a large insurance broker to negotiate its insurance policies.  (Blackwater Br., Ex. C).  It is a commercial insured to which the reasonable expectations doctrine should not apply in the first instance.[3]  Therefore, this case does not

---

[2] As explained in Liberty's opening brief, there is no actual conflict between the laws potentially applicable to this case.  Under North Carolina law, "[i]n interpreting any insurance policy, the most fundamental rule of construction is that the language of the policy controls."  *Nationwide Mut. Ins. Co. v. Baer*, 439 S.E.2d 202, 204 (N.C. Ct. App. 1994).  The court has a "duty to construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used."  *Fidelity Bankers Life Ins. Co. v. Dortch*, 348 S.E.2d 794, 796 (N.C. 1986) (citation omitted).  Similarly, under Massachusetts law, courts must "read the policy as written [and] are not free to revise it."  *Continental Cas. Co. v. Gilbane Building Co.*, 461 N.E.2d 209, 212 (Mass. 1984); *see also Bond Bros., Inc. v. Robinson*, 471 N.E.2d 1332, 1336 (Mass. 1984) ("we have not yet explicitly adopted [a 'reasonable expectations'] approach to the interpretation of an insurance policy").

[3] There is no support in the record for Blackwater's claim that its sole purpose in seeking commercial insurance was to have coverage for combat operations during the Iraq War.  The vast

3

present one of the rare situations in which reasonable expectations applies—"where [the insured] applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 n.7 (3d Cir. 1997) (citation omitted).[4]  No case has been found that allowed a commercial insured like Blackwater to re-write a clear policy provision by claiming that the language somehow contravened its expectations.  Moreover, courts in this Circuit have refused to apply "reasonable expectations" to commercial insureds, like Blackwater, who use brokers to purchase liability insurance policies for their business. *MDL Capital Mgmt., Inc. v. Fed. Ins. Co.*, 2006 U.S. Dist. LEXIS 75270, *26 (W.D. Pa., Oct. 16, 2006).

Citing the 1983 decision, *Aetna Life & Casualty Co. v. McCabe*, 556 F. Supp. 1342 (E.D. Pa. 1983), Blackwater claims that an insurer cannot enforce an exclusion unless the insurer explained the exclusion to the policyholder.  This has not been the law of Pennsylvania for more than two decades.  *McCabe* was explicitly based on the 1974 decision in *Hionis v. Northern Mut. Ins. Co.*, 327 A.2d 363 (Pa. Super. Ct. 1974).  *See McCabe*, 556 F. Supp. at 1352 n.6 (citing *Hionis*).  In *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563 (Pa. 1983),

---

majority of the services identified on the Blackwater website, which was cited by Blackwater as alleged support for this claim, relate to domestic, non-hostile training, consulting and policy development.  They include "training," "global security consulting," "aircraft maintenance," the "highest quality construction and real estate services to a wide variety of government and private clients," and "K9 training & services." *See* http://www.blackwaterusa.com.  These operations require varying degrees of commercial insurance coverage.  Thus, to say that Blackwater solely sought insurance coverage for military combat in the Iraq War is factually unsupported.

[4] Blackwater cited *Collister v. Nationwide* Ins. *Co.*, 388 A.2d 1346 (Pa. 1978) as alleged support for its position, but that 29-year old decision has been substantially limited by the subsequent rulings in *Madison* and *Treesdale*. (Blackwater Br. at 5.)  In *Collister*, plaintiff's husband applied for life insurance and paid a two-month premium for that coverage, but died in an automobile accident before the policy was issued.  Nationwide denied coverage because plaintiff's husband had not taken the medical examination required by the application. *Id.* at 1356.  In this context, the Supreme Court concluded that the "reasonable expectations" of the applicant required a finding that temporary insurance was in effect from the date of payment of the premium.  Blackwater's claim here bears no resemblance whatsoever to *Collister*.

4

which was decided 11 months after *McCabe*, the Pennsylvania Supreme Court rejected *Hionis*, stating that "*Hionis*, which would permit an insured to avoid the application of a clear and unambiguous limitation clause in an insurance contract, is not to be followed." *Id.* at 567.

The contracts Liberty made, and the premiums it received, were based on the understanding, clearly stated in the contracts, that Liberty's policy would not cover "bodily injury [or] personal injury . . . <u>related in any way, directly or indirectly, to war and military action</u>." Blackwater cannot avoid the impact of a clear and unambiguous exclusion by the simple expediency of claiming that it expected that Liberty would provide coverage, despite the fact that the Liberty policy says the opposite.

    C.    **Blackwater Relies On Case Law That Is Neither Controlling Nor Applicable.**

The cases relied upon by Blackwater involve policy language that is materially different from Liberty's War/Terrorism Exclusion and factual situations that are distinguishable from the facts at issue in this case. Therefore, the case law relied on by Blackwater does not provide a basis for opposing Liberty's summary judgment motion.

In *Pan Am*, the policies under review excluded injury "due to or resulting from . . . war." *Pan Am*, 505 F.2d at 994. *Pan Am* does not support Blackwater's claim because the exclusion at issue in that case was narrower than the War/Terrorism Exclusion. Moreover, the court found that an act of terrorism did not fall within the scope of the exclusions, which unlike the Liberty policy, did not exclude terrorism. The insurers were not allowed to transform a terrorist act into a war simply by referring to "the general history of unrest in the Middle East." *Id.* at 1007.[5]

---

[5] For the same raeson, *Holiday Inns Inc. v. Aetna Ins. Co.*, 571 F. Supp. 1460 (S.D.N.Y. 1983) is unhelpful to Blackwater. Unlike the present case, at no time was the United States or any other sovereign nation at war with Lebanon. Much like *Pan Am*, *Holiday Inns* dealt with the attempt to classify terrorism as war.

5

Similarly, in *Airlift Int'l, Inc. v. United States*, 335 F. Supp. 442 (D.C. Fla. 1971), the policy excluded "Loss or damage due to or resulting from . . . war." *Id.* at 446. The absence of language similar to the "caused by, arising from or related in any way, directly or indirectly, to" language in the War/Terrorism Exclusion was significant. The *Airlift* Court did not apply a "but for" causation test, but instead found that a collision that resulted from the "failure to follow the rules of good airmanship" was not excluded. *Id.* at 449.

In *Shneiderman v. Metro. Cas. Co. of N.Y.*, 14 A.D.2d 284 (N.Y. App. Div. 1961) the insurance policy excluded injury "caused by war or any act of war." *Id.* at 285. Moreover, *Schneiderman* involved a plaintiff who was killed four days after a war ended. *Id.* The court recognized that had the insured been killed four days earlier, then the war-risk exclusion clearly would apply. *Id.* at 286. *Shneiderman* involved a life insurance policy issued to an individual. *See id.* The insured's status as a non-sophisticated commercial entity with no experience in business contracts was a critical component to the case. *Id.* In contrast, Blackwater is a sophisticated corporation with every resource available to negotiate its insurance policies and premiums.

Plaintiff relies on *Queens Ins. Co. of Am. v. Globe Rutgers Fire Ins. Co.*, 263 U.S. 487 (1924), but that case has already been distinguished by the Eastern District of Pennsylvania in *Crist v. U.S. War Shipping Admin.*, 64 F. Supp. 934 (E.D. Pa. 1946). In *Crist*, the Court found that the death of a merchant seaman "was purely the result of a war risk or a warlike operation and not the result of a maritime peril" when a ship was ordered into foul weather in an unseaworthy condition as a result of a military command. *Id.* at 936.

6

D. **Blackwater Failed To Refute That This Court Is Entitled To Take Judicial Notice Of The Pronouncements Of War.**

In addition to the litany of record admissions by Blackwater, detailed in Liberty's opening brief, that the Decedents were engaged in combat support during the Iraq War, President Bush has repeatedly stated that the Nation was at war. *See* Speech 2002 WL 31317102 (Oct. 16, 2002); State of the Union Address (Jan. 28, 2003); Speech (Mar. 19, 2003); Speech (Mar. 23, 2003); Speech (Mar. 25, 2003), of which true and correct copies are attached, respectively to Tellner Decl., Ex. A, B, C, D, E. As discussed in Liberty's opening brief, this Court is entitled to take judicial notice of the official pronouncements of War. *See Heath v. Wallace*, 138 U.S. 573, 584 (1891); *Tempel v. United States*, 248 U.S. 121, 130 (1918).

III. **CONCLUSION**

For all of the foregoing reasons, this Court should grant Liberty International Underwriters' Motion for Summary Judgment and determine that there is no coverage under the Liberty International Underwriters Policy for the underlying *Nordan* litigation.

Dated: August 20, 2007                    **POST & SCHELL, P.C.**

By: /s/ *John C. Sullivan*
JOHN C. SULLIVAN, ESQUIRE
Attorney ID # 32262
Signature Validation Code: JCS7648
CHRISTOPHER J. TELLNER, ESQUIRE
Attorney ID # 204204
Signature Validation Code: CJT6757
Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA  19103-2808
(215) 587-1000
*Attorneys for Defendant,*
*Liberty International Underwriters*
*improperly named as Liberty Insurance*
*Underwriters*