IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WESTCHESTER SURPLUS LINES INSURANCE CO., et al., <br><br> Defendants. | CIVIL ACTION <br><br> NO. 05-6020 (PBT) <br><br> Hon. Petrese B. Tucker <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' REPLY TO
WESTCHESTER SURPLUS LINES INSURANCE CO.'S
RESPONSE TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. (collectively, "Blackwater"), by and through their attorneys, respectfully submit the following Reply to Defendant Westchester Surplus Lines Insurance Co.'s ("Westchester") Opposition to Plaintiffs' Motion for Partial Summary Judgment on the Duty to Defend ("Motion").

**I.    INTRODUCTION**

By its Motion, Blackwater seeks to have the Court Order that Westchester to live up to its promise to defend Blackwater against the Nordan Complaint. It is well settled that the duty to defend is triggered based on the allegations of the underlying suit and a comparison of those allegations to the terms of the policy. Westchester had agreed, pursuant to a reservation of rights to deny coverage at a later date, to reimburse Blackwater's defense costs. Thus, the issue of Westchester's duty to defend is ripe for determination.

Westchester seeks extensive discovery under Federal Rule of Procedure ("Rule") 56(f). However, such discovery is absolutely not relevant to whether the duty to defend existed ***at the time of tender*** — which is what Blackwater seeks to adjudicate by this motion. Nor is it permitted by law. The relevant complaint is in the record and is not in dispute. The relevant policy is in the record and is not in dispute. The Court need only compare the two documents to determine if a potential for coverage exists that will give rise to a duty to defend.

In its Opposition, Westchester <u>admits</u> that it agreed to reimburse the defense costs incurred in connection with the <u>Nordan</u> Complaint. Nonetheless, Westchester seeks to avoid or delay a decision on this Motion by claiming it needs discovery under Rule 56(f). Yet, Rule 56(f) does not apply here because Westchester's "need" for discovery is based, in the context of this case, (1) on legal questions, such as whether certain exclusions apply, that are not subject to Rule 56(f), and (2) on a factual issue, the reasonableness of defense costs, that is not material or relevant to this Motion. Westchester should not be permitted to use Rule 56(f) to delay undertaking its duty to defend Blackwater. As demonstrated below, Westchester's attempts to avoid defending Blackwater must fail given that Westchester cannot raise a single genuine issue of material fact as to whether it has a duty to defend Blackwater. Accordingly, for the following reasons which are explained in greater detail herein, the Court should grant Blackwater's Motion on the duty to defend, and deny Westchester's request for Rule 56(f) discovery.

First, Westchester has acknowledged it has the duty to defend. This concession is dispositive on whether its duty to defend has been triggered.[1]

---

[1] Westchester asserts that since it acknowledged that it has a duty to defend, this Motion is moot. Opp. at 18-20. Yet, the Motion is ripe because Westchester reserved its rights on the duty to defend, and is not reimbursing Blackwater for defense costs.

2

Second, Westchester's request for further discovery as to whether coverage exists is, standing alone, an admission that coverage may exist and that the duty to defend has been triggered.

Third, to avoid the impact of its concession that the Nordan Complaint triggered the duty to defend, Westchester attempts to impose on Blackwater the higher "duty to indemnify" standard. However, it is well established that the "duty to defend" is broader than the "duty to indemnify." Under the "duty to indemnify," the truth of the allegations in the underlying suits are relevant. But, under the "duty to defend," the allegations themselves control the inquiry. Westchester's attempts to engage in expensive and delaying discovery[2] is an irrelevant exercise with respect to this Motion, because the Court need only examine the allegations of the underlying litigation (which are all in the record and not disputed) to make its determination.

Fourth, the reasonableness of the defense costs is irrelevant to this Motion, which only seeks a ruling that Westchester owes the Nordan Complaint defendants a defense, and <u>does not seek a ruling on the amount of defense costs Westchester owes</u>.[3]

---

[2] Westchester identifies over 16 depositions that it claims must be taken to meet Blackwater's Motion. Although not one of these depositions would be helpful in resolving Blackwater's Motion, Westchester apparently hopes to delay a ruling on the Motion for many months.

[3] Since Blackwater is not seeking a ruling on the amount of defense costs Westchester owes, and just seeks a ruling on whether Westchester has a duty to defend Blackwater, the Court need not decide whether Blackwater may advocate the rights of McQuown and Powell. Yet, even if the Court does consider the issue, an evaluation of the standards set forth in Amato v. Wilentz, 952 F.2d 742 (3d Cir. 1991), which the Third Circuit expanded in Pennsylvania Psychiatric Soc. v. Green Spring Health Serv.'s, 280 F.3d 278 (3d Cir. 2002), reveals that Blackwater does have standing to assert insurance coverage claims in connection with the defense of McQuown and Powell.

Third-party standing requires the satisfaction of three preconditions: 1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a "close relationship"; and 3) the third party must face some obstacles that prevent it from pursuing its own claims. Pennsylvania Psychiatric Soc., 280 F.3d at 288-89. The court is to balance these factors to determine if third-party standing is warranted. Id. at 289. Here, Blackwater has suffered injury. Blackwater has a sufficiently "close relationship" such that it can effectively advance McQuown and Powell's interests, in that it can operate "fully, or very nearly, as effective a proponent" of their rights as the individuals themselves. See Id. A party need not face insurmountable hurdles, and a court is to consider the relationship of the litigant to the person whose rights

For all of these reasons, Blackwater respectfully requests that this Court grant partial summary judgment to Blackwater on the issue of the duty to defend.

## II. ARGUMENT

### A. There Is No Dispute That The Allegations Of The Nordan Complaint Create A Potential For Coverage, Which Triggers The Duty To Defend.

The only issue before this Court in connection with Blackwater's Motion on the duty to defend is whether Westchester is obligated to defend Blackwater against the allegations of the underlying action captioned Nordan v. Blackwater Security Consulting LLC, et al., 05 CVS 000173, originally filed in the Superior Court of North Carolina, Wake County, and the related litigation that stems from that complaint (the "Nordan Complaint"). It is well-settled that to establish a duty to defend, courts must simply look to the policy and the allegations of the underlying complaint to determine if there exists a potentially covered claim. Sunoco, Inc. v. Illinois Nat'l Ins. Co., 226 Fed.Appx. 104, 107, 2007 WL 295267, *3 (3d Cir. Jan. 31, 2007) (citing Lucker Mfg. v. The Home Ins. Co., 23 F.3d 808, 813 (3d Cir.1994)). Pennsylvania courts have long held that in consideration of an insured's payment of premiums, the insurer becomes contractually obligated to defend its insured. See, e.g., Beckwith Mach. Co. v. Travelers Indem. Co., 638 F. Supp. 1179, 1186 (W.D.Pa. 1986); Bracciale v. Nationwide Mut. Fire Ins. Co., 1993 WL 323594, *5 (E.D.Pa. Aug. 20, 1993). The obligation to defend arises whenever allegations against the insured state a claim which is potentially within the scope of the policy's coverage. C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co., 467 F. Supp. 18 (E.D.Pa. 1979); Bracciale, 1993 WL 323594 at *7. The factual allegations of the underlying complaint against

---

are being asserted. See Id. at 290-91. Though Pennsylvania Psychiatric Soc. involved an association rather than a company, when the factors the court outlined are applied to the facts here, it is clear that Blackwater, which is paying the defense costs of McQuown and Powell, can sufficiently represent the interests of McQuown and Powell.

4

the insured are to be taken as true and liberally construed in favor of the insured. Sunoco, Inc., 226 Fed.Appx. at 107, 2007 WL 295267, *3 (citation omitted).

Here, when the allegations in the Nordan Complaint are compared with the relevant Policy language, the potential for coverage is clear, which is why Westchester recognized it has a duty to defend. See Opp. at 5 ("WSLIC agreed to reimburse Blackwater Lodge's reasonable defense fees and costs"). Yet, Westchester also reserved its right to deny coverage. As the Bracciale court noted, an insurer that refuses to defend, claiming that some of the claims may be excluded from coverage, breaches its duty to defend.

### 1. The Westchester Policy provides coverage to Blackwater for bodily injury.

Westchester issued Commercial General Liability Policy No. GLW 778197 (the "Policy") to Blackwater Lodge and Training Center, Inc. for the policy period January 23, 2004 to January 23, 2005. Motion, Howell Decl. ¶ 4, Exh. A. Blackwater Security Consulting LLC is also an insured under the Policy. Id., Exh. A, Common Policy Declarations, "Extended Named Insured." And, because Blackwater Security Consulting LLC is a limited liability company, the Policy provides that its managers, which Mr. McQuown and Mr. Powell allegedly are, are also insureds under the Policy. Id., Exh. A, CG 00 01 10 01 at 9, § II, ¶ 1.c. The Policy obligates Westchester to

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. [Westchester] *will have the right and duty to defend* the insured against any "suit"[4] seeking those damages[5].

---

[4] "Suit" means "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged" and includes arbitration proceedings. Motion, Exh. A, CG 00 01 10 01 at 15, ¶ 18.

[5] "Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services, or death resulting at any time from 'bodily injury.'" Motion, Exh. A, CG 00 57 09 99, Amendment to Insuring Agreement, ¶ 1.e.

5

See Motion, Exh. A, CG 00 57 09 99, Amendment to Insuring Agreement ,¶ 1.a (emphasis added). The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." See Id., CG 00 01 10 01 at 13, § V, ¶ 3.

### 2.  The Nordan Complaint Triggers Westchester's Duty to Defend

The Nordan Complaint was filed against Blackwater Security Consulting, LLC, Blackwater Lodge and Training Center, Inc., Justin McQuown and Thomas Powell. See Motion, Ex. B. It alleges that "[a]s a proximate result of [Blackwater's, McQuown's and Powell's] intentional conduct, willful and wanton conduct, and/or negligence, as alleged herein, [decedents] were killed March 31, 2004." See Id. at ¶ 71. The Nordan Complaint also alleges that Blackwater, Mr. McQuown and Mr. Powell, failed to provide decedents with "certain protections, tools, and information to allow [decedents] to do their jobs" in Iraq, and that those failures resulted in the murder of decedents. Id. at ¶ 13. The Nordan Complaint alleges that all of the defendants, individuals and corporations alike, are one in the same. According to paragraph 10 of the Complaint:

> each Defendant, was the agent, servant, representative and/or employee of each of the other Defendants, and that in doing the things hereinafter alleged, each Defendant was acting within the course and scope of his or her authority as such agent, servant, representative and/or employee, with the permission, knowledge, consent and ratification of each of the other defendants.

Id. at ¶ 10. Westchester seeks discovery to establish the truth of certain underlying allegations (Opp. at 5-7), which may be relevant with respect to the duty to indemnify, but as to this Motion, the allegations alone control, and it is clear from a comparison of the Policy's coverage and the Nordan Complaint allegations that Westchester has a duty to defend. As a matter of law, the duty to defend inquiry should end with Westchester's concession that its duty to defend was

6

triggered. In any event, the allegations of the Nordan Complaint as compared with the Policy language establish a potential for coverage and thus a duty to defend.

**B. Blackwater's Motion On The Duty To Defend Is Ripe Now Because Westchester Reserved Its Rights On The Duty To Defend.**

The Court has before it the relevant facts necessary to determine the duty to defend issue. By arguing that it needs discovery of facts to "prove its affirmative defenses," (Opp. at 10), Westchester is once again tacitly conceding that it must defend now, which is what Blackwater seeks by this Motion. Westchester's request for discovery at this juncture ignores decades of well-accepted law on what is relevant on the duty to defend by implying that the Court must consider ultimate facts on coverage issues before deciding this Motion. In short, Westchester conflates the duty to defend (i.e., a continuing duty to defend until allegations are clearly proven to fall outside of coverage) with the duty to indemnify (i.e., duty to cover liabilities arising from those allegations). Here, there is no dispute that the underlying Nordan Complaint is "arguably covered" by the policy issued by Westchester. Accordingly, it must defend Blackwater.

Further, an insurer is not excused from its duty to defend until it becomes apparent that there are no circumstances under which the insurer would be responsible. See Sunoco, Inc., 226 Fed.Appx. at 109, 2007 WL 295267, \*\*4-5 (holding that insurer must defend the underlying litigation until there is no longer a claim that may possibly be covered under the policy). If coverage depends upon "facts outside of the complaint that have yet to be determined, the insurer must provide a defense until such time as the facts are determined, and the claim is narrowed to one patently outside of coverage." Beckwith, 638 F. Supp. at 1186 (citing C. Raymond Davis, 467 F. Supp. at 19). And, those facts must be determined in the liability action itself. In Beckwith, where the insurer disputed whether it had received timely notice of the claim, the Court noted that:

> [t]he issue of whether it might ultimately be determined that a failure of timely notice might relieve [insurer] from indemnifying [insured] from a recovery [in the underlying action], presented no basis for [insurer's] refusal to defend the [the underlying action] which contained claims potentially within the scope of the policy's coverage.

Beckwith, 638 F. Supp. at 1185 (citations omitted).

Westchester's attempt to use Rule 56(f) to delay a ruling on Blackwater's motion must fail because Westchester has not met the necessary standard for additional discovery. The purpose of Rule 56(f) is to ensure that a premature motion is not granted. Green v. Joy Cone Co., 278 F. Supp.2d 526, 533 (W.D.Pa. 2003). An affidavit in support of additional discovery is required to ensure that the party requesting discovery is invoking the protection afforded by Rule 56(f) in good faith and to provide the court with specific enough information to assess the requesting party's opposition. Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508, 511 (3rd Cir. 1994). To meet this standard, Westchester must show with specificity the particular information sought, including specific facts the party intends to discover, how those facts, if uncovered, would preclude summary judgment and why that information could not be obtained elsewhere. Green, 278 F. Supp.2d at 546 (declining to grant request for additional discovery because affidavit in support of discovery did not provide reasoning to substantiate the request and did not specify the facts it intended to discover in order to effectively oppose the summary judgment motion); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987) (affirming district court's decision not to allow additional discovery because appellants failed to show how additional discovery would have cured the fundamental shortcomings of their claims).

The Affidavit of Keith Phillips in support of Westchester's request for additional discovery under Rule 56(f) fails to delineate anything that would preclude summary judgment on the duty to defend. Westchester claims to need the evidence outlined in the Phillips Affidavit because it is "relevant to the determination of whether coverage actually exists for the Nordan

8

Complaint" and is "material" to whether "the duty to defend should end." See Opp. at 13. Accordingly, Westchester is seeking extensive discovery on its coverage defenses (Opp. at 13-16), while conceding it does have the duty to defend now. Westchester should not be permitted to delay having its duty to defend established by a ruling from this Court.

Further, the discovery that Westchester seeks to determine whether certain exclusions apply is not subject to Rule 56(f), nor is the discovery it seeks to determine the reasonableness of defense costs. To the extent that Westchester argues that certain discovery is relevant to coverage, that contention has no merit in connection with a motion on the duty to defend. See Sunoco, Inc. v. Illinois Nat'l Ins. Co., No. 04-4087, 2005 WL 2077258, *4 (E.D.Pa. Aug. 29, 2005) (holding, in response to the insurer's motion to compel discovery pursuant to Rule 56, that such discovery is not relevant to whether the duty to defend had arisen). The factual issue raised by Westchester – reasonableness of defense costs – is not relevant to this Motion, which is simply on the duty to defend and not on the propriety of all of Blackwater's defense costs. See Sunoco, Inc. v. Illinois Nat'l Ins. Co., No. 04-4087, 2007 WL 127737, *1 (E.D.Pa. Jan. 11, 2007) (after holding in earlier decision that insurer had duty to defend, Eastern District noted that insurer could still raise objections to certain defense costs at a later date).

Moreover, Westchester has absolutely no basis for needing the broad and burdensome discovery it seeks.[6] Westchester indicates that it "has always taken the position that it has a duty to defend" (Opp. at 19). This admission is dispositive on the pending Motion. To the extent that Westchester argues that the information and documentation it seeks is relevant to the coverage

---

[6] As just one example, Westchester claims to need "Copies of the files of all counsel with respect to whom Plaintiffs are seeking reimbursement of attorneys fees." Opp. at 9. Clearly the production of such documents is not necessary before the Court determines if Westchester has a duty to defend. Also, Blackwater and its counsel have been providing the defendant carriers with updates and status reports in connection with the underlying action. Indeed, as the recent Status Letter that was sent to Westchester reflects, Westchester knew – and has known – about the pending litigations in connection with the Nordan Complaint. See Opp., Phillips Affidavit, Exh. 3, Status Report.

9

decision, that contention has no merit under the law in connection with the question of the duty to defend. See Sunoco, 2005 WL 2077258, *4.

Former Judge Weiner's decision in Sunoco, Inc. v. Illinois Nat'l Ins. Co., No. 04-4087, 2005 WL 2077258, *4 (E.D.Pa. Aug. 29, 2005), which involved the same issues as are before the Court here, is particularly instructive. In Sunoco, Judge Weiner had before him Sunoco's motion on the duty to defend, and Illinois National Insurance Company's ("Illinois National") motion for discovery. Just as in the instant matter, Illinois National sought discovery regarding the underlying litigations for which Sunoco sought a defense, in addition to information in connection with the policy. See Sunoco, Inc. v. Illinois Nat'l Ins. Co., No. 04-4087, 2005 WL 2077258, *1 (E.D.Pa. Aug. 29, 2005). Former Judge Weiner considered how the interpretation of a policy is a matter of law properly resolved in a declaratory judgment action, and the task of interpreting the policy is generally performed by the court, rather than a jury, which must read the policy as a whole and construe it according to the plain meaning of its terms. Id. at *4 (citations omitted). He held that a Court is to only look to the policy language and the allegations of the underlying complaint to determine whether the duty to defend has arisen, and to the extent that the insurer Illinois National argued that the other information it sought was relevant to the coverage decision, that contention had no merit under Pennsylvania law. Id. Applying these principles, Judge Weiner ordered that Illinois National had a duty to defend, and was not entitled to the additional discovery it sought. Id. at *8.

The Third Circuit reviewed this decision, and held that Illinois National did have the duty to defend Sunoco against, and reimburse Sunoco for defense costs in connection with, some seventy lawsuits that have been filed against Sunoco. See Sunoco, Inc., 226 Fed.Appx. 104, 107, 2007 WL 295267 (holding Illinois National had duty to defend all the suits, though one of the

10

suits would be deemed a separate "occurrence"). Accordingly, just as in the Sunoco litigation, Westchester should not be permitted to use Rule 56(f) to delay undertaking its duty to defend Blackwater.

## III.   CONCLUSION

For the foregoing reasons, Blackwater respectfully requests that the Court grant Blackwater's Motion on the duty to defend, and Order that Westchester defend Blackwater against the Nordan Complaint.

                                  Respectfully submitted,

Dennis J. Valenza
Carol C. Carty
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
P: 215.963.5000
F: 215.963.5001

Paul A. Zevnik
Howard T. Weir III
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
P: 202.739.3000
F: 202.739.3001

Dated: August 31, 2007                    Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2007, a true and correct copy of the foregoing document was served, by electronic mail, upon the following counsel of record:

Francis J. Deasey, Esq.
Deasey, Mahoney & Valentini
1601 Market Street, Suite 3400
Philadelphia, PA 19103

John C. Sullivan, Esq.
Post & Schell PC
1600 John F. Kennedy Blvd
Four Penn Center
Philadelphia, PA 19103-2808

L.D. Simmons, II, Esq.
Helms Mulliss & Wicker PLLC
201 North Tryon Street
Charlotte, NC 28202

Francis P. Burns, III, Esq.
Lavin O'Neil Ricci Cedrone & Disipio
190 North Independence Mall West
6th & Race Streets, Suite 500
Philadelphia, PA 19106

Ronald P. Schiller, Esq.
DLA Piper Rudnick Gray Cary LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA 19103

Thomas T. Locke, Esq.
Seyfarth Shaw LLP
815 Connecticut Ave NW
Washington, DC 20006-4004

_____
Carol C. Carty