IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; and BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation<br><br>         Plaintiffs,<br>vs.<br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a Georgia Corporation<br>    and<br>EVANSTON INSURANCE COMPANY, an Illinois Corporation<br>    and<br>FIDELITY AND CASUALTY COMPANY OF NEW YORK, a South Carolina Corporation<br>    and<br>LIBERTY INSURANCE UNDERWRITERS, a Massachusetts Corporation<br>         Defendants. | CIVIL ACTION NO. 05-6020<br><br><br><br><br><br>**DEFENDANT WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S SURREPLY TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR ADDITIONAL DISCOVERY PURSUANT TO F.R.Civ.P. 56(f)** |

I.   **INTRODUCTION**

Plaintiffs' continued assertions that WSLIC has failed to "live up to its promise to defend Blackwater against the Nordan Complaint[1]," are disproved by the record. As evidenced by the affidavits filed on behalf of Westchester Surplus Lines Insurance Company ("WSLIC") and Continental Insurance Company ("Continental") in opposition to Plaintiffs' summary judgment motions, WSLIC and Continental have indeed fully reimbursed Blackwater Security Consulting, LLC and Blackwater Lodge & Training Center, Inc. (collectively "Blackwater") for every

---

[1] **Nordan v. Blackwater Security Consulting, LLC, et al.**, originally filed in the Superior Court, Wake County, North Carolina (hereinafter "**Nordan** Complaint") and the other related actions described in Exhibit "3" to Phillips Affidavit which, together with the **Nordan** Complaint, will be referred to as the "**Nordan** Litigation").

invoice submitted by the Smith Anderson law firm selected and retained by Blackwater to defend it with respect to the Nordan Complaint. Those reimbursed fees total more than $1 million. That Blackwater continues to argue that WSLIC and Continental are not fulfilling their respective agreements to defend Blackwater subject to each insurer's reservation of rights reveals Blackwater's true objective which is to require Continental and WSLIC to reimburse Blackwater for all fees incurred by it as a result of its retention of at least nine additional firms. Despite its protests to the contrary, Blackwater's position on summary judgment makes clear that it seeks a ruling declaring not only that WSLIC has a duty *as a matter of law* to defend the Nordan Complaint, but that WSLIC's duty to defend includes reimbursement of fees: (1) charged by *all* firms retained by Blackwater, subject only to the reasonableness of the amount of those fees; and (2) incurred in connection with suits not previously tendered to WSLIC for defense.

Blackwater's motion must be denied because: (1) issues of fact exist with respect to Blackwater's contention that WSLIC has a duty to reimburse fees incurred by all firms retained by Blackwater; (2) issues of fact exist with respect to Blackwater's contention that WSLIC has a duty to defend suits other than the Nordan Complaint; (3) in advance of a ruling on summary judgment, WSLIC is entitled to conduct limited discovery to fulfill its obligation under North Carolina law to investigate and evaluate facts expressed or implied in the Nordan Complaint as well as facts learned from other sources in order to determine its duty to defend; (4) the facts alleged in the Nordan Complaint appear to fall squarely within the "auto" and "professional services" exclusions contained in the WSLIC policy.

## II. **BLACKWATER MISCONSTRUES THE DUTY TO DEFEND STANDARD**

Blackwater's simplistic assertion that WSLIC's agreement to defend under a reservation of rights equates to a concession that it is obligated under its policy to defend

is grossly inaccurate as a matter of law. Blackwater's arguments are premised upon a faulty interpretation of the governing law with respect to WSLIC's duty to defend. In their Reply brief, Plaintiffs exclusively rely on the application of Pennsylvania law. Other than being the forum Blackwater selected, Pennsylvania has no connection with the issues in the Nordan Complaint or with the WSLIC policy issued to Blackwater.

In recognition of the complete absence of any connection between Pennsylvania and the instant dispute, Blackwater notes the substantial connections that North Carolina has both with respect to the Nordan Complaint and the WSLIC policy. However, Blackwater incorrectly asserts that no conflict exists between North Carolina law and the law of Pennsylvania as it concerns the determination of an insurer's duty to defend. Blackwater also incorrectly relies upon **Lucker Manuf. v. Home Ins. Co.**, 23 F.3d 808 (3d Cir. 1994), for the proposition that that when a "false conflict" exists, the court should default to the law of the forum. Rather, where there is no true conflict between the law of Pennsylvania and the law of North Carolina on a particular issue, the court may consider the law of both states. *See* **Lucker**, *supra.*

WSLIC contends that the law of North Carolina does permit, and indeed in some instances requires, an insurer to investigate and evaluate facts expressed in the complaint and learned from other sources in order to determine its duty to defend. *See* **Waste Management of Carolinas, Inc. v. Peerless, Inc. Co.**, 315 N.C. 688, 691 (1986) (recognizing duty to investigate and evaluate facts expressed or implied in complaint as well as facts learned from insured and other sources in order to determine whether facts alleged in complaint, if proven, would be covered under its policy); **Braswell v. St. Paul Mercury Ins. Co.**, 640 S.E.2d 449 (N.C. App. 2007) (unpublished opinion) (copy attached as exhibit 1 hereto). Where, as here, the facts

alleged in the Nordan Complaint appear to fall squarely within the scope of certain exclusions, including the "auto" and "professional services" exclusions, WSLIC was permitted to pursue the procedurally safe course of agreeing to defend under a reservation of rights to later dispute its duty to defend or indemnify. Contrary to Blackwater's unfounded assertion, an insurer is not barred from later denying coverage when it defends its insured with a reservation of its rights to deny coverage. **Fortune Ins. Co. v. Owens**, 351 N.C. 424, 431 (N.C. 2000); **Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.**, 266 N.C. 430, 435 (1966).

With respect to the standard governing the duty to defend under North Carolina law, "[a]n insurer's duty to defend is *ordinarily* measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial." **Waste Management**, *supra*. (emphasis supplied). However, the **Waste Management** decision also cautions about the consequences to a carrier that denies its duty to defend where the complaint contains allegations showing no potential for coverage, but where a reasonable investigation might disclose facts that, if proven, would be covered by its policy. In that event, the court warned:

> Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage. 7C J. Appleman, Insurance Law and Practice § 4683. In this event, the insurer's refusal to defend is at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the cost of the defense. Id.
> ...
> ***In addition, many jurisdictions have recognized that the modern acceptance of notice pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources. Even though the insurer is bound by the policy to defend "groundless, false or fraudulent" lawsuits filed against the insured, if the facts are not even arguably covered by the policy, then the insurer has no duty to defend.***

*Id.* (emphasis supplied); *see also* **Lozada v. Phoenix Ins. Co**., 237 F. Supp. 2d 664, 672 (M.D.N.C. 2003). This admonition is particularly significant as it concerns this case and

WSLIC's contention that Blackwater's motion is premature.

Consistent with these principles, the court in **Waste Management** considered the underlying complaints, the insured's denial of the allegations in those complaints as well as subsequently discovered facts including deposition testimony from the insured in its determination that the insurer had no duty to defend due to the application of a pollution exclusion.  In **Braswell**, *supra*, the Court considered the guilty criminal plea of an insured to sexual assault crimes-- information that was extrinsic to the complaint-- in determining that the "criminal or dishonest acts" exclusion applied and that there was no duty to defend.   Likewise, in **Peerless Ins. Co. v. Strother**, 765 F.Supp. 866 (E.D.N.C. 1990), the court stated at first glance, the pleadings appeared to satisfy the comparison test and establish a duty to defend, but ultimately granted summary judgment to the insurer on the duty to defend.  The court rested its conclusion on the fact that the underlying complaint failed to allege when the pollution at issue occurred and on the fact that the only extrinsic evidence submitted to the court showed the pollution occurred outside the policy period. *Id.*   Finally, in **United States Fidelity & Guar. Co. v. Country Club**, 119 N.C. App. 365, 369 (N.C. Ct. App. 1995), in addition to the underlying complaint, the court considered several affidavits, depositions and items of correspondence in determining whether the insured was "in the business of selling alcohol" within the meaning of a liquor liability exclusion such that the insurer was entitled to summary judgment on its duty to defend.

Adhering to the tenets governing its obligations under North Carolina law, WSLIC agreed to undertake the defense of Blackwater pursuant to a reservation of rights to enable it to investigate and evaluate whether there was any other information that could create a potential for coverage beyond the allegations of the Nordan Complaint which, standing alone, conclusively

negate the potential for coverage under the WSLIC Policy. Blackwater seeks to preempt WSLIC from exercising its rights under North Carolina law to provide a conditional defense while it investigates and evaluates whether, in fact, there is any potential that facts outside the pleadings could trigger a duty to defend. As the caselaw amply demonstrates, Blackwater's motion must fail.

### III. THE ALLEGATIONS OF THE COMPLAINT PLACE THE FACTS SQUARELY WITHIN THE "AUTO" AND "PROFESSIONAL SERVICES" EXCLUSIONS

Having taken the procedurally safe course of defending under reservation of rights, WSLIC asserts that it is entitled to conduct discovery to investigate whether extrinsic evidence may show the potential for coverage or confirm the absence thereof. However, on the record as it now stands, without consideration of extrinsic evidence, the allegations of the Nordan Complaint fall entirely within the scope of the "auto" and "professional services" exclusions in the WSLIC Policy.

#### A. Rules of contract construction

An insurance policy is a contract and its provisions govern the rights and duties of the parties. **Gaston County Dyeing Machine Co. v. Northfield Ins. Co**., 351 N.C. 293, 299-300 (N.C. 2000). As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued. *Id.* Where a policy defines a term, that definition is to be used. **Certain Underwriters at Lloyd's London v. Hogan**, 147 N.C. App. 715, 718 (N.C. Ct. App. 2001). If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. *Id*. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. **Gaston**, *supra.* If the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may

not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.  *Id.*; **State Auto. Mut. Ins. Co. v. Hoyle**, 106 N.C. App. 199, 202, 415 S.E.2d 764, 765, disc. rev. denied, 331 N.C. 557, 417 S.E.2d 803 (1992).

If the language in an exclusionary clause contained in a policy is plainly expressed, it is to be construed and enforced as expressed.  **Hoyle**, 415 S.E.2d at 765-66; **United States Fidelity & Guar. Co. v. Country Club**, 119 N.C. App. 365, 371 (N.C. Ct. App. 1995); **Legion Indem. Co. v. CareStat Ambulance, Inc**., 152 F. Supp. 2d 707 (E.D. Pa. 2001).

> **B.   Blackwater does not challenge WSLIC's assertion that the "auto" exclusion applies**

In its memorandum, WSLIC argued that the "auto" exclusion applies to bar coverage for the claims in the Nordan Complaint.  Blackwater has wholly failed to respond to WSLIC's argument based on the "auto" exclusion.  Blackwater's failure to address the "auto" exclusion is easily explained by the fact that the exclusion so clearly applies to negate any duty to defend.  As demonstrated in WSLIC's memorandum, the Nordan Complaint is replete with allegations that the decedents were killed as they were stopped in traffic in downtown Fallujah when Iraqi insurgents walked up and shot them at point blank range *using small arms* as they sat in two unarmored vehicles.  The Nordan plaintiffs repeatedly allege that Blackwater sent the decedents on a dangerous security mission in a vehicle ill-equipped for that mission and that Blackwater's failure to provide armored vehicles caused the decedents' death.  They allege that because the vehicles were not armored, they had no protection against the Iraqi insurgents who literally walked up to their vehicles and shot them at point blank range using nothing more than *small arms*.  Based on the allegations of the Nordan Complaint, without reference to any extrinsic evidence, the facts alleged fall squarely within the "auto" exclusion of the WSLIC policy.  *See*

**Builders Mut. Ins. Co. v. North Main Construction Ltd.**, 176 N.C.App. 83 (N.C.App. 2006). Blackwater makes no argument otherwise.

    C.    **The "professional services" exclusion applies**

Blackwater also fails to address the "professional services" exclusion in its reply. Although in its memorandum Blackwater stated in conclusory fashion and without citation of authority that the "professional services" exclusion in the WSLIC policy does not apply to the facts of the Nordan Complaint, this argument is patently absurd. The exclusion states, in relevant part:

> With respect to any professional services shown in the Schedule, the following exclusion is added….:
> This insurance does not apply to "bodily injury" … due to the rendering or failure to render any professional service."

The Schedule contains the following description of professional services: "any training instructions or consulting services pertaining to firearms, security or driving."

It is undisputed that the Nordan Complaint alleges the decedents were killed while working as *security* contractors for Blackwater. The Nordan plaintiffs allege that Blackwater failed to provide the decedents with adequate *training* and *intelligence data*. The Nordan Complaint alleges Blackwater failed to provide decedents with *"SAW Mach 46" weapons* and denied the decedents an opportunity to *test, fire or site their weapons* before sending them on the fatal security mission. The Nordan Complaint alleges this basic act of security preparation was denied despite a Blackwater policy in place providing for *vehicle driving, training and weapons siting* to be performed prior to the commencement of any security detail. The Nordan Complaint alleges Blackwater failed to provide decedents with maps, and as a result they had no knowledge of where they were going and no maps to guide them to their destination. This failure to provide them with basic *instructions* essential to their *security* mission caused them to get lost and end up

8

in the middle of war-torn Fallujah where they were murdered. The Nordan Complaint is brimming with allegations showing that the decedents' "bodily injury" was due to their rendering professional consulting services pertaining to firearms, security and driving. The allegations likewise establish that decedents' "bodily injury" was due to Blackwater's rendering or failure to render training, instruction and consulting services pertaining to firearms, security and driving. No comparison of the Nordan Complaint in conjunction with the "professional services" exclusion will permit any other result. *See* **Knorr v. Commercial Cas. Ins. Co**., 171 Pa. Super. 488, 490 (Pa. Super. Ct. 1952) (Since policy "was issued specifically to cover a beauty parlor, it is clear that the term "professional services" refers to the technical work performed by beauticians, hair-dressers, etc.;" term "professional services" as set forth in the insuring contract and endorsement excluded the drying of a customer's hair in a beauty parlor by means of a mechanical hair-dryer); **CareStat Ambulance, Inc**., 152 F. Supp. 2d at 715 (professional exclusion barred coverage for ambulance service under general liability policy for claims alleging negligent failure to dispatch ambulance in timely manner).

Blackwater's contention that the allegations of the Nordan Complaint trigger a duty to defend under both the WSLIC policy and the Evanston professional liability policy are irreconcilable. This precise argument was rejected by the court in **CareStat**, *supra*. *See also* **Pa. Nat'l Mut. Cas. Co. v. Boxmeyer**, 2004 Pa. Dist. & Cnty. Dec. LEXIS 229, 1-2 (Pa. C.P. Bucks Cty. 2004) (where insured conducted business as a "safety consultant" and provided advice to industrial clients regarding the dangers associated with static electricity, professional services exclusion applied and insured was well aware of fact since he maintained separate professional liability coverage). Blackwater's inconsistent positions are equally unavailing here. The difficulty with Blackwater's position is highlighted by the fact that Evanston does not

contest coverage on the grounds that the allegations do not involve professional services as defined under its policy to include "Worldwide contract security operations." Rather, Evanston's coverage position is based on the application of an exclusion in its policy. Having conceded that the Nordan Complaint allegations are "professional services" for purposes of the Evanston policy, Blackwater has likewise admitted those allegations are "professional services" for purposes of the exclusion in the WSLIC policy. *See* **Glick v. White Motor Co.**, 458 F.2d 1287, 1291 (3d Cir. 1972); **In re C.F. Foods, L.P.**, 265 B.R. 71 (Bkrtcy.E.D.Pa. 2001) (generally factual assertion in a party's pleadings are considered judicial admissions which are binding on the party who made them).

## VI.   CONCLUSION

For the reasons set forth above, WSLIC respectfully requests the Court deny Plaintiffs' Motion until after WSLIC has had an opportunity to obtain discovery and to enter an Order in the form attached to WSLIC's Response to Plaintiffs' Motion. In the alternative, should the Court decide that the duty to defend can be determined as a matter of law, WSLIC respectfully requests that the Court deny Plaintiff's motion, and *sua sponte* enter an Order in favor of WSLIC in the form attached hereto.[2] WSLIC respectfully requests oral argument.

Respectfully Submitted,

DATE:          BY:   /s/ Francis J. Deasey (Valid Code FD1214)
                    /s/ James W. Daly (Valid Code JD1216)
                    /s/ Michael F. Schleigh (Valid Code MS9874)
                    FRANCIS J. DEASEY, ESQUIRE (Atty. ID 25699)
                    JAMES W. DALY, ESQUIRE (Atty. ID 37660)
                    MICHAEL F. SCHLEIGH, ESQUIRE (Atty. ID 88407)
                    Deasey, Mahoney & Valentini, Ltd.
                    1601 Market St., Suite 3400
                    Philadelphia, PA 19103
                    215-587-9400 (PHONE)/215-587-9456 (FAX)

---

[2] *See* **Gibson v. Mayor & Council of Wilmington**, 355 F.3d 215, 223 (3d Cir. 2004); **James v. Interstate Credit & Collection, Inc**., 2005 U.S. Dist. LEXIS 33576 (E.D. Pa. Apr. 25, 2005); **Aetna Life & Cas. v. Federal Ins. Co**.,1997 U.S. Dist. LEXIS 18993 (E.D. Pa. Nov. 26, 1997).