BLACKWATER SECURITY CONSULTING, LLC et al v. WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al                     Doc. 70

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, et al., | CIVIL ACTION |
| Plaintiffs, | NO. 05-6020 (PBT) |
| v. | Hon. Petrese B. Tucker |
| WESTCHESTER SURPLUS LINES INSURANCE CO., et al., | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO LIBERTY
INTERNATIONAL UNDERWRITERS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. (collectively, "Blackwater") respectfully submit this Sur-Reply in opposition to excess carrier Liberty International Underwriters' ("Liberty") Reply in Support of Liberty's Motion for Summary Judgment ("Reply"). Liberty incorrectly claims that it is not obligated, pursuant to the Commercial Umbrella Liability Policy No. LG1-B71-200233-014 that it issued to Blackwater Lodge and Training Center, Inc. for the policy period January 27, 2004 to January 23, 2005 (the "Liberty Policy" or "Policy"), to pay any judgment or settlement on behalf of Blackwater in connection with the underlying action captioned Nordan v. Blackwater Security Consulting LLC, et al., 05 CVS 000173, and related litigation (the "Nordan Litigation"), filed in the Superior Court of North Carolina, Wake County against Blackwater and two individuals, Justin L. McQuown and Thomas Powell. See Blackwater's Response, Exh. A. Liberty's position is supported by neither undisputed material fact nor the law as applied to those facts as required for it to succeed in its motion.

### I. The Underlying Litigation and Liberty Policy

The Nordan Litigation seeks damages from Blackwater for wrongful death arising from the murders of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (collectively, "the Decedents") on or about March 31, 2004, by a group of Iraqis and/or individuals from other countries in the city of Fallujah. See id. Exh. A, ¶¶ 12, 68-79. The Nordan Litigation also seeks to rescind the agreements entered into between the Decedents and Blackwater. Id. at ¶¶ 80-96.

The Liberty Policy provides $15,000,000 in coverage for each occurrence and $15,000,000 in the aggregate, for which Blackwater paid a premium of $145,000 per year. The Liberty Policy provides, in pertinent part:

> **I. COVERAGE**
>
> We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "Insured contract" because of **"bodily injury,"** "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and **is caused by an "occurrence" happening anywhere**. The amount we will pay for damages is limited as described below in the Insuring Agreement section II. Limits of Insurance.

See Response, Ex. B, Liberty Policy, Page 1 of 19 (emphasis added). Liberty incorrectly claims that Blackwater should not be afforded the insurance coverage for which it paid.

### II. Liberty Has Failed To Satisfy Its Burden Of Proving There Is No Possibility Of Coverage.

First, Liberty has the burden of proving that the War/Terrorism Exclusion applies, yet has failed to meet the burden it must satisfy under Federal Rule of Civil Procedure 56 of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Significantly, in both its initial Memorandum of Law in support of its Motion and its Reply, Liberty failed to cite any case at all

2

in which a court found that a company did not have insurance coverage due to the War/Terrorism Exclusion in a broad commercial umbrella policy. The only four cases that Liberty cited to support its argument that the War/Terrorism Exclusion applies to preclude coverage to Blackwater for the Nordan Litigation were in connection with a life insurance policy issued to a United States military person. See Blackwater's Response at 7-8. Those cases did not address the type of coverage the Liberty Policy provided, or the type of exclusion at issue here.

Second, Liberty's "but for" causation argument does not preclude coverage for Blackwater. Liberty argued in its Motion that the individuals who killed the Decedents "fall under either the terms 'warlike action by a military force' or 'insurrection, rebellion, revolution.'" Motion at 17-18. In its Reply, Liberty backs away from its initial position, essentially recognizing that the direct cause of the loss was not "war" or "warlike action by a military force." Instead it now argues that the Court should consider "but for" causation as a ground for its motion. Reply at 1-2.

In support of its argument, Liberty cites two cases that define "arising out of" (which is not even the exact language used in the Liberty Policy)[1], which have nothing to do with the application of a War/Terrorism Exclusion. Liberty has failed to cite any case at all in which a court has applied Liberty's "but for" causation argument during the evaluation of whether a War/Terrorism Exclusion precludes coverage.

Liberty urges this Court not to consider the direct cause of the loss, and claims decisions such as Pan Am. World Airways v. Aetna Cas. & Surety Co., 505 F.2d 989 (2d Cir. 1974), and Airlift Int'l v. U.S., 335 F. Supp. 442 (S.D. Fla. 1971), are not applicable here because the exclusionary language "due to or resulting from" war is narrower than that in the Liberty Policy.

---

[1] The language in the Liberty Policy is "caused by, arising from or related in any way, directly or indirectly." See Blackwater Response, Ex. B.

3

Reply at 2, 5-6. Yet, such language is more similar to the "caused by, arising from or related in any way, directly or indirectly" language of the Liberty Policy than Liberty leads this Court to believe. See Pan Am. at 1006 (holding that it will consider the proximate cause of the loss, and that remote causes are not relevant to the characterization of an insurance loss); Airlift Int'l at 446-47 (considering proximate cause of the damages). However, even considering Liberty's "but for" argument, the cause of the loss must relate to "war and military action." See Response, Ex. B, Liberty Policy. Here, the conflict in Iraq does not satisfy the insurance definition of "war and military action" in that "war" is "a course of hostility engaged in by entities that have at least significant attributes of sovereignty," and "war" does not include conflicts with guerilla groups. See Holiday Inns, 571 F.Supp. 1460, 1465. At the very least, the definition of the term "war" is ambiguous, and so should be construed against the drafter of the Policy. See Selko v. Home Ins. Co., 139 F.3d 146, 152 (3d Cir. 1998) (holding exclusions are to be strictly construed against the insurer, as are ambiguities in the policy).

Further, Liberty ignores the broad exclusionary language at issue in Holiday Inns Inc. v. Aetna Ins. Co., 571 F. Supp. 1460 (S.D.N.Y. 1983), in which the endorsement provided:

> This insurance does not cover:--
>
> a) Loss or damage caused by any of the perils hereby insured against, if such loss or damage either in origin or extent is <u>directly or indirectly, proximately or remotely, occasioned by or contributed to by any of the following occurrences, or, either in origin or extent, directly or indirectly, proximately or remotely, arises out of or in connection with</u> any of such occurrences, namely:--
>
> "War, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not), civil war, mutiny, insurrection, revolution, conspiracy, military or usurped power."

Holiday Inns Inc. v. Aetna Ins. Co., 571 F. Supp. 1460, 1463 (S.D.N.Y. 1983) (emphasis added). In Holiday Inns, the insurer argued that the damage to the Holiday Inn in Beirut was caused by the excluded perils of insurrection, civil war, and war. Id. The court held that the insured need

4

not prove the cause of the loss, it need only prove the existence of the policy and the loss. Id. The insurer has "the burden of proving that the proximate cause of the loss ... was included within one of the terms of exclusion," and exclusions will be given an interpretation that is most beneficial to the insured. Id. at 1463-64 (citation omitted).

Applying the principles set forth in Holiday Inns to the facts here, the cause of the loss does not fall within Liberty's War/Terrorism Exclusion. The Decedents' deaths were not due to any "war" or "insurrection." The murderers of the Decedents were rogue killers and/or certain Fallujah citizenry who had no attributes of sovereignty, and so the definition of "war" is not met. See id. at 1465; see also Pan Am., 505 F.2d at 1012. Liberty has provided no undisputed material evidence to the contrary as it must to be entitled to summary judgment.

Liberty claims that, based on a 1989 definition of "insurgent," the exclusion for "insurrection, rebellion, revolution" should apply. Reply at 2. Yet, as the Second Circuit in Pan Am. held, and the Holiday Inns court followed, "'insurrection' for insurance purposes means '(1) a violent uprising by a group or movement (2) acting for the specific purpose of overthrowing the constituted government and seizing its powers.'" Holiday Inns, 571 F. Supp. at 1487. Applying these criteria to the facts here, the murders of the Decedents cannot be regarded as an "insurrection" under the Liberty Policy because there was no group involved but rather random criminals, and the criminals were not acting to overthrow any government or seize governmental powers. Since there was no "insurrection," and "rebellion" and "revolution" are the progressive stages in the development of civil unrest, the most rudimentary form of which is "insurrection," it follows that there was no "rebellion" and "revolution" under the Policy. See Pan Am. at 1017. Again, Liberty has provided no undisputed material facts to the contrary.

5

### III. President Bush's Statements Have No Relevance Here, And Do Not Support Liberty's Position.

First, it is well established that insurers seeking to avoid claims based on war exclusions cannot rely solely upon media reports or upon what labels are put on conflicts. See Holiday Inns, 571 F. Supp. at 1464. In litigation arising out of insurance policies, words and phrases are construed "for insurance purposes" -- a context that is quite different from those of politics or journalism. Id.; see also Blackwater Response at 12-13.

In Holiday Inns, the Southern District of New York quoted from Spinney's Ltd. v. Royal Ins. Co. Ltd., a case in which the judge would not ask the Secretary of State for Foreign Affairs whether a situation constituted a "civil war," an excluded peril under the policy at issue. The judge held that the issue was whether there was a "civil war" within the meaning of the policy, and that it was not relevant what Public International Law or the United Kingdom had labeled the events. See Holiday Inns, 571 F. Supp. at 1464. "The real problem is to interpret what was happening, in the light of the words used in the policy…" Id. (citing 1 Lloyd's L.Rep. at 426 (1980)). Similarly, in Holiday Inns, despite the fact that politicians and journalists had referred to the events in Lebanon as a "civil war," the court noted that its task was "to give the words at issue the insurance meaning; and to place the burden of proof in accordance with law." Id. at 1503.

Second, Liberty mischaracterizes President Bush's statements. For instance, in the State of the Union Address that Liberty argues supports its position, President Bush referred to the "global war" that is a "war on terror" and asserted that, "we will remember where it began – here, in our own country." Reply, Ex. B, Jan. 28, 2003 State of the Union Address. According to President Bush, the "war" is going on in the United States. President Bush did not use the term "war" as it is defined in well-established insurance case law, but as rhetoric in a speech.

6

Third, Liberty requests that the Court take judicial notice of "the official pronouncements of War" and, in purported support for why the Court should do so, cites old and outdated cases - one decided in 1891 and the other in 1918 - to support its position. See Reply at 7. Liberty's citation to these cases is inapposite in that they were not decided under the rigorous standards for noticing facts set down in Federal Rule of Evidence 201.[2] This situation is not one in which the need for such judicial notice is appropriate or necessary because the issue is not what President Bush said or did not say. See In re Central Vermont Med. Ctr., 174 Vt. 607, 611, 816 A.2d 531, 537 (Vt. 2002) (Vermont Supreme Court holding it would not take judicial notice of statements Governor Dean made during a talk because the significance of the statements for the proceeding was uncertain). The issue is whether there was a "war" under the terms of the insurance policy and, as best as can be ascertained, Iraqi criminals killed the Decedents, and they certainly were not part of the military of any sovereign nation as is required for the War/Terrorism Exclusion to apply. Indeed, there had never been an official declaration of war against the Iraqi government at the time of the Decedents' deaths.

---

[2] Whether requesting or opposing judicial notice, litigants have a right to be heard on the issue under Rule 201(e) and so, should this Court consider Liberty's request that it take judicial notice, Blackwater has the right to oral argument. See Fed.R.Evid. 201(e); In re Asbestos Sch. Litig., No. 83-0268, 1991 WL 125739, *1 (E.D.Pa. June 27, 1991) (holding oral argument must be held before deciding whether to take judicial notice).

## IV.    CONCLUSION

In light of the foregoing, Liberty International Underwriters cannot sustain its burden of proving that there are no genuine issues of material fact in connection with its coverage of the Nordan Litigation due to the War/Terrorism Exclusion. Accordingly, Blackwater respectfully requests that this Court deny Liberty International Underwriters' Motion for Summary Judgment.

Respectfully submitted,

_____
Dennis J. Valenza
Carol C. Carty
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
P: 215.963.5000
F: 215.963.5001

Paul A. Zevnik
Howard T. Weir III
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
P: 202.739.3000
F: 202.739.3001

Dated:  September 12, 2007          Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2007, a true and correct copy of the foregoing document was served by electronic filing or regular mail upon the following counsel of record:

Francis J. Deasey, Esq.
Michael F. Schleigh, Esq.
Deasey, Mahoney & Valentini
1601 Market Street, Suite 3400
Philadelphia, PA 19103

John C. Sullivan, Esq.
Post & Schell PC
1600 John F. Kennedy Blvd
Four Penn Center
Philadelphia, PA 19103-2808

L.D. Simmons, II, Esq.
Helms Mulliss & Wicker PLLC
201 North Tryon Street
Charlotte, NC 28202

Francis P. Burns, III, Esq.
Lavin O'Neil Ricci Cedrone & Disipio
190 North Independence Mall West
6th & Race Streets, Suite 500
Philadelphia, PA 19106

Ronald P. Schiller, Esq.
DLA Piper Rudnick Gray Cary LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA 19103

Thomas T. Locke, Esq.
Seyfarth Shaw LLP
815 Connecticut Ave NW
Washington, DC 20006-4004

_____
Carol C. Carty