BLACKWATER SECURITY CONSULTING, LLC et al v. WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al                                    Doc. 80 Att. 3

# EXHIBIT 2

# EXHIBIT 2

Dockets.Justia.com

**Northland** Ins. Co. v. **Stranieri**
M.D.Pa.,2007.
Only the Westlaw citation is currently available.
United States District Court,M.D. Pennsylvania.
NORTHLAND INSURANCE COMPANY,
Plaintiff,
v.
Dominick P. STRANIERI and Appraisals Limited Enterprises, Inc, Defendants.
Civil Action No. 3:06-CV-1809.

Dec. 6, 2007.

Eric A. Fitzgerald, Marshall, Dennehey, Warner, Coleman & Goggin, Scranton, PA, Chester F. Darlington, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Plaintiff.
Peter J. Quigley, Primrose, Lyons & Quigley, Stroudsburg, PA, for Defendants.

*MEMORANDUM*

A. RICHARD CAPUTO, District Judge.

**\*1** Presently before the Court is the motion of Plaintiff Northland Insurance Company for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because Defendants' affirmative defense raises a question of material fact, Plaintiff's motion will be denied. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332. Plaintiff's motion is fully briefed and ripe for disposition.

**BACKGROUND**

Plaintiff Northland Insurance Company ("Northland") is a foreign corporation with its principal place of business in Minnesota. Defendant Dominick P. Stranieri, a resident of Pennsylvania, is the owner and president of Defendant Appraisals Limited Enterprises ("Appraisals Limited"), Inc., which is a Pennsylvania corporation with a principal place of business in Pennsylvania and which is named as an interested party only. (Compl., Doc. 1 ¶¶ 1-3; Answer, Doc. 13 ¶¶ 1-3.) Defendants are named insureds on three (3) identically worded "Real Estate Appraisers Errors and Omissions Liability Polic[ies]" (collectively, "the Policy") with Northland, which ran consecutively, for one year each, beginning August 8, 1999 and ending August 8, 2002. (Compl., Doc. 1 ¶¶ 8-11; Answer, Doc. 13 ¶¶ 8-11.) Invoking the Policy, Defendant Stranieri has tendered his defense in four (4) underlying lawsuits to Northland, and Northland is currently defending those four (4) actions, subject to a reservation of rights. (Compl., Doc. 1 ¶ 16; Answer, Doc. 13 ¶ 16.) Northland now seeks a declaratory judgment that it has no duty to defend and/or indemnify Defendant Stranieri in the underlying actions. (Compl., Doc. 1 ¶ 18.)

Two of the underlying suits, *Pennsylvania v. Gene P. Percudani, et al.*, No. 732 MD 2002, (Pa. Commw. Ct., filed Oct. 11, 2002) and *Pennsylvania v. Thomas P. Senofonte, et al.*, No. 595 MD 2003 (Pa. Commw. Ct., filed Sept. 4, 2003), were brought by the Attorney General of Pennsylvania against Defendant Stranieri and a number of others not party to the current case. Both of these civil regulatory actions allege that Stranieri committed unfair and deceptive trade practices in violation of Pennsylvania's Consumer Protection Law by providing deceptively high appraisals of homes in furtherance of schemes with developers and mortgage companies. (*See* Exs. D & E to Compl., Doc. 1.) The other underlying suits, *Eddie Lester, et al. v. Gene P. Percudani, et al.*, No. 3:01-cv-1182 (M.D. Pa., filed June 28, 2001), and *Pablo Acre, et al. v. Chase Manhattan Mortgage Corp., et al.*, No. 1:04-cv-0832 (M.D. Pa. Filed Apr. 16, 2004), were brought by home purchasers against Stranieri and others, alleging that Stranieri conspired to deceive and defraud them by falsely appraising their homes at higher than their true values. (Exs. F and I to Compl., Doc. 1.) Stranieri's codefendants in the *Eddie Lester* suit also filed cross-claims against him for fraud and violation of the UTPCPL (*See* Exs. G & H to Compl., Doc. 1.)

**\*2** Plaintiff Northland argues, *inter alia,* that the Policy covers liability resulting only from "a negligent act, error or omission in the rendering of or failure to render 'appraisal services,' " and the underlying actions allege intentional, fraudulent, deceptive, and dishonest conduct by Stranieri, not negligence, errors, or omissions. (Compl., Doc. 1 ¶¶ 102-04.). In their Answer, Defendants argue (1) that Northland is estopped from requesting a declaration that it has no duty to defend Stranieri because it has litigated the underlying actions for several years and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Stranieri would be severely prejudiced in his ability to defend himself if forced to find new counsel at this late stage, (Answer, Doc. 13 ¶ 130) and (2) that a fair reading of the complaints against Stranieri shows that they allege not only intentional acts, but also improper conduct by error or omission.

## LEGAL STANDARD

The standards for deciding a motion for judgment on the pleadings pursuant to Rule 12(c) and a motion to dismiss pursuant to Rule 12(b)(6) are identical. *Turbe v. Gov't of V.I.,* 938 F.2d 427, 428 (3d Cir.1991). Thus, the district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Green v. Fund Asset Mgmt., L.P.,* 245 F.3d 214, 220 (3d Cir.2001). "[J]udgment will not be granted 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir.1988) (quoting *Soc'y Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980)). Like in a motion to dismiss, a court may consider matters of public record and "undisputedly authentic" documents attached by the moving party if relied upon by the other party. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). "Merely attaching documents to a Rule 12(c) motion does not convert it to a motion under Rule 56.... [I]n ruling on the motion a court generally has 'discretion to address evidence outside the complaint.'" *CitiSteel USA, Inc. v. GE Co.,* 78 Fed. Appx. 832, 835 (3d Cir.2003) (nonprecedential opinion) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 559 (3d Cir.2002)).

## DISCUSSION

### I. General Principles

Under Pennsylvania law, an insurer's duty to defend is broader than its duty to indemnify, as the duty to defend arises whenever the allegations in the underlying complaint (that is, the complaint in the underlying litigation), taken as true and liberally construed in favor of the insured, state a claim to which the policy potentially applies. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir.1999) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363, 1368 (Pa.1987); *Biborosch v. Transamerica Ins. Co.,* 412 Pa.Super. 505, 603 A.2d 1050, 1052 (Pa.Super.Ct.1992)). "Furthermore, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Id.* On the other hand, the duty to indemnify arises only if the damages the insured must pay are actually within the policy coverage. *Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 821 (3d Cir.1994). Thus, there may be a duty to defend without a duty to indemnify. *Frog, Switch & Mfg. Co.,* 193 F.3d at 746.

*3 The insured has the initial burden to establish that the claim for coverage falls within the terms of the insurance policy, but when an insurer's argument relies on a specific policy exclusion, the insurer bears the burden of proving that the exclusion applies. *Cont'l Cas. Co. v. County of Chester,* 244 F.Supp.2d 403, 407 (E.D.Pa.2003). Pennsylvania law also provides that "[p]olicy exclusions are strictly construed against the insurer." *Id.* (citing *Selko v. Home Ins. Co.,* 139 F.3d 146, 152 n. 3 (3d Cir.1998)).

In determining whether an insurer has a duty to defend and indemnify, a court must examine only the allegations in the complaint in the underlying litigation; it is error to look elsewhere. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888, 896 (Pa.2006); *see also Coregis Ins. Co. v. Harrisburg,* No. 1:03-CV-920, 2006 WL 860710, at *4 (M.D.Pa. Mar.30, 2006) ("Under Pennsylvania law, the question of whether an insurance company has a duty to defend is determined by comparing the allegations contained *within the four corners of the underlying complaint* against the terms and conditions of the insurance policy at issue.") (emphasis added); *Tuscora Wayne Mut. Ins. Co. v. Kadlubosky,* 889 A.2d 557, 561 (Pa.Super.Ct.2005) ("It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend."). When examining the underlying complaint's allegations, the court must "resolve all doubts as to coverage in favor of the insured." *Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.,* No. 1:05-CV-1252, 2007 WL 1576412, at *4 (M.D.Pa. May 30, 2007).

## II. Coverage Under the Policy

The parties' "Real Estate Appraisers Errors and Omissions Liability Policy" provides that Northland "will pay those sums that the insured becomes legally obligated to pay as damages because of a negligent act, error or omission in the rendering of or failure to render 'appraisal services,' provided always that [time, coverage territory, and other requirements are met]." (Exs. A, B, & C to Compl., Doc. 1, at 1.)

Courts interpreting such language have held that, when the factual allegations in a complaint "sound in both intentional tort and negligence," the insurer has a duty to defend. *MP III Holdings, Inc. v. The Hartford,* Civ. A. No. 05-1569, 2006 WL 2645156, at *10 (E.D.Pa. Sept.14, 2006) (applying Pennsylvania law, finding duty to defend where underlying complaint brought alternative claims for fraud and for negligent misrepresentation). On the other hand, when the underlying complaint makes no allegations of negligence, there is no duty to defend. For example, the United States District Court for the Eastern District of Pennsylvania found no duty to defend in *Unionamerica Ins. Co. v. Lim,* because "no such language [asserting negligence theories] is found in [the underlying plaintiffs'] complaint." No. 9904302, 2000 WL 1056450, at *3 (E.D.Pa. Aug.1, 2000). In reaching its decision, the *Unionamerica* court distinguished *Bitamco Underwriters, Inc. v. Weiner,* 431 Pa.Super. 276, 636 A.2d 649, 651 (Pa.Super.Ct.1994), *app. denied,* 540 Pa. 575, 655 A.2d 508 (Pa.1994), in which the insurer did owe a duty to defend the insured because the underlying complaint asserted negligence theories of recovery.

*4 This principle finds support as well from the Third Circuit Court of Appeals' decision in *Matrix Health Mgmt., Inc. v. Western World Ins. Co.* No. 93-1750, 1994 WL 378986 (3d Cir. Feb.1, 1994), which, applying Pennsylvania law, found that an insurer owed a duty to defend its insured against allegations of a fraudulent billing scheme, even though the policy, like Northland's, covered only "liability arising out of any negligent act, error or omission in rendering or failure to render professional services." *Id.* at *4. It did so in part because the underlying complaint mentioned negligence expressly, albeit only once. The complaint stated that "[b]y making these false representations, [the insureds] were reckless *and negligent."Id.* at *2 (emphasis added). As another factor, the court noted that, with regard to certain of the insured's employees, "although the Complaint does not explicitly allege negligent conduct by [them], such conduct is potentially implicated by the catch-all phrase, 'other violations of the Plan' in paragraph 1 of the Complaint *and by the allegations of negligence in paragraph 51 of the Complaint."Id.* at *3 (emphasis added). Additionally, with regard to certain challenged actions, the underlying complaint did not identify who took them and did not specify whether those persons acted intentionally or negligently; this ambiguity in the allegations, the Third Circuit Court of Appeals held, "must be resolved in favor of coverage."*Id.*

Courts have stated that "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint."*E.g., Erie Ins. Exch. v. Fidler,* 808 A.2d 598, 590 (Pa.Super.Ct.2002). But this language does not mean that a duty to defend exists whenever the injuries in the underlying suit *could have* been caused by negligence but the complaint did not allege negligence. In fact, it applies in exactly the reverse situation: the proposition means that "[m]erely adding a count entitled "Negligence" to the complaint, without adding supporting facts that could reasonably state a claim for negligence under the Policy, will not trigger the insurance company's duty to defend."*Allstate Ins. Co. v. McClymonds,* No. 2:06-CV-805, 2007 WL 2254563 (W.D.Pa. Aug.6, 2007). In other words, if a plaintiff, seeking to ensure his claim will be covered by the defendant's insurance policy, brings a claim based in negligence that is unsupported by the facts, a court may be "compelled to find that the conduct [that caused the injuries complained of] was intentional as a matter of law."*Id.* at *7. That situation is not the case here.

The applicable rule of Pennsylvania law is that there exists a duty to defend, under a policy covering "negligent act, error, or omission" liability, if "the allegations of the ... complaint are broad enough to encompass possible negligence by [the insured]."*See Biborosch v. Transamerica Ins. Co.,* 412 Pa.Super. 505, 603 A.2d 1050, 1059 (Pa.Super.Ct.1992). If, "based only upon the face of the complaint," a court can say "that there is no possibility that [plaintiff in the underlying case] might recover damages based upon what were essentially negligent acts, errors or omissions by [the insured]," then there is no duty to defend. *See id.* at 1058. And there is no possibility that a plaintiff can recover on a theory he has not

plead. This conclusion follows from the well settled proposition that if the facts alleged in the complaint, if found true, would trigger coverage under the policy, then there is a duty to defend; otherwise, there is not. *See, e.g., D'Auria v. Zurich Ins. Co.,* 352 Pa.Super. 231, 507 A.2d 857, 859 (Pa.Super.Ct.1986). Accordingly, keeping in mind the Court's duty to "resolve all doubts as to coverage in favor of the insured,"*Westport Ins. Corp.,* 2007 WL 1576412, at *4, I will look to the underlying complaints to determine whether they contain any claims upon which the plaintiffs could possibly recover from Stranieri for negligent acts, errors, or omissions, or whether, as in *Matrix Health Mgmt., Inc.,* 1994 WL 378986, the complaints contain claims that are sufficiently ambiguous as to whether they allege negligence to merit resolving those claims in favor of the insured.

### III. The Underlying Complaints

#### A. The Regulatory Suits

*5 The first underlying suit, *Pennsylvania v. Gene P. Percudani, et al.,* No. 732 MD 2002, (Pa. Commw. Ct., filed Oct. 11, 2002), brought by Pennsylvania's Attorney General, alleges that Stranieri committed unfair and deceptive trade practices in violation of Pennsylvania's Consumer Protection Law by providing appraisals of homes that "grossly overstated the value of the homes and properties ... in order to disguise the inflated value scheme of the other [d]efendants" in that case, who include developers and mortgage companies. (Ex. D ¶ 1443-1667.) The Commonwealth alleged that Defendant Stranieri acted "in a willful fashion" and "personally participated in and benefitted from the unfair and deceptive trade practices alleged."(*Id.* ¶¶ 1675-76.)Specifically, the underlying suit alleges that Defendant Stranieri violated section 3 of the Consumer Protection Law, 73 P.S. § 201-3, and that his acts also constituted unfair or deceptive acts or practices under section 201-2(4)(ii), (vii) and (xxi). The suit seeks civil penalties and restitution for consumers allegedly victimized.

Stranieri points to language in the complaint that he argues alleges negligence, specifically the allegations that he "would blindly incorporate the provided land value into his appraisal document,""would not research the Recorder of Deeds Office in order to establish the previous selling price of the land now being sold," and "appraised the consumers' homes by relying on blueprints, contracts and 'spec' sheets, and did not, in fact, ever physically appraise the majority of homes constructed for consumers by Defendant Raintree Homes, Inc." (Defs.' Br. in Opp'n, Doc. 38, at 3-5 (citing Ex. D ¶¶ 1447-48, 1450).) These allegations, however, simply describe the actions Stranieri allegedly took, intentionally, in furtherance of his scheme with the other defendants. The claim against Stranieri in this underlying suit states, twenty-six (26) times, that "Defendant Stranieri's overappraisal was performed in order to disguise the inflated value scheme of the other Defendants."(*E.g.,* Ex. D ¶ 1464.) The claim against Stranieri concludes by alleging that "[a]ll of Defendants actions have been performed in a willful fashion for which civil penalties are appropriate under the Consumer Protection Law."(*Id.* ¶ 1675.)The underlying complaint contains no allegations of negligent acts, errors or omissions, and unambiguously alleges only willful conduct by Stranieri. The first underlying suit, therefore, is not covered by Stranieri's insurance policy, and Northland owes no duty to defend or indemnify Stranieri in connection with this lawsuit.

The second underlying suit, *Pennsylvania v. Thomas P. Senofonte, et al.,* No. 595 MD 2003 (Pa. Commw. Ct., filed Sept. 4, 2003), was also brought by the Attorney General of Pennsylvania against Stranieri and a number of other individuals and businesses, and it alleges essentially the same behavior as the first suit does, albeit with different codefendants. (Compl., Doc. 1 ¶ 34; Answer, Doc. 13 ¶ 34; Ex. E.) In arguing that the underlying suit alleges negligence, Stranieri points, once again, to the allegations that he would "blindly incorporate" into his appraisals the land value provided to him by his codefendants; that he "usually appraised the consumers' homes by relying on blueprints, contracts and 'spec' sheets, and did not, in fact, physically appraise the majority of homes constructed;" and that "the acts, omissions, practices and methods of operation set forth herein are unlawful."(Defs.' Br. in Opp'n, Doc. 38, at 5-6 (citing Ex. E ¶¶ 620-21, 642).) Again, however, these acts and omissions are alleged to have been done willfully, not negligently. The complaint states that "Defendant Stranieri's overappraisal was performed in order to disguise the inflated value of the home offered by Defendant Keystone Development Co., Inc., et al." (Ex. E ¶ 642), and repeatedly states that "[t]he overappraisal (by Defendant Stranieri) was performed to disguise the inflated value scheme of the collective

Defendants."(*E.g., id.* ¶ 653).

*6 The count against Stranieri concludes by stating that the Defendants, "individually and collectively, deliberately engaged in a scheme by which they would overstate the price and value of the land and the home to consumers;""planned, expected and were indifferent to the disparity between the home sales prices and the amount of the mortgage;" and "have profited from their unfair, abusive, deceptive and confusing lending practices."(*Id.* ¶¶ 844-45, 850.)The complaint also alleges that "[a]ll of Defendants' actions have been performed in a willful fashion for which civil penalties are appropriate," and that "Defendant Dominick Stranieri personally participated in and benefitted form [*sic* ] the alleged unlawful and deceptive acts and practices."(*Id.* ¶¶ 853, 858.)Like the first underlying complaint, the *Senofonte* complaint contains no allegations of negligence and unambiguously brings claims only for willful conduct. Northland therefore owes no duty to defend or indemnify Stranieri in this lawsuit.

**B. The Private Lawsuits**

The third and fourth underlying suits, *Eddie Lester, et al. v. Gene P. Percudani, et al.,* No. 3:01-cv-1182 (M.D. Pa., filed June 28, 2001), and *Pablo Acre, et al. v. Chase Manhattan Mortgage Corp., et al.,* No. 1:04-cv-0832 (M.D. Pa. Filed Apr. 16, 2004), were brought by home purchasers against Stranieri and others, to recover damages caused by an alleged fraudulent scheme in which their homes were appraised at inflated values, resulting in inflated mortgage payments, taxes, insurance, and fees for the homeowners, who are as a result unable to meet mortgage payments and facing foreclosure. (Exs. F and I.) The counts against Stranieri in these suits are for conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Ex. F ¶¶ 194-200; Ex. I ¶¶ 1661-67) and for fraudulent misrepresentations and other deceptive actions in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons.Stat. §§ 201-2(4)(iii) & (xxi) (Ex. F ¶¶ 201-210; Ex. I ¶¶ 1668-77).

These suits, notably, do not plead alternative claims based in negligence. In support of his argument that he has been accused of negligence, Stranieri points to certain language in the complaints, specifically, the allegation that he "failed to follow the industry standard Marshall & Swift reference book used by appraisers."(Defs.' Br. in Opp'n, Doc. 38, at 8-11 (citing Ex. F ¶ 85; Ex. I ¶ 174).) Like in the other suits, however, the allegation plaintiffs make is that Stranieri intentionally failed to comply with the proper appraisal procedures and that his actions and his omissions were willful. Indeed, other language to which Stranieri points, mentioning his "routine failure to investigate or disclose whether the subject properties being bought by Plaintiffs included land purchased by Percudani [a codefendant] less than twelve months earlier and Stranieri's failure to investigate or disclose whether there were similar concessions in the comparable sales he cited" describes that routine failure as "[a]mong the *deceptions* in Stranieri's appraisals."(Ex. F ¶ 85 (emphasis added).) Reference to Stranieri's omissions in these complaints is always clearly within the context of an allegation of intentional conduct. Stranieri also cites references in the complaints to a consent agreement that, at a point in the past, he entered into with the Pennsylvania Bureau of Professional and Occupational Affairs which resulted from a complaint against him alleging his failure to conform to proper appraisal standards. (Defs.' Br. in Opp'n, Doc. 38, at 8-9, 11 (citing Ex. F ¶ 87; Ex. I ¶ 176).) It is unclear from the brief sketch of the consent agreement whether the complaint that initiated it sounded in negligence or intentional tort, but the subject of that complaint is irrelevant here. That complaint is not one for which Stranieri is now seeking to hold Northland to a duty to defend and indemnify him. And the plaintiffs in the *Lester* and *Acre* cases do not use the existence of the consent decree to substantiate any claim that Stranieri acted negligently toward them.

*7 Further, the claims against Stranieri that are at issue today are not ambiguous; both the *Lester* and the *Acre* complaints clearly allege only intentional conduct. (*See* Ex. F ¶ 47 ("In furtherance of the conspiracy, Stranieri provided appraisals that intentionally and knowingly materially valued Plaintiffs' houses far above their actual fair market value."); Ex. I ¶ 137 (same)). Each complaint contains a section titled "Stranieri's Role In the Conspiracy," in which the underlying plaintiffs accuse him of acting "knowingly and intentionally;" of "enter[ing] into an agreement with Percudani to falsify the appraisals in order to permit the Percudani Defendants to perpetrate the fraud on [p]laintiffs and to ensure that he would continue to reap enormous appraisal fees;" and of "committ[ing] overt acts in

furtherance of the conspiracy."(Ex. F ¶¶ 82, 84, 90; Ex. I ¶¶ 171, 173, 179.)

As such, the underlying claims in the private lawsuits clearly allege only intentional conduct; they make no claims of negligence against Stranieri and they make no ambiguous claims.

### C. The Cross-Claims in the *Lester* Suit

Stranieri also faces two (2) cross claims in the *Lester v. Percudani et al.* suit. Both the Chase defendants and the Percudani defendants in that suit allege that if the plaintiffs prove that Stranieri intentionally inflated the appraisals, that the Chase and Percudani defendants were defrauded by Stranieri when they relied on his intentional misrepresentations. (Chase Defs.' Answer & Defenses to Pls.' First Am. Compl., & Cross-Claims against Gene Percudani, Chapel Creek Mortgage Banker, Inc., Chapel Creek Homes, Inc., Raintree Homes, Inc. & Dominick P. Stranieri, Ex. G to Compl., Doc. 1 ¶¶ 18-26; Percudani Defs.' Am. Answer & Affirmative Defenses to Am. Compl. & Cross-Claims, Ex. H to Compl., Doc. 1 ¶¶ 253-58.) These cross-claims allege only intentional conduct are therefore not covered by Stranieri's policy with Northland.

### IV. Stranieri's Affirmative Defense

Defendant Stranieri argues, as an affirmative defense to this action, that Northland is estopped from requesting a declaration that it has no duty to defend him because Northland has litigated the underlying actions for several years and Stranieri would be severely prejudiced in his ability to defend himself if forced to find new counsel at this late stage. (Answer, Doc. 13 ¶ 130.) For the reasons that follow, this defense raises a question of material fact that renders judgment on the pleadings inappropriate.

### A. Estoppel Generally

"Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect."*Kreutzer v. Monterey County Herald Co., 560 Pa. 600, 747 A.2d 358, 361 (Pa.2000)* (quoting *Novelty Knitting Mills, Inc. v. Siskind, 500 Pa. 432, 457 A.2d 502, 503 (Pa.1983))*."The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement. The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results causing disadvantage to the one induced."*Novelty Knitting, 457 A.2d at 503-04*.

### B. The Right of an Insurer to Withdraw a Defense, Generally

*8 The Third Circuit Court of Appeals, interpreting Pennsylvania law, faced "the precise question ... whether an insurer may terminate its defense of a claim in mid-course," and concluded "that the answer to that question can only be yes."*Commercial Union Ins. Co. v. Pittsburgh Corning Corp., 789 F.2d 214, 217-18 (3d Cir.1986)*. The court held that Travelers Insurance Company's policies did not oblige it "to assume the costs of defending actions against its insured after its duty to indemnify has terminated by the payment of judgment or settlements [FN1] and it has made an orderly withdrawal from the insured's defense."*Id. at 220.*

> FN1. The Court noted that the distinction between cases in which there is no duty to defend because the coverage amount has been extinguished, like in *Commercial Union,* and those in which the claims are not of the type covered, as in the case at hand, "is of no consequence." *Commercial Union, 789 F.2d at 218*.

The court cited *Wilson v. Md. Cas. Co., 377 Pa. 588, 105 A.2d 304, 307 (Pa.1954)* for the proposition that a casualty insurance company "is not required to defend if it would not be bound to indemnify the insured even though the claim against him should prevail in that action."*Commercial Union, 789 F.2d at 218*. The court concluded that where, by contract, "the duty to defend is linked to the duty to indemnify," as is the case here (*see* Policy, Ex. A, at 1 ("We will have the right and duty to defend any 'suit' seeking damages to which this insurance applies. However, we will have no duty to defend the insured against any 'suit' seeking damages to which this insurance does not apply.")), it follows that "absent other considerations, the insurer is not bound to defend where it cannot be bound to indemnify ... regardless of when the duty to indemnify comes to an end."*Commercial Union, 789 F.2d at 218*.

The Third Circuit Court of Appeals continued, "there is no principle of Pennsylvania law that the duty to defend automatically attaches at the outset of the litigation and cannot afterwards terminate."*Id.* at 218. And as another federal court applying Pennsylvania law has stated, "[i]ndeed, an insurer's duty to defend does not necessarily remain frozen in stasis once it is triggered. The duty to defend terminates when the insurer confines the possibility of recovery to claims outside the coverage of the policy."*Strouss v. Fireman's Fund Ins. Co.,* No. Civ.A. 03-5718, 2005 WL 418036, at *8 (E.D.Pa.2005 Feb. 22, 2005) (internal quotation marks and citations omitted). It is often stated that "once a third party has raised allegations against an insured which potentially fall within the coverage provided, the insurer is obligated to fully defend its insured *until it can confine the possibility of recovery to claims outside the coverage of the policy."Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co.,* 752 F.2d 71, 75 (3d Cir.1985) (emphasis added) (interpreting Pennsylvania law); *see also Cadwallader v. New Amsterdam Cas. Co.,* 396 Pa. 582, 152 A.2d 484, 489 (Pa.1959); *Stevens Painton Corp. v. First State Ins. Co.,* 746 A.2d 649, 655 (Pa.Super.Ct.2000). This language, the Third Circuit Court of Appeals stated, "should make clear, the insurer is equally entitled to withdraw when a claim clearly within the policy coverage is withdrawn and one outside the policy coverage remains."*Commercial Union,* 789 F.2d at 218. That is, the insurer may withdraw its defense "mid-course." *See id.*

**C. "Other Considerations": Limits on Right to Withdraw**

*9 The holding of *Commercial Union* is qualified by the phrases "absent other considerations" and "after ... it has made an orderly withdrawal from the insured's defense."*See id.* at 218, 220. A very important "other consideration" is prejudice to the insured. *See id.* at 218; *see also Strouss,* 2005 WL 418036, at *8 (When an insurer's duty to defend terminates, "the insurer may withdraw its defense in the underlying litigation, absent prejudice to the insured."). Such considerations, though, were absent in *Commercial Union.* There, while the insurer "conceded at oral argument that the insurer may not abruptly withdraw from the defense of a pending case if the manner of its withdraw could prejudice the insured," the lower court had previously concluded that "the affidavits make clear that the insurer has offered to transfer the defense in an orderly manner," and the insured did not contend otherwise in its appeal. 789 F.2d at 217 n. 4 (citing 553 F.Supp. 425, 432 (E.D.Pa.1981)). Accordingly, "the manner in which the insurer may withdraw [was] not before [the court]."*Id.*Today's motion, on the other hand, does present that issue, as Defendants' contention in their affirmative defense is that they would be severely prejudiced were Northland allowed to withdraw from Stranieri's defense in the underlying litigation.

Lower courts within Pennsylvania have elaborated on what constitutes prejudice in such cases: In *W.O. Hickok Mfg. Co. v. Unigard Mut. Ins. Co.,* 15 Pa. D. & C.3d 593, 595-96 (Pa.Ct.Com.Pl.1979), the court found no prejudice to the insured, despite the fact that the insurer withdrew its defense, after eight (8) months of litigation, only eight (8) days prior to the scheduled trial date, and despite the testimony of the president of the insured company that "had he earlier learned about the noncoverage he would have employed his own counsel and conferred with him on the management of the case."The court there stated that prejudice means "financial loss that an insured suffers or may have suffered because the insurer assumed the defense. Management of the case is only relevant as it bears on that ultimate fact."*Id.* at 596. The court provided a nonexhaustive list of ways in which an insured may meet its burden of showing prejudice:

loss of a favorable settlement, inability to produce all testimony existing in support of the defense, inability to produce any material witness, loss of the benefit of any defense in law or in fact through reliance upon the insurer's promise to defend, or withdrawal by the insurer so near in time to trial that the insured is unable to prepare his defense.

*Id.*

Furthermore, under Pennsylvania law, "when an insurance company undertakes the defense of its insured, it assumes a position of trust and confidence which calls 'for the exercise of utmost good faith, particularly in view of the possible conflict of interest between insurer and the insured' such as may later develop."*Woodstream Corp. v. Pa. Mfrs. Ass'n Ins. Co.,* 21 Pa. D. & C.3d 627, 632-33 (Pa.Ct.Com.Pl.1982). In another case, in which the superior court held that an insurer may be "excused from defending an action against an insured on whose behalf the insurer has already paid policy

limits," so long as it acted in good faith, the court cautioned:

*10 Neither do we mean to hold that an insurer may abandon its defense of a claim within the terms of its policy in mid-course *and under circumstances which are prejudicial to the rights of the insured.*Having elected to defend rather than to settle, the insurer's duty is to defend in good faith and with due diligence and in such a way as to protect the rights of the insured.

*Maguire v. Ohio Cas. Ins. Co.*, 412 Pa.Super. 59, 602 A.2d 893, 896 (Pa.Super.Ct.1992) (emphasis added). The superior court in *Maguire* also cited a Louisiana case that elaborated on the content of the duty of good faith in providing a defense:the insurer must make every effort to avoid prejudicing the insured by the timing of its withdrawal from the litigation. The insurer should make allowances for the time that the insured will need to retain new counsel, and should continue to represent the insured after the settlement, if necessary, until new counsel can be retained.

*Id.* (citing *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 423 (La.1988)). The superior court's reference to these steps echo the Third Circuit Court of Appeals admonition, in *Commercial Union,* that withdrawal must be accomplished in an orderly manner, in order to avoid prejudice to the insured and comply with the insurer's duty of good faith.

### D. Issue of Material Fact

The legal standards relevant to Defendants' affirmative defense, laid out above, are not easy ones to meet. For instance, "[i]t is well established ... that the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence."*Novelty Knitting Mills,* 457 A.2d at 503-04. And regarding prejudice, "where the insurer disclaims and withdraws the defense [of a claim against its insured] prior to final judgment [of that underlying claim], prejudice to the insured is not presumed and the insurer is not estopped from raising the defense of noncoverage without proof that the insured was actually prejudiced by its conduct."*W.O. Hickock,* 15 Pa. D. & C.3d at 595.

Nevertheless, Defendants are entitled to offer such proof. A motion for judgment on the pleadings cannot be granted " 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.' "*Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir.1988) (quoting *Soc'y Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980)). A material issue of fact may be raised by an affirmative defense just as it may be raised in an original claim. *See, e.g., Ilan-Gat Engineers, Ltd. v. Shelter Sys. Corp.,* 879 F.Supp. 416, 420 (D.N.J.1994) (denying motion for judgment on the pleadings because affirmative defense raised material issue of fact). Defendants have plead, in their affirmative defense, that Stranieri faces severe prejudice and that estoppel should apply to bar Plaintiff's motion. Whether it is possible for Northland to withdraw from Stranieri's defense in the underlying litigation without prejudicing him to the extent that allowing withdrawal would be inappropriate under the law outlined above is a question of material fact raised by the affirmative defense. That question of fact precludes granting Plaintiff's motion for judgment on the pleadings.

### CONCLUSION

*11 Because even resolving all doubts as to coverage in favor of the insured, the factual allegations in all four (4) underlying complaints would, if found to be true, demonstrate that Stranieri acted intentionally, but not that he acted negligently, and because those complaints do not contain ambiguities as to whether the claims are based in negligence or intentional tort, no claim in any of the underlying suits is covered under Stranieri's policy with Plaintiff Northland Insurance. But because Defendants' affirmative defense raises an issue of material fact as to whether Northland's withdrawal from the underlying litigation would prejudice Defendant Stranieri, judgment on the pleadings is premature. The Court will therefore deny Plaintiff Northland's motion for judgment on the pleadings.

An appropriate order follows.

### ORDER

Now, this *6th* day of December, 2007, it is **HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Pleadings is **DENIED.**

M.D.Pa.,2007.
Northland Ins. Co. v. Stranieri

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 4300643 (M.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.