# EXHIBIT 3

# EXHIBIT 3

Dockets.Justia.com


▷Strouss v. Fireman's Fund Ins. Co.
E.D.Pa.,2005.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Jay **STROUSS**
v.
**FIREMAN'S FUND INSURANCE COMPANY**
**No. Civ.A. 03-5718.**

Feb. 22, 2005.

Anthony J. Petrone, Dennis J. Cogan & Associates, Philadelphia, PA, for Plaintiff.
Jeffrey B. McCarron, Kathleen M. Carson, Swartz Campbell & Detweiler, Philadelphia, PA, for Defendant.DAVIS, J.

I. Procedural and factual history

*1 Presently before the Court are cross-motions for summary judgment on the issue of whether defendant Fireman Fund's Insurance Company ("defendant") is required to defend and/or indemnify plaintiff Jay Strouss ("plaintiff") in connection with a civil action, *Kassoway v. Strouss,* No. 0302554-16-2 ("underlying civil action"), presently pending in the Court of Common Pleas for Bucks County, Pennsylvania. The facts in this case are relatively undisputed.

A. Daniel Strouss' Criminal Conviction

On June 12, 2002, Daniel Strouss shot Eric Kassoway outside his home in Langhorne, Pennsylvania. As a result of the shooting, Eric Kassoway suffered an assortment of physical injuries, including physical complications arising from a shattered left femur and a bullet wound to his right wrist.

Daniel Strouss was subsequently charged with attempted murder, aggravated assault, possession of instruments of crime, firearms not to be carried without a license, three counts of simple assault, and one count of recklessly endangering another person. (*See* March 10, 2003 Waiver Trial Transcript, attached as Ex. C, at 27). After a bench trial, Daniel Strouss was found guilty but mentally ill on all

counts. (*See* March 12, 2003 Waiver Trial Transcript, attached as Ex. D, at 42-43).

B. Negligence Action Against Jay Strouss

Eric Kassoway filed a complaint in the Court of Common Pleas for Bucks County, Pennsylvania against plaintiff Jay Strouss, the father of Daniel Strouss and the owner/licensee of the .380 caliber semi-automatic gun that was used to shoot Eric Kassoway. The complaint was amended on May 21, 2003, and asserts one count of negligence and one count of punitive damages. Factually, the amended complaint alleges that Daniel Strouss shot Eric Kassoway in a psychotic state, while suffering from paranoid schizophrenia. (*See* May 21, 2003 Amended Complaint, attached as Ex. A to Def. Mot., at ¶¶ 7-11). The amended complaint further alleges that plaintiff knew or should have known about the clear and present danger posed by Daniel Strouss to Eric Kassoway, and that plaintiff was negligent in, *inter alia,* failing to safeguard the gun that Daniel Strouss used to shoot Eric Kassoway. (*Id.,* at ¶¶ 21-25).[FN1]

> FN1. Defendant contends that it is defending plaintiff in this underlying civil action, subject to a reservation of rights. (*See* Def. Rsp., at 1 n. 1).

C. Declaratory Judgment Action

On October 15, 2003, plaintiff filed a declaratory judgment action against defendant. (Doc. No. 1). Plaintiff seeks a declaration that defendant has a duty to defend and indemnify plaintiff in the underlying civil action according to the terms of a Prestige Plus Personal Homeowner's Policy (the "policy") that plaintiff and his wife purchased from defendant. The policy provided liability protection for the period of January 8, 2002 to January 7, 2003, and was effective at the time of Eric Kassoway's shooting.

The policy requires defendant to defend and indemnify an " 'insured' for damages because of 'bodily injury', 'personal injury', or 'property damage' caused by an 'occurrence' to which this coverage applies...." (*See* Strouss Insurance Policy, attached as Ex. F to Def. Mot., at page 3). An "insured" is defined as "you [Jay Strouss] and

residents of your household who are (a) your relatives or (b) other persons under the age of 21 and in the care of any person named above."(*Id.*). An "occurrence" is defined as an "accident ... which results, during the policy period, in 'bodily injury' or 'property damage.' "(*Id.,* at page 4). The policy expressly excludes from coverage "bodily injury ... which is expected or intended by one or more 'insureds' " (the "intentional injury exclusion").(*Id.,* at page 17). Importantly, however, the policy has a "severability clause," which states that the insurance policy "applies separately to each insured." (*Id.,* at page 22).

*2 On August 9, 2004, defendant filed a motion for summary judgment, arguing that it has no duty to defend and/or indemnify plaintiff in the underlying civil action. (Doc. No. 12). Plaintiff filed a cross-motion for summary judgment on August 19, 2004 (Doc. No. 13), which was followed by defendant's reply brief on September 13, 2004. (Doc. No. 14).

II. Discussion

Defendant argues that it is entitled to summary judgment because the intentional injury exclusion bars coverage. First, defendant argues that the severability clause in the policy does not modify the language of the intentional injury exclusion, which applies to "one or more insureds." (*See* Def. Reply Br., at 2-7). Under this reading of the policy, the allegedly intentional actions of one co-insured negates coverage for all innocent co-insureds. (*Id.*). Second, using this interpretation of the policy, defendant contends that the elements of the intentional injury exclusion are satisfied-that Daniel Strouss was a "resident" of plaintiff's household, and, therefore, an "insured" within the meaning of the policy; and that Daniel Strouss' criminal conviction conclusively establishes that he "intended" to cause bodily injury to Eric Kassoway within the meaning of the intentional injury exclusion. (*See* Def. Mot., at 7-8, 10-12).

On the other hand, plaintiff argues that it is entitled to summary judgment because any alleged negligence on his part constitutes an "occurrence" triggering coverage within the meaning of the policy. In so doing, plaintiff puts forth three arguments to defeat the application of the intentional injury exclusion. First, plaintiff contends that the severability clause in the policy defeats, or, in the alternative, renders ambiguous the intentional injury exclusion. (*See* Pl. Mot., at 9-12). Second, plaintiff contends that even if the severability clause is ignored, the intentional injury exclusion is not implicated because Daniel Strouss was not an "insured" under the policy.(*Id.,* at 12-14). Finally, plaintiff contends that even if Daniel Strouss was an "insured," he never "intended" or "expected" to cause bodily injury within the meaning of the exclusion clause. (*Id.,* at 14-19).

A. Standard

A determination of "whether a particular loss is within the coverage of an insurance policy is such a question of law, which may be decided on a motion for summary judgment" in a declaratory judgment action. *Equibank v. State Farm Mut. Auto. Ins. Co.,*426 A.2d 1243, 1245 (Pa.Super.1993). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56©. In the context of insurance litigation, the insured has the initial burden to establish coverage under an insurance policy. *Continental Casualty Co. v. County of Chester,* 244 F.Supp.2d 403, 407 (E.D.Pa.2003). On the other hand, "when the insurer relies on a policy exclusion as the basis for denying coverage, it bears the burden of proving that the exclusion applies."*Id.*

*3 Under Pennsylvania law,[FN2] an insurer's duty to defend is distinct from, yet intertwined with, an insurer's duty to indemnify. First, an insurer's duty to defend "arises whenever an underlying complaint may 'potentially' come within the insurance coverage."*Frog. Switch & Mfg. Co., Inc. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir.1999). According to the Third Circuit,

FN2. The parties agree that Pennsylvania law applies to this diversity action.

[t]he obligation of an insurer to defend an action is fixed solely by the allegations in the underlying complaint. If the factual allegations of the complaint, taken as true, state a claim to which the policy potentially applies, the insurer must defend. *Visiting Nurse Ass'n of Greater Philadelphia v. St. Paul Fire and Marine Ins. Co.,* 65 F.3d 1097, 1100 (3d Cir.1995) (citations omitted). Furthermore, "if a single claim in a multi-claim lawsuit is potentially covered, the insurer must defend all

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claims until there is no possibility that the underlying plaintiff could recover on a covered claim."*Frog, Switch & Mfg. Co.,* 193 F.3d at 746.

In resolving whether an insurer is obligated to defend an action, the court must interpret the language of the insurance policy, and then compare this interpretation to the factual allegations in the underlying complaint. *SeeReliance Ins. Co. v. Moessner,* 121 F.3d 895, 900 (3d Cir.1997) (interpretation of insurance contract question of law); *Allstate Ins. Co. v. Brown,* 834 F.Supp. 854, 857 (E.D.Pa.1993). As to the first of these two tasks:

In interpreting an insurance policy, the court must ascertain the intent of the parties as manifested by the language of the policy. Where the language of the policy is clear and unambiguous, it must be given its plain and ordinary meaning. Where a provision of the policy is ambiguous, it must be construed in favor of the insured. However, a court should read policy provisions to avoid ambiguities and not torture the language to create them.

*Brown,* 834 F.Supp. at 857.

In contrast to an insurer's duty to defend, an insurer's duty to indemnify is more limited. *See,e.g.,J.H. France Refractories v. Allstate,* 534 Pa. 29, 626 A.2d 502, 510 (1993). It arises "only when the insured is determined to be liable for damages within the coverage of the policy."*Sphere Drake, P.L.C. v. 101 Variety, Inc.,* 35 F.Supp.2d 421, 427 (E.D.Pa.1999) (citation omitted). Thus, if a court in a declaratory judgment action determines that the insurance company has no duty to defend its insured in the underlying action, it is appropriate for the court to also rule that the insurer has no duty to indemnify. *Seeid.* at 428.

B. The severability clause in the policy does not modify or render ambiguous the intentional injury exclusion.

The success of defendant's summary judgment motion hinges on the Court's interpretation of the relationship between the policy's severability clause and the intentional injury exclusion. Defendant argues that the intentional injury exclusion precludes coverage because Pennsylvania law does not permit a severability clause to modify or render ambiguous an intentional injury exclusion that applies to "any insured." (*See* Def. Mot., at 10-13). Under

defendant's reading of the policy, defendant is entitled to summary judgment because Daniel Strouss, an alleged "insured" under the policy, "intended" or "expected" to cause physical injury to Eric Kassoway, therefore excluding plaintiff from coverage pursuant to the intentional injury exclusion. (*Id.*).

*4 Plaintiff argues that the severability clause in the policy requires the intentional injury exclusion to be applied separately to each "insured," rather than collectively to all "insureds." (*See* Pl. Mot., at 8-12). In the alternative, plaintiff contends that the severability clause renders ambiguous the intentional injury exclusion, thereby triggering the rule that ambiguous provisions should be interpreted in favor of coverage. (*Id.*). Under plaintiff's reading of the policy, the exclusion is inapplicable because the allegations in the underlying complaint against plaintiff are grounded in negligence; and, as a consequence, plaintiff is entitled to summary judgment because, from the perspective of plaintiff, the shooting was an unintended accident or "occurrence." (*Id.*).*See,e.g.,Nationwide Mutual Fire Ins. Co. v. Pipher,* 140 F.3d 222, 228 (3d Cir.1998) (term "occurrence" in insurance policy includes bodily injury or death which is directly caused by intentional act of third party, but which is attributable to negligence of insured).

This Court, sitting in diversity jurisdiction, must apply Pennsylvania law as interpreted by the Pennsylvania Supreme Court. *See,e.g.,Nationwide Mut. Ins. Co. v. Buffetta,* 230 F.3d 634, 637 (3d Cir.2000). However, in the absence of guidance from the Pennsylvania Supreme Court, this Court must "consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule."*Gares v. Willingboro Township,* 90 F.3d 720, 725 (3d Cir.1988). Indeed, "the decisions of lower appellate courts may be persuasive, should be accorded proper regard and are presumptive evidence of state law."*Commercial Union Ins. Co. v. Bituminous Casualty Corp. .,* 851 F.2d 98, 100 (3d Cir.1988); *Bufetta,* 230 F.3d at 637 ("opinions of intermediate appellate courts are not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise") (internal quotations omitted).

The language of an intentional injury exclusion dictates its scope. For instance, it is well-settled that

an intentional injury exclusion, applicable only to "the insured," permits an innocent (or negligent) insured to recover losses caused by bodily injury intended by a co-insured. *See,e.g.,General Acc. Ins. Co. Of America v. Allen,* 708 A.2d 828, 832-33 (Pa.Super.Ct.1998) (noting that "the cases here, and elsewhere, dealing with the usage of the term[s] 'the insured' have held that for coverage to be excluded under the 'intentional act' or 'intended or expected' exclusion the damage or injury had to be intended by the insured in question, not another insured under the policy"); *seealso* Allan D. Sindt, 2 *Insurance Claims and Disputes* § 11.8 (4th ed.2004) (noting that most exclusions are written to apply to actions taken by "the" insured, which renders exclusion inapplicable to any insured that did not engage in contractually proscribed actions). It is equally well-settled that where an intentional injury exclusion applies by its terms to "any insured" or, as in this case, "one or more insured," an innocent insured is precluded from recovering losses related to contractually proscribed conduct by a co-insured. *See,e.g.,Spezialetti v. Pacific Employees Ins. Co.,* 759 F.2d 1139, 1141 (3d Cir.1985) (innocent co-insured precluded from recovering fire insurance proceeds because co-insured's arson triggered exclusion applicable to dishonest act of "any insured"). However, neither party has provided, nor has the Court found, any Pennsylvania Supreme Court case that addresses whether a severability clause narrows the scope of an intentional injury exclusion, applicable to "one or more insureds," so that intentional injury caused by one insured will not defeat coverage for the non-intentional conduct of all additional insureds.

**\*5** Despite the absence of authority from the Pennsylvania Supreme Court, the Pennsylvania Superior Court has squarely addressed this issue. In *McAllister v. Millville Mutual Insurance Company,* an insurance company issued a fire insurance policy to several insureds to cover a residential building. *McAllister,*644 A.2d 1283, 1289 (Pa.Super.Ct.1994). One of the insureds set fire to the covered building, and was subsequently convicted of arson. *Id.* at 1285.The insurer refused to pay insurance proceeds to the innocent co-insureds on the basis of the policy's intentional act exclusion, which excluded losses resulting from acts committed by "an insured and with the intent to cause a loss."*Id.* In response, the innocent co-insureds filed a complaint against the insurance company to recover the disputed proceeds, arguing in part that the severability clause in the policy treated "each person" as a "separate insured

under the policy." *Id.*

The trial court found that the contractual interaction between the severability provision and the intentional act exclusion rendered the policy "ambiguous" as to whether the exclusion precluded innocent co-insureds from recovering under the policy. *Id.* at 1289.The Superior Court reversed, finding that this interpretation "tortures the plain and unambiguous language and meaning of the policy...."*Id.*The Superior Court tersely reasoned that the clear language of the exclusion prescribed joint obligations for the policy's insureds, regardless of whether each named insured was defined as a "separate insured" pursuant to the policy's severability clause. *Id.*

Other courts have more thoroughly elaborated upon the logic in *McAllister.*In *Michael Carbone, Inc. v. General Accident Ins. Co.,* for instance, the court surveyed applicable case-law and determined that "the bulk of the courts which have addressed the issue have held that an exclusion worded 'any insured' unambiguously expresses a contractual intent to create joint obligations and [to] preclude coverage to innocent co-insureds," despite the existence of a severability clause in the policy. *Michael Carbone, Inc.,* 937 F.Supp. 413, 422 (E.D.Pa.1996). Applying Pennsylvania law, the court reasoned that permitting the severability clause to modify the language "any insured" in an exclusion would render meaningless the term "any" and its clear implications.*Id.* at 422-423.On the other hand, the court found that reading the exclusion as creating a joint obligation despite the existence of the severability clause does not render the severability clause meaningless, as it would modify other exclusions and provisions that do not contain express language applying to "any" or "all" insureds. *Id.* Consequently, the court's reading gave effect to the language both of the exclusion and of the severability clause. *Id.*

Plaintiff provides no decision applying Pennsylvania law that supports its interpretation of the intentional injury exclusion. Instead, plaintiff supplies a host of decisions from federal and state courts outside Pennsylvania that interpret severability clauses in insurance policies as individualizing the application of an intentional injury exclusion. *See,e.g.,State Farm Fire & Casualty Co. v. Keegan,* 209 F.3d 767, 771 (5th Cir.2000) (applying Texas law and finding ambiguous household exclusion for

bodily injuries to "an insured" when policy contains severability clause because no language in policy limiting applicability of severability clause); *West American Ins. Co. v. AV & S,* 145 F.3d 1224, 1230 (10th Cir.1998) (applying Utah law and finding that because severability clause treats each named insured separately as the only insured, the term "any insured" in automobile exclusion clause in insurance policy does not exclude coverage for all insureds when only one insured is at fault). These courts reason that applying the exclusion to all insureds under the policy would render the severability clause meaningless, as the policy would not be applied separately to each insured. *See,e.g.,Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158, 161 (Ma.1986); *Premier Ins. Co. v. Adams,* 632 So.2d 1054, 1057 (Fl.Dist.Ct.App.1994). As such, these courts find either that a severability clause unambiguously modifies the entirety of a policy, including its coverage and exclusion provisions, as if the insured claiming coverage was the only insured; or, then again, that the existence of the severability clause renders an exclusion applicable to "any insured" ambiguous, which requires a construction in favor of coverage. *CompareAV & S,* 145 F.3d at 1229*withKeegan,* 209 F.3d at 770.

**\*6** The Court agrees that the sheer volume of conflicting judicial interpretations concerning the interplay between an exclusion applicable to "any insured" and a severability clause provides some evidence of ambiguity. *See,e.g.,Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 678 A.2d 802, 147 n. 6 (Pa. Super Ct.1996) (inconsistent interpretation of similar policy language by courts constitutes some evidence of ambiguity, but court must first analyze language of policy to determine if it is clear and unambiguous). Nonetheless, this Court is not convinced that the Pennsylvania Supreme Court would overrule *McAllister* and find that the severability clause renders the "one or more insured" [FN3] language in the instant policy "ambiguous" as a matter of law. *See,e.g.,Bufetta,* 230 F.3d at 637. Nor has plaintiff offered any relevant caselaw applying Pennsylvania law to support its interpretation of the policy. Finally, this decision comports with critical commentary on the scope and purpose of severability clauses within insurance contracts. *See* Allan D. Windt, 2 *Insurance Claims and Disputes* § 11.8 (4th ed.2004) (interpreting effect of severability clause on "any insured" exclusion as applying to only insured seeking coverage not justifiable because it ignores unambiguous language of policy and because

severability clause has life in variety of contexts other than exclusion clause). Consequently, this Court finds as a matter of law that the obligations in the intentional injury exclusion are joint, rather than several.

> FN3. Plaintiff does not argue that the phrase "one or more" is ambiguous. Nor does plaintiff distinguish between the practical effect of an intentional injury exclusion applicable to "any insured" and one applicable to "one or more insured." Indeed, the very definition of "any" is "one or more," thereby justifying this Court's reliance on cases interpreting the language of "any insured" in an insurance policy to resolve this dispute. (*See* Merriam-Webster's Collegiate Dictionary, at 53 (10th ed.2001) (defining "any" as "one, some, or all indiscriminately of whatever quantity")).

**C. Plaintiff is entitled to summary judgment on defendant's initial duty to defend based upon the allegations in the complaint.**

Plaintiff argues that, even if the intentional injury exclusion applies jointly to all insureds, defendant has a duty to defend as a matter of law based upon the allegations in the complaint. Implicitly, plaintiff argues that the factual allegations in the complaint do not demonstrate the applicability of the intentional injury exclusion because: (i) they do not allege that Daniel Strouss intended or expected to cause bodily injury within the meaning of the intentional injury exclusion; and (ii) they do not identify Daniel Strouss' residence at the time of the shooting. (*See* Pl. Mot., at 14-18).

Defendant does not address the factual allegations in the complaint. Instead, defendant looks beyond the pleadings, relying upon Daniel Strouss' conviction for attempted homicide and the transcript of the criminal trial to establish the applicability of the intentional injury exclusion. (*See* Def. Mot., at 10-12).

**1. The factual allegations in the complaint do not establish that Daniel Strouss intended or expected to cause injury within the meaning of the intentional injury exclusion.**

As previously discussed, the initial obligation to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defend arises whenever allegations against the insured "state a claim to which the policy *potentially* applies even if the allegations are groundless, false or fraudulent."*American Contract Bridge League v. Nationwide Mutual Fire Ins. Co.,* 752 F.2d 71, 75 (Pa.Super.Ct.1985) (quoting *Gedeon v. State Farm Mutual Automobile Ins. Co.,* 410 Pa. 55, 188 A.2d 320 (1963)).[FN4] In determining whether an insurer retains an initial obligation to defend, a court applying Pennsylvania law may not look to evidence outside the pleadings. *See,e.g.,Muff,* 851 A.2d at 925 (" 'It is the fact of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.' ") (citations omitted).

> FN4. This rule is also codified in the language of the policy. (*See* Strouss Insurance Policy, at 17) (defendant agrees to indemnify even if suit "groundless, false or fraudulent").

**\*7** Under Pennsylvania law, a policy exclusion for "expected or intended injuries" is ambiguous as a matter of law and must be interpreted against the insurer. Pennsylvania courts have offered such an interpretation, finding the words "expected" and "intended" to connote synonymously an "element of conscious awareness on the part of the insured."*SeeMuff,* 851 A.3d 919, 927 (Pa.Super.Ct.2004). According to this interpretation, an insured expects or intends an "injury" within the meaning of an exclusion clause if she "desired to cause the consequences of his act or if [s]he acted knowing that such consequences were substantially certain to result."*Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 618 A.2d 945, 953 (Pa.Super.Ct.1992).

The Court finds that the defendant had an initial duty to defend plaintiff. First, the factual allegations in the complaint do not trigger the intentional injury exclusion. *SeeD'Auria v. Zurich Ins. Co.,* 352 Pa.Super. 231, 507 A.2d 857, 859 (Pa.Super.Ct.1986) ("The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy."). The complaint alleges that plaintiff negligently failed to safeguard the weapon used to shoot Eric Kassoway. (Am. Compl., at ¶¶ 21-25). Furthermore, although the complaint stresses that Daniel Strouss shot Eric Kassoway, the complaint also alleges that Daniel Strouss lacked the intent to commit the crime. (Am. Compl., at ¶¶ 7-10).

Specifically, the complaint alleges that Daniel Strouss suffered from paranoid schizophrenia, as manifested by delusions of persecution and by a pronounced withdrawal from reality, that Daniel Strouss expressed delusional and psychotic beliefs about Eric Kassoway, and that Daniel Strouss consequently "lacked the mental capacity to form the specific intent to commit an intentional act."(*Id.,* at ¶¶ 8-10);*seeState Farm Fire And Cas. Co. v. Cooper,* 2001 WL 1287574, at *3 (E.D.Pa. Oct.24, 2001) (court may not infer intent in determining duty to defend when underlying complaint alleges that insured was incapable of forming intent).

In turn, because the allegations in the complaint defeat the intentional injury exclusion, the allegations state a claim to which the policy potentially applies. Indeed, from the perspective of plaintiff, the insured, the allegations in the complaint aver that plaintiff negligently caused Eric Kassoway's injuries. *See,e.g.,Pipher,* 140 F.3d at 226 ("test of whether the injury or damage is caused by an accident must be determined *from the perspective of the insured* and not from the viewpoint of the person who committed the injurious act"). Since injuries caused by negligence are considered to be the result of "accidents" within the meaning of insurance policies under Pennsylvania law, plaintiff is entitled to summary judgment on defendant's initial duty to defend. *SeeBritamco Underwriters v. Weiner,* 431 Pa.Super. 276, 636 A.2d 649, 651 (Pa.Super.Ct.1994); *Nationwide Mut. Fire Ins. Co. v. McNulty,* 1997 WL 805165, at *2 (E.D.Pa. Dec.30, 1997).[FN5]

> FN5. The Court also notes that the factual allegations in the complaint fail to address Daniel Strouss' residence at the time of the shooting. This provides another reason why summary judgment for plaintiff is appropriate on defendant's initial duty to defend based upon the factual allegations in the complaint.

2. Defendant's continuing duty to defend hinges upon the success of the indemnification claim.

**\*8** According to the Third Circuit, "there is no principle of Pennsylvania law that the duty to defend automatically 'attaches' at the outset of the litigation and cannot afterwards terminate."*Commercial Union Ins. Co. v. Pittsburgh Corning Corp.,* 789 F.2d 214, 218 (3d Cir.1986). Indeed, an insurer's duty to defend

does "not necessarily [remain] frozen in stasis once it is triggered."*Cooper,* 2001 WL 1287674, at *3. The duty to defend terminates when the insured confines the possibility of recovery to claims outside the coverage of the policy. *SeeLucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 813 (3d Cir.1994) ("duty to defend remains with the insurer until facts sufficient to confine the claims to liability not within the scope of the policy become known to the insurer"); *Cadwallader v. New Amersterdam Cas. Co.,* 396 Pa. 582, 152 A.2d 484, 488 (Pa.1959). Specifically, where the language of the insurance policy links the duty to defend with a possible duty to indemnify, "the insurer is not bound to defend where it cannot be bound to indemnify, regardless of when the duty to indemnify comes to an end."*Pittsburgh Corning,* 789 F.2d at 218;*Essex Ins. Co. v. Kennedy,* 2003 WL 734193, at *1 (3d Cir. March 5, 2003). In such a situation, the insurer may withdraw its defense in the underlying litigation, absent prejudice to the insured. *Id.* at 217-18.

The language of the instant insurance policy states that defendant will defend against "a claim ... brought against an 'insured' for damages ... caused by an 'occurrence' *...to which this coverage applies*...." (*See* Policy, at 17) (emphasis added).[FN6] This language renders defendant's duty to defend coterminous with its duty to indemnify. *See,e.g.,Cooper,* 2001 WL 1287574, at *3 (holding nearly identical language in insurance policy as linking duty to defend with duty to indemnify). Accordingly, if defendant can establish as a matter of law that it no longer has a duty to indemnify by confining the possibility of recovery to claims outside the coverage of the policy, it no longer has a duty to defend.[FN7]However, until that point, the allegations in the complaint continue to comprehend an injury which is potentially within the scope of the policy, and defendant's duty to defend continues to exist.[FN8]*See,e.g., Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 618 A.2d 945, 954-955 (Pa.Super.Ct.1993) (if coverage depends on existence or non-existence of undetermined facts outside complaint, insurer has duty to defend claims against insured until claim is narrowed to one "patently" outside policy coverage; insurer has duty to defend until resolution of issue of insured's intent).

FN6. The policy also uses this standard to determine whether the defendant has a duty to indemnify an insured "for the damages for which the 'insured' is legally liable."(*See* Policy, at 17).

FN7. Although critical commentary suggests disagreement with the proposition that an insurer may withdraw its defense if the absence of coverage becomes unequivocal, this commentary also recognizes an exception when the "insurer learns of facts demonstrating that there is no coverage and those facts are not material to the plaintiff's cause of action."*See* Windt, 1 *Insurance Claims and Disputes* § 4.28. Indeed, assuming that coverage must be provided based upon allegations in the complaint, withdrawal is appropriate when the insurer demonstrates in a declaratory judgment action "the falsity of some extraneous fact alleged in the complaint" incapable of resolution in the underlying civil action. *Id.,* at § 4.4 (listing exceptions to general rule that extrinsic evidence cannot be used to avoid duty to defend, such as when no coverage exists because of falsity of extraneous fact alleged in complaint); *see,e.g.,Nationwide Ins. v. Zavalis,* 52 F.3d 689, 695 (7th Cir.1995) (applying Pennsylvania law and finding that court may look beyond allegations of complaint and make a determination of coverage when the underlying circumstances are undisputed); *Burd v. Sussex Mut. Ins. Co.,* 56 N.J. 383, 267 A.2d 7, 9 (N.J.1970) (when coverage "depends upon a factual issue which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the complaint"). Accordingly, even if this Court ignored Pennsylvania law in favor of this approach, resolution of the issues of plaintiff's residence and Daniel Strouss' mental intent at the time of the shooting through extrinsic evidence would be appropriate for purposes of determining defendant's continuing duty to defend because these issues are factual questions extraneous to the underlying negligence action against plaintiff.

FN8. Of course, if plaintiff can establish as a matter of law that defendant has a duty to indemnify, then plaintiff is entitled to summary judgment on defendant's obligation to provide a defense throughout

the entirety of the underlying civil action.

**D. Summary judgment on defendant's duty to indemnify is not appropriate because a genuine issue of material fact exists.**

Defendant claims that it possesses no duty to indemnify, and, thus, its duty to defend must terminate as a matter of law, because the two elements of the intentional injury exclusion are met. First, defendant contends that the term "resident" is unambiguous under Pennsylvania law, connoting a temporary locus, a place where a person is currently and immediately living. (*See* Def. Rply, at 7-9). In turn, since Daniel Strouss was living at home during his summer break at the time of the shooting, Daniel Strouss was a "resident of plaintiff's household," and, hence, an "insured" within the meaning of the intentional injury exclusion. (*Id.*). Second, defendant claims that the criminal conviction of Daniel Strouss establishes his intent at the time of the shooting to commit bodily injury. (*See* Def. Mot., at 11-13).

**\*9** Plaintiff claims that it is entitled to summary judgment on the issue of indemnification because the intentional injury exclusion is inapplicable for either of two reasons. First, plaintiff contends that Daniel Strouss was not "an insured" within the meaning of the intentional injury exclusion because Daniel Strouss was a college student visiting his parent's home at the time of the accident, rather than a "resident" of plaintiff's household. (Pl. Mot, at 13-14). Second, plaintiff contends that the issue of whether Daniel Strouss "intended or expected" to commit physical injury at the time of the shooting has not been conclusively established, and that, because the underlying civil action focuses on negligent acts and omissions, the applicability of the exclusion will never be established. (*Id.,* at 14-18,<u>618 A.2d 945)</u>. Consequently, because the intentional injury exclusion is inapplicable, plaintiff's allegedly negligent activity constitutes an "occurrence" (ie., accident) triggering coverage within the meaning of the policy.

To establish an insurer's duty to indemnify, "there must be a determination that the insurer's policy actually covers a claimed incident."<u>*Am. States Ins. Co. v. State Auto Ins. Co.,* 721 A.2d 56, 63 (Pa.Super.Ct.1988)</u>. On the other hand, an insurer is entitled to a declaratory judgment that it has no duty to indemnify when the insurer establishes as a matter of law that there is no conceivable way for the

underlying claims to trigger coverage under the policy. To help the court in making this determination, both parties may rely upon evidence outside the underlying complaint. *See,e.g.,<u>Cooper, 2001 WL 1287574, at \*4</u>* (insurer "may rely upon evidence outside the underlying complaint to prove that it had no duty to indemnify the underlying claim").<u>FN9</u>

<u>FN9</u>. Resolution of the issues of plaintiff's residence and Daniel Strouss' mental intent at the time of the shooting does not go to the merits of the state law claims against plaintiff. As such, there is no fear that resolution of these issues in this declaratory judgment action would lead to "wasteful duplicative proceedings and the possibility of precluding issues that are properly before the state court."<u>*Nationwide Mut. Fire Ins. Co. v. McNulty,* 1997 WL 805165, at \*5 (E.D.Pa. Dec.30, 1997)</u> (staying resolution of indemnification issue because state court decision will resolve question of whether insured committed negligent or intentional act and because resolution of this question through declaratory judgment would carry potential for prejudicial collateral estoppel in underlying action). Furthermore, as evidence of the extraneous nature of these issues, the Court notes that neither party has requested a stay of the indemnification claim until the resolution of the state court proceeding.

**1. A genuine issue of material fact exists as to whether Daniel Strouss was a "resident" of plaintiff's household.**

**a. The term "resident" is unambiguous.**

The intentional injury exclusion excludes coverage for bodily injury expected or intended by "one or more insureds." (*See* Policy, at 17). The policy defines "insured" as "you and residents of your household who are (a) your relatives...."(*Id.,* at page 3). The policy does not define the term "resident" or "residence." Nor does it contain clarifying language within the clause in which the term "resident" is found, such as language limiting the term "resident" to a person who "lives with" the insured.

Pennsylvania courts construe the term "residence" in an insurance policy as one's "factual place of abode." *Krager v. Foremost Ins. Co.*, 304 Pa.Super. 390, 450 A.2d 736, 738 (Pa.Super.Ct.1976). Specifically, residence constitutes "living in a particular place, requiring only presence."*Id.* Pennsylvania law contrasts "residence" with domicile, which constitutes a party's "true, fixed, and permanent home and principal establishment."*Id.;see*14A Summ. Pa. Jur.2d Ins. § 16:97 ("residence is a matter of physical fact and not intention").

*\*10* The Superior Court of Pennsylvania has found the term "resident" in an insurance policy similar to the policy in the instant case to be unambiguous. In *Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, the Court rejected insured's proposed construction of the term, and, instead, affirmed the trial court's use of the common-law definition of "resident" to interpret an insurance policy that provided coverage to "residents of the insureds' household." *Amica*, 376 Pa.Super. 109, 545 A.2d 343, 346 (Pa.Super.Ct.1988). Implicitly declaring the term unambiguous, the Court defined "resident" in the context of the policy as "one who actually lives in the household of the insured."*Id;seealsoNationwide Mut. Ins. Co. v. Ortiz*, 2001 WL 1076583, at \*6 (E.D.Pa. Aug.22, 2001) (term residence, without words of refinement, has transitory meaning of "living in an actual place"); *Quincy Mutual Fire Ins. Co. v. Clyman*, 910 F.Supp. 230, 231-232 (E.D.Pa.1996) (defining "residence" under Pennsylvania law as "one's factual place of abode" in context of determining whether college student is resident of parent/insured's household within meaning of policy).

Despite this authority, plaintiff cites the decision of *Aetna Casualty & Surety Co. v. DeBruicker* for the proposition that the term "resident" in an insurance policy, without further clarifying language, is ambiguous as applied to a full-time student. *DeBruicker*, 838 F.Supp. 215 (E.D.Pa.1993). In *DeBruicker*, the Court found the term "resident" in an exclusion clause of an insurance policy ambiguous as applied to college students who spend summers at their parents' household. *Id.* at 222.The Court seized upon the differing interpretations of "resident" by courts in other jurisdictions as a marker of the term's ambiguity. *Id.* at 221.The Court further emphasized that insurers frequently change their legal position on the meaning of "resident," thereby suggesting an

industry-wide awareness of the term's ambiguity. *Id.* Finally, the Court stressed the lack of clarifying qualifiers attached to the term "resident" in the policy, a deficiency that served to highlight the malleability of the word. *Id.* Consequently, by finding the term "resident" ambiguous in the insurance policy, the Court interpreted the term against the insurer and, without actually articulating this interpretation, entered summary judgment in favor of the insured on the issue of liability under the policy.

This Court chooses not to follow *DeBruicker* for several reasons. First, *DeBruicker* contradicts precedent from the Pennsylvania Superior Court finding the term "residence" in an insurance policy to mean, in unambiguous terms, one's "factual place of abode." *SeeAmica*, 545 A.2d at 346;*seeNationwide Mutual Ins. Co. v. Budd-Baldwin*, 947 F.2d 1098, 1102 (3d Cir.1991) (noting that under Pennsylvania law the term "residence" refers to its common law definition, absent words of refinement). Second, later decisions by the Pennsylvania Superior Court have partially undermined the legitimacy of *DeBruicker'* s reliance on *Cohen v. Erie Indemnification Co.*, 288 Pa.Super. 445, 432 A.2d 596 (Pa.Super.Ct.1981), which held that "the mere fact that several appellate courts have ruled in favor of a construction denying coverage, and several others have reached directly contrary conclusions, viewing almost identical policy provisions, itself creates the inescapable conclusion that the provision in issue is susceptible to more than one interpretation."*Cohen*, 432 A.2d at 451. Indeed, the Pennsylvania Superior Court subsequently held that the terms of an insurance policy must be given their plain meaning, and that inconsistent interpretation among courts in various jurisdictions does not alone mandate a finding of ambiguity. *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 451 Pa.Super. 136, 678 A.2d 802, 807 n. 6 (Pa.Super.Ct.1996).

*\*11* Finally, the very methodology of *Debruicker* impermissibly collapses the necessarily sequential steps of contractual interpretation and factual analysis. *Schultz v. Encompass Ins.*, 2003 WL 22519428, at \*4 (E.D.Pa. Oct.8, 2003) (although interpretation of term is question of law, determination of whether plaintiff meets definition of "resident" for purposes of insurance policy remains an ultimate issue of material fact for factfinder). For instance, the *Debruicker* court first used its conceptualization of the malleability of the person

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whose residence was being determined to find the term "resident" in the insurance policy ambiguous. *See,e.g.,Debruicker, 838 F.Supp. at 221* (ambiguity not eliminated because "the very malleability of the concept of a college student means that many insureds will be without notice of how college students will be treated under a policy"). Thereafter, the court did not merely accept the plaintiff's proposed definition of "resident," but, instead, adopted a definition of "resident" uniquely tailored to the factual circumstances of the case, thereby circumventing an evaluation of whether this definition was factually satisfied. *Id.* ("term 'resident' is ambiguous in the context of college students"). Such a methodology transforms the general rule that a court must construe ambiguous contractual terms in an insurance policy in favor of the insured's proposed construction into the axiom that a court must resolve all interpretative *and* factual ambiguities against the insurer at the summary judgment stage. What this methodology overlooks is that while the analysis by which a particular person is deemed to meet the definition of "resident" may vary, the definition of "resident" does not.

Rather than following *DeBruicker,* this Court follows the holdings of *Amica* and *Clyman* and finds the term "resident" in plaintiff's insurance policy unambiguous. As such, the Court construes "resident" to cover those family members who actually live in the same household as the insured. *SeeAmica,* 545 A.2d at 346;*seealsoSt. Paul Fire and Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3d Cir.1991) (finding that policy provision providing coverage to "all relatives living with you" unambiguous and construing "living with" as synonymous with "residing" in home). This interpretation may or may not make a college student an "insured," depending upon the factual circumstances of the litigation.

b. A factual dispute exists as to whether Daniel Strouss was a resident of plaintiff's household.

Refusing to find the term "resident" ambiguous in the insurance policy does not necessitate a finding that Daniel Strouss was a resident of plaintiff's household. Instead, under Pennsylvania law, the determination of a college student's residence pursuant to an insurance policy is a matter of fact for the factfinder. *See,e.g.,Clyman,* 910 F.Supp. at 232 (denying insurance company's summary judgment motion because jury could conclude that plaintiff was

not a resident of parent's home for purposes of insurance coverage). The factual nature of this inquiry comports with the great weight of authority from other jurisdictions. *Waller v. Auto-Owners Ins. Co.,* 174 Or.App. 471, 26 P.3d 845, 850 (Or.Ct.App.2001) (genuine issue of material fact precludes summary judgment on issue of whether named insured's daughter was a "resident of the same household" of insured when daughter attended out-of-state college, opened out-of-state bank account, and had not visited home since attending college); *Farmers Auto. Ins. Ass. v. Williams,* 321 Ill.App.3d 310, 254 Ill.Dec. 231, 746 N.E.2d 1279, 1283-1285 (Ill.App.Ct.2001) (genuine issue of material fact exists as to whether named insured's son was a "resident of your [the insured's] household" within meaning of automobile insurance policy when son attended out-of-state college); *Kradjian v. American Manufacturers Mutual Ins. Co.,* 206 A.D.2d 801, 803, 615 N.Y.S.2d 129 (N.Y.App.Div.1994) (genuine issue of material fact as to whether daughter of insured who attends full-time graduate program in out-of-state school constitutes "resident" of parent's household within meaning of policy); *seealso* Stephen Pitcher, *Resident of Household of Named Insured,* 13 Am.Jur. Proof of Facts § 3.5 (2004) (collecting cases concerning college students).

*12 Under Pennsylvania law, residence for purposes of an insurance policy is measured by the degree of regular contact with the insured's household. *See,e.g.,Lewis,* 935 F.2d at 1431 (phrase "living with" requires person to "physically reside with insured" and looking at whether son of insured had requisite contacts with parent's condominium, such as frequent visits, sleeping there, and taking regular meals there). In the context of determining the residence of a college student for purposes of an insurance policy, courts focus on the following, non-exhaustive list of factors: whether the student lives under the same roof as the insured; the frequency and duration of trips to return home; whether the student keeps significant personal items at the insureds' home; the level of financial support from the insured; the degree of steps taken to establish residence elsewhere; and the degree to which the student presents the insured's address as his or her residence. *SeeClyman,* 910 F.Supp. at 232 (summary judgment inappropriate on issue of whether college student is resident of parent/insured's household when, on one hand, the college student remains in Arizona for ten months of year, rents an apartment in Arizona, holds an Arizona driver's license, and registers his car in

Arizona, but, on the other hand, lists insured's address on tax returns, receives financial support from parents, maintains bedroom in insureds' home, and visits insured's home during vacation); *see also Waller,* 26 P.3d at 848-849. It must further be noted that, under Pennsylvania law, a college student may have more than one residence. *Amica,* 545 A.2d at 349 (noting child may have two residences, although not when, "as a matter of physical fact, he lives at one and spends no significant time at the other").

The Court finds that the record is factually deficient to determine as a matter of law whether plaintiff's household was Daniel Strouss' "factual place of abode." For instance, the record does not indicate whether Daniel Strouss took steps to establish residence in New York, such as applying for and obtaining a New York driver's license, establishing a New York bank account, and keeping important personal items in New York during his vacation period. Nor does the record document whether he received mail at his parent's house, whether he was financially emancipated from his parents, whether he returned home during the school year, the frequency and duration of such return trips, and other significant contacts with his parent's household. In fact, neither party has demonstrated with clarity the factual circumstances surrounding Daniel Strouss' visitation with his parents in the summer of 2002, the time of the shooting, including the duration of this visitation period.

Furthermore, this Court finds that the evidence presented could lead to different inferences by the fact-finder, thereby making summary judgment improper for both parties. *See, e.g., Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998) (court may not weigh evidence at summary judgment stage). For instance, plaintiff provides affidavit testimony that Daniel Strouss lived away from home in the summer of 2001, that Daniel Strouss lived in a freshman dormitory at Ithaca College between August 2001 in May 2002, that he returned home to spend time with his parents between May and August 2002, and that he deposited money to return to Ithaca College for the 2002-2003 year. (*See* Affidavit of Jay Strouss, attached as Ex. A to Pl. Mot., at ¶¶ 2-6). On the other hand, defendant provides documentation from the criminal case indicating that the police and the court identified plaintiff's home address as Daniel Strouss' permanent address. (*See* Transcript of Criminal Case, attached as Ex. B-C to Def. Mot.).

**\*13** Based upon the lack of a factual record on this issue, this Court finds that a genuine issue of material fact exists as to whether Daniel Strouss resided in plaintiff's household at the time of the shooting. Accordingly, this Court denies both parties' motions for summary judgment on the issue of defendant's duty to indemnify.

2. No genuine issue of material fact exists as to whether Daniel Strouss intended or expected to cause bodily injury to Eric Kassoway.

Relying upon Daniel Strouss's guilty but mentally ill conviction for, among other crimes, attempted murder and aggravated assault, defendant argues that no genuine issue of material fact exists that Daniel Strouss intended to cause bodily injury to Eric Kassoway. (Def. Mot., at 10-12). Plaintiff, on the other hand, notes that principles of collateral estoppel do not prevent plaintiff from litigating the issue of whether the injury caused by the shooting was expected or intended. (Pl. Mot., at 15, 18 n. 1).

This Court agrees that the doctrine of collateral estoppel does not prevent plaintiff from relitigating the issue of Daniel Strouss' intent at the time of the shooting. Under Pennsylvania law, the doctrine of collateral estoppel precludes the subsequent relitigation of an issue when: (i) an issue decided in a prior action is identical to one presented in a later action; (ii) the prior action resulted in a final judgment on the merits; (iii) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (iv) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *See, e.g., Erie Ins. Co. v. Muff,* 851 A.2d 919, 931 (Pa.Super.Ct.2004).

Although the issue of Daniel Strouss' intent to commit injury was litigated in the criminal case, plaintiff was not a party to that litigation or in privity with Daniel Strouss. *See, e.g., Economy Fire and Casualty Co. v. Haste,* 824 S.W.2d 41, 44 (Mo.Ct.App.1992) (collateral estoppel does not prevent relitigation of insured's intent, established through criminal conviction for murder, in subsequent declaratory judgment action by insurance company against parents of insured's victim because parents were not parties to or in privity with party to criminal action against insured). Furthermore, unlike

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the situation where an insurer collaterally litigates the issue of coverage against the insured who was convicted or plead guilty to a particular crime, plaintiff in this case did not have a full and fair opportunity to litigate the issue of Daniel Strouss' actions and intent in the underlying criminal case. *Compare Illinois Farmers Ins. Co. v. Reed,* 662 N.W.2d 529, 533 (Minn.2003) (insurance company may not use insured's criminal conviction to collaterally estop subsequent civil suit brought by parents of insured's victim based on intentional act exclusion within insurance policy because parents were not parties to criminal proceedings and did not have full and fair opportunity to litigate issue) *with State Farm Fire & Casualty Co. v. Bellina,* 264 F.Supp.2d 198, 206 (E.D.Pa.2003) (finding that issue of insured's intent, which was established in conviction for voluntary manslaughter, cannot be relitgated in declaratory judgment brought by insurance company against insured concerning duty to defend and indemnify insured against wrongful death action). Consequently, the doctrine of collateral estoppel does not preclude plaintiff from relitigating this issue. *See Restatement (Second) of Judgments §* 85(2) and comment f (2004).

*14 Although the doctrine of collateral estoppel does not conclusively establish Daniel Strouss' intent at the time of the shooting, Daniel Strouss' conviction is admissible in this declaratory judgment "to prove any fact essential to sustain the judgment." Fed. R. Ev. 803(22) (exception to hearsay rule for judgment of previous conviction). Therefore, while not conclusive, Daniel Strouss' conviction carries evidentiary weight that defendant may use to support its summary judgment motion. *Id.,* Advisory Committee Note to Fed. R. Ev. 803(22) (conviction "admissible in evidence for what it is worth").

This Court finds that no genuine issue of material fact exists that Daniel Strouss intended or expected to injure Eric Kassoway. Daniel Strouss was convicted in state court, *inter alia,* of attempted homicide and aggravated assault. (*See* March 12, 2003 Transcript, attached as Ex. D to Def. Mot.). This finding of mental illness does not negate the *mens rea* inherent in these crimes. *See, e.g., Commonwealth v. Morris,* 385 Pa.Super. 563, 561 A.2d 1236, 1238 (Pa.Super.Ct.1989); *Commonwealth v. Trill,* 374 Pa.Super. 549, 543 A.2d 1106, 1124 (Pa.Super.Ct.1988) (General Assembly found that persons adjudged guilty but mentally ill possess requisite *mens rea* for attachment of criminal

responsibility). In fact, although plaintiff is correct in noting that both convictions may rest upon a finding of extreme recklessness, rather than intent, the Pennsylvania Supreme Court has expressly determined that for purposes of an aggravated assault conviction, the mental culpability of "extreme recklessness" is tantamount to a finding that "life threatening injury is essentially certain to occur." *Commonwealth v. O'Hanlon,* 539 Pa. 478, 653 A.2d 616, 619 (Pa.1996). In other words, "[t]his state of mind [of extreme recklessness] is, accordingly, equivalent to that which seeks to cause injury." *Id.* Consequently, regardless of whether the judge's decision was predicated upon extreme recklessness, as compared to intent, the conviction evidences a mental culpability tantamount to an intent to cause bodily injury. *See, e.g., Commonwealth v. Roche,* 783 A.2d 766, 772 (Pa. Super Ct.2001); *but see State Farm Fire and Casualty Co. v. Dunlavey,* 197 F.Supp.2d 183, (E.D.Pa.2001) (prior criminal conviction for aggravated assault does not trigger intentional injury exclusion because no way to determine whether "criminal verdict was based on a finding of intentional conduct, which falls within the insurance policy exclusion and is a bar to recovery in this action, or reckless conduct, which is covered by the policy under prevailing Pennsylvania case law").

Plaintiff fails to rebut this evidence by demonstrating a triable issue of fact. Fed.R.Civ.P. 56(e); *see also In re Bressman,* 327 F.3d 229, 238 (3d Cir.2003) (once moving party with burden of proof demonstrates no genuine issue of material fact, non-moving party must come forward with "probative evidence that would demonstrate the existence of triable issue of fact"). In fact, plaintiff offers no evidence of the gravity of Daniel Strouss' mental illness. Nor does plaintiff offer expert testimony suggesting that Daniel Strouss' alleged mental illness prevented him from forming the intent to commit physical injury at the time of the shooting. Accordingly, based upon the record before the Court, no reasonable juror could conclude that Daniel Strouss did not intend or expect to cause injury to Eric Kassoway at the time of the shooting.

III. Conclusion

*15 For the preceding reasons, this Court finds as follows. First, plaintiff is entitled to summary judgment on defendant's initial duty to provide plaintiff with a defense in the underlying civil action. Second, defendant must continue to provide plaintiff

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

with a defense in the underlying civil action until the resolution of whether Daniel Strouss is a "resident" of plaintiff's household within the meaning of the intentional injury exclusion. Third, because of the existence of a disputed material fact, both parties' summary judgment motions are denied as to defendant's duty to indemnify.

## *ORDER*

AND NOW, this 22nd day of February 2005, upon consideration of the parties cross-motions for summary judgment (Doc. No. 12-13), it is hereby ORDERED as follows:

1. Plaintiff's Motion (Doc. No. 13) is GRANTED in part and DENIED in part. Plaintiff's Motion is GRANTED as to defendant's initial duty to defend based upon the allegations in the complaint. Plaintiff's Motion is DENIED as to defendant's duty to indemnify plaintiff for damages connected with liability in the underlying state action.

2. Defendant's Motion (Doc. No. 12) is DENIED. A genuine issue of material fact exists as to whether Daniel Strouss was a resident of plaintiff's household within the meaning of the policy's intentional injury exclusion.

E.D.Pa.,2005.
Strouss v. Fireman's Fund Ins. Co.
Not Reported in F.Supp.2d, 2005 WL 418036 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.