BLACKWATER SECURITY CONSULTING, LLC et al v. WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al

# EXHIBIT B

# EXHIBIT B

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; and BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a Georgia Corporation; EVANSTON INSURANCE COMPANY, an Illinois Corporation; FIDELITY AND CASUALTY COMPANY OF NEW YORK, a South Carolina Corporation; and LIBERTY INSURANCE UNDERWRITERS, a Massachusetts Corporation,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 05-6020 (PBT)<br><br>Hon. Petrese B. Tucker |

## WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
## ADDRESSED TO PLAINTIFFS

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34, Defendant, Westchester Surplus Lines Insurance Company ("WSLIC") hereby requests production of documents by Plaintiffs, Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. ("Blackwater"). Blackwater shall produce the requested documents in its possession, custody or control in accordance with the definitions below for inspection and copying at the offices of Cozen O'Connor, 1900 Market Street, Philadelphia, PA 19103, or at such other location as is mutually agreeable to the parties.

## DEFINITIONS

Unless otherwise specifically indicated, the following definitions are applicable throughout this Request for Production, including the definition section. The following terms shall have the following meanings:

1. "Documents" shall mean the original and all copies, regardless of origin or location, of any responsive writing, drawing, chart, photograph, audio or videotape, or data compilation from which information can be obtained, translated (if necessary, by you, through detection devices into reasonably usable form), including e-mails and other documents stored electronically or digitally, including back-up tapes or disks, as well as any drafts of any documents the originals of which are submitted in response to these requests, and any hard or floppy computer or data processing disks, computer compact disks, back-up tapes or disks transcripts, electronic mail, film or videotape recordings of whatever manner or form, which is or was in your possession, custody, or control, or the existence of which you are or were aware at any time after January 1, 2001.

2. "Blackwater" shall mean plaintiffs, Blackwater Security Consulting, LLC and/or Blackwater Lodge and Training Center, Inc.

3. "Evanston" shall mean the defendant, Evanston Insurance Company.

4. "CNA" shall mean the defendant, Fidelity and Casualty Company of New York and/or Continental Insurance Company.

5. "Liberty" shall mean the defendant, Liberty Insurance Underwriters.

6. "The Coverage Action" shall mean *Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc v. Westchester Surplus Lines Insurance Company, et al.*, CA No. 05-6020 (PBT) (E.D. Pa.).

7. The "Underlying Action" shall mean the action originally brought against Blackwater, Justin L. McQuown and Thomas Powell in the Superior Court of North Carolina, Wake County, captioned *Nordan v. Blackwater Security Consulting LLC, et al.*, 05 CVS 000173,

and all subsequent proceedings stemming directly therefrom, including, but not limited to, any appeals, removals, remands, petitions stays and dismissal(s).

8. The "Arbitration" or "Arbitration Proceeding(s)" shall mean any arbitration initiated by Blackwater against Richard P. Nordan in the American Arbitration Association -- International Centre for Dispute Resolution -- in New York, any arbitration initiated by or on behalf of Richard P. Nordan against Blackwater in the American Arbitration Association -- Southeast Regional Office -- Atlanta, and any other alternative dispute resolution proceeding(s) between Blackwater and Richard P. Nordan and/or other of Decedents' representatives concerning the March 31, 2004 Incident and/or the rights and obligations of Blackwater and Decedents under written service agreements between them.

9. "Decedents" shall mean Stephen H. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and/or Wesley J.K. Batalona.

10. "U.S. Department of Labor Proceedings" and "proceedings before the U.S. Department of Labor" shall mean any action, claim, application or demand concerning any statutory benefits available or potentially available to the Beneficiaries on account of Decedents' deaths.

11. The "Related Litigation" shall mean all actions and proceedings described on pages 2-3 of the January 18, 2008 letter attached hereto as Exhibit "1" <u>other</u> <u>than</u> the Underlying Action, the Arbitration Proceedings, or the U.S. Department of Labor Proceedings.

12. "March 31, 2004 Incident" shall mean the incident that occurred on March 31, 2004, in Fallujah, Iraq, which resulted in the deaths of Decedents.

13. "Beneficiary" or "Beneficiaries" shall mean any person or persons making claim for benefits on account of the deaths of one or more or all of the Decedents.

14. "Broker" shall mean any broker, or sub-broker, or any predecessor, subsidiary, affiliate, employee, agent or representative of any broker, or sub-broker, utilized by Blackwater or any insurance carrier named in this lawsuit.

15. "Person" means any natural person, corporation, partnership, limited partnership, association, group, organization, federal, state or local government or governmental entity and their parents, subsidiaries, affiliates, divisions, predecessors and successors in interest, and present and former directors, officers, executives, partners, members, employees, agents or representatives of such.

16. "Concerning" means relating to, reflecting, constituting, representing, supporting, contradicting, referring to, relevant to, containing information about, stating, describing, analyzing, noting, embodying, containing, mentioning, recording, discussing, or evaluating (whether or not in opposition of or in support of your claims and positions in this action).

17. The singular shall include the plural and vice versa; the terms "and" and "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."

18. "All" also means "any," and vice versa.

## INSTRUCTIONS

1. To the extent that Blackwater believes that it has already produced to WSLIC documents or things responsive to the following Document Requests, it may forego duplicate

4

production so long as it provides the following information with respect to each such document or thing:

    a. A detailed description of the document or thing (including the number of pages and/or the bates range of the document, and the date of any document).

    b. The date on which the document or thing was produced.

    c. The name of the person who produced the document or thing.

    d. The name of the person to whom the document or thing was produced.

    e. The means by which the document or thing was produced, e.g., by U.S. Mail, electronic mail, hand delivery, commercial express or delivery service.

2. Instruction No. 1 is intended for the convenience of the parties and to avoid unnecessary duplication of production. In the event that the parties disagree as to whether or not a document or thing has been produced, WSLIC does not intend to waive or otherwise surrender its right to obtain from Blackwater any document which is or may be responsive to any document request set forth below.

3. In lieu of the process and procedure set forth in Instruction No. 1, Blackwater may elect to produce a copy of any responsive document.

4. Each Document Request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced. In addition, any copy of a document shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed or printed notes or comments having been added to the copy which do not appear on the original).

5. Unless otherwise specified, each Document Request shall be deemed to demand documents which were created, used, altered, amended or allegedly shown or provided to any person (as defined) from January 1, 2001 to the present. Further, you shall supplement your

responses to these Document Requests to the extent additional documents responsive to any request are generated or found.

6. If any document or portion of a document called for by a request is withheld on the grounds of privilege or otherwise, then you shall provide a log setting forth the following information relating to each document or portion thereof withheld from production:

   a.  the nature of the document (e.g., memorandum, letter, notes, etc.);

   b.  the date of the document or, if no date appears thereon, the approximate date the document was prepared, if known;

   c.  the identity of the author(s) of the document;

   d.  the identity of the custodian(s) of the document;

   e.  the identity of the person(s) to whom the document is addressed;

   f.  the identity of any other person(s) who received the document;

   g.  the identity of any exhibits or attachments to the document and whether any such exhibits or attachments have been produced or withheld from production; and

   h.  the nature of the privilege asserted for withholding the document (e.g., attorney-client, work product, etc.).

7. In producing the requested documents, please indicate the numbered request to which each document is responsive.

8. The past tense shall be construed to include the present tense, and vice versa, to make the document requests inclusive rather than exclusive.

9. The singular shall be construed to include the plural, and vice versa, to make the document requests inclusive rather than exclusive.

10. The document requests are deemed to be continuing, and should you obtain other information or documents which would add to or otherwise affect your production of documents,

you are directed to notify counsel for WSLIC and to produce such additional or different documents to WSLIC's attorneys immediately upon your discovery or receipt of such documents.

## DOCUMENTS REQUESTED

1. All claims, answers, defenses, pleadings, appeals, motions, briefs, exhibits, letters, forms and any other documents generated by or on behalf of Decedents in any U.S. Department of Labor Proceedings in connection with claims for benefits filed by Decedents pursuant to the Longshore and Harbor Workers' Compensation Act and/or the Defense Base Act.

2. All claims, answers, defenses, pleadings, appeals, motions, briefs, exhibits, letters, forms and any other documents generated by or on behalf of Blackwater in any proceedings before the U.S. Department of Labor in connection with claims for benefits filed by Decedents pursuant to the Longshore and Harbor Workers' Compensation Act and/or the Defense Base Act.

3. All claims, answers, defenses, pleadings, appeals, motions, briefs, exhibits, letters, forms and any other documents generated by or on behalf of Fidelity & Casualty Company of New York/CNA International in any proceedings before the U.S. Department of Labor in connection with claims for benefits filed by Decedents pursuant to the Longshore and Harbor Workers' Compensation Act and/or the Defense Base Act.

4. All discovery requests, along with all responses and documents provided in response thereto, served by or on behalf of Decedents, Blackwater, and/or Fidelity & Casualty Company of New York/CNA International in or related to any U.S. Department of Labor Proceedings for benefits under the Longshore and Harbor Workers' Compensation Act and/or the Defense Base Act.

5. All orders, decisions, determinations, findings, awards, rulings and other pronouncements of any judge, referee, hearing officer or other decision-maker in connection with the claims, issues, defenses, and facts raised in any U.S. Department of Labor Proceedings for benefits under the Longshore and Harbor Workers' Compensation Act and/or the Defense Base Act.

6. All deposition transcripts, statements, and notes of testimony of any person generated in connection with the claims, issues, defenses, and facts raised in any U.S. Department of Labor Proceedings for benefits under the Longshore and Harbor Workers' Compensation Act and/or the Defense Base Act.

7. All notes of testimony for testimony given at any hearing or proceeding in connection with the claims, issues, defenses, and facts raised in any U.S. Department of Labor Proceedings for benefits under the Longshore and Harbor Workers' Compensation Act and/or the Defense Base Act.

8. To the extent not provided in response to the previous Request, transcripts of all hearings in connection with the claims, issues, defenses, and facts raised in any U.S. Department of Labor Proceedings for benefits under the Longshore and Harbor Workers' Compensation Act and/or the Defense Base Act.

9. All documents making, referring to, reflecting or concerning any demand for Arbitration of any dispute arising under any agreement between Blackwater and one or more or all Decedents, including without limitation any response, answering statement or counterclaim to such demand, any arbitration agreements in connection therewith, any papers identifying the arbitrator(s) engaged to hear such arbitration, and any briefs, motions, memoranda, statements or other written materials submitted, exchanged or made in connection with such demand(s), the resulting proceedings or any issue(s) raised therein.

10. All documents constituting or concerning written discovery exchanged between Blackwater and one or more of the Decedents or their legal representative in any Arbitration Proceeding.

11. All documents constituting or concerning subpoenas issued or sought to be issued by any party in connection with any Arbitration Proceeding between Blackwater and one or more of the Decedents or their legal representative.

12. All deposition transcripts of any witness deposed in connection with any Arbitration Proceeding between Blackwater and one or more of the Decedents or their legal representative.

13. All notes of testimony of any witness testifying in connection with any Arbitration Proceeding between Blackwater and one or more of the Decedents or their legal representative.

14. All transcripts of any preliminary or other hearings conducted in connection with any Arbitration Proceeding between Blackwater and one or more of the Decedents or their legal representative.

15. All documents constituting or concerning orders, determinations, decisions, findings or scheduling issued by any arbitrator or arbitration panel in connection with any Arbitration Proceeding between Blackwater and one or more of the Decedents or their legal representative.

16. All documents constituting or concerning pre-hearing or hearing memoranda submitted by any party in connection with any Arbitration Proceeding between Blackwater and one or more of the Decedents or their legal representative.

17. All documents constituting or concerning exhibit or witness lists submitted by any party in connection with any Arbitration Proceeding between Blackwater and one or more of the Decedents or their legal representative.

18. All documents constituting or concerning expert reports submitted by any party in connection with any Arbitration Proceeding between Blackwater and one or more of the Decedents or their legal representative.

19. All documents constituting or concerning any contracts or written agreements, inclusive of exhibits and addenda thereto, between Blackwater and Regency Hotel & Hospital Company.

20. All documents constituting or concerning any contracts or written agreements, inclusive of exhibits and addenda thereto, between Blackwater and ESS Support Services Worldwide, Eurest Support Services (Cyprus) International, Ltd.

21. All documents constituting or concerning any contracts or written agreements, inclusive of exhibits and addenda thereto, between Regency Hotel & Hospital Company and ESS Support Services Worldwide, Eurest Support Services (Cyprus) International, Ltd.

22. All documents constituting or concerning any contracts or written agreements for services between Blackwater and Decedents.

23. All written communications and other documents constituting or concerning correspondence between Blackwater and any Beneficiary or other person claiming any benefits on behalf of Decedents.

24. All documents relating to or concerning any payments or benefits paid or to be paid by or on behalf of Blackwater to Decedents or to any Beneficiary claiming benefits on Decedents' behalf.

25. All document requests and/or subpoenas issued to Blackwater by, through or on behalf of the United States House of Representatives Committee on Oversight and Government Reform from October 2006 through the present, and all correspondence, documents and privilege log(s) provided in response thereto.

26. All pleadings, motions, declarations, affidavits, discovery, exhibits, appendices, records and other documents filed in any court in the Underlying Action by or on behalf of Blackwater and/or Richard P. Nordan as Ancillary Administrator for the separate Estates of Stephen H. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona.

27. All discovery exchanged in the Underlying Action.

28. All deposition transcripts of any witness deposed in the Underlying Action.

29. All transcripts of any hearing(s) or arguments held in any court in the Underlying Action.

30. All pleadings, motions, declarations, affidavits, discovery, exhibits, appendices, records and other documents filed in any court in the Related Litigation by or on behalf of Blackwater and/or Fidelity & Casualty Company of New York/CNA International and/or

Richard P. Nordan as Ancillary Administrator for the separate Estates of Stephen H. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona.

31. All discovery exchanged in the Related Litigation.

32. All deposition transcripts of any witness deposed in the Related Litigation.

33. All transcripts of any hearing(s) or arguments held in any court in the Related Litigation.

34. All documents establishing or concerning the home address(es) of Justin L. McQuown and Thomas Powell from January 2002 through March 31, 2004.

35. All documents establishing or concerning the length of time Justin L. McQuown was stationed or placed in Iraq on any Blackwater business prior to March 31, 2004.

36. All documents establishing or concerning the dates of Justin L. McQuown's travel into and/or out of the United States of America (including its territories and possessions), Puerto Rico and Canada while on any Blackwater business from January 2002 through March 31, 2004.

37. All documents concerning the automobiles or vehicles Decedents were using at the time of their deaths.

38. Copies of each policy of liability insurance issued to Blackwater from 2001 to the present. This Request includes the following:

    (a) all policies of liability insurance and all amendments of, and endorsements to, each such policy;

    (b) all documents, including meeting notes and diary entries, concerning the application process, negotiation, amendment, underwriting, placement, issuance, renewal, execution, expiration or cancellation of each such policy of liability insurance or any part thereof;

    (c) all documents concerning communications with respect to each such policy of liability insurance with any insurer or any insurance broker, agent, producer or intermediary;

    (d) all documents which evidence or concern communications between Blackwater and any insurance company regarding coverage for the Underlying Action, Related Litigation or U.S. Department of Labor Proceedings and documents relating to coverage or non-coverage for the Underlying Action, Related Litigation or U.S. Department of Labor Proceedings;

    (e) all documents Blackwater has used, generated reviewed, provided to or received from any insurance agent, broker or producer, or provided to or received from any insurance company, in connection with applying for,

<blockquote>

purchasing, considering whether to purchase, amending, considering whether to amend, renewing or considering whether to renew any policy of liability insurance from 2001 to the present;

(f) all documents referencing, commenting on or referring to each such policy of liability insurance;

(g) all documents relating to the terms, conditions, declarations, exclusions, endorsements and/or amendments to each such policy of insurance;

(h) all documents relating to any admission, statement, or belief by Blackwater that coverage does not or did not exist or apply, in whole or in part, under any policy of liability insurance issued by any insurer with regard to the Underlying Action, Related Litigation or U.S. Department of Labor Proceedings and/or any of the claims asserted therein;

(i) all documents relating to Blackwater's risk management for the Underlying Action, Related Litigation or U.S. Department of Labor Proceedings; and

(j) all documents that relate to Blackwater's self insurance, self-insured retentions, deductibles, uninsured or under-insurance for the years 2002 to the present.

</blockquote>

39. All documents and minutes that pertain to meetings of Blackwater's Board of Directors, including any committee thereof, at which it was discussed or scheduled to be discussed any of Blackwater's liability insurance program(s) for the years 2001 through the present.

40. All documents and minutes that pertain to meetings of Blackwater's Board of Directors, including any committee thereof, at which it was discussed or scheduled to be discussed possible or actual claims for reimbursement or indemnification from any source of costs and expenses concerning the March 31, 2004 Incident.

41. All documents and minutes that pertain to meetings of Blackwater's Board of Directors, including any committee thereof, at which it was discussed or scheduled to be discussed Blackwater's claims or potential claims for insurance coverage for costs and expenses concerning Blackwater's defense in the Underlying Action, Related Litigation or U.S. Department of Labor Proceedings.

42. All documents and minutes that pertain to meetings of Blackwater's Board of Directors, including any committee thereof, at which it was discussed or scheduled to be discussed insurance coverage for the March 31, 2004 Incident, the Underlying Action, Related Litigation or U.S. Department of Labor Proceedings and any claims relating thereto.

43. All documents concerning information provided to Blackwater's Board of Directors regarding liability insurance coverage for the March 31, 2004 Incident.

44. All organization charts and other documents from 2001 to the present that reflect the organization and staffing of any Blackwater office, staff, department and/or other unit with responsibility for obtaining or procuring liability insurance and/or litigation pertaining to any bodily injury and/or insurance coverage.

45. The file maintained by Blackwater's Risk Management Department and all documents contained therein concerning the application for and negotiation and issuance of the WSLIC, Evanston, CNA, and Liberty insurance policies, the March 31, 2004 Incident, and all litigation relating to the March 31, 2004 Incident.

46. All documents Blackwater issued to and/or received from Justin L. McQuown and/or Thomas Powell concerning defense and/or indemnity for the claims and causes of action at issue in the Underlying Action or Related Litigation.

47. All documents Blackwater issued to and/or received from any insurer or any insurance broker, agent, producer or intermediary concerning liability insurance coverage for the Underlying Action, Related Litigation or U.S. Department of Labor Proceedings and the claims and issues raised therein.

Dated: _____ **COZEN O'CONNOR**

By: _____
Stephen A. Cozen
Eric D. Freed
C. Tyler Havey
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000 (telephone)
(215) 665-2013 (facsimile)
scozen@cozen.com
efreed@cozen.com
thavey@cozen.com

*Attorneys for Defendant, Westchester Surplus Lines Insurance Company*

# EXHIBIT 1

**EXHIBIT 1**

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

Carol C. Carty
215.963.5331
ccarty@morganlewis.com

January 18, 2008

**Via FedEx**

Francis J. Deasey, Esq.
Michael F. Schleigh, Esq.
Deasey, Mahoney & Valentini
1601 Market Street, Suite 3400
Philadelphia, PA 19103

Eric D. Freed, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Re: Blackwater Security Consulting, LLC, et al. v. Westchester Surplus Lines Ins. Co., et al., No. 05-6020 (E.D. Pa.)

Dear Counsel:

Please find enclosed for reimbursement, Bates-labeled BLACKW 00001 - BLACKW 01028, and marked CONFIDENTIAL, the invoices for the defense costs that Blackwater incurred in connection with the defense of the *Nordan v. Blackwater* litigation.[1] Also enclosed is a "master invoice," which includes the total amount owed at this time and a breakdown of the charges incurred for each firm representing Blackwater. Please keep these documents confidential.

The enclosed invoices are from a prominent national lead litigation defense counsel in Washington D.C.; a Supreme Court expert; a political question doctrine expert; and a legislative/government contracts expert, who was necessary only because Nordan's counsel requested a congressional investigation into the substance of the ongoing lawsuit. Five law firms were necessary because the actions and knowledge of three individuals (Messrs. McQuown, Potter, and Powell), one of whom is still a named co-defendant, may be imputed to Blackwater in any trial and those individuals for ethical reasons cannot be represented by Blackwater's counsel.

As you will see from the invoices, Blackwater's litigation defense team, which never consisted of more than seven law firms at any one time, worked together with public relations consultants.

---

[1] As the Nordan Litigation is continuing, Blackwater reserves the right to submit additional invoices to Westchester Surplus Lines Insurance Company as it receives them.

Morgan Lewis
COUNSELORS AT LAW

Such a team effort was required because of Nordan's counsel's aggressive efforts to influence the outcome of litigation through the press, for which Nordan's counsel was issued a formal "Letter of Warning."

Nordan has pursued the lawsuit in at least the following seventeen (17) separate but interrelated *fora*:

(1) Wade County Trial Court in Raleigh, North Carolina (Judge Stevens) ("Nordan I" and "Nordan II");

(2) North Carolina Appellate Court (appeal of Judge Stevens' discovery order in Nordan I, currently stayed);

(3) U.S. District Court for the Eastern District of North Carolina in Raleigh (Chief Judge Flanagan) (Nordan I);

(4) U.S. District Court for the Eastern District of North Carolina in Wilmington (Senior Judge Fox) (Petition for Order Directing Arbitration and Nordan II);

(5) U.S. Court of Appeals for the 4th Circuit (appeal of Judge Flanagan's Remand Order in Nordan I and Nordan's appeal of Judge Fox's grant of the Petition for Order Directing Arbitration);

(6) U.S. Supreme Court (petition for certiorari to the 4th Circuit in Nordan I);

(7) Alaskan Trial Court (Nordan's seeking enforcement of Judge Stevens' discovery order in Nordan I);

(8) U.S. Department of Labor District Director;

(9) U.S. Department of Labor Office of Administrative Law Judges (Judge Dorsey);

(10) U.S. Department of Labor Office of Administrative Law Judges (Judge Mills);

(11) U.S. Department of Labor Benefits Review Board;

(12) U.S. Court of Appeals for the 2nd Circuit;

(13) U.S. District Court for the Southern District of New York (Judge Holwell);

(14) U.S. House of Representatives (pursuant to a December 13, 2006, letter request by counsel for Nordan);

(15) Arbitration claims filed by Blackwater in the American Arbitration Association's ("AAA") International Centre for Dispute Resolution in New York;

(16) Arbitration claims filed by Nordan's Counsel in the AAA's Southeastern Regional Office (Atlanta);

(17) Office of North Carolina Bar Counsel (resulting thus far in at least one formal "Letter of Warning" to Nordan's counsel for violating "Rule 3.6. Trial Publicity").

As you know, Nordan's counsel is pursuing this lawsuit not only against Blackwater directly, but also against Blackwater indirectly through an individual co-defendant (who was employed by Blackwater at all relevant times, such that the Plaintiff Nordan will inevitably attempt to impute to Blackwater any liability against this individual), as well as against two former Blackwater independent contractors who are not named as a co-defendants but who nevertheless need separate counsel in the various *fora* where Blackwater must defend itself.

Last summer, attorneys for Nordan admitted publicly that they had already spent more than $2.5 million pursuing the Nordan Litigation. See M. Baker, "Families ask for money to continue lawsuit against Blackwater," Raleigh News & Observer (June 6, 2007). Also, the mainstream press has independently, and we think accurately, reported that, "Blackwater has got to win this one to deter other suits" says Scott Silliman, director of the Center on Law, Ethics and National Security at Duke University Law School. "All the other private contracting companies are watching this case." (www.usatoday.com/news/world/iraq/2007-06-10-fallujah-deaths_N.htm).

Given that Westchester has already recognized its defense obligations subject to a reservation of rights, Blackwater believes that mediation will best facilitate a cost effective resolution of the issues in connection with the reimbursement of its defense costs. To that end, Blackwater proposes that the parties use the services of a mediator who is skilled in mediating such matters.

Please promptly let us know how you would like to proceed.

Very truly yours,

Carol C. Carty

Enclosures

cc: Howard T. Weir III, Esq.
    Dennis J. Valenza, Esq.