# EXHIBIT C

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; and BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a Georgia Corporation; EVANSTON INSURANCE COMPANY, an Illinois Corporation; FIDELITY AND CASUALTY COMPANY OF NEW YORK, a South Carolina Corporation; and LIBERTY INSURANCE UNDERWRITERS, a Massachusetts Corporation,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 05-6020 (PBT)<br><br>Hon. Petrese B. Tucker |

## WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S
## FIRST REQUEST FOR ADMISSION ADDRESSED TO PLAINTIFFS

TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 36, defendant, Westechester Surplus Lines Insurance Company ("WSLIC") hereby requests that plaintiffs, Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. ("Blackwater") respond to the following Requests for Admissions within the time prescribed by the Federal Rules of Civil Procedure.

### DEFINITIONS

1. "Blackwater" shall mean plaintiffs, Blackwater Security Consulting, LLC and/or Blackwater Lodge and Training Center, Inc.

2. "Blackwater/Regency Contract" shall mean the Agreement for Security Services attached hereto as Exhibit "1."

3. "Helvenston Contract" shall mean the Independent Contractor Service Agreement attached hereto as Exhibit "2."

4. "Teague Contract" shall mean the Independent Contractor Service Agreement attached hereto as Exhibit "3."

5. "Zovko Contract" shall mean the Independent Contractor Service Agreement attached hereto as Exhibit "4."

6. "Batalona Contract" shall mean the Independent Contractor Service Agreement attached hereto as Exhibit "5."

7. "CNA" shall mean the defendant, Fidelity and Casualty Company of New York and/or Continental Insurance Company.

8. "Pertaining to" shall mean to have reference to or relate to.

## **INSTRUCTIONS**

1. If an objection is made to any fact whose admission is requested, the reason for that objection shall be stated.

2. Each answer shall admit or deny the matter or set forth in detail the reason(s) why an admission or denial cannot truthfully be made.

3. A denial of any matter shall fairly meet the substance of the requested admission.

4. You may not give lack of knowledge or information as a reason for failure to admit or deny unless you state that you have made reasonable inquiry and that the information known or readily obtainable to you is insufficient to enable you to admit or deny the requested admission.

5. If you contend that the information sought in this Notice to Admit is exempt from discovery because it falls within the attorney/client privilege or some other privilege or protection, you are to provide any responsive information which does not fall within the claimed privilege or protection and set forth with regard to any information claimed to fall within the privilege or protection:

    A. The privilege or protection that you contend applies;

    B. The subject matter of the information that you contend is privileged or protected from discovery;

    C. Every fact upon which you rely in support of your contention that the privilege or protection applies;

    D. The form in which the information is contained (e.g., document, recollection of defendant, etc.); and

    E. The nature of the information that is contained in a document, the author, the recipient, the date of the document; if the information is not contained in a document, the persons involved and the place of the communication giving rise to the privilege or protection you claim.

6. This Notice to Admit shall not be construed to request information that is subject to the attorney-client privilege and/or work product doctrine as defined by Pennsylvania law.

## REQUESTS FOR ADMISSIONS

1. The document attached hereto as Exhibit "A" is a true, complete and correct copy of a contract, entitled "Agreement for Security Services," Blackwater entered with Regency Hotel & Hospital Company in or about March 2004.

**RESPONSE:**

2. In the Blackwater/Regency Contract Blackwater represented that it was professionally experienced in the "security field of works."

**RESPONSE:**

3. Pursuant to the Blackwater/Regency Contract, Blackwater agreed to render services pertaining to, among other things, firearms.

**RESPONSE:**

4. Pursuant to the Blackwater/Regency Contract, Blackwater agreed to render services pertaining to, among other things, security.

**RESPONSE:**

5. Pursuant to the Blackwater/Regency Contract, Blackwater agreed to render services pertaining to, among other things, driving.

**RESPONSE:**

6. The services Blackwater agreed to render under the Blackwater/Regency Contract were to be rendered in Iraq, Kuwait, Jordan and Turkey.

**RESPONSE:**

7. All of the services Blackwater agreed to render under the Blackwater/Regency Contract were to be rendered outside the United States of America (including its territories and possessions), Puerto Rico and Canada.

**RESPONSE:**

8. The services Blackwater agreed to render under the Blackwater/Regency Contract included, but may not have been limited to, security assessments and security operations.

**RESPONSE:**

9. Under the terms of the Blackwater/Regency Contract, Blackwater functioned as a subcontractor in support of the United States military effort in the Iraq war.

**RESPONSE:**

10. The document attached hereto as Exhibit "B" is a true, complete and correct copy of a contract, entitled "Independent Contractor Service Agreement," that Blackwater entered with Stephen S. Helvenston in or about March 2004.

**RESPONSE:**

11. At the time of his death on March 31, 2004, Stephen S. Helvenston was performing services for Blackwater under the Helvenston Contract in support of the Blackwater/Regency Contract.

**RESPONSE:**

12. At the time of his death on March 31, 2004, Stephen S. Helvenston was in the employ of Blackwater.

**RESPONSE:**

13. On March 31, 2004, Stephen S. Helvenston sustained injuries resulting in his death while performing service as an employee of Blackwater.

**RESPONSE:**

14. The document attached hereto as Exhibit "C" is a true, complete and correct copy of a contract, entitled "Independent Contractor Service Agreement," that Blackwater entered with Mike R. Teague in or about March 2004.

**RESPONSE:**

15. At the time of his death on March 31, 2004, Mike R. Teague was performing services for Blackwater under the Teague Contract in support of the Blackwater/Regency Contract.

**RESPONSE:**

16. At the time of his death on March 31, 2004, Mike R. Teague was in the employ of Blackwater.

**RESPONSE:**

17. On March 31, 2004, Mike R. Teague sustained injuries resulting in his death while performing service as an employee of Blackwater.

**RESPONSE:**

18. The document attached hereto as Exhibit "D" is a true, complete and correct copy of a contract, entitled "Independent Contractor Service Agreement," that Blackwater entered with Jerry G. Zovko in or about February 2004.

**RESPONSE:**

19. At the time of his death on March 31, 2004, Jerry G. Zovko was performing services for Blackwater under the Zovko Contract in support of the Blackwater/Regency Contract.

**RESPONSE:**

20. At the time of his death on March 31, 2004, Jerry G. Zovko was in the employ of Blackwater.

**RESPONSE:**

21. On March 31, 2004, Jerry G. Zovko sustained injuries resulting in his death while performing service as an employee of Blackwater.

**RESPONSE:**

22. The document attached hereto as Exhibit "E" is a true, complete and correct copy of a contract, entitled "Independent Contractor Service Agreement," that Blackwater entered with Wesley J. K. Batalona in or about March 2004.

**RESPONSE:**

23. At the time of his death on March 31, 2004, Wesley J. K. Batalona was performing services for Blackwater under the Batalona Contract in support of the Blackwater/Regency Contract.

**RESPONSE:**

24. At the time of his death on March 31, 2004, Wesley J. K. Batalona was in the employ of Blackwater.

**RESPONSE:**

25. On March 31, 2004, Wesley J. K. Batalona sustained injuries resulting in his death while performing service as an employee of Blackwater.

**RESPONSE:**

26. The Blackwater/Regency Contract required Blackwater to purchase Defense Base Act insurance covering all Blackwater employees working in support thereof.

**RESPONSE:**

27. Blackwater did purchase Defense Base Act insurance covering its employees who worked in support of the Blackwater/Regency Contract.

**RESPONSE:**

28. The Defense Base Act insurance Blackwater purchased covered the Decedents at the time of their deaths on March 31, 2004.

**RESPONSE:**

29. The Defense Base Act insurance covering Decedents was issued by CNA for the Policy period March 18, 2004 to June 18, 2004 under Policy No. DBA 22 390 1731.

**RESPONSE:**

30. At the time of their deaths on March 31, 2004, Decedents were using Mitsubishi Pajeros that were owned by or rented or loaned to Blackwater.

**RESPONSE:**


Dated: _____  **COZEN O'CONNOR**

By: _____
Stephen A. Cozen
Eric D. Freed
C. Tyler Havey
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000 (telephone)
(215) 665-2013 (facsimile)
scozen@cozen.com
efreed@cozen.com
thavey@cozen.com

*Attorneys for Defendant, Westchester Surplus Lines Insurance Company*