BLACKWATER SECURITY CONSULTING, LLC et al v. WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al                                                                                                                                Doc. 80 Att. 8

defend and hold REGENCY harmless for any claims, expenses, loss or liability arising solely out of or in connection with the negligent acts or omissions of REGENCY or ESS and their agents or employees. This provision shall survive the termination of this Agreement. REGENCY agrees to indemnify, defend and save BLACKWATER harmless from and against any and all claims, expenses, loss or liability whatsoever, including court costs and attorneys' fees, arising out of or in connection with the act or omissions of REGENCY, its employees, representatives, subcontractors, officers and agents including breach of this agreement; provided however, REGENCY shall not be obligated to indemnify, defend and hold BLACKWATER harmless for any claims, expenses, loss or liability arising solely out of or in connection with the negligent acts or omissions of BLACKWATER and its agents or employees. REGENCY understands and agrees that BLACKWATER is providing protective services in a volatile, hostile and extremely dangerous environment. Despite BLACKWATER performing protective services, there is simply no way to avert the high risk of injury or death to ESS and REGENCY personnel operating in this environment. This provision shall survive the termination of this Agreement.

## ARTICLE 7
## TAXES

BLACKWATER shall be responsible for its own taxes, duties, stamps, and fees imposed by the United States Government in the United States. REGENCY shall be responsible for its own taxes, duties, stamps, and fees imposed by the Kuwaiti Government, Iraqi Government, Jordanian Government or the US CPA.

REGENCY shall be responsible for any taxes, duties, stamps, and fees imposed by the Kuwaiti Government, Iraqi Government, Jordanian Government, Turkish Government or the US CPA on BLACKWATER. BLACKWATER shall notify REGENCY within thirty (30) days of BLACKWATER becoming aware of or is notified that the Kuwaiti Government, Iraqi Government, Jordanian Government, Turkish Government or the US CPA is going to impose taxes, duties, stamps, and/or fees on BLACKWATER. REGENCY shall pay the taxes, duties, stamps and/or fees imposed on BLACKWATER by the Kuwaiti Government, Iraqi Government, Jordanian Government or the US CPA directly to Governmental entity imposing the taxes, duties, stamps and/or fees or shall reimburse BLACKWATER through the monthly invoicing procedures in Article 8.

## ARTICLE 8
## PAYMENTS, TERMS OF PAYMENT & RECORDS MAINTENANCE

8.1     Advance Payment. As per Article 5, REGENCY shall pay to BLACKWATER within ten (10) days of the Effective Date of this Agreement an advance payment ("Advance Payment") consisting of:

    8.1.1    Mobilization payment: $320,000 (three hundred and twenty thousand United States Dollars). See Appendix B for details.

6

Dockets.Justia.com

8.1.2 DBA insurance payment $ 407,751 (four hundred and seven thousand seven hundred and fifty one United States Dollars). See Article 6 for details.

As such, the total Advance Payment payable within ten (10) days of the Effective Date of this Agreement, shall be $727,751 (seven hundred twenty seven thousand seven hundred fifty one United States Dollars), which includes the DBA insurance payment. In consideration for this Advance Payment, BLACKWATER, will credit REGENCY one-twelfth (1/12) of the total Mobilization Payment against each monthly billing for twelve (12) consecutive monthly billing periods following the Effective Date of this Agreement, thus reducing the total amount billed to REGENCY in twelve (12) equal amounts. See Appendix C for monthly billing sample.

8.2 Terms and Method of Payment, Invoicing & Substantiating Documents. Billing periods shall be based on calendar months for the duration of this Agreement, see Appendix C. BLACKWATER shall provide a complete invoice to REGENCY within three (3) days (or as soon thereafter as is reasonable practicable) after the end of the monthly billing period. The invoice shall be accompanied by appropriate supporting documentation to validate expensed items as outlined in Appendix B. REGENCY shall make payment to BLACKWATER within thirty (30) days of receipt of BLACKWATER's monthly invoices.

In the event, that there are disputed invoice items, the payment terms remain in force for the items not in dispute.

REGENCY shall pay BLACKWATER by wire transfer of funds in United States Dollars to BLACKWATER's designated bank account. BLACKWATER will provide REGENCY under separate cover its banking information.

8.3 Maintenance of Records. BLACKWATER shall maintain a true and correct set of records pertaining to work performed and services provided hereunder and all transactions related thereto throughout the Term of this Agreement. BLACKWATER further agrees to retain all such records for a period of not less than two years after termination of this Agreement. REGENCY may upon reasonable notice and other terms time audit any and all records of BLACKWATER relative to the work performed hereunder and all transactions related thereto for the sole purpose of determining compliance with the terms and conditions of this Agreement, as well as the invoices submitted and prices paid throughout the Term of this Agreement.

## ARTICLE 9
## WORK SITE ACCESS

Work site access to ESS locations and areas remain ESS responsibility. REGENCY will request ESS provide unhindered access to ESS sites for BLACKWATER, subject to ESS client approval, throughout the term of this Agreement to fulfill the Security

8.1.2 DBA insurance payment $ 407,751 (four hundred and seven thousand seven hundred and fifty one United States Dollars). See Article 6 for details.

As such, the total Advance Payment payable within ten (10) days of the Effective Date of this Agreement, shall be $727,751 (seven hundred twenty seven thousand seven hundred fifty one United States Dollars), which includes the DBA insurance payment. In consideration for this Advance Payment, BLACKWATER, will credit REGENCY one-twelfth (1/12) of the total Mobilization Payment against each monthly billing for twelve (12) consecutive monthly billing periods following the Effective Date of this Agreement, thus reducing the total amount billed to REGENCY in twelve (12) equal amounts. See Appendix C for monthly billing sample.

8.2 Terms and Method of Payment, Invoicing & Substantiating Documents. Billing periods shall be based on calendar months for the duration of this Agreement, see Appendix C. BLACKWATER shall provide a complete invoice to REGENCY within three (3) days (or as soon thereafter as is reasonable practicable) after the end of the monthly billing period. The invoice shall be accompanied by appropriate supporting documentation to validate expensed items as outlined in Appendix B. REGENCY shall make payment to BLACKWATER within thirty (30) days of receipt of BLACKWATER's monthly invoices.

In the event, that there are disputed invoice items, the payment terms remain in force for the items not in dispute

REGENCY shall pay BLACKWATER by wire transfer of funds in United States Dollars to BLACKWATER's designated bank account. BLACKWATER will provide REGENCY under separate cover its banking information.

8.3 Maintenance of Records. BLACKWATER shall maintain a true and correct set of records pertaining to work performed and services provided hereunder and all transactions related thereto throughout the Term of this Agreement. BLACKWATER further agrees to retain all such records for a period of not less than two years after termination of this Agreement. REGENCY may upon reasonable notice and other terms time audit any and all records of BLACKWATER relative to the work performed hereunder and all transactions related thereto for the sole purpose of determining compliance with the terms and conditions of this Agreement, as well as the invoices submitted and prices paid throughout the Term of this Agreement.

## ARTICLE 9
## WORK SITE ACCESS

Work site access to ESS locations and areas remain ESS responsibility. REGENCY will request ESS provide unhindered access to ESS sites for BLACKWATER, subject to ESS client approval, throughout the term of this Agreement to fulfill the Security

Services. REGENCY understands that without such access, BLACKWATER may be unable to effectively provide the Security Services.

## ARTICLE 10
## INSTRUCTION & DECISIONS

10.1   REGENCY will delegate its designated representative ("Designated Representative") in writing to the BLACKWATER within five (5) days of the Effective Date of this Agreement. All decisions and/or instructions issued by the REGENCY Designated Representative to BLACKWATER will be binding on BLACKWATER under the terms and conditions of this Agreement. The BLACKWATER Iraq Security Manager and Kuwait Security Manager will coordinate all actions regarding security operations through the ESS Owner Representative as well as the REGENCY Owner Representative. BLACKWATER will delegate its Iraq Security Manager and Kuwait Security Manager in writing to REGENCY within five (5) days of the Effective Date of this Agreement.

10.2   Communications Policy and Instructions. Each party agrees that it will not, without the prior written consent of the other, issue any press release or announcement or otherwise disclose the existence or nature of this Agreement and/or proposed or contemplated business arrangement(s), transaction(s), negotiation(s), or other related jointly discussed business pursuits. The two parties mutually agree to develop a standard operating procedure (SOP) in regard to the handling of press inquiries.

10.3   Accident and Incident Reporting Procedures. Due to the nature of the services being provided and the area of operations where the services will be provided, from time to time the parties may have to report on accidents or incidents involving REGENCY provided equipment or incidents involving BLACKWATER personnel and/or REGENCY provided equipment. Therefore, within thirty (30) days of execution of this Agreement the parties mutually agree to develop standard operating procedures to address accident and incident reporting.

## ARTICLE 11
## GOVERNING LAW & SETTLEMENT OF DISPUTES

11.1   Any disputes of any nature which arise between the parties, with regard to the interpretation of this Agreement or relative to the performance of any of the contractual obligations, whether such disputes arise before, during or after the execution of the Agreement, shall, if possible, be amicably settled. Notice of a dispute shall be served by one party upon the other by written notice.

11.2   Any dispute which cannot, in the opinion of either party, be amicably settled arising in connection with the present Agreement shall be finally settled by binding

arbitration. Within thirty (30) days of a party's notice to arbitrate, each party will appoint one arbitrator, with a third arbitrator to be appointed and mutually agreed between the two parties' appointed arbitrators. If the parties are unable to agree on the appointment of arbitrators within one (1) month of the non-complaining party's receipt of the complaining party's dispute, the appointment shall be subject to the ruling of the International Chamber of Commerce, in Paris, France.

11.3  Arbitration shall be conducted in accordance with the Rules of Arbitration of the International Chamber of Commerce and shall be held in Washington, D.C., and conducted in the English language.

11.4  The validity and construction of this Agreement shall be governed by the Laws of the State of North Carolina.

11.5  This Agreement shall not be construed to present any contractual or legal relationship with any third party.

## ARTICLE 12
## TERMINATION, EXTENSION & EXPANSION

12.1  Termination.

  12.1.1 In the event of non-performance of any term or condition of this Agreement by BLACKWATER, BLACKWATER will be given written notice of the non-performance. BLACKWATER will be given thirty (30) days from the date that the non-performance notice was received to rectify the noted non-performance; provided, that provided, that if the noted "non-performance" is not capable of being cured within such thirty (30) days and BLACKWATER is in good faith attempting to cure and rectify such non-performance, then BLACKWATER shall be given a reasonable time to cure such non-performance (such time not to exceed ninety (90) days). In the event the non-performance issue is not corrected within this thirty (30) (or other applicable time period) day period, REGENCY may exercise its right to terminate this Agreement. BLACKWATER may cancel this agreement upon thirty (30) days written notice for "non performance" or material breach by REGENCY, including failure to make payment to BLACKWATER on the terms and conditions set forth in this Agreement. REGENCY will be given written notice of the non-performance. REGENCY will be given thirty (30) days to rectify the noted "non performance"; provided, that if the noted "non-performance" is not capable of being cured within such thirty (30) days and REGENCY is in good faith attempting to cure and rectify such non-performance, then REGENCY shall be given a reasonable time to cure such non-performance (such time not to exceed ninety (90) days); provided, however, that the initial thirty (30) day time period shall not be extended upon REGENCY's failure to make payment to BLACKWATER on the terms and conditions set forth in this Agreement shall. In the event the non-performance issue is not corrected within a thirty (30) day period (or other applicable time period) BLACKWATER may exercise its right to cancel this Agreement.