BLACKWATER SECURITY CONSULTING, LLC et al v. WESTCHESTER SURPLUS LINES INSURANCE COMPANY    Doc. 80 Att. 12



business resulting from a breach by the Contractor in violation of this Agreement; (c) the difficulty to ascertain the impact of a breach of this Agreement on BSC's Customer and business; and (d) the difficulty that BSC may experience in obtaining timely injunctive relief. Therefore, it is expressly agreed by and between the parties that in the event the Contractor violates the terms or provisions of the Restrictive Covenants contained in this Agreement, then BSC shall be entitled to receive liquidated damages from the Contractor and the Contractor shall pay within five (5) days of notice from BSC, the total sum of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00). The liquidated damages shall be due and payable in a lump sum to BSC. It is expressly acknowledged by the Contractor that said payment shall not be interpreted nor construed as a penalty but is in fact a good faith attempt to fix damages which BSC will suffer in the event of a breach of the Restrictive Covenants. It is also agreed that this provision for liquidated damages shall not be construed to restrict BSC's right to injunctive relief but shall be BSC's exclusive remedy at law for damages.

## 16. TERMINATION.

16.1 Termination Without Cause and Without Notice. Contractor hereby acknowledges that BSC may terminate this Agreement and Contractor's Services hereunder without notice at any time with or without cause without advance notice for any reason or no reason whatsoever. In the event that Contractor is discharged pursuant to this Section, Contractor shall be entitled to compensation as provided herein for services provided to the date and hour of discharge only; provided that Contractor shall not be entitled to receive his final compensation until after returning to the U.S. The Contractor shall be responsible for reimbursement to BSC for any advanced amounts for transportation, per diem or any other costs described in Sections 3, 8, 9, 15.7, and 16 and that such amounts are subject to the provision of Section 16.4 herein.

16.2 Termination by Contractor. Contractor may terminate this Agreement only in the event that BSC fails to pay Contractor any undisputed compensation amount; provided, however, that Contractor provides BSC with written notice of such failure and BSC fails to make payment within ten (10) days from the date BSC receives written notice. Contractor hereby agrees and acknowledges that because of the nature of the Services provided to Customer and the resulting obligations of BSC to third parties, Contractor shall not have the right to terminate this Agreement without cause and Contractor hereby expressly waives the right to assert in any action or proceeding that this Agreement is lacks mutuality of obligations between the parties. In the event that Contractor voluntarily (i.e., not at the direction of BSC or Customer) refuses to fulfill his minimum Deployment commitment (as set forth in Section 6), Contractor shall have an amount equal to $200.00 times the number of days short of his sixty (60) day Deployment commitment deducted from his final payment. The parties understand that BSC may cancel this Agreement at any time for any reason or no reason at all upon notice to the other party (the "Noticed Termination Date"); provided, however that (i) if Contractor voluntarily refuses to fulfill his minimum Deployment commitment, such date shall be

Dockets.Justia.com



considered the Noticed Termination Date and Contractor shall be penalized as set forth above and (ii) upon termination of this Agreement, termination of Services or at the end of a Deployment, as the case may be, Contractor will be required to return to the United States before he is entitled to payment of any outstanding Fees.

16.3 Termination Does Not Affect Restrictive Covenants. Notwithstanding anything to the contrary contained in this Agreement, the termination of this Agreement by either party for any reason shall not affect the validity or enforceability of the restrictive covenants set forth in Sections 15.1 through 15.7. All provisions shall expressly survive the termination of this Agreement.

16.4 Set-Off. Contractor hereby agrees and acknowledges that BSC shall have the right to set-off and deduct from any salary and bonus otherwise due the Contractor an amount equal to any indebtedness of the Contractor to BSC and any and all losses, damages, Transportation Costs, and advanced per diem amounts pursuant to Sections 3, 8, 9, 15.7, and 16, and any other costs, expenses and attorney fees incurred by BSC as a result thereof.

16.5 BSC Assets. Contractor agrees that upon termination providing Services to BSC under this Agreement, all proprietary interests of BSC and its business assets, tangible or intangible, which Contractor deals with or develops, shall remain the sole or exclusive property of BSC and in no event shall Contractor acquire any interest therein or right to use same without the express written permission of BSC. Contractor agrees that in the event he ceases to provide services to BSC, he shall promptly return to BSC, all documents, forms, contracts, lists, maps, completed work or work in progress relating to the affairs of BSC and any personal property of BSC in his possession at the time of termination. All title to supplies, financial records, maps, charts, records, Customer information, equipment and furnishing shall remain the sole property of BSC.

17. INDEMNIFICATION. Contractor hereby agrees to indemnify and hold harmless BSC, its shareholders, officers, directors, Contractors, Affiliates, representatives, successors and assigns from any and all claims, judgments, awards, actions, causes of action, liabilities, asserted by anyone for damages, debts, costs, expenses, obligations and liabilities relating to or in any way arising from the following:

17.0.1 Contractor's failure to pay taxes as set forth in this Agreement;

17.0.2 Contractor's use of facilities or equipment owned and operated by BSC, Blackwater Lodge and Training Center, Inc., AWS or Customer;

17.0.3 Contractor's violation of Sections 12 and 16 hereof;

17.0.4 Contractor's breach of any restrictive covenants set forth herein;

17.0.5 Contractor's breach of any of Contractor's representations and warranties set forth in this Agreement;



17.0.6 Any of the Liabilities for which Contractor has agreed to hold harmless BSC herein;

17.0.7 Contractor's failure to obtain any protective insurance, including, medical and dental insurance, short and long term disability insurance, workers compensation insurance, life insurance or medical evacuation insurance; and

17.0.7 Contractor's breach of any of the terms of this Agreement.
The Indemnification procedures identified in Schedule 17 are attached hereto and deemed a part of this Agreement.

18. DRUG TESTING. Contractor hereby agrees and acknowledges that it is a condition of providing Services to BSC under the terms of this Agreement that all Contractors refrain from using drugs on and off the job. For purposes of assuring compliance with this Section, Contractor hereby consents to be tested for among other things, any or all of the following substances: (i) alcohol; (ii) amphetamines; (iii) cannabinoids; (iv) cocaine; (v) phencyclidine (PCP); (vi) methaqualone; (vii) opiates; (viii) barbiturates; (ix) benzodiazepines; (x) synthetic narcotics including, without limitation methadone and propoxypene , upon request by BSC.

19. NOTICES. Any notice, request, demand, consent, approval or other communication required or permitted under this Agreement (collectively a "notice") shall be (a) in writing, and (b) addressed by the sender to the other party at the address and in the manner set forth below:

If to BSC: Blackwater Security Consulting LLC
Attn: Brian Berrey, Director
850 Puddin Ridge Road
Moyock, NC 27958
Fax No.: (252) 435-6388

If to Contractor: To such Contractor's residential address on file with BSC. Except as otherwise provided in this Agreement, each notice shall be effective and shall be deemed delivered on the earlier of: (i) its actual receipt, if delivered personally, by telefax, courier service, or, (ii) on the third (3rd) day after the notice is postmarked for mailing by first-class, postage prepaid, certified or registered, United States mail, with return receipt requested (whether or not the return receipt is subsequently received by the sender).

20. MISCELLANEOUS PROVISIONS.

20.1 Law/Exclusive Venue/Arbitration. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, applicable to contracts made and to be fully performed therein, excluding its conflict of laws principles. Contractor and BSC hereby agree that any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be



resolved by binding arbitration according to the rules of the American Arbitration Association and shall be conducted in Currituck or Camden County in North Carolina. The arbitrators may award attorneys fees to the prevailing party in any arbitration proceeding. All costs and expenses of the arbitration, including actual attorney's fees, shall be allocated among the parties according to the arbitrator's discretion. The arbitrator's award may be confirmed and entered as a final judgment in the courts noted above and enforced in accordance with rules of the American Arbitration Association. Proceeding to arbitration and obtaining an award thereunder shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil action of a summary nature where the relief sought is predicated on there being no dispute with respect to any fact or relief of an injunctive nature. Contractor hereby waives any rights to seek removal of any dispute to the state or federal courts.

20.2 Entire Agreement. This Agreement, and any agreements incorporated herein, contain the entire agreement of the parties on the subject matter hereof, and replace any prior agreement or agreements between BSC and Contractor in their entirety. This Agreement may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. The parties hereto waive any right to assert in any proceeding that they were induced to enter into this Agreement by any promise, fact, occurrence, warranty, statement, contract, representation, or agreement (collectively "Representation") which is not expressly set forth in this document and all such Representations are merged herein.

20.3 Time. For all purposes of this Agreement time is of essence.

20.4 Counterparts/Facsimile. This Agreement may be executed in several counterparts, each of which shall be deemed an original and such counterparts shall together constitute and be one and the same instrument. A telefaxed copy of this Agreement and all signatures thereon shall constitute an original for all purposes.

20.5 Construction of Agreement. This Agreement has been prepared by the attorneys for BSC and the parties have read and negotiated all of the language used in this Agreement. The parties acknowledge and agree that because all parties (and their counsel to the extent Contractor requested that they review the Agreement) participated in negotiating and drafting this Agreement, no rule of construction shall apply to this Agreement which construes any language, whether ambiguous, unclear or otherwise, in favor of, or against any party by reason of that party's role in drafting this Agreement.

20.6 Termination of Prior Contract. Contractor agrees and acknowledges that any prior contract between BSC and Contractor is hereby terminated. Notwithstanding the foregoing, all restrictive covenants regarding proprietary and confidential information contained in any prior contract shall remain in full force and shall binding on Contractor.



20.7 Commission Warranty. Contractor represents and warrants to BSC that Contractor has not engaged the services of any broker, agent, employment agency or other individual entity which will or is entitled to claim any commissions, fees or other amounts in connection or in any way relating to this Agreement or his Services hereunder. Contractor shall defend, indemnify and hold BSC harmless from any and all fees, commission claims, causes of action, attorney fees, obligations or liabilities of any agent, broker or employment agency in any way relating to Contractor's association with BSC pursuant to this Agreement.

20.8 Headings. The headings in this Agreement are for purposes of reference only and shall not limit or otherwise affect the meaning hereof.

20.9 Gender. Any reference herein to the masculine, the feminine or the neuter shall include the masculine, the feminine and the neuter, and any reference to the singular or plural shall include the opposite thereof, as the context so requires.

20.10 Waiver of Jury Trial. The parties hereto knowingly, voluntarily, and intentionally waive the right any of them may have to a trial by jury in respect to any litigation arising out of, under, or in connection with this Agreement and any other agreements contemplated to be executed in connection herewith, or any course of conduct, course of dealings, statements (whether verbal or written), or actions of any party (including, without limitation, any action to rescind or cancel this Agreement and any claims or defenses asserting that this Agreement was fraudulently induced or is otherwise void or voidable); this waiver being a material inducement for BSC to enter into this Agreement with Contractor.

20.11 Legal Expenses. In the event BSC is required to take action against Contractor to enforce the term, covenants and conditions of this Agreement and Release, or to mediate an action brought by the other party, BSC shall be reimbursed by Contractor for such costs as may be incurred in such action, including any appeal there from, including reasonable attorney's fees, costs and other fees, not to exceed insurable limits.

20.12 Execution of Documents. If, during the performance under this Agreement, the Contractor assumes the custody of BSC funds or takes possession of property of any nature whatsoever and wherever situated, which property has in fact been purchased with monies of BSC, the Contractor hereby recognizes and acknowledges the existence of a trust relationship, either express or constructive, and agrees to execute whatever documents that may be required by BSC to evidence this relationship.

20.13 Recital. The parties hereby acknowledge and agree that the terms of this Agreement and Release are contractual and not a mere recital and there are not any other agreements, understandings or representations made by BSC except as expressly stated in this Agreement and Release. Further, Contractor agrees that if any provision of this Agreement and Release is found to be unenforceable, the remaining terms shall remain in full force and effect.