BLACKWATER SECURITY CONSULTING, LLC et al v. WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al						Doc. 81 Att. 1

# EXHIBIT B

# EXHIBIT B

Dockets.Justia.com

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:05-CV-48 FL (1)


FEB 2 2 2005

RICHARD P. NORDAN, as Ancillary )
Administrator for the separate Estates of )
STEPHEN S. HELVENSTON, MIKE R. )
TEAGUE, JERKO GERALD ZOVKO and )
WESLEY J.K. BATALONA, )
)
           Plaintiffs, )
)
v. )
)
BLACKWATER SECURITY )
CONSULTING, LLC, a Delaware Limited )
Liability Company; BLACKWATER )
LODGE AND TRAINING CENTER, INC., )
a Delaware Corporation, JUSTIN L. )
MCQUOWN, an individual; and THOMAS )
POWELL, an individual, )
)
           Defendants. )
_____ )

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO THE BLACKWATER
DEFENDANTS' MOTION TO DISMISS**

      **COMES NOW** the Plaintiff in the above-entitled action, and hereby submits the

following response to Defendants Blackwater Security Consulting, LLC, and Blackwater Lodge

and Training Center, Inc.'s Motion to Dismiss, filed pursuant to Federal Rules of Civil Procedure

Rules 12(b)(6) and 9(b).

## INTRODUCTION

      The Plaintiff in this case has brought two state court causes of action for Wrongful Death

and Fraud on behalf of the estates of four individuals killed in Fallujah, Iraq, on March 31, 2004.

The Defendants improperly removed this case to federal court, under the premise that there exists federal subject matter jurisdiction based upon their anticipated defenses.

Defendants Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc., (hereinafter collectively referred to as "BLACKWATER") filed a Motion to Dismiss, claiming that the Complaint fails to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(6), on the following grounds: (1) the Defense Base Act provides that the workers compensation benefits articulated by the Longshore and Harbor Workers Compensation Act are the Plaintiff's exclusive remedy; and (2) the release, waiver and covenant provisions of the Decedents' Independent Contractor Service Agreements preclude the instant action. In addition, BLACKWATER has also moved to dismiss this case claiming that the Second Cause of Action for Fraud is not plead with the particularity required by Federal Rules of Civil Procedure 9(b).

BLACKWATER's Motion to Dismiss must be denied for the following reasons:

1.  This court lacks federal subject matter jurisdiction over this case, in that none of the claims contained in the Plaintiff's Complaint "arise under" the Constitution, laws or treaties of the United States, and the Defendants' anticipated defenses cannot form the basis of federal subject matter jurisdiction.[1]

---

[1] Plaintiff filed a Motion for Remand on February 11, 2005, which should be decided prior to ruling on the instant Motion to Dismiss. *See Michael v. Bayer Corporation*, 203 U.S. Dist. LEXIS 860, *6 ("However, before this Court can consider Defendants' Motions to Dismiss a determination must be made as to whether the court has jurisdiction over this action and, thus, whether removal was proper.").

2

2. The Defense Base Act does not apply to this action for several reasons.

   a. The Defense Base Act only applies to "employees," and does not apply to independent contractors, such as the Decedents in this case.

   b. The Defense Base Act only applies to six specific categories of work, none of which the Decedents were engaged in at the time of their deaths.

   c. The Defense Base Act, and its extension of the Longshore and Harbor Workers Compensation Act, only applies to accidental or negligent conduct, and does not apply to the intentional conduct alleged in the Complaint.

3. The provisions of the Decedents' Independent Contractor Service Agreements are unenforceable, including the provisions relating to any releases, waivers or covenants, in that the contracts were induced by fraud and will be rescinded.

4. The Plaintiff's Complaint consists of 55 paragraphs of detailed factual allegations, which clearly set forth the facts supporting the Plaintiff's Second Cause of Action for Fraud with the particularity required by Federal Rules of Civil Procedure 9(b).

In all, this court lacks federal subject matter jurisdiction over the case, and should decline to rule on this Motion to Dismiss, but instead should remand the matter back to state court, pursuant to the Plaintiff's pending Motion for Remand, filed on February 11, 2005. Alternatively, the motion to dismiss should be denied for the numerous reasons set forth herein.

## STATEMENT OF FACTS

On January 5, 2005, Plaintiff Richard P. Nordan, as Ancillary Administrator for the

separate Estates of Scott S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, filed a Complaint in North Carolina Superior Court, Wake County, alleging two state court causes of action for wrongful death and fraud. The Complaint alleges a very detailed set of facts regarding the Defendants' intentional conduct in causing the deaths of Scott S. Helvenston, Mike R. Teague, Jerko Geraldo Zovko and Wesley J.K. Batalona ("Decedents"), as well as the BLACKWATER's intentional conduct of fraudulently inducing the Decedents to enter into their respective Independent Contractor Service Agreements.

In addition to the multitude of facts concerning the Defendants' wrongful, intentional conduct, the Complaint also alleges facts concerning certain contracts under which the Decedents were performing work for BLACKWATER. More specifically, there are contractual relationships alleged between three separate companies. One company is a Cyprus Corporation named ESS Support Services Worldwide, Eucharist Support Services International, LTD. ("ESS"). ESS is a business with two divisions, the most relevant of which provides catering support services. [*Complaint*: ¶18.] The other division provides design and building services to U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait. [*Id.*] It is worth noting that the allegations contained in the Complaint related to ESS's "catering support services," and not the other division of ESS which provides services to the "U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait." [*Id.*]

The second company about which there are factual allegations in the Complaint is a Kuwaiti company named Regency Hotel and Hospital Company ("REGENCY"). [*Complaint*: ¶19.] The third company described in the Complaint is collectively referred to as "BLACKWATER," which consists of Blackwater Security Consulting, LLC, a Delaware Limited

4

Liability Company, and Blackwater Lodge and Training Center, Inc., a Delaware Corporation. [*Complaint*: ¶¶5-7].

The Complaint specifically alleges that BLACKWATER and REGENCY joined forces to submit a bid to ESS to be "the provider of security services for the food convoys." [*Complaint*: ¶21.] For the purpose of analyzing the instant motion to dismiss for failure to state a claim upon which relief may be granted, these are the relevant facts concerning the contractual arrangements between these three companies. **There are absolutely no allegations contained anywhere in the Complaint that indicate that BLACKWATER was a subcontractor to the U.S. Armed Forces or that the Decedents were working for the U.S. government. Such allegations are exclusively a creation of the Defendants' Motion to Dismiss.** [*See Defendants' Memo of Law*: Page 1].

The factual allegations actually contained in the Complaint give rise to the two state law causes of action for wrongful death and fraud. Essentially, the Defendants made false representations to the Decedents to induce them to enter into their respective Independent Contractor Service Agreements, and travel to Iraq and surrounding countries to provide security services for ESS's catering division. The Decedents entered into their respective Independent Contractor Service Agreements in reliance upon the Defendants' representations that they would be provided with certain protections, tools and information to allow them to perform their jobs.

When the Decedents were hired by BLACKWATER, they were hired as "independent contractors." As alleged in the Complaint, the Decedents were not "employees" of BLACKWATER, but instead were independent contractors: "Helvenston, Teague, Zovko and Batalona, and each of them, were hired by BLACKWATER as independent contractors, and

5

were at no relevant time employees of BLACKWATER." [*Complaint* ¶31.]

The Decedents were each told by the Defendants that they would be afforded certain protections, tools and information to be able to perform their jobs. [*Complaint*: ¶13.] However, in an effort to cut costs and improve their bottom line, BLACKWATER did not provide the Decedents with these represented protections, tools and information. [*Complaint*: ¶15.] As a result, the Defendants intentionally and knowingly sent the Decedents into known harm's way without the needed and promised protections. [*Complaint*: ¶16.]

In addition, there existed animosity between one of the managing agents of BLACKWATER, Defendant Justin McQuown, and one of the Decedents, Scott Helvenston. [*Complaint*: ¶¶40-42.] This animosity resulted in Justin McQuown pulling Scott Helvenston off of his pre-designated team, assigning him to a new team consisting of individuals he had never before met, and sending him into Baghdad prior to the commencement of the security contract with ESS, at a time when Helvenston was physically ill. [*Complaint*: ¶¶43-49.]

Once in Baghdad, the Decedents were sent on a security mission by another managing agent of BLACKWATER, Defendant Tom Powell, prior to the commencement date of the contract with ESS. The Decedents were sent out on this security mission, without the required six-man team, without armored vehicles, without a rear gunner in each vehicle, without heavy machine weapons, without a Risk Assessment, without a pre-trip inspection of the route, and without even so much as a map of the area. With the ESS food convoy in their charge, the Decedents ultimately became lost, and ended up driving through the center of Fallujah. This was at a time when even the U.S. military would not travel into the heart of Fallujah. [*Complaint*: ¶¶57-60.]

As the Decedents were lost, without the needed protections, tools and information which BLACKWATER initially represented they would have, they were ambushed by insurgents in Fallujah, who were able to literally walk up behind the vehicles and shoot all four men with small arms at close range. [*Complaint*: ¶ 61.] Their bodies were pulled into the streets, burned and their charred remains were beaten and dismembered. Ultimately, two of the burnt bodies were strung up from a bridge over the Euphrates River. [*Id.*]

In sum, the factual allegations contained in the Complaint do not allege that the Decedents or BLACKWATER were working subject to a contract with the U.S. Armed Forces. Instead, the Complaint alleges a contractual relationship between ESS (a Cyprus company), REGENCY (a Kuwaiti company), and BLACKWATER (a pair of related Delaware companies). The Complaint further alleges that BLACKWATER engaged in fraudulent conduct by inducing the Decedents to enter into their respective Independent Contractor Service Agreements, and the Defendants knowingly and intentionally caused the wrongful death of the Decedents. Neither of the causes of action are premised upon negligence or accidental conduct. Moreover, the Decedents were all hire by BLACKWATER as independent contractors and were never employees.

Based upon the factual allegations contained in the Complaint, the Defense Base Act does not apply to the instant case, the Independent Contractor Service Agreements are unenforceable because they were induced by fraud, and the detailed Complaint meets the pleading specificity requirement of Federal Rules of Civil Procedure 9(b). Hence, if this court finds federal subject matter jurisdiction, the instant motion should be denied on its merits.

## STATEMENT OF LAW

### A. This Court Lacks Federal Subject Matter Jurisdiction.

On January 24, 2005, the Defendants removed the instant action from North Carolina state court to the instant federal court. On February 11, 2005, the Plaintiff filed a Motion for Remand, in that the claims contained in the Complaint do not "arise under" the Constitution, laws or treaties of the United States, and the Defendants' anticipated defenses, *including federal preemption*, do not give rise to federal subject mater jurisdiction. [*See Motion for Remand*]

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 376 (1994). "Accordingly, the propriety of removal depends on whether the case falls within the provisions of *28 U.S.C. §1331*: 'The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Mulcahey v. Columbia Organic Chemicals Company, Inc.*, 29 F.3d 148, 151 (4th Cir. 1994).

> [Whether] a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the Plaintiff's statement of his own claim in the bill or declaration, <u>unaided by anything alleged in anticipation of avoidance of defenses which it is thought the Defendant may interpose.</u> [Emphasis added.]
> *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 43 U.S. 1, 9 (1983).

"Federal pre-emption is ordinarily a federal defense to the Plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63 (1987). **"Thus, it is now settled law that a case may *not* be removed to federal court on the basis of**

8

**a federal defense, including the defense of preemption, even if the defense is anticipated in the Plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.** [Italics in original.] [Emphasis added.]" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987); *see also Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 472 (1998); and *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003).

In the instant case, the Defendants' Notice of Removal based upon the alleged existence of federal jurisdiction is premised *exclusively* upon their claim that the Plaintiff's action is preempted by federal law (i.e., The Defense Base Act). However, the century-old rule of law concerning removal jurisdiction clearly mandates that federal jurisdiction must be derived from the claims contained in the Plaintiff's Complaint. An anticipated defense to the Plaintiff's Complaint, including a defense involving federal preemption, does not serve as a basis for federal subject matter jurisdiction for the purpose of removal. Thus, this court lacks subject mater jurisdiction over this case to be able to rule on the instant motion to dismiss.

Moreover, there is no "complete preemption" in this matter by the defense of the Defense Base Act or the LHWCA. In *Aaron v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, 867 F.2d 1157 (5th Cir. 1989), the Fifth Circuit analyzed a case on point with the instant action. In *Aaron*, the survivors of a longshoreman brought a wrongful death action in state court. The defendants removed the case to federal court, based upon their anticipated defense of the exclusivity provisions of the Longshore and Harbor Workers Compensation Act ("LHWCA"). The Defendants then filed a motion to dismiss. In return, the plaintiffs filed a motion to remand for lack of subject matter jurisdiction. The District Court agreed with the defendants, and dismissed the action. *Id.* at 1159.

On appeal, the Fifth Circuit reversed the dismissal. In doing so, it analyzed the case with respect to the well-pleaded complaint rule, which prohibits the removal of an action to federal court based upon an anticipated defense. In addition, the court analyzed the exception to this general rule, which permits removal of an action if federal law completely preempts an entire area of state law, pursuant to the U.S. Supreme Court's decision in *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968). ("*Avco* Exception"). After analyzing *Avco* and its progeny, the court expressly found that there is no complete preemption under the LHWCA, which would permit removal of an action based upon said anticipated defense. *See Id.* at 1164.

Nonetheless, the defendants in *Aaron* argued that the LHWCA expressly denies the cause of action in favor of the Plaintiffs, and thus there exists completely preemption. However, the Fifth Circuit rejected this argument and found that no complete preemption exists.

> However, the "express denial" of a cause of action will always be present where federal law preempts state law. Every time federal preemption is asserted as a defense, and the defendant seeks to use that defense as a basis for removal jurisdiction, the defendant can assert that the "express denial" language of *Franchise Tax* is satisfied. Something more must therefore be required to create removal jurisdiction if the well-pleaded complaint rule is to have continued vitality, a result clearly indicated by the cases. *Id.* at 1165.

Recognizing that there exists complete preemption with respect to ERISA and LMRA, the court found that the LHWCA is not akin to those statutes, and does not create federal subject matter jurisdiction. *See Id.* at 1165. "The argument that the LHWCA is among the few statutes to which the *Avco* exception will apply must therefore fail. [ ] The LHWCA is, in this case, nothing more than a statutory defense to a state-court cause of action -- the classic circumstance of non-removability." *Id.* at 1165-66. Hence, the court reversed the order dismissing the action and remanded it to state court.

When the removal of an action to federal court has been challenged and a motion to dismiss is concurrently pending, it is most prudent for the court to resolve the issue of jurisdiction prior to ruling on the motion to dismiss. Such is obviously the case because if the court grants the motion to remand for want of jurisdiction, it should not rule on the pending motion to dismiss. This issue was recently addressed by the U.S. District Court for the Middle District of North Carolina. In *Michael v. Bayer Corporation*, 2003 U.S. Dist. LEXIS 806, the court was faced with the issue of whether removal to its federal court was proper, while a motion to dismiss was pending. The court decided: **"However, before this Court can consider the Defendants' Motions to Dismiss a determination must be made as to whether the court has jurisdiction over this action and, thus, whether removal was proper."** *Id.* at *6.

Finding that the removal was improper, the court remanded the action to the North Carolina state court and ruled: "As such, the Court is without jurisdiction to decide the issues raised by the Defendants' Motions to Dismiss beyond the question of whether the Court has proper jurisdiction over this matter." *Id.* at *12.

In the instant matter, this court is without subject jurisdiction over this action, and thus the case should be remanded to state court, without ruling on the instant Motion to Dismiss.

**B.    Motions to Dismiss under Rule 12(b)(6) are Strongly Disfavored.**

The standard for evaluating a motion to dismiss was articulated by the U.S. Supreme Court in *Conely v. Gibson*, 355 U.S. 41 (1957): "In appraising the sufficiency of the Complaint we follow, of course, the accepted rule that a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support

11

of his claim which would entitle him to relief." *Id.* at 46. In expanding upon this rule, the Supreme Court noted that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Id.* at 47.

The Fourth Circuit has similarly stated that a motion to dismiss should be denied, unless there is a <u>certainty</u> that the Plaintiff can in no way prevail. "We have long held that a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the Plaintiff would be entitled to no relief under any state of facts which could be proved in support of its claim." *Rogers v. Jefferson-Pilot Life Insurance Company*, 883 F.2d 324, 325 (4th Cir. 1989).

"The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint and not the facts that support it." *Neitzeke v. Williams*, 490 U.S. 319, 326-27 (1989). In considering the legal sufficiency of the Complaint, all of the allegations contained in the Complaint must be deemed true and all reasonable inferences must be viewed in favor of the Plaintiff:

> [A] *Rule 12 (b)(6)* motion should only be granted if, after accepting all well-pleaded allegations in the Plaintiff's Complaint as true and drawing all reasonable factual inferences from those facts in the Plaintiff's favor, it appears certain that the Plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Courts have traditionally held that, due to the standard of review for a motion to dismiss for failure to state a claim upon which relief can be granted, said motions are <u>disfavored</u>. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991)

["Because a dismissal under Rule 12(b)(6) is accorded res judicata effect, such dismissals are generally disfavored by the courts."] Recognizing the strong public policy that cases should be decided on their merits and not merely upon their pleadings, the Fifth Circuit has instructed that "final disposition of a civil action on the basis of bare bones pleadings is torturous thing. How a standard so simply expressed, so often repeated, is apparently so often overlooked without even so much as a deferential mention of it is hard to understand." *Arthur H. Richland Co. v. Harper*, 302 F.2d 324, 325 (5th Cir. 1962).

Courts are cautious in dealing with motions to dismiss for failure to state a claim upon which relief can be granted, particularly where to grant the motion would terminate litigation before parties have had their day in court. *See Gaine v. Brotherhood of R.&S.S. Clerks, etc.*, 177 F.Supp. 421, 430 (D. Pa. 1959), *aff'd* 275 F.2d 342 (3rd Cir. 1960). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Desardouin v. United Parcel Service, Inc.*, 285 F.Supp.2d 153, 157 (D.Ct. 2003).

Since a Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the Complaint, which must all be deemed true and in favor of the Plaintiff, <u>a Rule 12(b)(6) motion should not be used to test the applicability of any of the Defendants' defenses</u>. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, **or the applicability of defenses**." [Emphasis added.] *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

C.  **The Defense Base Act Does Not Apply to the Instant Action.**

Keeping in the forefront of the court's analysis the principle that all of the facts contained within the Plaintiff's Complaint are deemed true, this case simply does not give rise to the application of the Defense Base Act. First, the Defense Base Act applies to "employees" and not "independent contractors." Second, the Defense Base Act applies only to six limited categories of employment, none of which encompass the Decedents' work as articulated in the Complaint. Third, the Defense Base Act and the Longshore and Harbor Workers' Compensation Act apply only to negligent or accidental conduct, and do not apply to the intentional torts alleged in the Plaintiff's Complaint. As described in further detail below, assuming all of the allegations contained in the Plaintiff's Complaint are true, the Defense Base Act simply does not apply, and thus its exclusivity provision cannot bar the Plaintiff's action.

1.  **The Defense Base Act Applies Only to Employees and Not Independent Contractors.**

The Defense Base Act is articulated in 42 U.S.C. § 1651, *et seq.* More specifically, Section 1651(a) provides, in relevant part: "[T]he Longshoreman's and Harbor Workers' Compensation Act . . . shall apply in respect to the injury or death of any <u>employee</u> engaged in any employment --" within six specific categories of work. [Emphasis added.] 42 U.S.C. §1651(a). In addition to the plain language of the statute case law across the country discussing the Defense Base Act exclusively applies its provisions to "employees" engaged in the six categories of work described in Section 1651(a).

However, the Decedents in the instant case were not "employees" of BLACKWATER, but instead were independent contractors. The allegations in the Plaintiff's Complaint, which

14

must be deemed true for the purpose of the instant motion to dismiss, specifically state as follows: "**Helvenston, Teague, Zovko and Batalona, and each of them, were hired by BLACKWATER as independent contractors, and were at no relevant time employees of BLACKWATER.**" [*Complaint* ¶31.] Furthermore, it is alleged that each of them entered into Independent Contractor Service Agreements.[2] [*Complaint* ¶ 31.]

It has long been held in American jurisprudence that there exists a substantial legal distinction between employees and independent contractors. In fact, the Defendants themselves have cited case law in their Memorandum of Law that draws a distinction between independent contractors and employees for the purpose of recovering workers compensation benefits. [*See Defendants' Memo of Law*; fn. 2, citing *Williams v. A.R.L., Inc.*, 133 N.C.App. 625, 629 (1999).

Considering that the Defense Base Act applies only to "employees," the Defendants are attempting to now categorize the Decedents' as employees of BLACKWATER, and not independent contractors. [*See Defendants' Memo of Law* fn. 2.] However, for the purpose of the analysis on the instant motion to dismiss, the court need only consider the allegations contained in the Complaint, when deemed true, indicate that all of the Decedents signed "Independent Contractor Service Agreements," and that each of them were independent contractors, and were

---

[2] Although the Plaintiff argues that the Court should only consider those facts contained in the Complaint [*See Subsection C1-2 below*], to the extent the Court considers outside materials, such as the Independent Contractor Service Agreements submitted by the Defendants, it is critical to note that BLACKWATER itself definitively claims in those contracts that the Decedents were independent contracts, and not employees: "Contractor acknowledges that it is solely an independent contractor. Nothing in this Agreement shall be deemed to constitute either BSC, the Contractor or Customer as an agent, representative, partner, or joint venture or employee of the other party for any purpose. [ ] Contractor understands that he is not entitled to any employee benefits from BSC, including workers' compensation benefits, life insurance, long term disability, health and dental benefits, participation in 401k plan or any other benefits." [*Independent Contractor Service Agreements*: ¶ 20.15.]

never employees of BLACKWATER. [*Complaint* ¶31.]

Since the Defense Base Act only applies to employees (similar to most state workers' compensation acts), and since the Decedents were <u>not</u> employees of BLACKWATER, but instead were independent contractors, the Defense Base Act simply does not apply to the instant action. Consequently, the Defendants' Motion to Dismiss, based upon the exclusivity provisions of the Defense Base Act, should be denied.

### 2. The Decedents' Employment Does Not Fall Into the Categories Covered by the Defense Base Act.

The Defense Base Act applies to any injury or death of an "employee" engaged in six specific categories of employment. *See* 42 U.S.C. § 1651(a)(1)-(6). Although the work being performed by the Decedents, as alleged in the Complaint, does not fall within <u>any</u> of these six categories of employment, the Defendants argue in their Motion to Dismiss that category four applies. Section 1651(a)(4) relates to employment "under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States . . . ." 42 U.S.C. §1651(a)(4).

This category of employment under the Defense Base Act does not apply to the instant case, in that, pursuant to the allegations contained in the Complaint, the Decedents were not engaged in employment under a contract with the United States. The structure of the contracts articulated in the Complaint, which are deemed to be true, is extremely clear. A Cyprus Corporation named ESS entered into a contract with a Kuwaiti Corporation named REGENCY.

REGENCY then entered into a contract with BLACKWATER. [*Complaint*: ¶¶18-22.] The services for which BLACKWATER entered into the contract with REGENCY (and on a higher level ESS) were to provide security services "for ESS's catering operations in the Middle East." [*Complaint*: ¶21.] In turn, BLACKWATER then entered into the Independent Contractor Service Agreements with the four Decedents. [*Complaint*: ¶31.]

Nowhere within the Complaint are there any allegations whatsoever that the Decedents were working pursuant to a contract with the United States. Even the Defendants themselves cannot cite this court to any such contract with the United States. The only mention of such a contract with the United States is defense counsel's conjecture in the Memorandum of Law in support of the Motion to Dismiss. [*Defendants' Memo of Law*: Pg. 2.]

However, even this conjecture misinterprets the allegations contained in Paragraph 18 of the Complaint. Paragraph 18 indicates that ESS is "a business with two divisions: <u>one which provides catering support services</u> and <u>the other which provides design and building services to U.S. Armed Forces and other U.S. contracting agencies in Iraq and Kuwait</u>." [Emphasis added.] [*Complaint* ¶18.] What is misinterpreted by the Defendants is the fact that the Complaint alleges that BLACKWATER and the Decedents entered into a contract to support ESS's "catering services." [*Complaint*: ¶¶21-22.] However, there are <u>no</u> allegations that indicate BLACKWATER entered into a contract to provide security services for ESS's other division, which provides design and building services to the U.S. Armed Forces.

Nonetheless, the Defendants have attempted to categorize the Decedents' employment as one in which they provided security services for the U.S. Armed Forces, and thus *somehow* had entered into an unidentified contract with the United States. However, this concept is purely a

17