# EXHIBIT C

# EXHIBIT C

Dockets.Justia.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**CIVIL ACTION NO. 5:05-CV-48-FL(1)**



FILED

JAN 3 1 2005

US DISTRICT COURT, EDNC
CLERK
BY_____ DEP. CLK

| | |
|---|---|
| RICHARD P. NORDAN, as Ancillary Administrator for the separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J. K. BATALONA, <br><br> Plaintiffs, <br><br> v. <br><br> BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation, JUSTIN L. McQUOWN, an individual; and THOMAS POWELL, an individual, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **MEMORANDUM OF LAW OF BLACKWATER SECURITY CONSULTING, LLC AND BLACKWATER LODGE AND TRAINING CENTER, INC., IN SUPPORT OF THEIR MOTION TO DISMISS** |

Pursuant to Federal Rules 12(b)(6) and 9(b), as well as Local Rule 7.1, Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. ("Blackwater") respectfully submit this Memorandum of Law in Support of Their Motion to Dismiss.

According to the Complaint, Plaintiff Richard P. Nordan was appointed as ancillary administrator of the estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona ("Decedents"). (Compl. ¶¶ 1-4). Plaintiff alleges wrongful death and contract claims against Blackwater. (*Id.* ¶¶ 68-96). Plaintiff's claims are based on Decedents' 2004 murders by insurgents in Iraq. (*Id.* ¶ 12). Decedents were murdered while they worked in support of Blackwater's contract serving the United States military effort in Iraq. (*Id.* ¶¶ 18-22). As such, the claims are preempted and barred by the Defense Base Act, 42 U.S.C. § 1651, *et seq.*

("DBA"), which displaces all other remedies, including those sought under state or common law. Accordingly, this action should be dismissed.

<h2 style="text-align:center">FACTS</h2>

This case commenced by the issuance of summons and filing of the Complaint in Wake County Superior Court on January 5, 2005. On January 24, 2005, with the consent of all Defendants, Blackwater removed this action to the United States District Court for the Eastern District of North Carolina based on complete federal preemption and the unique and paramount federal interests in the utilization of and reliance on contractors and subcontractors who support the United States Armed Forces and other United States agencies in a foreign war zone.[1]

Plaintiff alleges the following operative facts. Blackwater provides security for ESS Support Services Worldwide, Eurest Support Services (Cyprus) International, Ltd. ("ESS"), which in turn provides food support services and other services to the United States Armed Forces and other United States agencies and their contractors in both Iraq and Kuwait. (Compl. ¶¶ 18, 21). On March 31, 2004, while working for Blackwater Security Consulting, LLC ("BSC"), the Decedents were attacked and murdered by rebel insurgents in Fallujah, Iraq. (*Id.* ¶ 12). At the time they were murdered by insurgents, Decedents were on a security mission to transport trucks within Iraq to U.S. Army Camp Ridgeway. (*Id.* ¶¶ 12, 59).

On October 18, 2004, the U.S. Department of Labor, District Director, Office of Workers' Compensation Programs, Division of Longshore and Harbor Workers' Compensation, determined that Decedent Zovko was in the employ of Blackwater, that Blackwater had insured the DBA liability, and that Decedent Zovko "while performing service as an employee for the employer, sustained injuries resulting in his death and that such death comes within the purview

---

[1] *See* Blackwater's Notice of Removal, No. 5:05-CV-48-FL(1), filed January 24, 2005 ("Removal").

of the [DBA]."[2] (Exhibit A, DBA Compensation Order, *Zovko v. Blackwater Sec. Consulting & Fidelity & Cas. Co. of N.Y.*, No. 02-135369 (Dep't of Labor, Oct. 18, 2004).[3] The Complaint distinguishes in no material respect between the employment status or duties of Decedent Zovko and the other Decedents.

The Complaint alleges two causes of action against Blackwater, and one cause of action against individuals who have worked with the company, Justin McQuown and Tom Powell (collectively, "Defendants"). First, the Complaint alleges that Defendants are liable for wrongful death. (Compl. ¶¶ 68-79). Second, the Complaint asserts a cause of action against Blackwater for "rescission" of the Decedents' individual service contracts with Blackwater. (*Id.* ¶¶ 80-96). Blackwater is alleged to have intentionally or recklessly made false statements to Decedents "inducing them to enter into their respective Independent Contractor Services Agreements and accept employment with Blackwater for the ESS project."[4] (*Id.* ¶¶ 80-90).

---

[2] While the Decedents are styled in their contracts as "Independent Contractors," the label is not determinative of either an employer's obligation to purchase DBA liability insurance or the Department of Labor's determination that an individual is a statutory employee. *See, e.g., Williams v. ARL, Inc.*, 133 N.C.App. 625, 629, 516 S.E.2d 187, 191 (1999) (noting that employment relationship is a legal question, and that the actual relationship for purposes of worker's compensation does not turn on the parties' designation in a contract); *Burbank v. K.G.S., Inc.*, 12 BRBS 776 (1980) (same).

[3] Pursuant to Fed. R. Evid. 201, Blackwater requests that the Court take judicial notice of the prior administrative determination and Compensation Order by the designated plenary authority for such determinations. *See* 33 U.S.C. § 919; *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (on a motion to dismiss, a court may consider allegations contained in the complaint, exhibits attached to the complaint, matters of public record and certain indisputably authentic documents); *Briggs v. Newberry County Sch. Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992) (considering and taking notice of, as part of a Rule 12(b)(6) motion to dismiss, the record of a prior administrative hearing), *aff'd*, 989 F.2d 491 (4th Cir. 1993).

[4] Blackwater disputes these allegations and many others in the Complaint but must, for purposes of this motion under Rule 12(b)(6), proceed as if Plaintiff's factual allegations are true. In addressing a motion to dismiss under Rule 12(b)(6), the court considers the legal sufficiency of the plaintiff's complaint. *See Papasan v. Allain*, 478 U.S. 265, 283 (1986) ("The question remains whether the petitioners' . . . claim . . . is legally insufficient and was properly dismissed for failure to state a claim.") (citing Rule 12(b)(6)). "While [the Court] must take the facts in the light most favorable to the plaintiff, [it] need not accept the legal conclusions drawn from the facts. Similarly, [it] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp.*, 213 F.3d 175, 180 (4th Cir. 2000) (internal citations omitted); *see also Taubman Realty Group Ltd. P'ship v.*

The harm alleged in both causes of action is Decedents' murders in Iraq. (*Id.* ¶¶ 71, 91). Plaintiff seeks an award of compensatory and punitive damages. (*Id.* ¶¶ 76, 77, 94).

<u>ARGUMENT</u>

Plaintiff's Complaint should be dismissed for three reasons. First, by statute, the DBA provides the exclusive remedy for injuries or death arising out of employment covered under the DBA.[5] Consequently, the DBA wholly displaces both the wrongful death claim (Count One) and the fraudulent inducement of contract claim (Count Two). Second, the plain language of Decedents' contracts with Blackwater ("Contracts") bars the claims raised by Plaintiff. Third, Plaintiff has not pled fraudulent inducement of contract with sufficient particularity. For these reasons, this action must be dismissed for failure to state a claim under Rule 12(b)(6).

## I. THE DEFENSE BASE ACT PROVIDES THE EXCLUSIVE REMEDY FOR INJURIES INCURRED SUPPORTING MILITARY OPERATIONS IN A WAR ZONE.

### A. The DBA Framework

Congress established the DBA to "provide uniformity and certainty in availability of compensation" in select employment contexts outside the United States. *Davila-Perez v. Lockheed Martin Corp.,* 202 F.3d 464, 468 (1st Cir. 2000). The DBA extends the Longshore and Harbor Workers' Compensation Act ("LHWCA") to provide an exclusive and comprehensive scheme of compensation for "the injury or death of any employee engaged" in certain listed

---

*Mineta,* 320 F.3d 475, 479 (4th Cir. 2003) (recognizing that a court does not have to accept as true any "allegation [that] is a bare legal conclusion") (citing *Eastern Shore*).

[5] The issue presented here is not whether Decedents are entitled to recover under the DBA; indeed, Blackwater believes they are. *See supra* at 2-3; Removal ¶¶ 9-35. Rather, the question is whether Plaintiff may proceed in parallel under state or common law for death and injury covered by the DBA. That is a federal question exclusively within the province of this Court.

forms of employment, regardless of fault.[6]  42 U.S.C. §§ 1651(a), (c); 33 U.S.C. § 905(a); *see also Brown v. Curtin & Johnson*, 117 F. Supp. 830, 831 (D.D.C. 1954), *aff'd*, 221 F.2d 106, 107-08 (D.C. Cir. 1955) (acknowledging the purpose of the LHWCA is to substitute fixed payments for personal injuries sustained or death caused in the course of employment for the common law cause of action for damages).

As relevant here, the DBA covers injury or death:

> under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States . . . for the purpose of engaging in public work . . . .

42 U.S.C. § 1651(a)(4).  The term "public work" includes "projects or operations under service contracts and projects in connection with the *national defense or with war activities . . .*" *Id.* § 1651(b)(1) (emphasis added); *see, e.g., Employers' Mut. Liab. Ins. v. McLellan*, 304 F. Supp. 321 (S.D.N.Y. 1969) (holding that death while transporting cargo and passengers to an overseas base was public work covered by DBA).  Indeed, any "death in a war zone area . . . is sufficient to bring a claimant within the coverage provided by the [DBA]." *Page Communications Eng'rs, Inc. v. Arrien*, 315 F. Supp. 569, 571 (E.D. Pa. 1970).

Thus, the DBA provides a standardized system of compensation applicable "in all the far-flung places occupied and to be occupied by the United States for military purposes." *Royal Indem. Co. v. P.R. Cement Corp.*, 142 F.2d 237, 239 (1st Cir. 1944).  In the case of death, the DBA provides funeral expenses and up to two-thirds of the average wages of the deceased to statutory beneficiaries, up to a maximum of 200 per centum of the national weekly average wage.  33 U.S.C. §§ 906(b), 909.  Such wage benefits generally continue to a widow or widower

---

[6] Except as modified within the DBA, the LHWCA, as amended, 33 U.S.C. § 901 *et seq.*, "shall apply." 42 U.S.C. § 1651(a).  There are some differences between the two statutes that lend even a greater degree

for life, and to a child until the age of eighteen or, if a student, until the age of 23. *Id.* §§ 909(b), 902(1), (18).

**B.    The DBA is Plaintiff's Exclusive Remedy.**

The DBA and LHWCA provide the exclusive means by which "an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor)" may be held liable for injuries or death arising out of employment covered under the DBA. 42 U.S.C. §§ 1651(a), (c); 33 U.S.C. § 905(a). Consequently, "[t]he courts that have reviewed this issue have uniformly held that an employer that secures insurance coverage for its employees as required by the DBA is entitled to immunity under the LHWCA." *Colon v. United States Dep't of Navy*, 223 F. Supp. 368, 370 (D.P.R. 2002) (citing *Davila-Perez*, 202 F.3d at 468-69); *see also Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 791 (5th Cir. 1990) (compensation under the LHWCA is "an employee's exclusive remedy against the employer in its capacity as an employer").

The "'exclusive' nature of legislation delimiting an employer's liability has [also] been consistently stressed by the Supreme Court" in preempting rights "arising under state workmen's compensation laws and also as barring common-law rights of action." *Smither & Co. v. Coles*, 242 F.2d 220, 223 (D.C. Cir. 1957) (acknowledging exclusivity of LHWCA). Consequently, where the DBA is implicated, all other claims must be dismissed. *See Pulley v. Peter Kiewit Son's Co.*, 223 F.2d 191, 193-94 (7th Cir. 1955) (dismissing the plaintiff's negligence claims because DBA preemption "is clear and unambiguous"); *see also Davila-Perez*, 202 F.3d at 466-69 (same); *Vogelsang v. W. Md. Ry. Co.*, 531 F. Supp. 11, 13 (D. Md. 1981), *aff'd*, 670 F.2d 1347, 1348 (4th Cir. 1982) (same); *Colon*, 223 F. Supp. 2d at 370 (same). The uniform

---

of exclusivity to the DBA. For example, unlike the LHWCA, the DBA does not allow for concurrent jurisdiction under a state workers' compensation act under any circumstances. *See id.* § 1651(c).

enforcement of the clear exclusivity provision in the LHWCA and, by extension, the DBA, is unsurprising given the clear force of the statutory language.

Moreover, the purpose of the LHWCA and DBA was to provide "not only for employees a remedy which is both expeditious and independent of proof of fault, but also for employers a liability which is limited and determinative. Thus, anything that tends to erode the exclusiveness of either the liability or the recovery strikes at the very foundation of statutory schemes of this kind." *Smither & Co*, 242 F.2d at 222 (dismissing wife of injured employee's tort actions against employer to recover damages for loss of consortium based on exclusivity provision of the LHWCA).

### C.    Counts I and II Must be Dismissed Under the DBA.

The language and purpose of the DBA establish that it is the exclusive remedy for Plaintiff here. Consequently, Plaintiff fails to allege a claim for which relief may be granted, and the Court must dismiss the Complaint.[7]

Plaintiff's wrongful death claim consists of assertions that, although Decedents were murdered by hostile insurgents in a war zone, the Defendants are at fault. (Compl. at ¶¶ 68-79). Even if everything Plaintiff alleges were true, which Blackwater denies, Plaintiff cannot overcome the force of 42 U.S.C. §§ 1651(a), (c), or 33 U.S.C. § 905(a), which provide no exceptions. The liability and remedy are exclusive. *See, e.g., Austin v. Johns-Manville Sales Corp.*, 508 F. Supp. 313, 316 (D. Me. 1981) ("overwhelming weight of authority" holds that the LHWCA is the exclusive remedy for injuries resulting from "gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of

---

[7] Defendants Powell and McQuown would also be entitled to dismissal under the DBA. 33 U.S.C. § 933(i) (extending exclusivity of remedy to injuries or death alleged to be attributable to "the negligence or wrong of any other person or persons in the same employ"). Notably, neither individual defendant has been properly served, and neither individual defendant has waived challenge of service or submitted to the personal jurisdiction of this Court.

the employer short of genuine intentional injury"); *Roy ex rel. Charlot v. Bethlehem Steel Corp.*, 838 F. Supp. 312, 316 (E.D. Tex. 1993) ("[C]haracterization of negligence as wanton or gross does not raise that negligence into intent nor does it affect the exclusiveness of the remedies provided by the compensation acts") (citing *Johnson v. Am. Mut. Liab. Ins. Co.*, 559 F.2d 382, 386 n.5 (5th Cir. 1977)); *see also Thomas v. Cent. Linen Co.*, 263 F.2d 495, 496 (D.C. Cir. 1959) (payment under LHWCA barred claim of employee's wife against employer for loss of consortium).[8]

For the same reasons, Plaintiff's claim for rescission based on fraudulent inducement of contract must also fail. Fraudulent inducement of contract is a tort claim, and the harms alleged in this instance are the deaths of Decedents. Even if the Plaintiff were to succeed on the merits of the rescission count, and even if the Court invalidated the contract, the DBA would remain the exclusive remedy for Decedents' deaths.

Regardless of the claim stated, therefore, the DBA provides the exclusive liability and remedy for Plaintiff here. Thus, in *Austin*, the court interposed the LHWCA to exclude a claim based on the fraudulent misrepresentation of the expected level of exposure to asbestos hazards in the workplace. *See* 508 F. Supp. at 316; *see also Robin v. Sun Oil Co.*, 548 F.2d 554, 556 (5th Cir. 1977) (employer had no "liability in damages to the plaintiff" because the LHWCA "destroys *any underlying tort liability* of the employer") (citing *Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Serv. Inc.*, 377 F.2d 511, 515 (5th Cir. 1967), *cert. denied*, 389 U.S. 849 (1967) (emphasis added). The same result should obtain here.

---

[8] Moreover, although Plaintiff asserts a right to recover for wrongful death, the Complaint fails to cite a statute that permits such a claim. It is well established that claims for injuries resulting in death do not exist at common law, but must be created by statute. *See, e.g., Skinner v. Whitley*, 281 N.C. 476, 478, 189 S.E.2d 230, 231 (1972); *Killian v. S. Ry. Co.*, 128 N.C. 261, 38 S.E. 873 (1901).

## II.    THE DECEDENTS' CONTRACTS PRECLUDE PLAINTIFF'S ACTION.

### A.    Decedents' Written Agreements with Blackwater Recognized the Danger of a Combat Environment, Assumed the Risk, and Released Blackwater from Liability.

Counts I and II are further barred based on Decedents' express agreements with Blackwater, which are appended hereto as Exhibit B.[9]  In light of the comprehensive no-fault remedy provided for death or injury under the DBA and the *certain* dangers of providing security in a war zone, the agreements between Decedents and Blackwater expressly detail the danger of the work and, by express terms, foreclose Plaintiff from bringing suit in this case.  Because the language of each Contract "is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit." *DeLoach v. Lorillard Tobacco Co.*, 391 F.3d 551, 558 (4th Cir. 2004) (quoting *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E. 2d 539, 541 (N.C. 1962)) (applying North Carolina law).

The Contracts each contain three specific waivers that prevent Plaintiff from filing suit and from challenging the contract terms.  First, Blackwater disclosed, and Decedents recognized and voluntarily assumed, the risks and inherent uncertainties of working in a combat environment.  "[B]y voluntarily agreeing to participate in the Engagement, [Signee] is voluntarily, expressly and irrevocably assuming any and all known and unknown, anticipated and unanticipated risks which could result in physical or emotional injury, paralysis, death, or damage to himself . . . ." Contracts art. 11.1; *see also id.* art. 20.16.  For further illustration, art.

---

[9] Plaintiff's Complaint expressly references and is based in part upon these Contracts; they are therefore incorporated by reference, although Plaintiff elected not to append them.  Under Rule 12 motions, a court may consider documents incorporated into the complaint by reference, as well as matters of public record. *See supra* note 3; *see also Mosley v. Price*, 300 F. Supp. 2d 389, 391 n.2 (E.D. Va. 2004) (citing *Davis v. Hudgins*, 896 F. Supp. 561, 566 (E.D.Va. 1995), *aff'd*, 87 F.3d 1308 (4th Cir. 1996) (on Rule 12(b)(6) motion, courts can rely not only upon allegations in the complaint, but also on documents incorporated by reference)); 5B CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 1998) (same).

11.1 listed, "without limitation," a wide range of possible risks and harms "which could result in . . . death," including those "caused by . . . foreign citizens or terrorists." *Id.* art. 11.1. The assumed risks included "being shot, . . . or killed by a firearm or munitions, . . . rocket propelled grenade, civil uprising, terrorist activity, [and] hand to hand combat [etc.]." *Id.* By signing the Contracts, Decedents "fully appreciate[d] the dangers and voluntarily assume[d] these risks as well as any other risks in any way (whether directly or indirectly) connected to the Engagement." *Id.*

Second, Decedents released Blackwater "from any and all claims, judgments, awards, actions and causes of action which may be asserted now or in the future[.]" *Id.* at 11.2. The release covers a wide range of claims, including those that seek "*any* liability whatsoever for accident, injury (*including without limitation, death or disability*), losses, loss of consortium, expenses, loss of income and other damages based upon or in any way arising from" the Decedents' engagement with Blackwater "including, without limitation, *loss of life* . . . irrespective of where (or by whom) such accident, injury, *loss of life* . . . occurs." *Id.* (emphasis added). Decedents specifically released Blackwater from damages "as a result of negligence, gross negligence, omissions or failure to guard or warn against dangerous conditions, use, structure or activity, or any other cause, arising from Contractor's participation in the Engagement[.]" *Id.* The release applies to Blackwater and virtually any party remotely associated with Blackwater or its affiliates: "all of their agents, owners, shareholders, officers, members, managers, employees, directors, subcontractors, Affiliates and representatives, successors and assigns[.]" *Id.* The Decedents executed the release on behalf of themselves and their "spouse[s], heirs, administrators, estate, personal representatives, successors and assigns[.]" *Id.* Consequently, Decedents agreed to absolve Blackwater and its employees from *any* liability arising from the dangerous engagement in which the Decedents voluntarily participated.

Third, Decedents covenanted not "to file, prosecute, bring, maintain or in any way proceed on any claim, suit, civil action, complaint, arbitration or administrative action or proceeding of any kind in any municipal, state, federal agency, court, or tribunal against" Blackwater with respect to "facts, occurrences, events, transactions, damages, injuries, claims, causes of action and other matters" they had released. *Id.* art. 11.3.[10] This covenant not to sue acts as a separate and independent bar to Plaintiff's claims. The final sentence of art. 11 summarizes the extent and effect of Decedents' acknowledgement, releases and covenants: "Contractor understands and agrees that if he is hurt or killed during Contractor's performance of Services pursuant to this Agreement[,] *Contractor has no recourse whatsoever* against Releasees" named in paragraph 11.2. *Id.* art. 11.4 (emphasis added).

**B.      Each Written Contract Specifies that it is the Sole Agreement Between the Parties.**

In an effort to avoid the preclusive import of the plain language of these agreements, Plaintiff seeks to rescind them based on alleged unfulfilled promises by Blackwater. Plaintiff's allegation of fraudulent inducement, however, is directly foreclosed by the Contracts themselves. First, the Contracts specifically preclude the argument that there were other agreements or promises: "This Agreement, and any agreements incorporated herein, contain the entire agreement of the parties[.]" Contracts art. 20.2. Second, the parties further specifically agreed to "waive any right to assert in any proceeding that they were induced to enter into this Agreement by any promise, fact, occurrence, warranty, statement, contract, representation, or agreement . . . *which is not expressly set forth in this document*[.]" *Id.* (emphasis added). Notably, the Contracts contain none of the representations to which the Plaintiff has referred in the Complaint. (Compl. ¶¶ 84-87).

---

[10]  Further, to the extent any party to the Contracts disputed the interpretation of, or any party's rights or obligations under, the Contracts, the Contracts mandate binding arbitration. Contracts art. 20.1.

By voluntarily signing the Contracts and traveling to Iraq, the Decedents acknowledged and accepted the uncertainties and risks of a combat environment, explicitly agreed that all promises and representations made to them were included in the Contracts (foreclosing any claim based on fraudulent inducement), and agreed, on behalf of themselves, their families, and their estates, not to bring suit. In the event of death or injury, the DBA provided a comprehensive and exclusive system of compensation.

For the foregoing reasons also, Claims I and II must be dismissed. *See DeLoach*, 391 F.3d at 558.

## III.     PLAINTIFF HAS FAILED TO PLEAD FRAUD WITH PARTICULARITY.

Finally, Count Two for Rescission Based on Fraudulent Inducement of Contract fails to plead the circumstances of the alleged misrepresentation(s) with sufficient particularity and must be dismissed. Federal Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Fourth Circuit deems a lack of compliance with Rule 9(b)'s pleading requirements as a failure to state a claim under Rule 12(b)(6). *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

At a minimum, particularity of pleading requires that the complaint state "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 784 (citing 5B CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297, at 590 (2d ed. 1990)). Count Two does not meet this minimal threshold. The Complaint states neither the time nor the place of any of the alleged "certain representations" regarding Blackwater's agreements with Regency Hotel and Hospital Company ("Regency"). (Compl. ¶¶ 83-86).

Moreover, the Plaintiff fails to identify, with particularity, each individual corporate defendant's alleged culpable conduct. "[A] complaint alleging fraud may not group the defendants together." *Glaser v. Enzo Biochem, Inc.*, 303 F. Supp. 2d 724, 734 (E.D. Va. 2003). Rule 9(b) requires that, for each alleged misstatement or omission, plaintiff plead specific facts concerning, for example, "when *each* defendant allegedly learned that a statement was false, how *that* defendant allegedly learned that the statement was false, and *the particular* means by which the defendant allegedly came to know that the statement was false." *Id.* at 734 (emphasis in original); *see also Apple v. Prudential-Bache Sec., Inc.,* 820 F. Supp. 984, 987 (W.D.N.C. 1992), *aff'd*, 993 F.2d 228, (4th Cir. 1993). The plaintiff must also disclose the sources for and the bases of the allegations. *Apple*, 820 F. Supp. at 986; *see also United States ex rel. Goldstein v. Leonard's Draperies*, 236 F. Supp. 2d 506, 507-08 (D. Md. 2002), *aff'd*, Nos. 03-1460-65, 2004 WL 26739 (4th Cir. Jan. 6, 2004) (per curiam), *cert. denied*, 124 S. Ct. 2842 (2004). The Complaint does not contain the requisite specificity, but rather creates a general outline of alleged unfulfilled extra-contractual promises. (Compl. ¶¶ 85-86).

However, to state a fraudulent inducement claim, the complaint must, at the very least, allege the basis for its contention that the promisor did not intend to keep the promise at the time he made it. The Complaint may not simply assert the existence of purported unrealized assurances. (*Id.* ¶¶ 85-86); *see Strum v. Exxon Co., U.S.A.,* 15 F.3d 327, 331 (4th Cir. 1994) (applying North Carolina law and upholding dismissal of inducement count under 9(b) because plaintiff "has done nothing more than assert that Exxon never intended to honor its obligations" and made operational misjudgments under the agreement); *see also Norman v. Tradewinds Airlines, Inc.* 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003) (North Carolina law recognizes the "narrow scope of fraudulent inducement claims and subject[s] them to heightened pleading requirements") (citations omitted).

In short, Plaintiff's conclusory allegations of fraud fail to meet the Rule 9(b) requirements and must be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiff's causes of action fail to state a claim for which this Court may grant relief and must be dismissed pursuant to Rule 12 (b)(6).

This the 31st day of January 2005.

WILEY REIN & FIELDING, LLP

By: _____

Fred F. Fielding
D.C. Bar No. 099296
Margaret A. Ryan
CO Bar No. 034687
1776 K Street NW
Washington, DC 20006
TEL: 202-719-7000
FAX: 202-719-7049

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By: _____

Kirk G. Warner
N.C. State Bar No. 16238
Mark A. Ash
N.C. State Bar No. 13967
P.O. Box 2611
Raleigh, North Carolina 27602
TEL: 919-821-1220
FAX: 919-821-6800

*Attorneys for Defendants Blackwater Security
Consulting, LLC, and Blackwater Lodge and
Training Center, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing in the above-entitled action upon all other parties to this cause by facsimile and U.S. Mail, addressed to the following parties:

> David F. Kirby
> William B. Bystrynski
> Kirby & Holt, LLP
> Post Office Box 31665
> Raleigh, North Carolina 27622
>
> Daniel J. Callahan
> Brian J. McCormack
> Marc P. Miles
> Callahan & Blaine, APLC
> 3 Hutton Centre Drive, Suite 900
> Santa Ana, California 92707
> *Attorneys for Plaintiff*

This the 21st day of January, 2005.

Kirk G. Warner

U.S. DEPARTMENT OF LABOR
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF LONGSHORE AND HARBOR WORKERS' COMPENSATION

Jerko Zovko (dec'd)
                              Claimant

                 v.

Blackwater Security Consulting
                              Employer

Fidelity & Casualty Co. of N.Y.
                              Insurance Carrier

COMPENSATION ORDER

AWARD OF COMPENSATION

CASE NO: 02-135369

ACT: DBA

IC: 2004 00190

        Pursuant to agreement and stipulation by and between the interested parties and such further investigation in the above entitled claim having been made as is considered necessary, and no hearing having been applied for by any party in interest, or considered necessary by the District Director, the District Director makes the following:

### FINDINGS OF FACT

1.    That on, 3/31/2004 the claimant above-named was in the employ of the employer above-named at its premises in the Second Compensation District, established under the provisions of the Longshore and Harbor Workers' Compensation Act, as amended and extended; that the liability of the employer for compensation under the said Act was insured by Fidelity & Casualty Company of New York / CNA Global.

2.    That on said day the claimant, while performing service as a employee for the employer, sustained injuries resulting in his death and that such death comes within the purview of the above ACT.

3.    The requirement of notice of the injury to the employer has been met.

4.    The employer furnished the claimant with medical treatment, etc.,in accordance with provisions of Section 7 of the said ACT.

5. The average weekly wage of the claimant at the time of injury is not an issue.

6. As a result of the death of the employee, the employer and the insurance carrier have made sufficient investigation to determine that the deceased has no dependents within the meaning of the Act.

Upon the foregoing findings of fact the District Director makes the following:

A W A R D

1. The employer/carrier shall pay the amount of $5000.00 to the Special Fund as provided for in Section 44 (c)(1) of the Act.

Given under my hand at 201 Varick Street
New York, New York 10014 this 18th day of October, 2004.

Richard V. Robilotti
District Director
2nd Compensation District

Ron Kucenski
Claims Examiner

## CERTIFICATE OF FILING AND SERVICE

I certify that on October 18, 2004, the foregoing Compensation Order was filed in the Office of the District Director, Second Compensation District, and that a copy thereof was mailed on said date by certified mail to the parties and their representatives at the last known address of each as follows:

Estate of Jerko Zovko
105 Keewaydin Drive
Timberlake, OH 44095


Fidelity & Casualty Co. of N.Y.
CNA Global
333 South Wabash
32S
Chicago, IL 60685


Laughlin, Falbo, Levy & Moresi
39 Drumm Street
San Francisco CA 94111-4805

---

District Director,
Second Compensation District
U.S. Department of Labor
Office of Workers' Compensation Programs

If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 percent thereof. The additional amount shall be paid at the same time as, but in addition to, such compensation.

The date compensation is due is the date the District Director files the decision or order in his office.

Form LS-19a