# EXHIBIT 1

# EXHIBIT 1

## AGREEMENT FOR SECURITY SERVICES

This Agreement (hereinafter referred to as "Agreement") is made and entered into on this _12___ day of March, 2004 by and between Regency Hotel & Hospital Company, P.O. Box 700, Safat 13700 Kuwait (hereinafter referred to as "REGENCY"), and Blackwater Security Consulting, Inc., located at 850 Puddin Ridge Road, Moyock, North Carolina 27959 (hereinafter referred to as "BLACKWATER").

WHEREAS, REGENCY has signed an Agreement with ESS Support Services Worldwide, Eurest Support Services (Cyprus) International Limited 84 Nicou Pattichi Street, Maritania Building, 3070 Limassol, Cyprus, Postal Address: P.O. Box 52408, 4064 Limassol, Cyprus a contractor providing catering support services and design and build services to US Armed Forces and other US contracting agencies in Iraq and Kuwait hereinafter referred to as "ESS" and whereas REGENCY is desirous to obtain security services to support REGENCY's contract with ESS in Iraq, Kuwait, Jordan and Turkey (hereinafter collectively referred to as the "Territory"); and

WHEREAS, BLACKWATER has familiarized itself with the ESS and REGENCY operations and being professionally experienced in the security field of works to provide such services; and

WHEAREAS, REGENCY and BLACKWATER desire to enter into an agreement wherein BLACKWATER provides certain security services in support of the ESS Contracts and ESS operations in the Territory utilizing the specialized management, personnel and resources currently utilized by BLACKWATER in its business.

NOW, THEREFORE, in consideration of the mutual promises, agreements and covenants and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties hereto, the parties hereto agree as follows:

## ARTICLE 1
## BLACKWATER RESPONSIBILITY & WORK SCOPE

1.1      BLACKWATER shall carry out Security Services, as defined below in this Section, for ESS in the Territory, including movement of ESS's staff, management and workforce throughout Kuwait and Iraq, and across country borders, including the borders of Iraq, Kuwait, Turkey and Jordon. BLACKWATER shall provide to ESS the following security services listed in Appendix A. (Appendix A, Provision of Security Services, is hereinafter referred to as the "Security Services"), at the quantities and unit prices contained in Appendix B.

1.2      BLACKWATER Conducting of Security Operations.

    1.2.1      BLACKWATER is an independent contractor of REGENCY any and all employees of BLACKWATER shall in no way be deemed

1

employees of REGENCY for any purpose hereunder. REGENCY shall designate all Security Services to be performed hereunder in regard to the ultimate result to be obtained; however, BLACKWATER shall have complete and absolute control of the methods and details of the performance of such designated Security Services. All services provided hereunder shall be performed to the satisfaction of REGENCY and ESS. The Parties shall mutually define a <u>service level agreement</u> within thirty (30) days of mobilization which will enable performance to be measured by both parties.

1.2.2 BLACKWATER shall perform the work in a safe, proper and workmanlike manner in accordance with generally accepted current good practices of the security industry. The protective services detail will undergo a pre-deployment training mission to include Mission Standard Operational Procedures, adherence to standardized use of deadly force policies and rules of engagement. <u>BLACKWATER will implement a Mission-Standard Operational Procedures manual that adheres to Diplomatic Security Protective Operations.</u> BLACKWATER views the Security Services it will provide to ESS and REGENCY as a Law enforcement mission and will adhere to the Diplomatic Security Services type Deadly Force Policy and Rules of Engagement. REGENCY and ESS understand that such policies are subject to approval by the US Embassy, Chief of Mission, and are established by in Territory personnel.

1.2.3 BLACKWATER shall provide Security Services within the Territory in accordance with the instructions given by ESS; provided, however, that <u>BLACKWATER shall, at all times, have complete authority and responsibility to make decisions regarding the suitability for movement required by ESS and the type and level of protection required for ESS personnel.</u> Any such decisions made by BLACKWATER shall be based on weather, current threat activity in the Territory and all other factors which may affect the safe movement of ESS personnel.

1.2.4 BLACKWATER shall at all times be the sole judge of the safety and proprietary of ESS staff, management and workforce personnel movement and Security services, as well as the level and type of Security Services provided. BLACKWATER shall be under an absolute duty at all times to exercise its own reasonable discretion with respect to safe operations, movement of ESS personnel and the type and level of Security Services provided to ESS; and no direction given by ESS shall be deemed to lessen this duty or in any way to relieve BLACKWATER of this responsibility.

1.2.5 REGENCY and ESS understand and acknowledge that certain of the services set forth in this Article 1 may require licenses and prior

approval from various government agencies of the U.S. or other applicable jurisdictions. BLACKWATER shall endeavour to obtain, with REGENCY's and ESS's good faith cooperation, all such necessary approvals and licenses; provided, however, BLACKWATER shall not be responsible for any delay or non-performance caused by any act or omission of any government body.

## ARTICLE 2
## REGENCY RESPONSIBILITY

In order that BLACKWATER shall provide its Security Services in an expeditious, safe and professional manner, REGENCY shall:

2.1 Include BLACKWATER in ESS's anticipated movement planning of staff, management, and workforce so that BLACKWATER can plan protection security for these movements well in advance if possible. REGENCY will request that ESS provide a schedule of activities and movements in need of security services at least twenty four (24) hours in advance and for all missions of the BLACKWATER Protection Service Details. Emergency requirements (those with less than 24 hours notice) will be considered but cannot always be guaranteed because of the threat level in the Iraq environment or the inability to change prior commitments.

2.2 REGENCY or ESS will provide all BLACKWATER personnel operating in the Territory with housing and subsistence. If REGENCY, or ESS, is unable to provide such housing and subsistence to any individual BLACKWATER personnel providing Security Services to ESS in the Territory, REGENCY will provide a per diem allowance to each such BLACKWATER person. The amount of the per diem allowance shall be mutually agreed to by both parties, but in no event shall such per diem be less than the most recent published U.S. government JTR rates. The housing standard shall be single occupancy for supervisory level employees and double occupancy for all others. Subsistence shall mean three (3) meals per day and access to laundry facilities and international phone call services when appropriate and Internet access to the extent that such services are physically available; provided, however, that each individual security person (whether U.S. citizen or third country national) utilizing such services shall be individually responsible for all costs associated with such services to the extent, in other words, BLACKWATER, shall not be responsible for any costs associated with Subsistence services.

2.3 REGENCY or ESS will provide BLACKWATER, at no cost to BLACKWATER with office space and equipment on ESS sites in Kuwait and Baghdad in order to support the necessary command and control elements of the BLACKWATER operation in support of ESS operations in the Territory. In the event that ESS is unable to provide office space and equipment at ESS sites,

3



REGENCY will provide optional space near ESS sites at REGENCY's discretion.

2.4 REGENCY, at no cost to BLACKWATER, will provide Kuwait visas, work permits and administration support for BLACKWATER personnel assigned to support ESS operations and working under the terms and conditions of this Agreement. This administrative support will be provided at REGENCY's expense.

## ARTICLE 3
## REGENCY PURCHASE OR LEASE OF OPERATIONS SUPPORT EQUIPMENT AND VEHICLES

REGENCY will purchase or lease the following equipment necessary for the Security Services (hereinafter referred to as the "Equipment") as part of the price charged per man per day as defined in Appendix B. These costs will be in the form of a fixed dollar amount, per man per day, as outlined in Appendix B, with some Equipment leased by and some items owned by REGENCY, but in every case Equipment purchase, maintenance and replacement is REGENCY's responsibility except as agreed to by the parties as delineated in Appendix B. REGENCY bears the risk of Equipment replacement and acquisition of new Equipment or replacement Equipment as required to perform the tasks outlined in this Agreement. REGENCY shall maintain ownership of all Equipment purchased by REGENCY during the Term of this Agreement, unless otherwise mutually agreed to by the parties. REGENCY will require and follow BLACKWATER guidance on the purchase of support items. It is BLACKWATER's responsibility to provide the final decision on types of support items to purchase or lease.

## ARTICLE 4
## CONTRACT AGREEMENT TERM

This Agreement is valid for a period of one (1) year from the date of the last Party's signature to this Agreement (the "Effective Date") and will automatically be renewed for an additional one-year period under the same terms and conditions unless cancelled with thirty (30) days written advance notice by either party. REGENCY shall have the right to terminate this Agreement or any portion hereof, upon thirty (30) days prior written notice in the event that ESS is given written notice by Kellogg, Brown & Root of cancellation of ESS's contracts, for any reason, or in the event that ESS receives written notice from Kellogg, Brown & Root that ESS is no longer allowed to use any form of private security services. Notice of cancellation will be sent by REGENCY to BLACKWATER at the address listed in this document. In the event of Cancellation BLACKWATER shall be paid its compensation for services performed to the date of cancellation plus notification period.

# ARTICLE 5
## SCHEDULE OF WORKS

BLACKWATER's Mobilization period is twenty-one (21) calendar days from the Effective Date of the mobilization payment. BLACKWATER shall receive the mutually agreed mobilization payment as outlined in Article 8 from REGENCY within ten (10) days of signing of this Agreement, provided REGENCY has received the mobilization payment from ESS within the timeframe identified in the Agreement between ESS and REGENCY; provided further that BLACKWATER is relieved from any responsibility under this agreement until it receives such mobilization payment.

BLACKWATER will provide to ESS Security protection security details on an as required basis throughout the term of the Agreement.

# ARTICLE 6
## INSURANCES & INDEMNIFICATION

6.1 <u>Insurance</u>.

    6.1.1 BLACKWATER will obtain and maintain in force at all times during the term of the Agreement insurance of the type and in the minimum amounts set forth on <u>Appendix D</u> attached to this Agreement and incorporated herein by reference. BLACKWATER will name REGENCY as an additional insured and will provide REGENCY with certificates of insurance as evidence of such coverage upon execution of this Agreement.

    6.1.2 BLACKWATER is required to maintain Defense Base Act ("DBA") insurance on all of its employees working in the provision of Security Services. BLACKWATER will make all reasonable efforts to obtain the lowest possible cost for this insurance either by obtaining the insurance through REGENCY sources or combining REGENCY efforts with ESS efforts to obtain the best possible cost for this insurance. The cost of this insurance shall be passed on at cost from REGENCY/BLACKWATER to ESS for payment of same. DBA insurance payment is part of the Advance Payment, as defined in Article 8.1 below, and paid in conjunction with the Advance Payment. If ESS can provide DBA insurance coverage through ESS insurance facilities, then ESS will provide to REGENCY/BLACKWATER pass through coverage via appropriate insurance industry documentation.

6.2 <u>Indemnification</u>. BLACKWATER agrees to indemnify, defend and save REGENCY harmless from and against any and all claims, expenses, loss or liability whatsoever, including court costs and attorneys' fees, arising out of or in connection with the act or omissions of BLACKWATER, its employees and agents including breach of this Agreement; provided, however, BLACKWATER shall not be obligated to indemnify,

defend and hold REGENCY harmless for any claims, expenses, loss or liability arising solely out of or in connection with the negligent acts or omissions of REGENCY or ESS and their agents or employees. This provision shall survive the termination of this Agreement. REGENCY agrees to indemnify, defend and save BLACKWATER harmless from and against any and all claims, expenses, loss or liability whatsoever, including court costs and attorneys' fees, arising out of or in connection with the act or omissions of REGENCY, its employees, representatives, subcontractors, officers and agents including breach of this agreement; provided however, REGENCY shall not be obligated to indemnify, defend and hold BLACKWATER harmless for any claims, expenses, loss or liability arising solely out of or in connection with the negligent acts or omissions of BLACKWATER and its agents or employees. REGENCY understands and agrees that BLACKWATER is providing protective services in a volatile, hostile and extremely dangerous environment. Despite BLACKWATER performing protective services, there is simply no way to avert the high risk of injury or death to ESS and REGENCY personnel operating in this environment. This provision shall survive the termination of this Agreement.

## ARTICLE 7
## TAXES

BLACKWATER shall be responsible for its own taxes, duties, stamps, and fees imposed by the United States Government in the United States. REGENCY shall be responsible for its own taxes, duties, stamps, and fees imposed by the Kuwaiti Government, Iraqi Government, Jordanian Government or the US CPA.

REGENCY shall be responsible for any taxes, duties, stamps, and fees imposed by the Kuwaiti Government, Iraqi Government, Jordanian Government, Turkish Government or the US CPA on BLACKWATER. BLACKWATER shall notify REGENCY within thirty (30) days of BLACKWATER becoming aware of or is notified that the Kuwaiti Government, Iraqi Government, Jordanian Government, Turkish Government or the US CPA is going to impose taxes, duties, stamps, and/or fees on BLACKWATER. REGENCY shall pay the taxes, duties, stamps and/or fees imposed on BLACKWATER by the Kuwaiti Government, Iraqi Government, Jordanian Government or the US CPA directly to Governmental entity imposing the taxes, duties, stamps and/or fees or shall reimburse BLACKWATER through the monthly invoicing procedures in Article 8.

## ARTICLE 8
## PAYMENTS, TERMS OF PAYMENT & RECORDS MAINTENANCE

8.1    Advance Payment. As per Article 5, REGENCY shall pay to BLACKWATER within ten (10) days of the Effective Date of this Agreement an advance payment ("Advance Payment") consisting of:

      8.1.1    Mobilization payment: $320,000 (three hundred and twenty thousand United States Dollars). See Appendix B for details.

8.1.2 DBA insurance payment: $ 407,751 (four hundred and seven thousand seven hundred and fifty one United States Dollars). See Article 6 for details.

As such, the total Advance Payment payable within ten (10) days of the Effective Date of this Agreement, shall be $727,751 (seven hundred twenty seven thousand seven hundred fifty one United States Dollars), which includes the DBA insurance payment. In consideration for this Advance Payment, BLACKWATER, will credit REGENCY one-twelfth (1/12) of the total Mobilization Payment against each monthly billing for twelve (12) consecutive monthly billing periods following the Effective Date of this Agreement, thus reducing the total amount billed to REGENCY in twelve (12) equal amounts. See Appendix C for monthly billing sample.

8.2 Terms and Method of Payment, Invoicing & Substantiating Documents. Billing periods shall be based on calendar months for the duration of this Agreement, see Appendix C. BLACKWATER shall provide a complete invoice to REGENCY within three (3) days (or as soon thereafter as is reasonable practicable) after the end of the monthly billing period. The invoice shall be accompanied by appropriate supporting documentation to validate expensed items as outlined in Appendix B. REGENCY shall make payment to BLACKWATER within thirty (30) days of receipt of BLACKWATER's monthly invoices.

In the event, that there are disputed invoice items, the payment terms remain in force for the items not in dispute.

REGENCY shall pay BLACKWATER by wire transfer of funds in United States Dollars to BLACKWATER's designated bank account. BLACKWATER will provide REGENCY under separate cover its banking information.

8.3 Maintenance of Records. BLACKWATER shall maintain a true and correct set of records pertaining to work performed and services provided hereunder and all transactions related thereto throughout the Term of this Agreement. BLACKWATER further agrees to retain all such records for a period of not less than two years after termination of this Agreement. REGENCY may upon reasonable notice and other terms time audit any and all records of BLACKWATER relative to the work performed hereunder and all transactions related thereto for the sole purpose of determining compliance with the terms and conditions of this Agreement, as well as the invoices submitted and prices paid throughout the Term of this Agreement.

### ARTICLE 9
### WORK SITE ACCESS

Work site access to ESS locations and areas remain ESS responsibility. REGENCY will request ESS provide unhindered access to ESS sites for BLACKWATER, subject to ESS client approval, throughout the term of this Agreement to fulfill the Security