Services. REGENCY understands that without such access, BLACKWATER may be unable to effectively provide the Security Services.

## ARTICLE 10
## INSTRUCTION & DECISIONS

**10.1** REGENCY will delegate its designated representative ("Designated Representative") in writing to the BLACKWATER within five (5) days of the Effective Date of this Agreement. All decisions and/or instructions issued by the REGENCY Designated Representative to BLACKWATER will be binding on BLACKWATER under the terms and conditions of this Agreement. The BLACKWATER Iraq Security Manager and Kuwait Security Manager will coordinate all actions regarding security operations through the ESS Owner Representative as well as the REGENCY Owner Representative. BLACKWATER will delegate its Iraq Security Manager and Kuwait Security Manager in writing to REGENCY within five (5) days of the Effective Date of this Agreement.

**10.2** Communications Policy and Instructions. Each party agrees that it will not, without the prior written consent of the other, issue any press release or announcement or otherwise disclose the existence or nature of this Agreement and/or proposed or contemplated business arrangement(s), transaction(s), negotiation(s), or other related jointly discussed business pursuits. The two parties mutually agree to develop a standard operating procedure (SOP) in regard to the handling of press inquiries.

**10.3** Accident and Incident Reporting Procedures. Due to the nature of the services being provided and the area of operations where the services will be provided, from time to time the parties may have to report on accidents or incidents involving REGENCY provided equipment or incidents involving BLACKWATER personnel and/or REGENCY provided equipment. Therefore, within thirty (30) days of execution of this Agreement the parties mutually agree to develop standard operating procedures to address accident and incident reporting.

## ARTICLE 11
## GOVERNING LAW & SETTLEMENT OF DISPUTES

**11.1** Any disputes of any nature which arise between the parties, with regard to the interpretation of this Agreement or relative to the performance of any of the contractual obligations, whether such disputes arise before, during or after the execution of the Agreement, shall, if possible, be amicably settled. Notice of a dispute shall be served by one party upon the other by written notice.

**11.2** Any dispute which cannot, in the opinion of either party, be amicably settled arising in connection with the present Agreement shall be finally settled by binding

Dockets.Justia.com

arbitration. Within thirty (30) days of a party's notice to arbitrate, each party will appoint one arbitrator, with a third arbitrator to be appointed and mutually agreed between the two parties' appointed arbitrators. If the parties are unable to agree on the appointment of arbitrators within one (1) month of the non-complaining party's receipt of the complaining party's dispute, the appointment shall be subject to the ruling of the International Chamber of Commerce, in Paris, France.

11.3  Arbitration shall be conducted in accordance with the Rules of Arbitration of the International Chamber of Commerce and shall be held in Washington, D.C., and conducted in the English language.

11.4  The validity and construction of this Agreement shall be governed by the Laws of the State of North Carolina.

11.5  This Agreement shall not be construed to present any contractual or legal relationship with any third party.

## ARTICLE 12
## TERMINATION, EXTENSION & EXPANSION

12.1  Termination.

   12.1.1  In the event of non-performance of any term or condition of this Agreement by BLACKWATER, BLACKWATER will be given written notice of the non-performance. BLACKWATER will be given thirty (30) days from the date that the non-performance notice was received to rectify the noted non-performance; provided, that provided, that if the noted "non-performance" is not capable of being cured within such thirty (30) days and BLACKWATER is in good faith attempting to cure and rectify such non-performance, then BLACKWATER shall be given a reasonable time to cure such non-performance (such time not to exceed ninety (90) days). In the event the non-performance issue is not corrected within this thirty (30) (or other applicable time period) day period, REGENCY may exercise its right to terminate this Agreement. BLACKWATER may cancel this agreement upon thirty (30) days written notice for "non performance" or material breach by REGENCY, including failure to make payment to BLACKWATER on the terms and conditions set forth in this Agreement. REGENCY will be given written notice of the non-performance. REGENCY will be given thirty (30) days to rectify the noted "non performance"; provided, that if the noted "non-performance" is not capable of being cured within such thirty (30) days and REGENCY is in good faith attempting to cure and rectify such non-performance, then REGENCY shall be given a reasonable time to cure such non-performance (such time not to exceed ninety (90) days); provided, however, that the initial thirty (30) day time period shall not be extended upon REGENCY's failure to make payment to BLACKWATER on the terms and conditions set forth in this Agreement shall. In the event the non-performance issue is not corrected within a thirty (30) day period (or other applicable time period) BLACKWATER may exercise its right to cancel this Agreement

United States Consumer Price Index for this period and or other unforeseeable and uncontrollable events that may, upon mutual agreement of the parties, require an economic price adjustment.

12.3   Expansion of Security Services. REGENCY, at its discretion, may add security team members by individual category as defined in Appendix A and B.

12.4   Terms of Mobilization and Demobilization of Personnel.

    12.4.1   The initial mobilization of a minimum of thirty four (34) Security Personnel, as defined in Appendix A, will remain constant for ninety (90) days following the Effective Date of this Agreement before any changes are made.

    12.4.2   The initial increase of the number of Security Personnel, as defined in Appendix A, including T1s, T2s and/or T3s, may occur thirty (30) days following the payment of the Mobilization Payment set forth in Section 8.1.1. Demobilization of additional Security Personnel, as defined in Appendix A, may occur sixty (60) days following the Effective Date of mobilization of the individual.

    12.4.3   Demobilization of the original thirty four (34) Security Personnel, as defined in Appendix A, may occur after the initial (90) ninety-day period and this demobilization will require thirty (30) days.

## ARTICLE 13
## FORCE MAJEURE

Both parties acknowledge that the Security Services are taking place in an area defined as a "War Zone" as defined by the parties, therefore the Force Majeure is defined in principle as acts of God, or actions taken by ruling authorities or military forces in charge of the Territories where operations are taking place.

Upon the occurrence of Force Majeure event, BLACKWATER shall notify REGENCY within 24 hours of such event stating the cause and probable consequences.

Where the case of Force Majeure remains unresolved for a period exceeding fourteen (14) days, the parties shall agree on alternative arrangements to continue performance of the Security Services under this Agreement. If no agreement or resolution has been reached

within ninety (90) days from notification, REGENCY shall have the right to terminate the Agreement.

## ARTICLE 14
## CONFIDENTIALITY

Each party to this Agreement shall regard and treat all information concerning the other party's operations which are obtained by the other party in the course of rendering services hereunder as confidential and shall not divulge any such information to any third party and shall not permit any of its officers, agents, representatives, employees or subcontractors to do so. The obligations regarding the confidentiality of information as set out in this Article 14 shall survive the termination of this Agreement for five (5) years regardless of the causes or reason for such termination by either party hereto.

14.1 With respect to any information, during the term of this Agreement, ("Disclosure Period"), which at the time of disclosure by the disclosing party ("Owner") is "Proprietary Information" to, the party receiving such information ("Recipient") agrees the Recipient shall – (1) use any Proprietary Information it receives from the party transmitting Proprietary Information only for the purposes contemplated by this Agreement and shall not otherwise use such Proprietary Information for its own benefit and (2) shall maintain such Proprietary Information in confidence, and not disclose it to any other person, corporation, or other entity. Recipient shall restrict disclosure of the information only to its employees who have the need to know, and instruct its employees that such information is proprietary to the Owner. Examples of "Proprietary Information" include, but are not limited to, information as to any of the Party's customers, prices, sales techniques, estimating and pricing systems, internal cost controls, production processes and methods, product planning and development programs, marketing plans, product information, inventions, blueprints, sketches and drawings, technical and business concepts, training programs, manuals, materials and information related to or associated with the Party's business in any manner or respect.

14.2 In the event Owner verbally discloses its Proprietary Information to Recipient, Owner agrees to identify the information as Proprietary Information at the time of such verbal disclosure.

14.3 The parties agree that information shall not be deemed proprietary and the Recipient shall have no obligation with respect to any such information which is already known to Recipient free of any obligation of confidence; has been published or was otherwise publicly known when Owner disclosed it to Recipient; or is rightfully received by Recipient; or is rightfully received by Recipient from a third party; or becomes publicly available through no wrongful act by Recipient; or is hereafter furnished by Owner to others without a similar restriction on disclosure; or is independently developed by the Recipient (or its agents) without breach of this Agreement.

Recipient shall immediately notify Owner. Upon Owner's request, Recipient shall cooperate with Owner in contesting such a disclosure. Except in connection with failure to discharge responsibilities set forth in the preceding sentence, Recipient shall not be liable in damages for any disclosure of Owner's Proprietary Information pursuant to judicial action or Government regulations.

14.7 Nothing contained in this Agreement shall be construed as granting to either party any express or implied rights by license or otherwise to or in any of the other party's patents or unpatented inventions.

REGENCY agrees that during the term of the Agreement and for a period of one year following termination of this Agreement, REGENCY will not solicit or attempt to solicit any person or entity who is a director, officer, independent contractor, contractor, employee or agent of BLACKWATER or any of its subsidiaries to perform services for any entity other than BLACKWATER or in any way interfere with the relationship between any customer, supplier, licensee, licensor, franchisee or business relation and BLACKWATER or any of its subsidiaries without the prior written consent of BLACKWATER. ~~BLACKWATER agrees that during the term of the Agreement and for a period of one year following termination of this Agreement, BLACKWATER will not solicit or attempt to solicit any person or entity who is a director, officer, employee or agent of REGENCY or any of its subsidiaries to perform services for any entity other than REGENCY or in any way interfere with the relationship between any customer, supplier, licensee, licensor, franchisee or business relation and REGENCY or any of its Subsidiaries without the prior written consent of REGENCY.~~

## ARTICLE 15
## SEVERABILITY

In case of any one or more of the provisions contained in this Agreement should be held or determined to be invalid, illegal or unenforceable in any respect, the legality and enforceability of the remaining provision(s) or underlying rights and obligation referred to herein should not in any way be effected, modified or impaired hereby.

## ARTICLE 16
## NOTICES

Any notices and other communication provided for or permitted hereunder will be made by hand delivery, registered or certified mail (return receipt requested), facsimile transmission or overnight air courier guaranteeing next-day delivery as follows:

REGENCY:    Regency Hotel and Hospital Company
            P.O. Box 700, Safat 13700
            Kuwait City, Kuwait
            Telephone: +965-572-8100
            Fax: +965-572-3884
            Email: jas@al-sane.net
            Attn: Mr. Jameel A. R. Al Sane, Chairman

BLACKWATER: Blackwater USA
            850 Puddin Ridge Road
            Moyock, North Carolina 27959 USA
            Telephone: (252) 435-0011
            Fax:   (252) 435-6388
            Email: garyj@blackwaterusa.com
            Attn: Mr. Gary Jackson, President

Either party hereto may change the above-designated address for notice hereunder upon giving the other party thirty (30) days written notice of such change. All such notices and communications will be deemed to have been duly given: at the time delivered by hand, if personally delivered; five (5) business days after being deposited in the mail, postage prepaid (registered or certified and return receipt requested), if mailed; when receipt acknowledged by confirmation sheet, if telecopied; the next business day after timely delivery to the courier, if sent by overnight courier, guaranteeing next-day delivery.

## ARTICLE 17
## EXTENT OF THE AGREEMENT

This Agreement sets forth the full and complete understanding of the parties as to the Agreement described above. This Agreement represents the entire and integrated Agreement between the parties and supersedes all prior negotiations, representations or agreements either written or oral. This Agreement may only be amended by written instrument signed by both parties. Nothing in this Agreement is intended to benefit any third party.

## ARTICLE 18
## ASSIGNMENT

This Agreement may not be assigned by BLACKWATER without the prior written consent of REGENCY, which consent may be withheld due to the nature of the Security Services provided and the Territory in which they are provided.

## ARTICLE 19
## LIMITATION ON AUTHORITY / RELATIONSHIP OF THE PARTIES

The Agreement is not intended to constitute, create, give effect to, or otherwise recognize a joint venture, partnership, employment relationship or formal business entity of any kind. Nothing in this Agreement shall be construed as providing for the sharing of profits or losses arising out of the efforts of either or both parties. Neither party shall have authority to bind the other except to the extent authorized herein. Each party shall remain as independent contractors at all times and neither party shall act as the agent for the other party.

## ARTICLE 20
## COMPLIANCE WITH LAWS

The parties shall comply and shall cause its directors, officers, and employees, representatives, agents and contractors to comply with all applicable laws, regulation and administrative requirements and shall save "the other party" harmless from any failure to do so. The parties hereby agree to comply with all relevant and applicable U.S. regulations that may be applicable under this Agreement or any subcontract awarded thereto.
BLACKWATER shall comply with any and all applicable laws, rules and regulation that may be applicable to its operations.

## ARTICLE 21
## WAIVER AND CONSTRUCTION

A waiver of any failure to perform under the Agreement will neither be construed as nor constitute a waiver of any subsequent failure. Any exhibits referred to herein are made a part of the Agreement by reference. The Agreement may be executed in several counterparts, each of which will be deemed an original.
IN WITNESS WHEREOF, the parties have acknowledged their agreement to the foregoing terms and conditions by executing this Agreement below.

Signed by:  
Regency Hotel & Hospital Company

Name: Jameel A. R. Al Sane  
Title: Chairman & Managing Director  
Date: _____

Signed by:  
Blackwater Security Consulting, Inc.

Name: Gary Jackson  
Title: President  
Date: 03·12·04

Appendix A: Provision of Security Services  
Appendix B: Schedule of Rates, Supplies and Services  
Appendix C: Sample Monthly Invoice

# PROVISION OF SECUIRTY SERVICES

Based on currently known ESS requirements and area of operations threat analysis, thirty four (34) vetted US Ex-pat professional Security Personnel, as defined in Section 3.0 of this Appendix A below, will form the core of the security organization that will support ESS operations in the Territory. Individual security teams will be task organized to provide optimal protection based on current threat analysis and data, on the ground experience and deterrence capability. This total number of Security Personnel will allow modification of individual team composition based on the region requiring support, thus providing ESS with a fluid, flexible solution across the board with tactically sound and mission capable Personal Security Details.

Further to BLACKWATER's analysis of ESS requirements and the current threat in the Iraqi theater of operations as evidenced by the recent incidents against civilian entities in Fallujah, Ar Ramadi, Al Taji and Al Hillah, there are areas in Iraq that will require a minimum of three Security Personnel per vehicle. The current and foreseeable future threat will remain consistent and dangerous. Therefore, to provide tactically sound and fully mission capable Protective Security Details, the minimum team size is six operators with a minimum of two vehicles to support ESS movements.

To enhance security and reduce the potential threat to ESS management and staff movements, it is understood that the standard process for scheduling support requires twenty four (24) hours advance notification prior to any movement. Emergency movements will be handled on a case by case basis. It is also understood that emergency movements can impact previously scheduled support requirements.
BLACKWATER's Security Personnel for ESS will be composed of:

| Type of Operator | Number |
|---|---|
| T1 | 2 (includes management team) |
| T2 | 12 (includes management team) |
| T3 | 20 |
| Personnel Total | 34 |

### 1.1.1 Innovative Processes

#### 1.1.1.1 Management
BLACKWATER's management team is committed to proactively work with REGENCY and ESS management to:
- Manage costs and reduce them where and when possible and practical.
- Reduce the threat to ESS management staff and employees through efficient planning of movements along with task organized protection details to meet constantly changing threats.
- Develop, test and implement a plan or plans to employ vetted Iraqi security forces and or other security forces composed of other nationalities overtime, but only with REGENCY and ESS management prior approval. With the first review of these plans at sixty (60) days following mobilization.