BLACKWATER SECURITY CONSULTING, LLC et al v. WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al

# EXHIBIT 4

# EXHIBIT 4

Dockets.Justia.com



# INDEPENDENT CONTRACTOR SERVICE AGREEMENT

THIS AGREEMENT is dated as of  1 Feb 2004, 2003 and is by and between Blackwater Security Consulting, LLC, a Delaware Limited Liability Company ("BSC") and  Jerry Zovko , an independent contractor residing at _____, USA ("Contractor").

RECITALS
A. BSC is a Delaware Limited Liability Company that operates a business which provides security, protective, training and logistical and air support services in the United States and in foreign countries (the "Business"); and
B. Contractor is experienced in providing the Services utilized in the Business; and
C. BSC and a private entity or individual (the "Customer" or "Principal") have entered into a contract (the "Engagement") whereby BSC will conduct security and close protective operations in various locations, either domestically or overseas as they travel (collectively, the "Services"); and
D. Contractor has voluntarily agreed to serve as an independent contractor to BSC and to otherwise facilitate the Engagement; and
E. BSC desires to engage the services of Contractor and Contractor desires to provide services to BSC pursuant to the terms and conditions of this Agreement.

AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the receipt and sufficiency of which is hereby acknowledged, the above recitals are incorporated in this Agreement, and the parties mutually agree as follows:

1. DEFINITIONS.
1.1 "Affiliate" shall mean any person, partnership, corporation, limited liability company, trust, member or other entity or association, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control of a shareholder or a shareholder's successor or assigns of BSC, including Blackwater Lodge and Training Center, Inc., Blackwater Target Systems LLC, Aviation Worldwide Services LLC ("AWS") and any and all of their Affiliates and shareholders, members or managers). The term "control" as used in the immediately preceding sentence, means, with respect to a corporation, the right to exercise, directly or indirectly, more than fifty percent (50%) of the voting rights attributable to the controlled corporation, and, with respect to any person, partnership, limited liability company, trust, other entity or association, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled entity.

1.2 "Air Service" or "Air Services" shall mean engaging in or providing services directly or indirectly as a pilot, navigator, flight engineer, mechanic or serving as a crew member in connection with any aircraft, rotorcraft, fight or other aviation transportation delivery or other aviation related services.



1.3 "Business Relationship" shall mean the employment, providing of services to or for and contracting with any individual or entity whose business is similar to that of BSC.

1.4 "Confidential Information" shall mean any and all information marked appropriately and exchanged between Contractor and BSC or Contractor and Customer and shall include any information which is confidential in nature concerning any matters affecting or relating to the business affairs of BSC or Customer, and their Affiliates, including but not limited to the following information:

> 1.4.1 the names, addresses, billing information, and requirements of any of BSC's or Customer's employees, clients, other Contractors, or suppliers contracting with BSC or Customer;

> 1.4.2 any and all information concerning the net worth, assets, liabilities, holdings, or present or future investments of BSC and any of its Affiliates;

> 1.4.3 any information concerning any and all proprietary technologies of BSC or Customer and any of its Affiliates;

> 1.4.4 any and all computer programs, software programs, system documentation, and manuals developed by BSC, Customer or any of their Affiliates in or for the operation of its business; and

> 1.4.5 Any and all information designated "Confidential" by BSC or Customer (by oral means, by writing or otherwise), including without limitation any and all reports, technical documents, maps, plans, recommendations, estimates, equipment, performance reports, subscriber lists, pricing information, studies, findings, inventions, ideas, drawings, specifications, parts lists, technical data, data bases, software in any form, flow charts, and other business and technical information. The Contractor agrees that the aforementioned categories of information are strictly confidential and/or trade secrets of BSC or Customer and that this Agreement is intended to protect and to include without limitation information, documents and programs that constitute Trade Secrets under any applicable State Statutes. The Contractor understands that use of this information by the Contractor in violation of this Agreement will result in irreparable damage to BSC or Customer. Contractor agrees not to use, or cause to be used, the aforementioned Confidential Information and trade secrets of BSC except for, and on behalf of, BSC. At the request of BSC, Contractor agrees to immediately surrender and deliver to BSC all tangible forms of the Confidential Information, trade secrets, documents, papers, and other records or property which Contractor may then possess or have under Contractor's control or which BSC provides to Contractor. Confidential Information shall not apply to any information which: (a) is disclosed in printed publications generally available to the public; (b) is disclosed in printed publications which become generally available to the public after disclosure through no fault of the Contractor; or (c)



Contractor can establish, by written documents, was in the Contractor's possession prior to the time of disclosure to Contractor by BSC.

1.5 "Commencement Date" shall mean the date that Contractor begins providing Services (defined herein) pursuant to this Agreement; it being specifically understood that there may be a gap in time between training and travel or training and Deployment.

1.6 "customer" shall mean any and all individuals, entities, corporations that have received any services from BSC prior to the Effective Date, including all individuals who have contracted services from BSC.

1.7 "Effective Date" shall mean the date when the last of BSC or Contractor signs this Agreement.

1.8 "Duty Station" shall mean Baghdad, Iraq and the surrounding regions /Countries or such other geographic place of performance as designated by BSC or Customer. Contractor acknowledges that the Contractor may be required to perform services pursuant to this Agreement in geographic locations other than the above-referenced location and that Contractor's Deployment to these alternative locations is a condition of this Agreement.

1.9 "Pay Period" shall mean a period of time equal to approximately thirty (30) days (or such other period as may be prescribed by BSC) during which Contractor shall be entitled to compensation in the amount set forth in Section 3.1 of this Agreement for services provided hereunder; provided, however, that payment for the last 30 days of a Deployment will be made to Contractor by BSC only upon Contractor's return to the U.S.

1.10 "Point of Hire" shall mean the city with an airport serviced by commercial airline carriers that is closest to Contractor's address as listed in the records of the Company.

1.11 "Restricted Activity" for the purposes of this Agreement shall mean any one or more of the following, without the prior written consent of BSC:
    (a) engage in or provide, directly or indirectly, services for any other companies or entities managing, employing or contracting with or consulting for a competitor of BSC or any of its affiliates, successors, and assigns in order to provide similar services to Customer as is contemplated under this Agreement;

    (b) join, be employed by, contract as an independent contractor for, or associate in a Business Relationship with individuals, companies or any entities, managing, employing or contracting with or consulting for a competitor of BSC or any of its affiliates, successors, and assigns in order to provide similar services to Customer as is contemplated under this Agreement; or

    (c) accepting employment with or becoming a partner of or acquiring greater than a five percent (5%) ownership interest in any partnership, corporation or other entity engaged in the practice or managing the practice of Services



to a competitor of BSC or any of its affiliates, successors or assigns in order to provide similar services to Customer as is contemplated under this Agreement.

1.12 "Transportation Costs" shall mean all expenses incurred by BSC for the transportation of Contractor from Contractor's address of record to the Duty Station and return transportation from the Duty Station.

2. POSITION/SERVICES. Contractor accepts the position as a security team member, reporting directly to any supervisor as may be designated by BSC or Customer from time to time. Pursuant to the terms of this Agreement, Contractor shall perform the duties and responsibilities customarily associated with this position in accordance with the rules, regulations and directives of BSC and any International, Federal, State, Local, Governmental agency laws and regulations.

3. FEES:

3.1 As of the Commencement, Contractor shall be entitled to compensation for Services performed hereunder in an amount equal to the following:

    Standby/Travel Days: $150.00 per day
    Mission/Detail Days: $600.00 per day

(the "Fees"). "Detail Days" shall mean each day that Contractor spends more than 12 hours in support of a BSC supported Personal Security Detail or operation. Contractor understands and acknowledges that he shall only be entitled to earn Fees from the Commencement Date, followed by up to ten days of standby on non-contract basis, and for detail days. Payment will be sent by regular mail to the address set forth below Contractor's signature or such other means as has been agreed to among BSC and Contractor.

3.2 Contractor will be reimbursed a per diem at JTR rates during detail days for meals and incidentals as authorized by the BSC with its prior consent and at its sole discretion; provided, that, to the extent meals are made available to Contractor by Customer or BSC, Contractor will not be entitled to a per diem for any such day. Contractor shall submit expense receipts [and per diem claim vouchers] to BSC at the conclusion of Contractor's Deployment. BSC will provide certain equipment and weapons in connection with the Engagement; provided, however, that Contractor may, with prior approval from BSC, bring any personal equipment (understanding that BSC shall not be responsible for any loss or damage to such property).

4. GEOGRAPHIC LOCATION. The geographic location of this Agreement shall be at the Duty Station or such other location as directed by BSC or Customer. Contractor understands that the geographic location of any Deployment may change at any time.

5. TERM. The term of this Agreement shall be from the Commencement Date until the



Termination Date (as defined below) (the "Term"). This Agreement may be extended by the parties hereto or by BSC's successor or assign, by written instrument executed by all parties to this Agreement. "Termination Date" shall mean the earlier to occur of (i) the termination date of the Engagement with BSC by the Customer, (ii) the three year anniversary date of the date of this Agreement and (iii) the Noticed Termination Date (as defined below). It is understood and agreed to by the parties that this Agreement may be applicable and govern the relationship between BSC and Contractor for multiple Deployments, i.e., the Contractor need not re-execute a copy of this Agreement to be bound by the terms and conditions herein for all BSC related Deployments or in each case that Contractor provide services to BSC.

6. WORK / ROTATION SCHEDULE. The normal work week shall be defined as commencing at 0001 hours Monday and ending at 2400 hours the immediately following Sunday. Work hours during such weeks will be scheduled at the sole discretion of BSC and the needs of Customer, but Contractor will be working 7 days per week during a Deployment. It is currently contemplated that each Contractor will be deployed overseas pursuant to this Agreement for a period of at least sixty days (60) days when a contract is in place that must be supported, excluding any travel days (each such round trip upon return to the U.S., a "Deployment"). Contractor understands and agrees that he is not entitled to Fees for any minimum time period if the Engagement or Contractor's Services are otherwise terminated for any reason or no reason whatsoever by BSC or Customer.

7. TAXES. Except for any withholding obligations imposed on BSC by any State or Federal law of the United States of America, Contractor hereby agrees and acknowledges that Contractor is solely responsible for the payment of all taxes, fees, and payments of any nature whatsoever due to governmental entities of any country incurred by reason of Contractor's acceptance of compensation and providing the Services under this agreement. All travel expenses under this Agreement are considered taxable income and will appear on the Contractor's Form 1099. Thus, Contractor shall retain all expense receipts for tax purposes. Both BSC have the right to examine such receipts for the purposes of verifying invoices. Any and all [per diem vouchers or] expense reimbursements will be made at the end of the Deployment.

8. TRANSPORTATION. BSC agrees to provide economy class air transportation for Contractor from Point of Hire to Duty Station. Notwithstanding anything to the contrary set forth in this Agreement, BSC further agrees to provide return air transportation for Contractor from Duty Station to Point of Hire upon termination of this Agreement. Contractor expressly agrees and acknowledges that the transportation provided pursuant to this Section shall be for travel which is authorized for Contractor and by BSC only.

9. GOVERNMENT FACILITIES ABROAD. Contractor hereby agrees and acknowledges that Contractor shall be personally liable for any charges or fees incurred by Contractor at facilities operated by the Customer or any other third party that is not directly related to the Engagement, i.e., no personal expenses will be reimbursed.