

10. **PERFORMANCE DURING HOSTILITIES.** Contractor agrees and acknowledges that the Services performed in the Duty Station, pursuant to this Agreement have been identified as being essential to BSC's complete performance under the terms of the contract between BSC and the Customer and notwithstanding the existence of hostilities or a state of war, whether declared or undeclared, Contractor agrees to perform his or her assigned duties until released from such duties by the Contractor's supervisor or the supervisor's designated representative.

11. **CONTRACTOR ACKNOWLEDGMENT, RELEASE AND WAIVER.**

   11.1 Acknowledgment. Contractor agrees and acknowledges that due to the hazardous nature of the Duty Station and the Services to be provided hereunder, Contractor hereby expressly and voluntarily agrees to assume any and all risks of personal injury including, without limitation, death and disability which may result from Contractor providing Services pursuant to this Agreement. Contractor understands and acknowledges that the Duty Station is volatile, hostile and extremely dangerous and in some instances, military forces may be conducting continuing military operations in the region. Contractor understands and acknowledges that by voluntarily agreeing to participate in the Engagement, he is voluntarily, expressly and irrevocably assuming any and all known and unknown, anticipated and unanticipated risks which could result in physical or emotional injury, paralysis, death, or damage to himself, to his property, or to third parties, whether or not such injury or death is caused by other independent contractors to BSC, known and unknown domestic and foreign citizens or terrorists or U.S. governmental employees. The risks include, among other things and without limitation, the undersigned being shot, permanently maimed and/or killed by a firearm or munitions, falling aircraft or helicopters, sniper fire, landmine, artillery fire, rocket propelled grenade, truck or car bomb, earthquake or other natural disaster, poisoning, civil uprising, terrorist activity, hand to hand combat, disease, poisoning, etc., killed or maimed while a passenger in a helicopter or fixed wing aircraft, suffering hearing loss, eye injury or loss; inhalation or contact with biological or chemical contaminants (whether airborne or not) and or flying debris, etc. Contractor fully appreciates the dangers and voluntarily assume these risks as well as any other risks in any way (whether directly or indirectly) connected to the Engagement. Contractor understands and agrees that Contractor is solely responsible for obtaining any and all liability insurance, short and long term disability, workers compensation, medical or dental benefits and medical evacuation insurance and therefore understands and agrees that BSC is not responsible for obtaining any such insurance on Contractor's behalf. Contractor hereby expressly agrees and acknowledges that the Fees without additional benefits which may be provided to Contractor, is full and fair consideration for Contractor's covenants hereunder.

   11.2 Release. Except as to any contractual benefits expressly provided herein, Contractor, on behalf of Contractor and Contractor's spouse, heirs, administrators,



estate, personal representatives, successors and assigns (collectively referred to as "Contractor's Group"), hereby releases and forever discharges BSC, AWS and all of their agents, owners, shareholders, officers, members, managers, employees, directors, subcontractors, Affiliates and representatives, successors and assigns (collectively referred to as "Releasees") from any and all claims, judgments, awards, actions and causes of action which may be asserted now or in the future by Contractor's Group for any liability whatsoever for accident, injury (including without limitation, death or disability), losses, loss of consortium, expenses, loss of income and other damages based upon or in any way arising from Contractor's performance of Services pursuant to this Agreement and the transportation of Contractor, including, without limitation, loss of life, loss or damage to property, irrespective of where (or by whom) such accident, injury, loss of life, loss or damage to property occurs, whether as a result of negligence, gross negligence, omissions or failure to guard or warn against dangerous conditions, use, structure or activity, or any other cause, arising from Contractor's participation in the Engagement or any other activity on or off of Releasees' premises or Contractor's use of BSC, Customer equipment and facilities even if such injury was caused in whole or in part by the negligence of Releasees.

11.3 Covenant Not to Sue. The Contractor further agrees and covenants not to file, prosecute, bring, maintain or in any way proceed on any claim, suit, civil action, complaint, arbitration or administrative action or proceeding of any kind in any municipal, state, federal agency, court, or tribunal against Releasees with respect any of the foregoing facts, occurrences, events, transactions, damages, injuries, claims, causes of action and other matters released in Section 11.2.

11.4 Liquidated Damages. The parties hereto expressly agree that in the event of Contractor's death or injury based upon or in any way arising from Contractor's performance of Services pursuant to this Agreement and the transportation of Contractor, even if such injury was caused in whole or in part by the negligence of Releasees, Contractor's Group has no recourse whatsoever against BSC. Contractor understands and agrees that if he is hurt or killed during Contractor's performance of Services pursuant to this Agreement or the transportation of Contractor, Contractor has no recourse whatsoever against Releasees.

12. LIMITATIONS ON AUTHORITY. Unless BSC has given Contractor its express written consent, Contractor has no actual, apparent, or implied authority to:

12.1 Pledge the credit of BSC or any of BSC's other Contractors.

12.2 Bind BSC under any contract, agreement, note, mortgage or otherwise.

12.3 Release or discharge any debt due to BSC unless BSC has received the full amount thereof.

12.4 Sell, mortgage, transfer or otherwise dispose of BSC's assets.



13. CONDUCT OF CONTRACTOR. Contractor will directly report to the Customer or BSCs' leaders, as the case may be, who have been appointed from time to time by Customer or BSC. Contractor agrees and acknowledges that Contractor shall comply with all laws and regulations of the United States, any country where Contractor is a citizen or resident and the host country, including but not limited to laws related to currency, black market, and drug and alcohol use. Contractor shall abide and obey local customs and shall at all times exhibit the highest moral and ethical conduct. Personal attire and hygiene shall be maintained in accordance with BSC or Customer policies. Contractor agrees and acknowledges to abide by all rules and regulations of BSC including BSC's Drug Policy and any other policies and procedures set forth by BSC or Customer. Contractor hereby consents to pre-deployment and periodic random drug testing in connection with the Engagement and the performance of Services hereunder. Contractor has been briefed on the rules of engagement and has reviewed and understands such rules and regulations pertaining to the use of force. The Contractor understands and agrees that introduction, possession, use, sale, transfer, manufacture, or consumption of any alcoholic beverages or controlled substances is strictly prohibited during the Engagement.

14. CONTRACTOR REPRESENTATIONS AND WARRANTIES. To induce BSC into entering into this Agreement, Contractor hereby represents and warrants as follows:

> 14.1 Contractor is in good health and is physically capable of performing his obligations under this Agreement. Contractor agrees and acknowledges that this Agreement is contingent upon Contractor remaining in good physical and mental health as necessary to fully perform his obligations under this Agreement.
>
> 14.2 If Contractor is a pilot, Contractor is a duly licensed aircraft pilot by the Federal Aviation Administration for Contractor's position and Contractor's license is current and active and no legal, administrative or other proceedings which may affect Contractor's ability to perform services hereunder are pending or contemplated as of the Effective Date of this Agreement. Further, Contractor's medical certificate is current as described by Federal Aviation Regulation Part 67 ("FAR"), if required for Contractor's position.
>
> 14.3 Contractor has no prior arrest or criminal convictions and has never been charged, indicted or convicted of a domestic violence crime of any kind (albeit a misdemeanor or a felony).
>
> 14.4 There is no other reason which would prevent Contractor from fully performing Contractor's obligations pursuant to this Agreement.
>
> 14.5 Contractor has his own liability, short and long term disability insurance, life insurance, etc.

15. RESTRICTIVE COVENANTS.
> 15.1 Confidential Information. The Contractor shall not, at any time during the period of providing Services under this Agreement and for a period of five (5)



years after termination of this Agreement (or such additional time as required by law) for any reason, including the expiration of the term of this Agreement, either directly or indirectly, divulge, publish, disclose or communicate to any person, firm, or other entity, except as part of Contractor's duties as described in this Agreement, in any manner whatsoever, or appropriate for the Contractor's personal benefit or a benefit of a third party, whether or not the Contractor receives remuneration, any Confidential Information.

15.2 Non-Competition/Non-Solicitation Restrictions. While the Contractor is providing Services to BSC, and for a period of eighteen (18) months from the date of termination of the Contractor's period of performing Services or the expiration of the term of this Agreement, the Contractor shall not, directly or indirectly, whether as a consultant, agent, advisor, sole-proprietor, Contractor, independent contractor, partner, stockholder, owner, or in any other capacity individually, or for the benefit of any person, firm, corporation, or other entity:

> 15.2.1 compete with BSC by engaging in a Restricted Activity; or,
>
> 15.2.2 call upon, solicit, divert, take away, deliver to, canvas, contact, sell, provide services of any kind, or otherwise deal with any Customers of BSC; or,
>
> 15.2.3 assist any other individual or entity in soliciting, contacting, diverting, providing services of any kind, selling, or calling upon any Customers of BSC; or
>
> 15.2.4 hire, employ, solicit, engage, or associate in any business activity with any individuals who were Contractors of BSC during the time period in which the Contractor was providing services to BSC.

15.3 No Compensation Required. The restrictions set forth in this Agreement shall apply whether or not the Contractor receives compensation or consideration for the Services or acts which would otherwise violate the terms of this Agreement. Additionally, the covenants on the part of the Contractor set forth in this Section (and all Subsections hereof) shall be, and hereby are, deemed to be independent covenants of this Agreement which shall expressly survive termination of this Agreement or a determination that other provisions of this Agreement are invalid or unenforceable, or that BSC has breached the terms of this Agreement.

15.4 Contractor Acknowledgment. Contractor hereby acknowledges and agrees that: (a) this Agreement and the restrictions set forth herein are necessary for the protection of the legitimate business interest of BSC and are intended to be construed and enforceable as valid restraints pursuant to any applicable State Statute; (b) the execution and delivery of this Agreement is a mandatory condition precedent to entering into this Agreement and the providing of Services by



Contractor hereunder; (c) the scope of this Agreement and the restrictions are reasonable in time, scope and geography; (d) Contractor does not have any intention of competing, soliciting or disclosing Confidential Information as restricted herein within the scope, area and time limits set forth herein above; (e) Contractor recognizes that a violation of any provision of this Agreement would be deleterious to and could cause severe economic impact on a portion of or all of BSC's business, and that such violation would be an unfair competition against BSC; (f) Contractor represents that upon termination of providing Services to BSC hereunder, the Contractor's experience and capabilities are such that the Contractor can obtain reasonable employment commensurate with the Contractor's education, training, and experience that will not violate the terms of this Agreement.

15.5 Adjustment. If any provision of this Agreement is determined or adjudged by a court to be invalid or unenforceable, the same shall in no way affect any other provision of this Agreement, the application of such provision in any other circumstances, or the validity or enforceability of this Agreement. The parties to this Agreement intend for this Agreement to be enforced as written. If any provision, or part thereof, however, is held to be unenforceable because of the duration or scope thereof, or the area covered thereby, all parties agree that the court or arbitrator (if applicable) making such determination shall have the power to reduce the duration and/or area or scope of such provision to the extent necessary for such provision to be then enforceable. The existence of any cause of action of Contractor against BSC shall not constitute a defense to BSC's enforcement of these restrictive covenants.

15.6 General Remedies. The Contractor hereby acknowledges and agrees that BSC shall be entitled to all equitable remedies, including, without limitation, specific performance and injunctive relief to enforce the terms and provisions of this Agreement and the restrictive covenants set forth herein. Contractor does hereby waive any proof that such breach would cause irreparable injury to BSC or that there is no adequate remedy at law.

15.7 Liquidated Damages. It is expressly agreed by and between the parties to this Agreement that it is impractical and extremely difficult to fix actual damages which may result from the Contractor's failure to comply with the provisions of the Restrictive Covenants in this Agreement for one or more of the following reasons: (a) the difficulty of BSC to prevent a breach of this Agreement by the Contractor; (b) the difficulty of BSC to calculate actual damages and loss of business resulting from a breach by the Contractor in violation of this Agreement; (c) the difficulty to ascertain the impact of a breach of this Agreement on BSC's Customer and business; and (d) the difficulty that BSC may experience in obtaining timely injunctive relief. Therefore, it is expressly agreed by and between the parties that in the event the Contractor violates the terms or provisions of the Restrictive Covenants contained in this Agreement, then BSC



shall be entitled to receive liquidated damages from the Contractor and the Contractor shall pay within five (5) days of notice from BSC, the total sum of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00). The liquidated damages shall be due and payable in a lump sum to BSC. It is expressly acknowledged by the Contractor that said payment shall not be interpreted nor construed as a penalty but is in fact a good faith attempt to fix damages which BSC will suffer in the event of a breach of the Restrictive Covenants. It is also agreed that this provision for liquidated damages shall not be construed to restrict BSC's right to injunctive relief but shall be BSC's exclusive remedy at law for damages.

16. TERMINATION.

16.1 Termination Without Cause and Without Notice. Contractor hereby acknowledges that BSC may terminate this Agreement and Contractor's Services hereunder without notice at any time with or without cause without advance notice for any reason or no reason whatsoever. In the event that Contractor is discharged pursuant to this Section, Contractor shall be entitled to compensation as provided herein for services provided to the date and hour of discharge only; provided that Contractor shall not be entitled to receive his final compensation until after returning to the U.S. The Contractor shall be responsible for reimbursement to BSC for any advanced amounts for transportation, per diem or any other costs described in Sections 3, 8, 9, 15.7, and 16 and that such amounts are subject to the provision of Section 16.4 herein.

16.2 Termination by Contractor. Contractor may terminate this Agreement only in the event that BSC fails to pay Contractor any undisputed compensation amount; provided, however, that Contractor provides BSC with written notice of such failure and BSC fails to make payment within ten (10) days from the date BSC receives written notice. Contractor hereby agrees and acknowledges that because of the nature of the Services provided to Customer and the resulting obligations of BSC to third parties, Contractor shall not have the right to terminate this Agreement without cause and Contractor hereby expressly waives the right to assert in any action or proceeding that this Agreement is lacks mutuality of obligations between the parties. In the event that Contractor voluntarily (i.e., not at the direction of BSC or Customer) refuses to fulfill his minimum Deployment commitment (as set forth in Section 6), Contractor shall have an amount equal to $200.00 times the number of days short of his sixty (60) day Deployment commitment deducted from his final payment. The parties understand that BSC may cancel this Agreement at any time for any reason or no reason at all upon notice to the other party (the "Noticed Termination Date"); provided, however that (i) if Contractor voluntarily refuses to fulfill his minimum Deployment commitment, such date shall be considered the Noticed Termination Date and Contractor shall be penalized as set forth above and (ii) upon termination of this Agreement, termination of Services or at the end of a Deployment, as the case may be, Contractor will be required to return to the United States before he is entitled to payment of any outstanding Fees.



16.3 Termination Does Not Affect Restrictive Covenants. Notwithstanding anything to the contrary contained in this Agreement, the termination of this Agreement by either party for any reason shall not affect the validity or enforceability of the restrictive covenants set forth in Sections 15.1 through 15.7. All provisions shall expressly survive the termination of this Agreement.

16.4 Set-Off. Contractor hereby agrees and acknowledges that BSC shall have the right to set-off and deduct from any salary and bonus otherwise due the Contractor an amount equal to any indebtedness of the Contractor to BSC and any and all losses, damages, Transportation Costs, and advanced per diem amounts pursuant to Sections 3, 8, 9, 15.7, and 16, and any other costs, expenses and attorney fees incurred by BSC as a result thereof.

16.5 BSC Assets. Contractor agrees that upon termination providing Services to BSC under this Agreement, all proprietary interests of BSC and its business assets, tangible or intangible, which Contractor deals with or develops, shall remain the sole or exclusive property of BSC and in no event shall Contractor acquire any interest therein or right to use same without the express written permission of BSC. Contractor agrees that in the event he ceases to provide services to BSC, he shall promptly return to BSC, all documents, forms, contracts, lists, maps, completed work or work in progress relating to the affairs of BSC and any personal property of BSC in his possession at the time of termination. All title to supplies, financial records, maps, charts, records, Customer information, equipment and furnishing shall remain the sole property of BSC.

17. INDEMNIFICATION. Contractor hereby agrees to indemnify and hold harmless BSC, its shareholders, officers, directors, Contractors, Affiliates, representatives, successors and assigns from any and all claims, judgments, awards, actions, causes of action, liabilities, asserted by anyone for damages, debts, costs, expenses, obligations and liabilities relating to or in any way arising from the following:

    17.0.1 Contractor's failure to pay taxes as set forth in this Agreement;

    17.0.2 Contractor's use of facilities or equipment owned and operated by BSC, Blackwater Lodge and Training Center, Inc., AWS or Customer;

    17.0.3 Contractor's violation of Sections 12 and 16 hereof;

    17.0.4 Contractor's breach of any restrictive covenants set forth herein;

    17.0.5 Contractor's breach of any of Contractor's representations and warranties set forth in this Agreement;

    17.0.6 Any of the Liabilities for which Contractor has agreed to hold harmless BSC herein;



17.0.7 Contractor's failure to obtain any protective insurance, including, medical and dental insurance, short and long term disability insurance, workers compensation insurance, life insurance or medical evacuation insurance; and

17.0.7 Contractor's breach of any of the terms of this Agreement.
The Indemnification procedures identified in Schedule 17 are attached hereto and deemed a part of this Agreement.

18. DRUG TESTING. Contractor hereby agrees and acknowledges that it is a condition of providing Services to BSC under the terms of this Agreement that all Contractors refrain from using drugs on and off the job. For purposes of assuring compliance with this Section, Contractor hereby consents to be tested for among other things, any or all of the following substances: (i) alcohol; (ii) amphetamines; (iii) cannabinoids; (iv) cocaine; (v) phencyclidine (PCP); (vi) methaqualone; (vii) opiates; (viii) barbiturates; (ix) benzodiazepines; (x) synthetic narcotics including, without limitation methadone and propoxypene, upon request by BSC.

19. NOTICES. Any notice, request, demand, consent, approval or other communication required or permitted under this Agreement (collectively a "notice") shall be (a) in writing, and (b) addressed by the sender to the other party at the address and in the manner set forth below:

If to BSC: Blackwater Security Consulting LLC
Attn: Brian Berrey, Director
850 Puddin Ridge Road
Moyock, NC 27958
Fax No.: (252) 435-6388

If to Contractor: To such Contractor's residential address on file with BSC. Except as otherwise provided in this Agreement, each notice shall be effective and shall be deemed delivered on the earlier of: (i) its actual receipt, if delivered personally, by telefax, courier service, or, (ii) on the third (3rd) day after the notice is postmarked for mailing by first-class, postage prepaid, certified or registered, United States mail, with return receipt requested (whether or not the return receipt is subsequently received by the sender).

20. MISCELLANEOUS PROVISIONS.

20.1 Law/Exclusive Venue/Arbitration. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, applicable to contracts made and to be fully performed therein, excluding its conflict of laws principles. Contractor and BSC hereby agree that any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association and shall be conducted in Currituck or Camden County in North Carolina. The arbitrators may award attorneys fees to the prevailing party in any arbitration proceeding. All costs and expenses of the arbitration, including actual attorney's fees,

13
Blackwater Security Consulting IC Contract
Baghdad PMO Execution Authority