

17.0.6 Any of the Liabilities for which Contractor has agreed to hold harmless BSC herein;

17.0.7 Contractor's failure to obtain any protective insurance, including, medical and dental insurance, short and long term disability insurance, workers compensation insurance, life insurance or medical evacuation insurance; and

17.0.7 Contractor's breach of any of the terms of this Agreement.
The Indemnification procedures identified in Schedule 17 are attached hereto and deemed a part of this Agreement.

18. DRUG TESTING. Contractor hereby agrees and acknowledges that it is a condition of providing Services to BSC under the terms of this Agreement that all Contractors refrain from using drugs on and off the job. For purposes of assuring compliance with this Section, Contractor hereby consents to be tested for among other things, any or all of the following substances: (i) alcohol; (ii) amphetamines; (iii) cannabinoids; (iv) cocaine; (v) phencyclidine (PCP); (vi) methaqualone; (vii) opiates; (viii) barbiturates; (ix) benzodiazepines; (x) synthetic narcotics including, without limitation methadone and propoxypene , upon request by BSC.

19. NOTICES. Any notice, request, demand, consent, approval or other communication required or permitted under this Agreement (collectively a "notice") shall be (a) in writing, and (b) addressed by the sender to the other party at the address and in the manner set forth below:

If to BSC: Blackwater Security Consulting LLC
Attn: Brian Berrey, Director
850 Puddin Ridge Road
Moyock, NC 27958
Fax No.: (252) 435-6388

If to Contractor: To such Contractor's residential address on file with BSC. Except as otherwise provided in this Agreement, each notice shall be effective and shall be deemed delivered on the earlier of: (i) its actual receipt, if delivered personally, by telefax, courier service, or, (ii) on the third (3rd) day after the notice is postmarked for mailing by first-class, postage prepaid, certified or registered, United States mail, with return receipt requested (whether or not the return receipt is subsequently received by the sender).

20. MISCELLANEOUS PROVISIONS.

20.1 Law/Exclusive Venue/Arbitration. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, applicable to contracts made and to be fully performed therein, excluding its conflict of laws principles. Contractor and BSC hereby agree that any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be

13
Blackwater Security Consulting IC Contract
ESS/RHHS Support Operations



resolved by binding arbitration according to the rules of the American Arbitration Association and shall be conducted in Currituck or Camden County in North Carolina. The arbitrators may award attorneys fees to the prevailing party in any arbitration proceeding. All costs and expenses of the arbitration, including actual attorney's fees, shall be allocated among the parties according to the arbitrator's discretion. The arbitrator's award may be confirmed and entered as a final judgment in the courts noted above and enforced in accordance with rules of the American Arbitration Association. Proceeding to arbitration and obtaining an award thereunder shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil action of a summary nature where the relief sought is predicated on there being no dispute with respect to any fact or relief of an injunctive nature. Contractor hereby waives any rights to seek removal of any dispute to the state or federal courts.

20.2 Entire Agreement. This Agreement, and any agreements incorporated herein, contain the entire agreement of the parties on the subject matter hereof, and replace any prior agreement or agreements between BSC and Contractor in their entirety. This Agreement may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. The parties hereto waive any right to assert in any proceeding that they were induced to enter into this Agreement by any promise, fact, occurrence, warranty, statement, contract, representation, or agreement (collectively "Representation") which is not expressly set forth in this document and all such Representations are merged herein.

20.3 Time. For all purposes of this Agreement time is of essence.

20.4 Counterparts/Facsimile. This Agreement may be executed in several counterparts, each of which shall be deemed an original and such counterparts shall together constitute and be one and the same instrument. A telefaxed copy of this Agreement and all signatures thereon shall constitute an original for all purposes.

20.5 Construction of Agreement. This Agreement has been prepared by the attorneys for BSC and the parties have read and negotiated all of the language used in this Agreement. The parties acknowledge and agree that because all parties (and their counsel to the extent Contractor requested that they review the Agreement) participated in negotiating and drafting this Agreement, no rule of construction shall apply to this Agreement which construes any language, whether ambiguous, unclear or otherwise, in favor of, or against any party by reason of that party's role in drafting this Agreement.

20.6 Termination of Prior Contract. Contractor agrees and acknowledges that any prior contract between BSC and Contractor is hereby terminated. Notwithstanding the foregoing, all restrictive covenants regarding proprietary and confidential information contained in any prior contract shall remain in full force and shall binding on Contractor.

20.7 Commission Warranty. Contractor represents and warrants to BSC that Contractor has not engaged the services of any broker, agent, employment agency or other individual entity which will or is entitled to claim any commissions, fees or other amounts in connection or in any way relating to this Agreement or his Services hereunder. Contractor shall defend, indemnify and hold BSC harmless from any and all fees, commission claims, causes of action, attorney fees, obligations or liabilities of any agent, broker or employment agency in any way relating to Contractor's association with BSC pursuant to this Agreement.

20.8 Headings. The headings in this Agreement are for purposes of reference only and shall not limit or otherwise affect the meaning hereof.

20.9 Gender. Any reference herein to the masculine, the feminine or the neuter shall include the masculine, the feminine and the neuter, and any reference to the singular or plural shall include the opposite thereof, as the context so requires.

20.10 Waiver of Jury Trial. The parties hereto knowingly, voluntarily, and intentionally waive the right any of them may have to a trial by jury in respect to any litigation arising out of, under, or in connection with this Agreement and any other agreements contemplated to be executed in connection herewith, or any course of conduct, course of dealings, statements (whether verbal or written), or actions of any party (including, without limitation, any action to rescind or cancel this Agreement and any claims or defenses asserting that this Agreement was fraudulently induced or is otherwise void or voidable); this waiver being a material inducement for BSC to enter into this Agreement with Contractor.

20.11 Legal Expenses. In the event BSC is required to take action against Contractor to enforce the term, covenants and conditions of this Agreement and Release, or to mediate an action brought by the other party, BSC shall be reimbursed by Contractor for such costs as may be incurred in such action, including any appeal there from, including reasonable attorney's fees, costs and other fees, not to exceed insurable limits.

20.12 Execution of Documents. If, during the performance under this Agreement, the Contractor assumes the custody of BSC funds or takes possession of property of any nature whatsoever and wherever situated, which property has in fact been purchased with monies of BSC, the Contractor hereby recognizes and acknowledges the existence of a trust relationship, either express or constructive, and agrees to execute whatever documents that may be required by BSC to evidence this relationship.

20.13 Recital. The parties hereby acknowledge and agree that the terms of this Agreement and Release are contractual and not a mere recital and there are not any other agreements, understandings or representations made by BSC except as expressly stated in this Agreement and Release. Further, Contractor agrees that if any provision of this Agreement and Release is found to be unenforceable, the remaining terms shall remain in full force and effect.



20.14 Non-Publicity. This Agreement and the Engagement and all aspects associated with the Engagement is classified. It is a material condition of this Agreement (and a legal obligation of Contractor) that the Contractor shall not disclose any information whatsoever relating to the Engagement or use or allow to be used any aspect of this Agreement for publicity or advertisement purposes. It is further understood that this obligation does not expire upon completion or termination of this Agreement, but continues indefinitely. It is further agreed that this contractual relationship shall not be disclosed except as allowed by law or regulation.

20.15 Independent Contractor. Contractor acknowledges that it is solely an independent contractor. Nothing contained in this Agreement shall be deemed to constitute either BSC, the Contractor or Customer as an agent, representative, partner, or joint venture or employee of the other party for any purpose. Neither party can bind the other to any agreement with anyone else nor can either party can bind the other to any agreement that compels the other to divulge information regarding agreements, contracts or obligations to/with outside parties. Contractor understands that he is not entitled to any employee benefits from BSC, including workers' compensation benefits, life insurance, long term disability, health and dental benefits, participation in 401k plan or any other benefits.

20.16 Waiver. By signing this document, Contractor acknowledges that if Contractor is hurt or his property is damaged while providing Services hereunder, the intent is that Contractor and Contractor's Group is bound by this Release and Indemnification and therefore will be found by a court of law to have waived his right to maintain a lawsuit against BSC on the basis of any claim from which Contractor has released them herein.
20.17 Survival. The provisions of Sections 1, 7, 8, 9, 11, 12, 14, 15, 16.3, 16.4, 16.5, 17, 18, 19 and 20 (and all subsections thereof) of this Agreement shall survive the execution of and any termination of this Agreement.

_____

Brian Berrey, Director
BLACKWATER SECURITY CONSULTING LLC

Signature: _____  Emergency Contact Information
Print Name: _____  Name: _____
Address:                    Phone
                            e-mail:
Phone:                      Mother's maiden name:

SCHEDULE 17
INDEMNIFICATION PROCEDURES
Any party claiming indemnification under this Agreement is referred to as the "Indemnified Party" and any party against whom any such claim is asserted is referred to



as the "Indemnifying Party". All claims for indemnification by an Indemnified Party under this Section shall be asserted and resolved as follows:

If any claim, for which an Indemnifying Party would be liable for damages to an Indemnified Party hereunder, is asserted against or sought to be collected from such Indemnified Party by a third party (a "Third Party Claim"), the Indemnified Party, promptly after the Third Party Claim is so asserted, shall notify the Indemnifying Party of such Third Party Claim, enclosing copies of all papers served, (the "Claim Notice"). Notwithstanding the foregoing, the Indemnifying Party shall be obligated to indemnify the Indemnified Party with respect to any such Third Party Claim except to the extent that a failure to promptly notify the Indemnifying Party in accordance with the foregoing provisions of this Section actually prejudices the Indemnifying Party's ability to defend against the Third Party Claim. The Indemnifying Party shall have five (5) days from the delivery of the Claim Notice (the "Notice Period") in which to notify the Indemnified Party whether the Indemnifying Party disputes the obligation to provide an indemnity for such Third Party Claim or whether the Indemnifying Party desires, at the sole cost and expense of the Indemnifying Party, to defend the Indemnified Party against such Third Party Claim.

If the Indemnifying Party notifies the Indemnified Party within the Notice Period that the Indemnifying Party does not dispute its liability to the Indemnified Party, then the Indemnifying Party shall have the right to defend, at its sole cost and expense, such Third Party Claim by all appropriate proceedings, which proceedings shall be diligently prosecuted by the Indemnifying Party to a final conclusion or settlement. The Indemnifying Party shall have full control of such defense and proceedings, including any compromise or settlement thereof; provided, however, that the Indemnified Party shall be authorized, at its sole cost and expense, to file during the Notice Period any motion, answer or other pleading which the Indemnified Party and the Indemnifying Party shall deem necessary or appropriate to protect the respective interests of the Indemnified Party and the Indemnifying Party; provided, further, however, that if requested by the Indemnifying Party, the Indemnified Party agrees, at the sole cost and expense of the Indemnifying Party, to cooperate with the Indemnifying Party and its counsel in contesting any Third Party Claim which the Indemnifying Party elects to contest, or, if appropriate and related to the Third Party Claim in question, in making any counterclaim against the person or entity asserting the Third Party Claim or any cross-complaint against any person or entity. The Indemnified Party may participate in, but not control, any defense or settlement of any Third Party Claim controlled by the Indemnifying Party pursuant to this Section, and, except as provided in the preceding sentence, the Indemnified Party shall bear its own costs and expenses with respect to such participation.

If the Indemnifying Party fails to notify the Indemnified Party within the Notice Period that the Indemnifying Party does not dispute its liability to the Indemnified Party and that the Indemnifying Party desires to defend the Indemnified Party pursuant to this Section, or if the Indemnifying Party fails to diligently and promptly prosecute the Third Party Claim or to settle it, or if the Indemnifying Party fails to give any notice whatsoever within the Notice Period, then the Indemnified Party shall have the right to defend, at the sole cost and expense of the Indemnifying Party, the Third Party Claim by all appropriate



proceedings, which proceedings shall be promptly and vigorously prosecuted by the Indemnified Party to a final conclusion or settlement, in the discretion of the Indemnified Party. The Indemnified Party shall have full control of such defense and proceedings, including any compromise or settlement thereof. Notwithstanding the foregoing provisions, if the Indemnifying Party has notified the Indemnified Party within the Notice Period that the Indemnifying Party disputes its liability to the Indemnified Party and if such dispute is resolved in favor of the Indemnifying Party by a final, non-appealable order of a court of competent jurisdiction, then the Indemnifying Party shall not be required to bear the costs and expenses of the Indemnified Party's defense or of the Indemnifying Party's participation therein at the Indemnified Party's request, and the Indemnified Party shall be obligated to reimburse the Indemnifying Party in full for all costs and expenses incurred in connection with such litigation on demand. The Indemnifying Party may participate in, but not control, any defense or settlement controlled by the Indemnified Party pursuant to this Section, and the Indemnifying Party shall bear its own costs and expenses with respect to such participation.

In the event any Indemnified Party shall have a claim against any Indemnifying Party hereunder which does not involve a Third Party Claim being asserted against or sought to be collected from the Indemnified Party by a third party, then the Indemnified Party shall notify the Indemnifying Party of such claim by the Indemnified Party, specifying the nature of and the specific basis for such claim and the amount of or the estimated amount of such claim (the "Indemnity Notice"). If the Indemnifying Party does not notify the Indemnified Party within twenty (20) days from the delivery of the Indemnify Notice that the Indemnifying Party disputes such claim, the amount or estimated amount of such claim specified by the Indemnified Party shall be conclusively deemed a liability of the Indemnifying Party hereunder. However, if the Indemnifying Party has timely disputed such claim, as provided above, then such dispute shall be resolved by mutual agreement of the Indemnified Party and the Indemnifying Party or by litigation in any appropriate court of competent jurisdiction.